UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Arctic Cat, Inc.,

Plaintiff,

v.

MEMORANDUM OPINION
AND ORDER
Civil No. 01-543 MJD/RLE

Injection Research Specialists, Inc.,
A Colorado corporation, and
Pacer Industries, Inc., a Missouri
Corporation.

Defendant.

---

John D. Gould, Alan G. Carlson, J. Derek Vandenburgh, Robert J. Glance and Matthew A. Doscotch, Merchant & Gould P.C. for and on behalf of Plaintiff.

David P. Pearson and Steven C. Tourek, Winthrop & Weinstine, P.A. and Anthony de Alcuaz, David W. Slaby, Robert J. Blanch and Peter Van Meighem, McDermott, Will & Emery for and on behalf of Defendants.

---

This is a declaratory judgment action in which the Plaintiff seeks declarations concerning certain patents owned by Defendants.

Factual Background

The patents at issue in this case relate to electronic fuel injection ("EFI") systems for two cycle engines; the type that are typically used in snowmobiles. These patents were developed by Defendant Injection Research Specialists ("IRS"). Defendant Pacer Industries purchased substantially all of IRS' assets in 1991.



FILED SEP 12 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

U.S. Patent No. 34,803 ("'803 patent") issued on December 6, 1994, and is a reissue of U.S. Patent No. 4,901,701 ("'701 patent"). U.S. Patent No. 5,813,374 ("'374 patent") issued on September 29, 1988, and claims priority as a continuation of the '803 patent. This patent contains broader claims than the '803 patent. U.S. Patent No. 6,062,202 ("'202 patent") issued on May 16, 2000 as a continuation of the '374 patent. These are the patents that cover the EFI systems referred to above.

The other patent involved in this case is U.S. No. 34,079 ("'079 patent") which is a reissue of U.S. Patent No. 5,024,205 ("'205 patent"). This patent is directed to a narrow improvement in EFI systems – specifically a battery conservation circuit that disconnects the battery from the electronic control unit of the EFI system if the ECU determines the battery voltage is falling low.

In 1990, IRS filed suit against Polaris, Fuji (Polaris' engine supplier) and JECS (the company that supplied an EFI system to Polaris). In that suit, IRS alleged that Polaris and Fuji had misappropriated IRS' trade secrets and that Polaris, Fuji and JECS infringed the '701 and '205 patents. The suit was stayed during the reissue proceedings involving the '701 and '205 patents, which resulted in the issuance of the '803 and the '079 patents. After the reissuance, the court granted summary judgment in favor of the defendants as to the patent infringement claims, finding that none of the defendants infringed the '803 or the '079 patents. The trade

secret claims when to trial, where IRS ultimately succeeded and was awarded a verdict of approximately $44.6 million.

While the Polaris suit was pending, IRS wrote to Arctic Cat, accusing it of infringing the '803 patent, and notifying it that IRS would "no later than conclusion of the Polaris litigation, [] bring suit against [Arctic Cat] for infringement of the '803 patent claims, and for other causes of action based on misuse by [Arctic Cat] of the information supplied by IRS in 1988 and 1989." Doscotch Decl., Ex. 8. IRS did bring suit against Arctic Cat, alleging claims of trade secret misappropriation and fraud. No patent infringement claims were asserted against Arctic Cat, however. Arctic Cat was granted summary judgment in that case, and the case was dismissed.

Arctic Cat asserts that as patent infringement claims were not included in IRS's prior action against it, and because its EFI supplier, JECS, was found not to have infringed IRS' patents in the Polaris suit, Arctic Cat assumed that IRS had abandoned its patent infringement claims, and acted in reliance on such facts. It was thus surprised to receive a letter from IRS in March 2001, again alleging patent infringement and notifying it that IRS estimated its damages at $100,000,000. Arctic Cat filed this declaratory judgment action to address the patent infringement issues once and for all.

In its Amended Complaint, Arctic Cat has asserted claims of non-liability. In Count II, Arctic Cat alleges that since 1993, IRS has been aware that Arctic Cat

purchased EFI systems from JECS, that it wrote a cease and desist letter to Arctic Cat in 1995, sued Arctic Cat in 1997, but to date has not filed an infringement action against Arctic Cat. Based on these events, Arctic Cat asserts that IRS has unreasonably delayed in bringing a patent infringement suit against it, and that Arctic Cat has been prejudiced by such delay. Arctic Cat further asserts that IRS misled it into believing they had abandoned and/or waived any claim of infringement of the '803 patent. Arctic Cat asserts that it is "not liable for infringement of the '803 patent because Defendants' threatened suit of infringement is barred, in whole or in part, by doctrines of laches, estoppel, acquiescence, waiver, intervening rights, res judicata, collateral estoppel, and statute of limitations." Amended Complaint ¶ 21. Count X asserts the same defenses with regard to the '079 patent. Id. ¶ 42.

In Count V, Arctic Cat asserts that as to the '374 patent, IRS is barred, in whole or in part, by doctrines of laches, estoppel, acquiescence, waiver and intervening rights. Id. ¶ 29. Count VIII provides Arctic Cat is not liable for infringement of the '202 patent because of the doctrine of intervening rights. Id. ¶ 33.

Before the Court is IRS' motion to dismiss the affirmative defenses of acquiescence, laches, estoppel and waiver, pursuant to Rule 12(b)(6).

Standard

For the purposes of the Defendants' Motion to Dismiss, the Court takes all facts alleged in Plaintiff's Complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). Further, the Court must construe the allegations in the Complaint and reasonable inferences arising from the Complaint favorably to Plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). A motion to dismiss will be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." Id.; see Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court applies those standards in the following discussion.

Analysis

1. Laches

The elements of a laches defense are: 1) an unreasonable and inexcusable delay from the time the claimant knew or reasonably should have known of its claim against defendant; and 2) the delay operated to the prejudice or injury of defendant. A.C. Aukerman Company v. R.L. Chaides Construction Co., 960 F.2d 1020, 1032 (Fed. Cir. 1992).

The Court finds that Arctic Cat has sufficiently plead a claim of laches. For example, in Count II of the Amended Complaint, Arctic Cat alleges that in 1991, Defendants sued Polaris, Fuji and JECS for infringement, and that as of 1993, Defendants knew that Arctic Cat purchased its EFI systems from JECS. Arctic Cat

further alleges that given the circumstances of Defendants' litigation against Polaris, Fuji and JECS, and the litigation against Arctic Cat, Defendants have unreasonably delayed in bringing infringement claims against it, and that such delay has caused it prejudice. Amended Complaint ¶¶ 11-21. See also Id. at ¶¶ 36-42. By alleging unreasonable delay and prejudice, the Court finds that the claims of laches are sufficiently plead.

2. Estoppel

The elements of an estoppel claim are: 1) one, with knowledge of the true facts communicates something in a misleading way, either by words, conduct or silence; 2) the other relies upon that communication; and 3) the other would be materially harmed if the actor is later permitted to assert any claim inconsistent with his/her earlier conduct. Aukerman, 960 F.2d at 1041. The most common situation which establishes the first element is that the patentee has specifically objected to the current activities of the alleged infringer, and then does not follow up for years. Id. at 1042.

In its Amended Complaint, Arctic Cat has sufficiently plead an estoppel claim. It has alleged that Defendants misled Arctic Cat into believing that they had abandoned their infringement claims, by not including such claims in their prior suit against Arctic Cat, and that Arctic Cat relied on such belief by continuing to sell the EFI-equipped snowmobiles, and that Arctic Cat would be materially

harmed if Defendants were allowed to proceed with a claim of infringement. Amended Complaint at ¶¶ 20, 28 and 41.

3. Waiver/Acquiescence

Waiver is the relinquishment of a known right. Minnesota Mining and Manufacturing Company v. Kirkevold, 87 F.R.D. 324 (D. Minn. 1980). Generally, to find waiver, the facts must reasonably lead to the inference that the person against whom it is to operate did in fact intend to waive a known right. Id. at 335. Waiver can be inferred from conduct or silence. Id.

Again, the Court finds that Arctic Cat has sufficiently plead a claim of waiver. Arctic Cat alleges that Defendants waived their right to assert claims of infringement against it by failing to sue it for infringement. Amended Complaint ¶¶ 20, 28 and 41. Similarly, Arctic Cat alleges that by not bringing suit, Defendants in effect, acquiesced in Arctic Cat's conduct.

Defendants argue that waiver and acquiescence are merely categories of conduct used to describe an implied license. As such, waiver and acquiescence are not, themselves, an equitable defense. Arctic Cat correctly points out, however, that the Federal Rules of Civil Procedure 8(c) recognizes waiver and license as separate affirmative defenses. The Court similarly rejects Defendants argument that acquiescence must be plead as an implied license. Defendants provide no authority for such a position, and it is contrary to the rule that a complaint need only contain a short plain statement giving Defendants fair notice of the claim.

Fed.R.Civ.P. 8(a). The Court finds that the allegations contained in the Complaint meet this standard.

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss or to Strike is DENIED.

Date: Sept 12, 2001

Michael J. Davis
United States District Court

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500