UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

ORDER

* * * * * * * * * * * * * * * * * * *

Arctic Cat, Inc., a
Minnesota Corporation,

Plaintiff,

vs.

Injection Research
Specialists, Inc., a
Colorado Corporation, and
Pacer Industries, Inc., a
Missouri Corporation,

Defendants.

and

Injection Research
Specialists, Inc. a
Colorado Corporation, and
Pacer Industries, Inc, a
Missouri Corporation,

Counterclaimants,

vs.

Arctic Cat, Inc. a
Minnesota Corporation, and
Suzuki Motor Corporation,
a Japanese Corporation,

Counterdefendants. Civ. No. 01-543 (MJD/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 15th day of May, 2002.

FILED MAY 15 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD______
DEPUTY CLERK J.H.

## I. Introduction

On April 4, 2002, the Court heard arguments on the Plaintiff's Motion to Amend Pretrial Order, the Plaintiff's Motion to Compel Discovery, and the Defendants' Motion to Extend Time in Which to Respond to the Summary Judgment Motions of the Plaintiff. At the time of the Hearing, the Plaintiff and Counterdefendant, Arctic Cat, Inc., appeared by Derek J. Vandeburgh, Alan G. Carlson, and Matthew A. Doscotch, Esqs.; the Defendants, and Counterclaimants, Injection Research Specialists, and Pacer Industries, Inc., appeared by Anthony de Alcuaz, Peter Van Mieghem, Robert J. Blanch, and David P. Pearson, Esqs.; and the Counterdefendant Suzuki Motor Corporation ("Suzuki"), appeared by Bruce C. Zotter, and Neil Klievenstein, Esqs.

Subsequently, on April 25, 2002, the Court heard the Defendants' Amended Motion for the Issuance of Letters Rogatory, and the Defendants' Motion to Enter a Protective Order. At the time of that Hearing, the Plaintiff appeared by Derek J. Vandenburgh, Esq.; the Defendants appeared by Anthony de Alcuaz, and Robert J. Blanch, Esqs.; and Suzuki appeared by Bruce C. Zotter, Thomas H. Jenkins, Naoki Yoshidi, and William F. Forsyth, Esqs.

For reasons expressed during the course of the Hearings, and briefly reiterated below, we grant the Plaintiff's Motion to Amend Pretrial Order; we grant the Defendant's Motion to Extend Time in

which to Respond to the Plaintiff's Summary Judgment Motions; we grant in part, and deny in part, the Plaintiff's Motion to Compel Discovery; we grant the Defendants' Amended Motion for the Issuance of Letters Rogatory; and we grant in part, and deny in part, the Defendants' Motion for Entry of a Protective Order.

## II. The Hearing of April 4, 2002

### A. The Plaintiff's Motion to Amend Pretrial Order.

The Plaintiff seeks an Order which would extend, for nine months, each of the pretrial deadlines contained in our Amended Pretrial Order of December 7, 2001. The parties represented that they were in agreement that a substantial extension of the discovery deadlines were warranted, in part to allow for the resolution of the Plaintiff's pending Motions for Summary Judgment, which could narrow the issues, and limit the need for discovery. Finding good cause for such an extension, we granted the Plaintiff's Motion for a nine month extension of the dates contained in our Amended Pretrial Order, and we now adjust the remaining pretrial deadlines as follows: the period during which the parties may conduct discovery shall terminate on **April 15, 2003**; all nondispositive Motions shall be filed, and the Hearing thereon completed, prior to **May 15, 2003**; the Plaintiff's expert disclosures shall be made on or before **February 15, 2003**, with the Defendant's expert disclosures being made on or before **March 15, 2003**; all dispositive

Motions shall be briefed, submitted, and argued, on or before **August 15, 2003**; and this case shall be "Ready for Trial" on **September 15, 2003**, or 30 days after the Court issues its Order on any then-pending dispositive Motion. The deadline for Motions to Amend the Pleadings, which was set for March 4, 2002, and had already expired at the time of the April 4, 2002 Hearing, will not be further modified.

B. The Defendants' Motion to Extend Time in which to Respond to the Plaintiff's Motions for Summary Judgment.

The Defendants contend that the Plaintiff's Motions for Summary Judgment were filed prematurely, and that, absent some opportunity to engage in discovery, they will be unable to adequately respond to those Motions. In part, the Defendants express a need to obtain discovery from two Japanese Corporations, Unisia JECS Corporation ("JECS"), and Kokusan Denki Corporation ("Kokusan"), each of whom manufacture the electronic fuel injection ("EFI") systems that are employed by the Plaintiff in its snowmobiles, and they maintain that the intended discovery can only be accomplished, if at all, through the issuance of Letters Rogatory, which can be a logistically inexpedient means of conducting discovery. As a result, the Defendants sought an indefinite extension of the date on which they must respond to the Plaintiff's Summary Judgment Motions.

At the time of the Hearing, we expressed our disinclination to adopt indefinite deadlines as a pretrial guide, and the Defendants proposed that we conduct a Status Conference in six months, at which time, we could review the status of discovery, and put the Defendants to their proof as to what time would then be necessary to respond to the Motions for Summary Judgment. We accepted that general approach, but determined that a Status Conference should be conducted in four months time and, therefore, we now schedule a telephonic Status Conference for **August 28, 2002, at 10:00 o'clock a.m.**, at which time, we will review the progress of discovery in an effort to establish an appropriate Summary Judgment briefing schedule.

C. The Plaintiff's Motion to Compel Discovery.

The Plaintiff seeks an Order which compels the Defendants to fully answer three Interrogatories, to categorically admit, or deny, three Requests for Admission, and to respond to all discovery requests, including Interrogatories, Requests for Admissions, and Requests for the Production of Documents, concerning two specific patents-in-suit. We address each request in turn.

1. Interrogatory Answers.

a. Interrogatory No. 1. The Plaintiff asks that we direct the Defendants to provide a full answer to Interrogatory No. 1, which is a contention Interrogatory. At the Hearing, the

Plaintiff's counsel noted that several Judges in this, and in other Districts, have adopted a process of requiring the parties in patent litigation to develop claim charts, in lieu of contention Interrogatories. We noted our approval, and prior adoption, of such an approach, as one that facilitates the parties' understanding of the claims at issue, as well as any defenses to those claims, so as to delimit extraneous, and wasteful, discovery. As a result, we directed the parties to "meet and confer" so as to adopt a plan for the mutual exchange of claim charts.

Following our directive, the parties did "meet and confer" and, by letter dated April 23, 2002, the parties forwarded for our review a proposed Order that reflected the parties' agreement with respect to claims charts. At the Hearing on April 25, 2002, however, the Defendants addressed this proposed Order, and noted that, although it covered the preparation of claims charts concerning the infringement claims, as to which the Defendants -- as holders of the patents-in-suit -- have the burden of proof, it did not address the invalidity claims as to which the Plaintiff, and Counterdefendant bear the burden of proof.

The parties have represented that the remaining disagreement, concerning any invalidity claims charts, related to the date by which the Plaintiff and Counterdefendant would have to serve their claims charts on the Defendants. The Defendants asked that we

require the Plaintiff and Counterdefendant to serve the chart within 30 days after their receipt of the Defendants' infringement claim chart, while the Plaintiff asked for ninety days in which to prepare its invalidity claims charts. In support of that request, the Plaintiff contends that it needs the time in order to fully review the infringement claims, before it can complete its invalidity claims charts, and that it would be unduly burdensome to require it to review the Defendants' charts, construct invalidity claims charts, and file its responsive claim chart on the infringement issues, during one thirty-day period. As we advised, at the Hearing of April 25, 2002, we conclude that ninety days is too long.

We recognize, as the Plaintiff urges, that validity often depends on claims construction, and that, until it has the opportunity to review the Defendants' claims charts, it is in the dark as to the claims construction contentions. However, we also find merit in the Defendants' argument that, because this lawsuit was commenced by the Plaintiff's claims that the Defendants' patents were invalid, or were not infringed, Rule 11, Federal Rules of Civil Procedure, obligated the Plaintiff to have a responsible basis to commence its Declaratory Judgment action, which implicitly speaks to the Plaintiff's knowledge as to why the Defendants' patents were either not infringed, or are invalid. Accordingly, the Plaintiff need not await the receipt of the Defendants' claims

charts in order to create its invalidity claims charts, and we conclude that thirty days, after the Plaintiff's receipt of the Defendants' claims charts, provides the Plaintiff with a sufficient amount of time for it to digest the information contained in those charts into its own invalidity claims chart. As a result, we deny the Plaintiff's Motion to Compel a response to Interrogatory No. 1 and, instead, we direct as follows:

1. On or before **June 4, 2002**, the Defendants shall serve upon the Plaintiff and Counter-defendant a claims chart, which shall identify: (a) which claim(s) of the four patents in suit that it alleges are being or have been infringed; (b) which specific products or methods of the Plaintiff and Counterdefendant it alleges literally infringe each claim; and (c) where each element of each claim listed in (a) is found in each product or method listed in (b), including the basis for each contention that the element is present. If there is a contention by the Defendants that there is infringement of any claims under the doctrine of equivalents, the Defendants shall separately indicate this on its claims chart and,

in addition to the information required for literal infringement, the Defendants shall also explain each of the functions, ways and results that it contends are equivalent, and why it contends that any differences are not substantial.

2. Within 30 days after the receipt of the Defendants' claims chart, the Plaintiff and Counterdefendant shall serve upon the Defendants their Responsive Claim Charts that indicate, with specificity, which elements on the Defendants' claims charts that they admit are present in their accused devices or processes, and which they contend are absent. In the latter regard, the Plaintiff and Counterdefendant will set forth in detail the basis for its contention that the element is absent. As to the doctrine of equivalents, the Plaintiff and Counterdefendant shall indicate on their claims charts their contentions concerning any differences in function, ways and results, and why any differences are substantial.

3. If, within the period for taking discovery, the Defendants become aware of additional claims that they contend are infringed and/or additional products that they contend infringe their patents, then they shall promptly amend their claims charts to reflect the additional claims and/or accused products. Within 30 days of receipt of such an amended claims chart, the Plaintiff and Counterdefendant shall serve upon the Defendants their amended responsive claims charts. After the close of discovery, the Defendants can amend their claims charts, so as to add additional claims and/or accused products, only by leave of the Court, upon a showing that it could not reasonably have included those claims, and/or accused products, earlier and upon a showing that the prejudice to the Defendants if leave to amend is denied outweighs the prejudice to the Plaintiff and Counterdefendant if leave is given.

4. Also, within 30 days of their receipt of the Defendants' claims charts, as described in

paragraph 1 above, the Plaintiff and Counter-defendant shall serve on the Defendants a listing of all of the prior art on which they rely, and a complete and detailed explanation of what they allege the prior art shows and how that prior art invalidates the claim(s) asserted by the Defendants.

5. Within thirty (30) days of their receipt of the Plaintiff's and Counterdefendant's Prior Art Statements, the Defendants shall serve on the Plaintiff and Counterdefendant their Prior Art Statement, in which they will state in detail their position on what the prior art relied upon by the Plaintiff and Counterdefendant shows, if their interpretation differs from that of the Plaintiff and Counterdefendant, and their position on why the prior art does not invalidate the patent(s)-in-suit.

6. The parties' Prior Art Statements can be, but need not be, in the form of expert reports.

7. The Plaintiff and Counterdefendant can add prior art to their original Statements only by leave of the Court, upon a showing:

a. that they were not, and could not reasonably have been located earlier by the party seeking leave to add such art, and

b. that it is not merely cumulative or prior art already listed, and

c. how the party seeking the amendment would be prejudiced if leave were denied, and how the Defendants would not be prejudiced if leave were granted.

Having ordered the preparation of these charts, we deny the Plaintiff's Motion to Compel Discovery as to Interrogatory No. 1.[1]

b. Interrogatory No. 2. The Plaintiff also seeks an Order compelling the Defendants to fully respond to Interrogatory No. 2, which inquires as follows:

---

[1]As we stated at the Hearing, and again in our Order of April 24, 2002, discovery is to continue as to the patents covered by the Defendants' Partial Motion to Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction, at least until such time as they are judicially determined to no longer be in suit. Accordingly, we contemplate that if, at the time the claims charts are due, there is no judicial determination as to whether those patents remain in this action, the claims charts shall contain the claims related to those patents as well.

> Identify each item of actual or potential art to the patent-in-suit and any related patents and patent applications known to you or your counsel and, for each such item of prior art describe the circumstances that you first became aware of it, including but not limited to the identity of the person(s) who identified or provided such item to you and all communications related to you becoming aware of such prior art.

See, Arctic Cat's Memorandum of Law in Support of Its Motion to Compel Discovery, at 7.

The Defendants objected to this Interrogatory on the basis that it called "for the disclosure of information subject to the attorney-client privilege[], constituting work product and/or covered by the community of interest doctrine." Id. According to the Defendants, "'[p]rior art' is a term of art which implies that the art is anticipatory or would render obvious the inventions claimed in a patent," and therefore, to require the Defendants to produce what the Plaintiff requested, would "require IRS and Pacer to effectively perform and produce a legal analysis of art never cited by the Examiner or the [Patent Trademark Office] PTO as 'prior art' to their patented inventions or never cited as prior art by a third party." Id. Nonetheless, the Defendants agreed to "produce copies of all art in its possession, custody or control cited by examiners of the Patent and Trademark Office or by any third party contending that such art was prior art to a Patent in Suit." Id. As related by the Defendants, if they are made to produce any prior art beyond

that, they will be forced to produce work product, because "[p]rior art searches and evaluations in the context of patentability or litigation are work product." Defendants' Opposition to Plaintiff's Motion to Compel Discovery, at 11, citing In re Spalding Sports Worldwide, Inc, 203 F.3d 800, 805-06 (Fed. Cir. 2000).

Rule 26(b)(1) provides that discovery is available "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." The work product doctrine is an exception to that rule, which protects from discovery, documents, and other tangible things, which were prepared "in anticipation of litigation," as well as the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." See, Hickman v. Taylor, 329 U.S. 495 (1947).

In the context of patent litigation, the general rule is that "work performed by an attorney to prepare and prosecute a patent application does not fall within the parameters of the work product protection, * * * since the prosecution of a patent application is a non-adversarial, ex parte proceeding," and thus, is not work performed in anticipation of litigation. In re Application of Minebea Co, 143 F.R.D. 494, 499 (S.D.N.Y. 1992); see also, Oak Indus. v. Zenith Electronics Corp., 687 F.Supp. 369, 374-75 (N.D. Ill. 1998)(holding that, although work product doctrine did bar the

discovery of an attorney's mental impressions formed during a reexamination proceeding that involved the same patent at issue in the infringement suit, it did not protect his impressions as to the original patent prosecution.); Golden Trade v. Jordache, 143 F.R.D. 508, 511-12 (S.D.N.Y 1992)(stating "documentation prepared in connection with the *ex parte* patent application process" was discoverable because it was "simply not material prepared 'in contemplation of litigation.'"); Elkay Manufacturing Co. v. Ebco Manufacturing Co., 1995 WL 389822 * 11 (N.D.Ill. Feb. 15, 1995). "This rule does not, however, preclude application of the work-product protection to work performed to prosecute a patent application if it was also performed in anticipation of or concerning litigation." In re Application of Minebea Co., supra at 499, citing Oak Indus. v. Zenith Television Corp., supra at 375.

Here, the Defendants has made no showing that the material that they seek to protect from discovery, on the basis of the work product doctrine, was performed in anticipation of this or any other litigation. Rather, they assert that, because the information was prepared in order to prosecute a patent, it must be privileged work product. Given the weight of authority to the contrary, we are unable to agree. Therefore, as to any otherwise discoverable material which the Defendants seek to withhold on the basis of the work product privilege, on the ground that it was work

performed in prosecuting a patent application, the Defendants are directed to produce such material in response to Interrogatory No. 2. However, as to any item that the Defendants claim to be privileged under the work product doctrine as work performed in contemplation of this litigation, the Defendants may assert that privilege, in a privilege log that complies with Rule 26(b)(5), Federal Rules of Civil Procedure. Should the Plaintiff, or any other party, take exception to the claim of privilege, then an appropriate Motion to Compel can be served and filed.

As to the Defendants' objection, that the production of such material would violate their attorney-client privilege, we note that such a privilege "attaches only to the communication between the attorney and client, not to the underlying facts or information." In re Application of Minebea Co, supra at 501. In the context of patent litigation, the attorney-client privilege rule is complicated "by the general rule that communications of 'technical information' between the client and the attorney for the purpose of submission to the PTO in the patent application are not privileged," with the exception that, where "the primary purpose of the communication is securing or conveying legal advice, the privilege will be upheld despite the inclusion of technical data in the communication." Id. at 502, citing Jack Winter, Inc. v. Koratron Co.,

54 F.R.D. 44, 46 (N.D. Cal. 1971); Cuno Inc. v. Pall Corp., 121 F.R.D. 198, 201-02 (E.D.N.Y 1988).

This exception supported the ruling, in In re Spalding Sports Worldwide, Inc., 203 F.3d 800 (Fed.Cir. 2000), upon which the Defendants rely. There, the plaintiff sought to protect its invention record, a document that included a prior art search, from discovery on the basis of attorney-client privilege. Id. at 804-05. The Court expressly found, in that context, that the document "constitute[d] a communication to an attorney" "made for the purpose of obtaining legal advice," as the evidence showed that the invention forms were utilized by patent counsel "for the purpose of making patentability determinations." Id. at 805. The defendant argued, however, that the prior art portion of that document was discoverable, under the general rule, because it was technical data communicated to an attorney and, as such, did not seek legal advice. Id. at 806. The Court held, however, that it was "enough that the overall tenor of the document indicate[d] that it is a request for legal advice or services," and that the inclusion of the technical information did not render the document discoverable, because "requests for legal advice on patentability or for legal services in preparing a patent application necessarily require the evaluation of technical information such as prior art." Id. As a consequence, the Court held that, as the "invention record was prepared