and submitted primarily for the purpose of obtaining legal services in preparing a patent application, * * * it [was] privileged in its entirety." Id.

Once again, however, the Defendants have failed to advance a showing, on this Record, that the material, which they seek to withhold from discovery, constitutes a communication to an attorney, which was made for the purpose of obtaining legal advice, and is not simply a communication of technical information to the attorney for the purpose of a patent application. "[P]rivilege will apply to communications seeking or conveying a legal opinion on the patentability or infringement of an invention," but "will not protect communications such as the affidavit of a client, an oath or declaration of the application made with the intention that the attorney transmit the communication to the PTO." In re Application of Minebea Co., supra at 502, citing Knogo Corp. v United States, 213 U.S.P.Q., 936, 940 (Ct.Cl.1980).

Therefore, we direct the Defendants to fully answer Interrogatory No. 2 to the extent required by these considerations, and to include, on a privilege log, any remaining materials for which it seeks protection from disclosure on the basis of the attorney-client privilege. Should the claim of privilege be contested, we will address the validity of the claim as circumstances require.

c. Interrogatory No. 3. The Plaintiff further requests that we direct the Defendants to provide a more complete answer to Interrogatory No. 3. In that Interrogatory, the Plaintiff asks the Defendants to "[d]escribe in detail the circumstances by which Defendants became aware of Arctic Cat's alleged infringement of each of the patents in suit." Defendants' Opposition to the Plaintiff's Motion to Compel Discovery, at 11. In response, after objecting to the Interrogatory on the basis of the attorney-client privilege, the work product doctrine, "and/or [as] covered by the community of interest doctrine," the Defendants averred as follows:

> [S]ometime prior to February 1995, IRS examined an Arctic Cat EFI model snowmobile. In or around February 1995, IRS became aware of the probability that Arctic Cat was infringing the '803 patent. In February 1995, IRS warned Arctic Cat in a letter that IRS would sue it for infringement of the '803 patent. Further infringement testing was performed thereafter.

Id.

The Plaintiff complains that the foregoing is not a complete answer, and maintains that, because it is asserting a laches defense, the issue of when the Defendants first concluded that the Plaintiff had infringed their patent is a core concern. In response, the Defendants contend that they properly responded to the Interrogatory, as they have informed the Plaintiff that, "**in** or around February [of] 1995" they first become aware of the Plaintiff's alleged infringement. They assert that, in view of the fact that these

events occurred some seven years ago, they are unable to be more specific. Unpersuaded, the Plaintiff complains that the Defendants' response provides no details as to who performed the examination of the snowmobile, which snowmobile was examined, and what tests, if any, were performed.

As we related to the Plaintiff at the time of the Hearing, an Interrogatory is -- at least as this one has been framed -- little more than a "first bite" inquiry, and there are other, far more invasive means of inquiry, that are not diverted with the ease that is accomplishable when the response is to an Interrogatory. Given this response, which is sufficiently adequate, we deny the Plaintiff's request for a fuller response, and leave the Plaintiff to further discovery by way of a Rule 30(b)(6) deposition, or some other efficient means of inquiry.

2. Requests for Admissions Nos. 1 and 2.

In Request No. 1, the Plaintiff asked the Defendants to "[a]dmit that U.S. Patent No. 5,813,374 is not a reissue patent." Arctic Cat's Memorandum of Law in Support of Its Motion to Compel Discovery, at 9. In the obverse, Request No. 2 asked the Defendants to "[a]dmit that U.S. Patent No. 5,813,374 is a reissue patent." Id. at 10. The Plaintiff requests that we direct the Defendants to provide an unequivocal admission, or denial, of each of these discovery requests. For their part, after raising their

objections to these Requests, the Defendants responded to each: "IRS admits that the PTO did not issue U.S. Patent No. 5,813,374 with an 'Re.' designation." Id. at 9-10. The Defendants urged, at the time of the Hearing, that they regarded their response as an unequivocal admission that the patent had not been issued as a re-issue patent, although they explained, that they believed that such an issuance was in error, and that they were presently addressing that designation with the PTO.

As we explained at the Hearing, since the Defendants were capable of explaining why they regarded the Request as not subject to an unequivocal "yes" or "no" response, they should take the same pains to do so in their response to Requests Nos. 1 and 2, and we direct them to do so.

3. Request for Admission No. 56.

The Defendants have refused to answer this Request on the ground that it could not understand what was being asked. We agree with the Defendants' vagueness objection. As a result, the Plaintiff has advised that it will serve a new Request for Admission, and we deny this aspect of the Plaintiff's Motion to Compel Discovery.

4. Discovery Relating to the 34,079 and 6,062,202 Patents.

The Plaintiff seeks an Order compelling the Defendants to respond to all of its discovery requests concerning the 6,062,202

("'202") and 34,079 ("'079") patents. The Defendants had not allowed discovery as to those patents as they had previously granted the Plaintiff a covenant not to sue on those patents, which, at least in their mind, removed those patents from this litigation. The Plaintiff has countered that the covenants not to sue were legally insufficient, and so discovery is still appropriate as to those patents. At the Hearing, we granted the Plaintiff's Motion, and advised the parties that, until such time as a Court had judicially determined that those patents were no longer at issue in this action, discovery on the '079 and '202 patents was appropriate.

## III. The Hearing of April 25, 2002

### A. The Defendants' Amended Request for International Judicial Assistance (Letter Rogatory).

The Defendants ask that we issue Letters Rogatory to JECS, and Kokusan, because discovery from those companies is required since the Plaintiff made "specific technical assertions regarding the JECS and Kokusan EFI systems as the basis of its non-infringement claims." Memorandum of Points and Authorities in Support of the Defendants' (Amended) Motion for the Issuance of Letters of Request (Letters Rogatory), at 1. JECS and Kokusan are the manufacturers of EFI systems which are employed by the Plaintiff in its snowmobiles. Since Japan is not a signatory to the

Hague Evidence Convention, the proper avenue of pursuing discovery from a Japanese corporation is through the issuance of Letters Rogatory. See, e.g., U.S. v. Salim, 664 F.Supp. 682, 690 (E.D.N.Y. 1987).

Neither the Plaintiff, nor the Counterdefendant, objected to the issuance of such Letters, but both wish to reserve the right to object to the form of the discovery requests, as well as the right to object to the admissibility of the responses to such discovery. They did not, however, provide the Court with any specific objection to the form of the discovery requests, which are included in the proposed Letters Rogatory submitted, and their concerns, at best, are anticipatory. If the Plaintiff, or the Counterdefendant, has any objection to the responses to these Letters Rogatory, they may raise them, as appropriate, but they have not done so at this time, and we grant the issuance of the Letters as the Defendants have demonstrated that they are appropriate, and relevant, here.

B. The Defendants' Motion to Enter a Protective Order.

At the Hearing of April 25, 2002, we heard lengthy argument on desirability of a Protective Order in this action. While all parties agree that good cause exists for the issuance of such an Order, see, Rule 26(c) Federal Rules of Civil Procedure, the parties have been unable to reach an accord as to what levels of

protection should be prescribed in the Order, and who should have access to the information within those levels.

In the early stages of this litigation, prior to the late joinder of the Counterdefendant, the Plaintiff, and the Defendants, had agreed to the terms of a Protective Order. Upon the appearance of the Counterdefendant, however, exception was taken to the contents of the earlier agreed upon proposed Order, and the Plaintiff now joins in the objections that the Counterdefendant has raised. The Counterdefendant contends that its "trade secrets, know-how, and other confidential and business information," "should not be disclosed to IRS's or Arctic Cat's employees or IRS's consultants to whom Suzuki may, with good cause object, simply because Arctic Cat has sued IRS and IRS has sued Suzuki." Memorandum of Law in Support of Suzuki's Opposition to IRS and Pacer's Motion to Enter Protective Order, at 2. In addition, the Counterdefendant opposes disclosing certain information to the Plaintiff, as they continue to do business, and the proprietary interests that the Counterdefendant has in its financial dealings with the Plaintiff should not be disclosed to the Plaintiff, or the Counterdefendant will be prejudiced in its financial dealings. Further, the Counterdefendant raises concern that Ronald E. Chasteen ("Chasteen"), who is the Defendants' expert consultant, and who is the inventor of certain of the patents-in-suit, will gain access to the

Counterdefendant's sensitive, technical information, which will place the Counterdefendant at a competitive disadvantage. Specifically, the Counterdefendant notes that Chasteen is currently involved in the prosecution of a related, reissue patent application in the PTO, and there is a real possibility, at least in the Counterdefendant's mind, that Chasteen, through inadvertence, or otherwise, could employ the Counterdefendant's trade secrets to advance his own interests, or those of the Defendants, in future patent proceedings.

Based on these concerns, the Counterdefendant has submitted its own proposed Protective Order, which mirrors that previously agreed upon by some of the parties, except that it provides for two tiers of confidentiality: "Confidential Information," and "Highly Confidential - Attorneys' Eyes Only." Exhibit 3 attached to Declaration of Naoki Yoshida, at 2. Under the Counterdefendant's proposal, the parties could designate as "Attorneys' Eyes Only," the same material that it could designate as Highly Confidential, under the Defendants' proposed Protective Order; namely, materials that contain "sensitive financial and technical information, including but not limited to, trends and projections, marketing strategy and associated information, and technical product information." Id. However, the Counterdefendant would only allow disclosure of "Attorneys' Eyes Only" materials to outside counsel of

record; inside counsel employed by the receiving party, and working directly with outside counsel, who have been designated by the party, and who "do not engage in competitive decisionmaking for a party;" designated outside witnesses or consultants, who have been disclosed, and to whom the other party does not, for good cause, object; court personnel; and employee deposition witnesses. Id. at 5-6.

As a result, the Counterdefendant's proposed Protective Order would effectively prevent the principals of the Defendants and, arguably, the Defendants' consultants, and inside counsel, from having access to any of the information designated as "Attorneys' Eyes Only." Not surprisingly, the Defendants object to the Counterdefendant's proposal and advances two key arguments against its adoption. First, they object to having such a broad category of information designated as "Attorneys' Eyes Only," saying that even if such a designation is required, the one proposed by the Counterdefendant is more restrictive than is necessary. Second, the Defendants contend that, because they are not competitors with the Plaintiff, or with the Counterdefendant, there is no reason to impose the additional restrictions of an "Attorneys' Eyes Only" designation. The Plaintiff, and Counterdefendant, take strong exception to the Defendants' denial of any competitive stance with those proposing additional protections. According to the Counter-

defendant, while the Defendants may not, strictly speaking, be competitors of the Plaintiff, and Counterdefendant, in the marketplace, they are in the business of acquiring patents to license and enforce, and therefore, they are in a position to take advantage of technical materials, to which they would gain access through discovery, to use for competitive purposes. In particular, they point to the fact that, since the start of this litigation, the Defendants have filed a reissue application for one of the patents here in suit, and they raise a concern that, through this process, the Defendants will attempt to modify their patents to cover other products of the Plaintiff, and Counterdefendants.

Having closely considered the conflicting arguments of the parties, as well as the relevant authorities, we conclude that cause exists to impose an "Attorneys' Eyes Only" tier of protection in the context of this action. We are unable to agree, however, with the form of protection proposed by the Counterdefendant. Rather, we find that there should be three categories of protection, and we direct the parties to develop, forthwith, an Order for Protection, which incorporates the following parameters.

First, there should be a "Confidential Information" category, and the materials to be designated as "Confidential," and the persons to whom such information may be disclosed, would remain the

same as currently is provided in the proposed Protective Orders submitted by both sets of parties.

Second, there should be a category of protection for those materials to be designated as "Attorneys' Eyes Only." Under this classification, the Counterdefendant, for example, might designate information concerning its costs and expenses, profits related to its sales to the Plaintiff, and its negotiating strategy in its dealings with the Plaintiff, as "Attorneys' Eyes Only," but only as to the Plaintiff. This material could be designated as either "Confidential," or "Highly Confidential" in the Counterdefendant's disclosures to the Defendants, but the Defendants would have to treat the disclosures as "Attorneys' Eyes Only," with respect to the Plaintiff.

Further, under the "Attorneys' Eyes Only" grouping, the parties could designate technical specifications, and drawings concerning future technology, products in development which are not now being sold, or are currently under development. Likewise, the parties can designate technical specifications, and drawings, which relate to current technology, as "Attorneys' Eyes Only," to the extent that the information in question could not be learned through examination of the technology, or through a reverse engineering of the technology. Other disclosures, of a similar kind or nature, could fall within this categorization, but the parties have failed

to identify any other circumstances which require such a high level of protection, and they should discuss any further instances which would warrant an "Attorneys' Eyes Only" designation.

Materials designated as "Attorneys' Eyes Only" may only be disclosed to the parties designated in paragraph seven of the Counterdefendant's proposed Protective Order, except that, as to in-house counsel, the Protective Order shall clearly state that any retained in-house counsel, who is working on this litigation, shall have access to information so-designated, but subject to the prohibitions as to the further disclosure of that information. See, Exhibit 1 attached to Declaration of Naoki Yoshida, at 5-6. We agree with the Federal Circuit, in U.S. Steel Corporation v. United States, 730 F.2d 1465, 1467-68 (Fed. Cir. 1984), that there is no reason to believe that in-house counsel, more than other retained counsel, "would be likely to breach their duty under a protective order." As is any counsel involved in litigation, "in-house counsel are officers of the court, [] bound by the same Code of Professional Responsibility, and [] subject to the same sanctions." Id. Thus, in-house, and outside counsel should receive the same level of disclosure under the terms of the Protective Order.

The middle tier of protection would be for "Highly Confidential" information. Materials that can receive this designation are those that have been described in paragraph four of the Defendants'

proposed Protective Order.[2] See, Exhibit A to Declaration of Peter van Mieghem, at 2. Materials so designated may be disclosed to all those who have access to "Attorneys' Eyes Only" documents, and also to the business principals that are designated by the parties, including, but not limited to, Rodney Preisser, John Balch, Christopher Twomey, Ole Tweet, Donn Eide, and disclosed outside consultants or experts. See, Exhibit A to Declaration of Peter Van Mieghem, at 5. Once again, a party seeking to oppose the disclosure of materials designated under this level of protection, to a particular individual, may do so only for good cause, as the party shall have the opportunity to oppose a designation of a document in any given category. The parties shall develop an appropriate mechanism to resolve such disagreements with, or without, the Court's assistance.

We anticipate that the Counterdefendant will oppose any disclosure of "Attorneys' Eyes Only" and, perhaps, "Highly Confidential" documents, to Chasteen, and we, therefore, address the propriety of such a restriction, since the parties have fully

---

[2]Paragraph four states that "[a] party or non-party may designate as "HIGHLY CONFIDENTIAL" any document, material, item, deposition testimony, or information that is filed with the Court or produced in discovery in this action and is, contains, or relates to sensitive financial and technical information, including but not limited to, trends and projections, marketing strategy and associated information, and technical product information." Exhibit A attached to Affidavit of Peter Van Mieghem, at 2.

briefed that issue. We conclude, based on the totality of the Record before us, that the Counterdefendant has cause to object to "Attorneys' Eyes Only" documents being disclosed to Chasteen, but not to the disclosure of "Highly Confidential" documents.

In reaching this conclusion, we have balanced "the policy of full disclosure of relevant information and the [receiving party's] right to disclose relevant information to its chosen expert against [the disclosing party's] interest from unnecessary disclosure to its competitors." Minnesota Mining and Manufacturing v. Smith & Nephew, 1992 WL 464351 at *1 (D. Minn., June 23, 1992), rev'd on other grounds, 1992 WL 46352 at *3 (D. Minn., July 27, 1992). Here, the Defendants contend that the scale is tipped toward allowing disclosure to Chasteen, as neither Chasteen, nor the Defendants, are competitors of the Plaintiff, or of the Counterdefendant, and they maintain that it would be inordinately burdensome for them to retain a new expert at this time. Given Chasteen's current involvement in the reissue patent application prosecution, we believe that cause exists to prevent, from inadvertent or other disclosure, information which could be gleaned from discovery in this case which, ultimately, might be employed in extending the coverage of any reissued patent to the disadvantage of the Plaintiff, or of the Counterdefendant. Moreover, we are not presented with evidence of any dearth in the availability of

competent experts to replace Chasteen, if replacement is, indeed, necessary.

If the issue presented were whether a patent prosecutor should have access to the "Attorneys' Eyes Only" documents, we would be disinclined to allow such accessibility. As explained by the Court in Medtronic, Inc. v. Guidant Corp., 2001 U.S. Dist. LEXIS 22805 at *13, (D. Minn., December 19, 2001), "prosecuting patents is distinct from other legal duties and presents unique opportunities for inadvertent disclosure." For example, faced with a duty to comply with the disclosure requirements, a patent attorney may have a difficult time separating his own ideas, from those he learned during other litigation. Id.; citing Matsushita Elec. Indus. Co., Ltd. v. United States, 929 Fed.2d 1577, 1579 (Fed. Cir. 1991). Moreover, the patent prosecutor might be conflicted with his or her obligation to abide by the terms of nondisclosure, while abiding by a duty of complete candor before the PTO. Here, we perceive no practical difference between Chasteen, and a patent prosecutor for the Defendants, as he is works, in conjunction with the patent attorney, in prosecuting a reissuance patent that might be asserted against the other parties to this litigation, at some point in the future.

We recognize that there is authority which allows the disclosure of sensitive, technical information to even in-house ex-

perts, when the parties involved are not competitors. See, IJR Inc. v. Sodick, 1987 WL 26105 (N.D. Ill., Nov. 24, 1987); Standard Space Platforms v. United States 25 Fed.Cl. 505 (1996); Minnesota Mining and Manufacturing v. Smith & Nephew, supra. However, in each of those cases, the Court expressly found some independent measure which provided abundant security from inadvertent disclosure, or which demonstrated an enhanced need for the disclosure of the information to a particular individual. No such evidence has been presented here.

Even though Chasteen no longer works for the Defendants, and does not appear to be involved in the design, manufacture, or sale of technology related to the business of the Counterdefendant, or the Plaintiff, the potential remains that Chasteen could apply, or divulge, the technology he obtains from the Plaintiff, or the Counterdefendant in this litigation, to the detriment of those parties, while Chasteen prosecutes the reissue patent application. The unique circumstances of this case, therefore, cause the individually tailored Protective Order we have prescribed.

NOW, THEREFORE, It is --

ORDERED:

1. That the Plaintiff's Motion to Amend Pretrial Order [Docket No. 67] is GRANTED, as more fully detailed in the text of this Order.

2. That the Plaintiff's Motion to Compel Discovery [Docket No. 45] is GRANTED in part, and DENIED, in part.

3. That the Defendants' Motion for an Extension of Time in which to Respond to Plaintiff's Summary Judgment Motions is GRANTED to the extent allowed in the text of this Order, and the parties are directed to appear, by telephone, for a Status Conference on **August 28, 2002, at 10:00 o'clock a.m.**

4. That the Amended Motion of the Defendants for the Issuance of Letters Rogatory is GRANTED.

5. That the Defendants' Motion for the Entry of a Protective Order is GRANTED, as more fully detailed in the text of this Order, and the parties are directed to lodge with this Court a Protective Order reflecting our directives, as soon as practicable, for our review and signature.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
OFFICE OF THE CLERK

316 N. ROBERT ST., RM. 700
ST. PAUL, MN 55101

300 S. FOURTH ST., RM 202
MINNEAPOLIS, MN 55415

417 FEDERAL BLDG, 515 W. FIRST ST.
DULUTH, MN 55802

# Clerk's Notice In Re: Protective Order

A Protective/Confidentiality Order has been entered in this action. You must comply with the guidelines set forth below when filing **confidential original** documents with the Clerk of U.S. District Court. Failure to do so will cause the documents to be returned.

*Guidelines for filing with the Clerk:*

A. Documents are to be **sealed** (closed, fastened, taped, or otherwise secured) in an envelope of comparable size no larger than 9 by 12 *(LR5.1 All pleadings, motions, and other papers presented for filing shall be on 8 1/2 x 11 inch white paper...flat and unfolded. this rule does not apply to (1) exhibits submitted for filing; and, (2) documents filed in removed actions prior to removal from the state courts.)*

B. Each envelope must list the following information, and each document is to be in a separate envelope.

- Action/case number
- Brief action/case title
- Party, name, and complete title of document (i.e. Deft. Johnson's Motion for Dismissal) must be noted on each envelope. Motions, affidavits and memorandums are considered three separate documents.
- The word "**SEALED**" or "**CONFIDENTIAL**"

***Guidelines for filing with a U.S. District Judge or Magistrate Judge:***

In addition to the above procedures, copies for delivery to the U.S. District Judge or U.S. Magistrate Judge are to be marked accordingly and bound together as a set.