UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

ORDER

* * * * * * * * * * * * * * * * * * *

Arctic Cat, Inc., a
Minnesota Corporation,

Plaintiff,

vs.

Injection Research
Specialists, Inc., a
Colorado Corporation, and
Pacer Industries, Inc.,
a Missouri Corporation,

Defendants,

and

Injection Research
Specialists, Inc. a
Colorado Corporation, and
Pacer Industries, Inc, a
Missouri Corporation,

Counterclaimants,

vs.

Arctic Cat, Inc. a
Minnesota Corporation, and
Suzuki Motor Corporation,
a Japanese Corporation,

Counterdefendants. Civ. No. 01-543 (MJD/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 28th day of August, 2002.

FILED AUG 28 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

I. Introduction

On August 1, 2002, the Court heard argument on the Motion of the Defendants Injection Research Specialists, Inc., and Pacer Industries, Inc. (collectively, "IRS"), Motion to Compel, and for an award of sanctions. At the time of the Hearing, the Plaintiff Arctic Cat, Inc. ("Arctic Cat"), appeared by J. Derek Vandenburgh, Esq., and IRS appeared by Robert J. Blanch, Esq. For reasons which follow, we grant, in part, IRS's Motion.

II. Factual and Procedural History

On June 5, 2002, IRS served upon Arctic Cat five Notices for the taking of depositions, pursuant to Rule 30(b)(6), Federal Rules of Civil Procedure. See, Exs. 1-5, Declaration of Robert J. Blanch in Support of Injection Research Specialists, Inc.'s and Pacer Industries, Inc.'s Motion to Compel ("Blanch Decl."). The broad areas of discovery, which would be sought during those depositions, included "the use of electronic fuel injection [("EFI")]systems contained in Arctic Cat products," "the [EFI] systems used in Arctic Cat products," "the structure, function and operation of [EFI] systems manufactured by Unisia JECS Corp. used in Arctic Cat Products," "the structure, function and operation of [EFI] systems manufactured by Kokusan Denki Co., Ltd. used in Arctic Cat products," and "sales of accused products." Id. The depositions were set for June 25 through 28, 2002, and for July 11, 2002.

It appears that, on May 15, 2002, IRS served two prior Deposition Notices upon Arctic Cat, to which Arctic Cat took exception. Those two Deposition Notices were entitled "the structure, function and operation of [EFI] systems used in the accused products, Ex. K. to Declaration of Jeffer Ali in Support of Arctic Cat's Opposition to Defendants' Motion to Compel and for Sanctions ("Jeffer Decl."), and "the first use of [EFI] systems used in the accused products," Ex. L to Jeffer Decl. Thereafter, the parties conferred on the Deposition Notices and, apparently, IRS agreed to serve amended Notices. Ex. M to Jeffer Decl. In addition, Arctic Cat requested IRS to "particularize the topics for deposition in the notice of deposition of Arctic Cat Re the First Use of [EFI] Systems Used in the Accused Products." Id. As already noted, the amended Notices were served on June 5, 2002, and, to our knowledge, Arctic Cat made no other mention that it felt the areas designated for inquiry were vague or ambiguous and, more importantly, Arctic Cat did not move for a Protective Order to delimit the areas of inquiry. Rather, the only other correspondence, between June 5, 2002, and the deposition dates, was Arctic Cat's letter of June 18, 2002, which stated that Arctic Cat "[would] be producing a witness or witnesses in response to IRS's amended deposition notices for depositions beginning the 25th." Ex. 7 to Blanch Decl.

The depositions were conducted on June 25 through 27, 2002, and Arctic Cat produced Kim Chervestad ("Chervestad") as the sole deponent for all of the designated areas of inquiry. IRS has now moved to compel Arctic Cat to provide discovery, as well as one or more knowledgeable deponents, for the Rule 30(b)(6) depositions, and they also seek an award of sanctions for alleged discovery abuses. In support of the Motion, IRS contends that, although it served proper Rule 30(b)(6) Deposition Notices, Arctic Cat failed to provide a knowledgeable deponent on a number of the topics that had been noticed. IRS also asserts that Arctic Cat has provided deficient discovery responses in a number of areas.

In turn, Arctic Cat claims that, except for the first day of the depositions -- as to which it admits that it did not proffer a knowledgeable deponent -- the failure of discovery, if any there be, is attributable to the absence of specificity in IRS's Deposition Notice, or to the failure of IRS's counsel to prepare for the depositions. IRS further argues that, to the extent that it has any of the additional discovery that IRS now requests, that discovery did not fall within any of IRS's previous discovery requests and, therefore, no discovery was required.

III. Discussion

Since the bulk of IRS's Motion focuses on the depositions that were scheduled for June 25 through 28, 2002, and for July 11, 2002,

we first address the pertinent Deposition Notices, and the responses of the deponent, and then turn to IRS's Motion to Compel other discovery.

A. "The Use of [EFI] Systems Contained in Arctic Cat Products."

As noted, for three of the Rule 30(b)(6) depositions, Arctic Cat produced a single witness. According to Arctic Cat, during the deposition of that witness, on the first day of the depositions, which related to "the use of [EFI] systems contained in Arctic Cat products," Ex. 1 to Blanch Decl., Arctic Cat came to realize that an individual, from its marketing department, would have been better suited to respond to IRS's questions. Ex. 11 to Blanch Decl. Arctic Cat contends, however, that the vagueness and ambiguity of the Deposition Notices caused it to produce a less than knowledgeable deponent. Id. We cannot agree.

The pertinent Deposition Notice designated the following topics for inquiry:

> 1. Arctic Cat's use of electronic fuel injection ("EFI") systems (including demonstrations to customers or other) and/or EFI equipped two cycle engine products for the period from January 1, 1995 to the present.
>
> 2. Arctic Cat's knowledge of its customers', including dealers' distributors' and end users' use of Arctic Cat EFI equipped two cycle engine products from January 1, 1995 to the present.

> 3. Arctic Cat's efforts to instruct, encourage or induce the use of its EFI systems and/or EFI equipped two cycle engine products by its customers or prospective customers.
>
> 4. Arctic Cat's efforts to market or promote its products using EFI systems, including the content of its advertising, marketing and promotional materials relating to EFI equipped products and the location of representative samples of all such materials.

Ex. 1 to Blanch Decl.

As the deponent was unable to meaningfully respond to most of the questions on these topics -- which is abundantly plain from a reading of the deposition transcript, Ex. A to Ali Decl., Arctic Cat has agreed to produce a witness, in response to the noted areas of inquiry, but it opposes paying the one-third of IRS's expenses, which were incurred in taking the depositions, and which IRS demands, because it believes that the vague Deposition Notice caused the lack of discovery. Id.; Ex. 19 to Blanch Decl. Arctic Cat also contends that IRS was able to utilize part of the day in order to lay the framework for the remaining two days of depositions.

Since Arctic Cat has agreed to produce a new, and qualified deponent, we need not address IRS's Motion to Compel that result, and we deny that aspect of the Motion as moot. In view of the deponent's abject inability to provide substantive answers to the questions IRS posed, however, we conclude that Arctic Cat should

bear some of IRS's costs in enduring a Rule 30(b)(6) deposition which was predestined for failure. Arctic Cat's assertion, that the failure was preordained by the vagueness of the Deposition Notice, is mere makeweight. If, as Arctic Cat portends, the Deposition Notice caused it uncertainty as to the substance of intended inquiry, Arctic Cat was prepared to ride that uncertainty to a predictable conclusion -- the inability of its designated deponent to reasonably respond to relevant questioning. Arctic Cat voiced no uncertainty to IRS, after IRS amended its Deposition Notice, about the intended scope of inquiry, nor did it seek the assistance of the Court in bringing further clarity to IRS's scope of questioning. See, Rule 26(c), Federal Rules of Civil Procedure. Indeed, once the inability of its designee to respond to questions became clear to Arctic Cat -- had it not been plain before the deposition started -- it was under an affirmative obligation to substitute a knowledgeable witness for the first deponent designated. See, Prokosh v. Catalina Lighting, Inc., 193 F.R.D. 633, 638 (D. Minn. 2000)("If it becomes obvious during the course of a deposition that the designee is deficient, the [organization] is obligated to provide a substitute."). Arctic Cat followed none of these approaches.

In assessing the need for sanctions, a Federal District Court has the inherent authority, and responsibility, to regulate and

supervise the bar practicing before it. See, Jenkins v. Missouri, 931 F.2d 470, 484 (8th Cir. 1991); Cook v. City of Columbia Heights, 945 F. Supp. 183, 185 (D. Minn. 1996). While this inherent power "ought to be exercised with great caution," Ex parte Burr, 22 U.S. 529, 531 (1824), the Court has wide discretion in framing sanctions to remedy abuses, including attorney disqualification, the assessment of attorney's fees, monetary sanctions, and the dismissal of an action. See, Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991). We conclude that, given Arctic Cat's designation of a plainly unqualified deponent, for Rule 30(b)(6) purposes, a sanction is warranted. Since the discovery abuse was modest, so should be the sanction.

IRS has advised that it incurred expenses in the amount of $29,796.36 for the three days of the subject depositions. See, Blanch Depo., at ¶21. This amount includes the cost of air travel for two attorneys -- $3,666.00; transportation costs -- $161.62; hotel costs -- $1,375.24; preparation for, and attendance at, the depositions by IRS's attorney, Robert J. Blanch, which totaled 38 hours, at a billable rate of $355.00 per hour (i.e., $13,490.00); and preparation for and attendance at the depositions, by IRS's attorney, Peter Van Mieghem, which totaled 41.9 hours, at a billable rate of $265.00 per hour (i.e., $11,103.50). IRS further represents that, in total, about one-third of the deposition time,

for the three days involved, was wasted because of the deponent's failure to provide the requested information. Accordingly, IRS asks that Arctic Cat be required to reimburse it for one third of its cost for the depositions; that is, $9,932.12. See, Blanch Decl., at ¶23.

We conclude that, under the totality of the circumstances, the sanction, that IRS requests, would be excessive. First, IRS was able to utilize some portion of the first day's inquiry to lay foundation for the questioning which would follow on the second and third days. Further -- and as we subsequently explain -- the questioning on the second and third days was less than fully productive, in part, due to reasons attributable to IRS. Accordingly, the transportation, and related travel costs, would have had to have been expended, in significant part, notwithstanding the unproductive first day. In addition, we have no showing that two attorneys were reasonably required to do the work of one. We understand that some clients require a division of work amongst legal counsel, so as to maximize the anticipated effectiveness of counsels' questioning, but we are not persuaded that such a division of work, having been chosen by the client, should fetter the Court's discretion to award costs, as a sanction, that are reasonable, and just. Without a showing that two attorneys' involvement was required, we are not convinced that a doubling of costs, and

expenses, is warranted. Accordingly, we find that $300.00 in hotel and related expenses, for the wasted first day of deposition, is warranted, and we award that amount, together with six hours of attorney time, multiplied by $335.00, which we find to be a reasonable hourly rate under these circumstances, so as to produce a total fee award of $2,010.00 which, when summed, amounts to a total sanction of $2,310.00. We direct Arctic Cat to promptly remit that amount to IRS as a result of the discovery abuses that we have detailed.

B. "The [EFI] Systems Used in Arctic Cat Products"; "The Structure, Function and Operation of [EFI] Systems Manufactured by Unisia JECS Corp. in Arctic Cat Products"; and "The Structure, Function and Operation of [EFI] Systems Manufactured by Kokusan Denki Co., Ltd. Used in Arctic Cat Products."

Next, IRS argues that Arctic Cat failed to produce the most knowledgeable deponent to testify regarding the EFI systems employed in Arctic Cat's products. The Notice for the deposition scheduled for June 26, 2002, specified the following topics:

> 1. The identity of all Arctic Cat products from model year 1995 to the present that contain electronic fuel injection ("EFI") equipped two cycle engines. For purposes of this and subsequent topics in this notice, requests to identify products require identification by model year, product name or other designation, and such other designations used by Arctic Cat, internally and externally, to distinguish between its products.

> 2. If more than one type of EFI system was used in Arctic Cat's EFI equipped two cycles engine products from model year 1995 to the present, the identity of the EFI systems used in each such Arctic Cat product during such period and the identity of the manufacturer of each such EFI system.
>
> 3. The differences between each type of EFI system used in Arctic Cat's EFI equipped two cycle engine products from model year 1995 to the present.
>
> 4. The dates during which each of Arctic Cat's EFI equipped two cycle engine products from model years 1995 to the present was offered for sale or sold in the United States.
>
> * * *
>
> 6. The date when Arctic Cat EFI equipped two cycle engine products containing EFI systems manufactured by Unisia JECS Corp. were last sold in the United States, and the identity of all Arctic Cat products sold in Arctic Cat model year 1995 or thereafter using such Unisia JECS Corp. EFI systems.
>
> * * *

<u>Ex. 2 to Blanch Decl.</u> (Topics numbered 5 and 7 are apparently not at issue in this Motion, and therefore, we have omitted those topics).

Additionally, the Notices for the depositions scheduled for June 27 and 28, 2002, asked for a knowledgeable deponent on the structure, function, and operation of EFI systems, and components thereof, which were used in Arctic Cat's two cycle engine products, from model year 1995 to the present, and which contain EFI systems manufactured by Unisia JECS Corp., or by Kokusan Denki Co., Ltd.

Exs. 3 and 4 to Blanch Decl. Again, the same designated deponent appeared at these subsequent depositions.

The designated witness was the Engine Test & Development Group Leader for Arctic Cat and, since 1987, he has been involved with all of the technical aspects of developing, testing, and manufacturing Arctic Cat's EFI-equipped snowmobiles. Declaration of Kim Chervestad in Support of Arctic Cat's Opposition to Defendants' Motion to Compel Discovery and for Sanctions, at ¶3. During those years, he had worked closely with Arctic Cat's engine manufacturer, Suzuki Motor Corporation ("Suzuki"), on the development and modification of the EFI-equipped engines which were used in Arctic Cat's snowmobiles, and he was one of only two Arctic Cat employees who had corresponded with Suzuki continuously, since 1995, about the development of the EFI systems incorporated into Arctic Cat's snowmobiles. Id. at §4.

IRS claims, however, that the deponent was unable to answer questions concerning the EFI products, either because he did not know the answer, and had not sought out the necessary personnel who could provide the answer, or because he had not brought the necessary documentation to the site of the deposition so as to be able to provide a substantive answer. According to IRS:

> In fact, the deposition on June 26th was suspended early and valuable time devoted the following day, at the insistence of counsel

> for Arctic Cat, so that [the designated deponent] could review during the night a deposition exhibit previously produced by Arctic Cat listing Arctic Cat's own products by model name. * * * It was necessary for [the witness] to review that document so that he could determine which Arctic Cat model was electronically fuel injected, which model had a JECS version 1 or 2 electronic control unit and which had a Kokusan electronic control unit.

Injection Research Specialists, Inc.'s and Pacer Industries, Inc's Memorandum of Points and Authorities in Support of Motion to Compel Discovery and Sanctions, at 15.

After reviewing the transcripts of the depositions at issue, we conclude that IRS's version of these events, which occurred during the last few minutes of the deposition on June 26, 2002, is hyperbole. More accurately recounted, it appears that, at about 4:45 o'clock p.m. -- fifteen minutes before the deposition was set to end -- IRS displayed an exhibit which listed about seventy-five products of Arctic Cat, and asked the deponent to identify whether each of the products was an EFI product and, if so, who manufactured the electronic control unit ("ECU") in the product. See, Deposition of Kim J. Chervestad on June 26, 2002, at 173, Ex. B to Ali Decl. The witness was able to provide the information on most of the products, but not all of them. Arctic Cat suggested that the witness take the exhibit with him over the evening, and return prepared to identify which products had EFI, and who made the ECU on each of the noted products. IRS agreed to that procedure, and it seems to have expedited the resultant questioning, while still

providing IRS with the information it was seeking. To complain about that agreed upon approach, now, is disingenuous at best.

As to IRS's complaint, that the deponent was unable to answer questions either because he lacked the necessary knowledge, or had to refer to documentation which he did not brought to the deposition site, we are not persuaded that IRS has fully legitimate grounds upon which to complain.[1] As to some of the questions, the deponent advised that IRS would have to question Suzuki, which was the manufacturer of the engines employed by Arctic Cat. While IRS would have us conclude that the witness should have prepared for those questions, and should have secured the information, we are aware of no requirement that a Rule 30(b)(6) deponent must undertake an investigation, outside of the party he represents, in order to respond to questions that, properly, should be directed to a different party, or entity. While IRS was entitled to know what the deponent knew, or should have known, it was not entitled to

[1]There were two depositions set for inquiry into the function, structure, and operation of EFI systems -- one for systems manufactured by Unisia JECS Corp, and one for those of Kokusan Denki Co. The depositions were to occur on June 27 through 28, 2002. However, Arctic Cat advised that it believed that IRS had expended more than seven hours, during the depositions on the 26th and 27th, on the two topics. Accordingly, Arctic Cat declined to produce the witness for a deposition on the 28th, notwithstanding that the deposition had been scheduled for that day. IRS agreed not to proceed on the 28th, but noted that it would seek an Order to compel the outstanding discovery.

have the deponent research information that he either did not know, or should not be expected to know.

Moreover, it appears that, as to this category of inquiry, the deponent was, in all probability, the person most knowledgeable about the technical aspects of the use of EFI in Arctic Cat's products but, nonetheless, on a number of occasions, he was unable to answer the questions posed without reference to documentation such as control specifications. In our view, given our review of the Record, the deponent was not fully prepared to respond to the anticipated inquiry, and it was facile for the deponent to state that he could only answer by reviewing records that he did not bring to the deposition site. If, as it appears, the deponent knew that he would need demonstrative aids, in Arctic Cat's possession, in order to meaningfully respond to reasonably expected questions, then the deponent should have brought those records to the deposition to assist him in answering those questions.

As a practical matter, however, the Rule 30(b)(6) deponent is not expected to be clairvoyant, so as to divine the specific questions that could require the assist of a demonstrative aid. While the demarcation, between reasonably expected questions, and pure precognition, is not bright, the issue could have been avoided had IRS served its Deposition Notice in conjunction with a Request for Production expressly tailored to the deposition's purposes.

See, Rule 30(b)(5), Federal Rules of Civil Procedure. This, however, IRS did not do, and it bears some responsibility for the deponent's ability to elude proper inquiry.

To remedy the problem presented, we conclude that additional time is required so as to allow reasonable inquiry into the specified topics. Therefore, separate from the marketing topics which we have previously addressed as arising in the deposition of June 25, 2002, we grant IRS an additional seven hours of deposition time so as to complete the following deposition topics: "The [EFI] Systems Used in Arctic Cat Products"; "The Structure, Function and Operation of [EFI] Systems Manufactured by Unisia JECS Corp. in Arctic Cat Products"; and "The Structure, Function and Operation of [EFI] Systems Manufactured by Kokusan Denki Co., Ltd. Used in Arctic Cat Products." To that extend, we grant IRS's Motion to Compel.[2]

C. Sales of Accused Products.

The deposition concerning the sales of the accused products was set for July 11, 2002. The Notice asked for a deponent who could respond to inquiries about "sales, monthly and quarterly,

[2]For obvious reasons, we deny IRS's request for an award of sanctions as to this aspect of the noted depositions. IRS was directly implicated in the circumstances which defused the intensiveness of the inquiry that should have been made, and sanctions should not be awarded, as a result.

of Arctic Cat [EFI] equipped two cycle engine products from 1995 to the present and the identification and location of documents reflecting such sales." Ex. 5 to Blanch Decl. The Notice for this deposition was served on June 5, 2002. Id. However, on July 5, 2002, Arctic Cat advised that its "witness in response to the deposition notice for the deposition currently scheduled for July 11 is running sales reports for us to produce to you in advance of the deposition," but "[t]hese reports will not be ready by July 11." Ex. 11 to Blanch Decl. Moreover, on July 9, 2002, Arctic Cat informed IRS that it was generating a report that would list sales by year of Arctic Cat's EFI-equipped snowmobiles from 1995 onward, but that it could not produce such reports for sales, by month, as Arctic Cat does not maintain such records in its regular course of business. Ex. N to Ali Decl. Rather, Arctic Cat offered to make the sales documents available to IRS, and IRS could then determine the sales by month from those documents. Now, IRS seeks to compel the deposition, as well as to require Arctic Cat to provide information on the monthly and quarterly sales of its products.

Although Arctic Cat has not refused to go forward with the deposition, it did delay it, for reasons that are not evident to us. Rather, Arctic Cat waited a full month, after being served with the Deposition Notice, before addressing the logistics of that deposition. Moreover, it awaited the expiration of that same

amount of time before advising IRS that certain of the information being requested was unavailable. While we find it difficult to comprehend why a company, such as Arctic Cat, would not keep sales information in such a manner as would allow monthly and quarterly tabulation, of necessity, we are obliged to rely upon the representation of Arctic Cat, that such financial data is unavailable to it. As we stated at the time of the Hearing, if the Court, or a party, is misled by such a representation, and the failure to produce requested information is neither justified, nor harmless, we are not powerless to act to correct the abuse. See, Rule 37(c)(1), Federal Rules of Civil Procedure.[3]

---

[3]As we have previously expressed:

> [A]s a matter of practical reality, the Court must accept, at face value, a party's representation that it has fully produced all materials that are discoverable. See, [Marvin] Lumber v. PPG Industries, Inc., 168 F.R.D. 641, 643 n. 1 (D. Minn. 1996). As we have stated elsewhere, "we have no means to test the veracity of such avowals, other than to appropriately sanction a recalcitrant party for failing to responsibly honor its discovery obligations." Id. It continues to be our view that the failure to produce evidence, without just cause, which is relevant within the context of Rule 26, Federal Rules of Civil Procedure, bears a close relationship to the "spoliation of evidence," and should be sanctioned accordingly. See, id., citing, Sylla Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 280 (8th Cir. 1995), cert. denied, ---

(continued...)

As such, since Arctic Cat has represented that it does not keep such figures in the ordinary course of business, it is not required to produce those computations solely for the purposes of this litigation. IRS can compile the financial information it seeks to compile from the invoices Arctic Cat has agreed to provide, but we caution Arctic Cat that it may not, as if effectuating the intent of the governing Rules of discovery, simply point to a mountain of invoices, not separately collated for such purposes, and require IRS to find an illusive response. The financial information of Arctic Cat must be produced in the fashion in which it is maintained by Arctic Cat. Simply put, Arctic Cat must assist IRS in narrowing the search for the requested in-

---

(...continued)

U.S. ---, 116 S.Ct. 84 (1995); Dillon v. Nissan Motor Co., Ltd., 986 F.2d 263, 267 (8th Cir. 1993); SDI Operating Partnership, L.P. v. Neuwirth, 973 F.2d 652, 655 (8th Cir. 1992); Scout v. City of Gordon, 849 F. Supp. 687, 690-91 (D. Neb. 1994); Capallupo v. FMC Corp., 126 F.R.D. 545, 551 (D. Minn. 1989); cf., Baker v. General Motors Corp., 86 F.3d 811, 817 (8th Cir. 1996), cert. granted, --- U.S. ---, 117 S.Ct. 1310, 65 USLW 3647 (U.S., March 24, 1997).

<u>Onwuka v. Federal Express Corp.</u>, 178 F.R.D. 508, 514 (D. Minn. 1997).

The same cautionary applies here.

voices.[4] As a consequence, we grant IRS's Motion to compel the sales deposition, and to produce the requested documents, but only to the extent that we have detailed.

E. Document Requests.

Finally, IRS claims that there are a number of documents, which are responsive to outstanding discovery requests, and which have not been produced by Arctic Cat. According to IRS, the types of documents at issue include correspondence to Arctic Cat's customers and dealers, software programs, and e-mails. In turn, Arctic Cat asserts that the referenced discovery requests are quite broad, or do not encompass the type of information IRS believes that they do.

The source of IRS's discontent concerning Arctic Cat's production of documents is far from clear, and the briefing on this issue has not assisted the Court. Rather, it is clear that the attorneys involved have not responsibly met and conferred on the alleged deficiencies in Arctic Cat's document production. As such, we direct the parties to conduct such a "meet and confer" -- preferably in person or over the telephone, rather than by communicating by

---

[4]Of course, as it relates to IRS's Rule 30(b)(6) topic, which asks for "[t]he date when Arctic Cat EFI equipped two cycle engine products containing EFI systems manufactured by Unisia JECS Corp. were last sold in the United States," Ex. 2 to Blanch Decl., Arctic Cat continues to have a responsibility to do its best to educate its designated deponent on this topic, absent a Protective Order.

letter, and, if there are customer correspondence, software, or e-mails, or other information requested by IRS, that are relevant to this action, then Arctic Cat should produce it. At this time, though, we deny IRS's Motion to compel, but without prejudice to its renewal after the parties have conducted a meet and confer.

NOW, THEREFORE, It is

ORDERED:

1. That the Defendants' Motion to Compel the Plaintiff to produce a knowledgeable Rule 30(b)(6) deponent(s), and discovery [Docket No. 93], is GRANTED, in part, and DENIED, in part, as outlined in the text of this Order.

2. That the Defendants' Motion for Sanctions [Docket No. 93] is GRANTED, in part.

3. That the Plaintiff is directed to pay the Defendants $2,310.00 as a sanction for discovery abuses.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE