UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

ORDER

* * * * * * * * * * * * * * * * * * *

Arctic Cat, Inc., a Minnesota Corporation,

Plaintiff,

vs.

Injection Research Specialists, Inc., a Colorado corporation, and Pacer Industries, Inc., a Missouri corporation,

Defendants.

and

Injection Research Specialists, Inc., a Colorado corporation, and Pace Industries, Inc., a Missouri corporation,

Counterclaimants,

vs.

Arctic Cat, Inc., a Minnesota corporation, and Suzuki Motor Corporation, a Japanese Corporation,

Counterdefendants. Civ. No. 01-543 (MJD/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 12th day of November, 2002.

(122)

NOV 12 2002

mjb

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Motion of the Defendants Injection Research Specialists, Inc., and Pacer Industries, Inc. ("IRS"), to compel the Plaintiff Arctic Cat, Inc. ("Arctic Cat"), to produce documents, which Arctic Cat claims to be insulated from discovery by the attorney-client and/or work product privileges. A Hearing on the Motion was conducted on October 31, 2002, at which time, Arctic Cat appeared by Jeffer Ali, Esq., and IRS appeared by Robert J. Blanch, Esq. For reasons which follow, we grant IRS's Motion, in part.

## II. Factual and Procedural Background

On or about March 28, 2001, Arctic Cat, which is a manufacturer of snowmobiles, commenced this action, which seeks a declaration that it was not infringing upon IRS's '803 Patent. The '803 Patent was a reissuance of IRS's earlier '701 Patent. Before the reissuance of that Patent, IRS had sued Polaris, which is another manufacturer of snowmobiles, claiming that Polaris had infringed upon the '701 Patent. Given the reissuance proceedings, the Court stayed the infringement action against Polaris. On December 6, 1994, the '701 Patent was reissued as the '803 Patent, and the

Court, in the Polaris infringement action, lifted the Stay. Ultimately, the Court granted Summary Judgment to Polaris.

In the interim, by a written notice dated February 7, 1995, IRS accused Arctic Cat of infringing the reissued '803 Patent. In that notice, IRS advised that it would sue Arctic Cat for an infringement of the '803 Patent, and for trade secret misappropriation, by no later than at the conclusion of IRS's infringement action against Polaris. While IRS did sue Arctic Cat in 1997, following the Polaris lawsuit, the only claim, that Arctic Cat asserted, related to trade secret misappropriation, and that claim was dismissed as time-barred. According to Arctic Cat, given this history, it was satisfied that IRS had abandoned its earlier assertion that Arctic Cat had infringed the '803 Patent.

However, in March of 2001, Arctic Cat received a letter from IRS which accused it of infringing four IRS Patents, including the '803 Patent. As previously noted, Arctic Cat's response to this letter was the near immediate commencement of this Declaratory Judgment action. About six months thereafter, IRS filed its Counterclaims against Arctic Cat, and the Counterdefendant Suzuki Motor Corporation ("Suzuki"). Subsequently, on September 3, 2002, Arctic Cat informed IRS that it intended to rely on the opinion of its legal counsel, that Arctic Cat was not infringing upon IRS's '803 and '374 Patents, so as to advance an "advice-of-counsel" defense

to IRS's claim that Arctic Cat had willfully infringed its Patents. Concomitant with the assertion of that defense, Arctic Cat waived the legal privileges attendant to those advices of counsel.

On September 5, 2002, Arctic Cat produced the following opinions of its legal counsel: 1) a letter of October 28, 1991, related to IRS's '701 Patent; 2) a letter of March 18, 1999, related to IRS's '374 Patent; 3) a letter of May 11, 2001, related to IRS's '374 Patent; 4) a letter of May 18, 2001, related to IRS's '803 Patent; and 5) a letter of May 25, 2001, which supplemented the letter of May 18, and which related to the '803 Patent. Arctic Cat also produced a letter of December of 1995, which related to IRS's '803 Patent, and several audit letters which included legal opinions concerning the Patents-in-suit. Thereafter, on September 27, 2002, Arctic Cat produced its privilege log, which consisted of a single page listing of privileged documents.

IRS takes exception to certain of the documents listed on Arctic Cat's Privilege Log, and contends that, since IRS produced a 61-page Privilege Log, it is unconvincing that Arctic Cat's single-page roster of privileged documents is complete. More importantly, since Merchant & Gould, which is the law firm that authored the referenced opinion letters -- in the person of John D. Gould, Esq. ("Gould"), as well as others -- also serves as Arctic Cat's counsel of Record in this action, IRS urges that Arctic Cat's waiver of

privilege must extend to all of Merchant & Gould's communications with Arctic Cat, during the period from approximately 1986, through September 5, 2002, when Gould's letter opinions were produced to IRS. Arctic Cat disagrees both as to the substantive, and temporal, scope of the privilege, which is claimed by IRS to have been waived.

III. Discussion

The parties are in agreement, that the invocation of an advice-of-counsel defense waives the attorney-client, and work product privileges, that would otherwise attend to those opinions. Their dispute centers on the scope of that waiver, and not on its existence. We find that Arctic Cat more correctly reads the law which governs the issue of privilege that is presented.

We have previously addressed this issue, and have noted as follows:

> [W]e accept, as an accurate statement of the law, that "[w]hether infringement is 'willful' is by definition a question of the infringer's intent." Ortho Pharmaceutical Corp. v. Smith, 959 F.2d 936, 944 (Fed. Cir. 1992), citing Gustafson, Inc. v. Intersystems Insus. Prods., 897 F.2d 508, 510 (Fed. Cir. 1990), and King Instrument Corp. v. Otari Corp., 767 F.2d 853, 867 (Fed. Cir. 1985), cert. denied, 475 U.S. 1016, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986). As emphasized by the Defendant, such control-

> ling precedent focuses, necessarily, upon whether the infringer reasonably believes that it was not engaged in infringing activities.

Cordis Corp. v. SciMed Life Systems, Inc., 980 F. Supp. 1030, 1032 (D. Minn. 1997).

We went on to emphasize:

> While an opinion of counsel letter is an important factor in determining the willfulness of infringement, its importance does not depend upon its legal correctness. Indeed, the question arises only where counsel was wrong. Rather, counsel's opinion must be thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed or unenforceable. * * * Thus, [the infringer's] intent and reasonable beliefs are the primary focus of a willful infringement inquiry.

Id., quoting Ortho Pharmaceutical Corp. v. Smith, 959 F.2d. 936, 944 (Fed. Cir. 1992), citing Stickle v. Heublein, Inc., 716 F.2d 1550, 1565 (Fed. Cir. 1983)("The court must determine * * * that the infringer had no reasonable basis for believing that it had a right to do the acts.").

Our opinion, in Cordis, was further informed by the following rule, which is firmly established in the Federal Circuit:

> In Read Corp. v. Portec, Inc., 970 F.2d 816, 829, 23 U.S.P.Q.2d 1426, 1437 (Fed. Cir.) reh'g in banc denied, (1992), this court stated that "objective evidence" must be considered to determine whether a defendant was justified in relying on patent counsel's advice, i.e., whether the patent counsel's opinion was competent. Opinion letters should be reviewed to determine whether they evidence an adequate foundation based on a review of all necessary facts or whether they are conclusory on their face. * * * "[C]ounsel's opinion must be thorough enough, as combined with other factors, to instill belief in the infringer that a

> court might reasonably hold the patent is invalid, not infringed, or unenforceable." * * * In considering the reasonableness of the accused infringer's reliance on an opinion of counsel, the opinion letter should be reviewed for its "overall tone, its discussion of case law, its analysis of the particular facts and its reference to equitable conduct."

Id. at 1032, quoting Westvaco Corp. v. International Paper Co., 991 F.2d 735, 743-44 (Fed. Cir. 1993).

Ultimately, in Cordis, we concluded that a party could explore the factual predicates to an opinion letter, in the context of an alleged infringement of a patent, notwithstanding that such an exploration required a piercing of an asserted legal privilege, in order to determine if the opinion expressed was a competent one.

Accordingly, to the extent that a legal opinion was predicated upon "objective" evidence, an intrusive investigation of that evidence was appropriate if the competency of the opinion was to be assessed. On the other hand, we found no prospect that the competency of a legal opinion could be reasonably determined by an investigation into the legal research, or into the preliminary drafts of the opinion letters, unless those drafts "were reviewed, and/or edited by the employees or agents of the Defendant." Id. at 1034. As a result, we drew a line of demarcation "between that which is discoverable, and that which is not," as being "driven by whether the evidence at issue is 'objective' -- and, therefore, discoverable -- or 'subjective' -- and therefore protected -- in its char-

acter." Id. In other words, we concluded that an "advice-of-counsel defense" is not limited to a facial assessment of validity, but must be subjected to a searching inquiry as to its competence.

While the issue we confront is distinct from that presented in Cordis, the underlying rationale remains the same. Simply put, in asserting an "advice-of-counsel" defense, Arctic Cat has waived any privilege which would otherwise seal the predicates for that defense from discovery. As we explained at the time of the Hearing, the party confronting an "advice-of-counsel" defense -- here IRS -- should be afforded a reasonable means of determining whether the opinion expressed was competent. Contrary to IRS's view, however, the waiver of privilege, attendant to the invocation of an "advice-of-counsel" defense, does not open the entirety of communications, between the legal opinion's author, and the patent holder, to inquiry, for the waiver of privilege is restricted to the subject matter of the opinions expressed.

Having generally described the extent of the waiver of privilege, we must also limn the scope of the types of documents which are potentially subject to production. As we have previously expressed:

> The inquiry before the Court is dual-faceted. First, we are obliged to define the world of documents that are discoverable, in view of the Defendants' assertion of an advice-of-counsel defense, and its attendant waiver of

> privilege. Necessarily, this requires our determination of whether the Defendants had gathered all of the relevant documents, based upon a proper appreciation of the scope of the privileges being waived, to be submitted for our review. If the Defendants' identification of relevant documents were overly narrow, then our review would be correlatingly ineffectual. Second, we are obliged to determine whether the documents produced by the Defendants, for our in camera review, are properly discoverable.

Minnesota Specialty Crops, Inc. v. Minnesota Wild Hockey Club, L.P., --- F.R.D. ---, 2002 WL 31387726 at *2 (D. Minn., August 9, 2002).

Here, we define the scope of documents, that are subject to our review, as including any expression of opinion, by any attorney at Merchant & Gould -- and irrespective of whether the attorney is Trial counsel for Arctic Cat, or patent counsel -- which pertains to the subject matter of Merchant & Gould's Opinion Letters to Arctic Cat, or to his opinions in Audit Letters on behalf of Arctic Cat.

As to the subject matter addressed by the Opinion and Audit Letters, Arctic Cat concedes that it has waived any otherwise applicable attorney-client and/or work product privileges, even as to expressions of opinion which occurred after the filing of this lawsuit, but it does not accede to IRS's contention that the breadth of the waiver encompasses all correspondence, between Merchant & Gould and Arctic Cat, which relates, however obliquely, to this case. See, e.g., Novartis Pharmaceuticals Corp. v. Eon Labs

Manufacturing, Inc., 206 F.R.D. 396, 398 (D. Del. 2002)("Having concluded that these privileges are waived, the Court concludes that everything with respect to the subject matter of counsel's advice is discoverable, despite the protection that is normally afforded to attorney-client and work product material."); Chiron Corp. v. Genentech, Inc., 179 F.Supp.2d 1182, 1188 (E.D. Cal. 2001)("While there is some authority that cuts off the waiver at time of the filing of the action, the better authority requires that **all** communications, both pre and post-complaint filing, should be disclosed.")[emphasis in original]; Beneficial Franchise Co. v. Bank One, 205 F.R.D. 212, 218 (N.D. Ill. 2001)("When a party chooses to inject into the case attorney opinions, fairness is served by allowing the opposing party to have access to documents casting doubt or contradicting those opinions -- even if prepared by trial counsel after suit was commenced.").

In an argument that approaches hyperbole, IRS has urged that we compel Arctic Cat, and Merchant & Gould, to produce their respective correspondence to the other, since 1986, on any topic which bears a relationship to a view expressed in Merchant & Gould's Opinion and Audit Letters. As made clear at the Hearing on the Motion, however, when shorn of rhetoric, it appears that what IRS requests to be compelled is not materially distinct from what Arctic Cat has represented as having been produced.

One remaining point of contention, however, is the extent to which Merchant & Gould should be compelled to produce documents, which bear on its expression of opinions to Arctic Cat, but which were not disclosed to Arctic Cat. IRS requests an Order which compels the production of such materials, and cites to cases which have required that result. For example, in Novartis Pharmaceuticals Corp. v. Eon Labs Manufacturing, Inc., supra at 399, the Court expressed the view that "it is critical for the patentee to have a full opportunity to probe, not only the state of mind of the infringer, but also the mind of the infringer's lawyer upon which the infringer so firmly relied," for there was "no reason why the alleged infringer's waiver of the attorney-client privilege should not be considered absolute, encompassing materials typically protected by the work product doctrine."

The Court, in Novartis, was persuaded by the Court's reasoning in Mosel Vitelic Corp. v. Micron Technology, Inc., 162 F. Supp.2d 307, 312 (D. Del. 2000), quoting Electro Scientific Indus., Inc. v. General Scanning, Inc., 175 F.R.D. 539, 545 (N.D. Cal. 1997), where the Court observed as follows:

> [I]t would be * * * irrational to assume that there could be no relationship between what counsel really thought (as reflected in [their] private papers) and what [counsel] in fact communicated to [the] client. In this important sense, evidence about what really

> was in the lawyer's mind could be quite relevant to what really was in the client's mind.

While it is not entirely clear what information, in the files of the purported infringer's legal counsel, were ordered produced in Mosel, we recognize that Mosel relied on our reasoning in Cordis and, therefore, we presume that the limits of such production were consistent with what we directed in Cordis. See, Mosel Vitelic Corp. v. Micron Technology, Inc., supra at 312-13 ("This court, like the one in Cordis, does not believe that the law should encourage or reward, even if inadvertently, the creation of opinion letters that, while facially valid are 'fraught with ineptitude [or] error' in an effort to protect the client."), citing Cordis Corp. v. SciMed Life Systems, Inc., supra at 1034 n. 1.

We continue to adhere to our analysis in Cordis, and respectfully reject those decisions which allow unrestricted discovery into the files of the purported infringer's attorney, simply because an advice of counsel defense is invoked. We accept that the Mosel approach has ease of application, but it gives short-shrift to the notion that a litigant's case should not be unnecessarily advanced by an opponent's legal work product, or attorney-client confidences.[1] As we explained in Cordis:

---

[1] "This Court applies federal law to work product claims," Pepsico, Inc. v. Baird, Kurtz & Dobson LLP, 305 F.3d 813, 816 (8th Cir.
(continued...)

> [T]he demarcation we have drawn, between that which is discoverable, and that which is not, is driven by whether the evidence at issue is "objective" -- and, therefore, discoverable --

---

[1](...continued) 2002), citing Baker v. General Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 2000), and we apply the law of this Circuit to privilege issues when our jurisdiction is predicated on Federal questions, which do not implicate substantive precepts of patent law. See, In re Pioneer Hi-Bred Int'l Inc., 238 F.3d 1370, 1374 (Fed. Cir. 2001)(noting, as well, that Federal Circuit law produces the same result as Eighth Circuit law).

"The work product doctrine was designed to prevent 'unwarranted inquires into the files and mental impressions of an attorney,' * * * and recognizes that it is 'essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" Simon v. G.D. Searle & Co., 816 F.2d 397, 399 (8th Cir. 1987), quoting Hickman v. Taylor, 329 U.S. 495, 510-511 (1947). As our Court of Appeals explained, in Baker v. General Motors Corp., supra at 1053-54:

> There are two kinds of work product -- ordinary work product and opinion work product. Ordinary work product includes raw factual information. * * * Opinion work product includes counsel's mental impressions, conclusions, opinions, or legal theories. * * * Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means. * * * In contrast, opinion work product enjoys almost absolute immunity and can be discovered only in rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud.

[Citations omitted].

While we recognize that, here, we deal with waiver, and not the scope of a privilege, we find the foregoing principles helpful in guiding our determination as to the scope of the waiver at issue.

> or "subjective" -- and therefore protected -- in its character. While this differentiation will not, in every conceivable respect, produce a "bright-line" result, we think that the distinction we have marked is both practical, and consonant with the governing authorities.

Cordis Corp. v. SciMed Life Systems, Inc., supra at 1034.

Accordingly, in Cordis, we allowed a full inquiry into the objective facts which undergirded the attorney's legal opinion, even if those facts were gathered by the attorney's efforts, and had not been shown to the attorney's client, but we denied the opposing counsel's access to the attorney's "legal research, and preliminary drafts of the opinion letters, that were ultimately transmitted to [the client], unless those drafts were reviewed, and/or edited by the employees or agents of the [client]." Id. at 1034.

We have no reason to believe that the ruminations of the client's attorney, which were not shared with the client, reflect upon, or illuminate, the "infringer's state of mind." Century Wrecker Corp. v. E.R. Buske Mfg. Co., Inc., 913 F.Supp. 1256, 1271 (N.D. Iowa 1996), citing Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1221 (Fed. Cir. 1995), cert. denied, 520 U.S. 1115 (1997); see also, Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1579 (Fed. Cir. 1996)("Whether an infringer acted willfully is a question of fact that rests on a determination of the infringer's state of mind."), citing Read Corp. v. Portec, Inc., 970 F.2d 816, 828 (Fed. Cir. 1992); see also, D.O.T. Connectors, Inc. v. J.B. Not-

tingham & Co., Inc., 2001 U.S. Dist. Lexis 739 at *10 (D.C. Fla., January 22, 2001)(holding that the waiver "does not extend to legal research or other opinion work product unless such opinion work product was communicated to [the client].").[2]

Applying these considerations to the documents which were submitted, in camera, for our review, we find two documents which would appear to require disclosure to IRS. In an e-mail dated April 22, 2002, which was transmitted from an attorney at Merchant & Gould to Arctic Cat, an outline of the issues in the case was forwarded so as to serve as a guide to a subsequent telephone con-

---

[2]At the time of the Hearing, counsel for Arctic Cat appeared to share our view as to the scope of Arctic Cat's waiver of privilege, but if we error in this perception, then we instruct Arctic Cat, and the attorneys at Merchant & Gould, to resurvey their files, and work papers, for any additional documents which should be produced for our in camera review.

We note, for example, that several documents, which were produced for our review, served to transmit a legal memorandum, an Affidavit, or a discovery response, to Arctic Cat for comment or correction. We found no return document from Arctic Cat. If such documents exist, they should be reviewed for relevance and privilege and, if relevant, and if the privilege has been waived, then the document should be produced to IRS. These documents would include objectively based work product, between Arctic Cat, and its counsel, which is relevant to the subject matter of Merchant & Gould's Letter or Audit Opinions, irrespective of whether the work product, or expression of opinion, was generated in anticipation of litigation, or after this action was commenced, and irrespective of whether the opinions expressed in the communications were consistent with, or contrary to, those formally expressed in the Letter and Audit Opinion Letters. See, D.O.T. Connectors, Inc. v. J.B. Nottingham & Co., Inc., 2001 U.S. Dist. Lexis 739 at *10 (D.C. Fla., January 22, 2001).

ference call. By every appearance, the outline pertains to subject matter which served as the basis for Arctic Cat's advice of counsel defense, as the document appears to weigh the validity of certain of the opinions expressed. In addition, after the close of the Hearing, counsel for Arctic Cat produced handwritten notes, which appear to relate to a conference on October 22, 2001, between counsel for Arctic Cat, and the principals of the company, and which appear to address the subject matter of Merchant & Gould's advice of counsel.[3]

Contrary to the practice in this Circuit, Arctic Cat has not identified the bases for any claimed privileged status of these two documents and, if we read more into these documents than they truly convey, or if they require pointed redaction, we will allow Arctic Cat to provide us with an Affidavit, for in camera review, to support either a more restrictive application of waiver, or the propriety of specific redaction. See, Rabuska ex rel. United States v. Crane Co., 122 F.3d 559, 565 (8th Cir. 1997)(finding that a party claiming privilege "met its burden of providing a factual basis for asserting the privilege when it produced a detailed privilege log

---

[3]Our reading of this document appears to be at odds with Gould's Affidavit, insofar as he avers that, "[s]ince May 25, 2001, I do not recall commenting to Arctic Cat on my written opinions dated March 18, 1999, May 1, 2001, May 18, 2001, and May 25, 2001." Declaration of Gould dated October 24, 2002, at p. 2.

stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit of its general counsel."), cert. denied, 523 U.S. 1040 (1998). Arctic Cat should **NOT** employ this limited provision for a response as a basis to reargue any aspect of the Motion to Compel and, if Arctic Cat shares our view concerning the nature of the two documents, it may produce those documents directly to IRS in lieu of any further response.

Lastly, in order to preserve the status quo, Arctic Cat need not disclose the data, that we have identified as being subject to production until it has exhausted any appeal it wishes to take from this Order. Accordingly, if no appeal is to be taken, by any of the parties, then the referenced data shall be produced on the date on which the appeal period, which is pertinent to this Order, has been exhausted.

NOW, THEREFORE, It is --

ORDERED:

That the Defendant IRS's Motion to Compel [Docket No. 113] is GRANTED in part.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE