UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

ORDER

* * * * * * * * * * * * * * * * * * *

Arctic Cat, Inc., a Minnesota Corporation,

Plaintiff,

vs.

Injection Research Specialists, Inc., a Colorado corporation, and Pacer Industries, Inc., a Missouri corporation,

Defendants.

and

Injection Research Specialists, Inc., a Colorado corporation, and Pace Industries, Inc., a Missouri corporation,

Counterclaimants,

vs.

Arctic Cat, Inc., a Minnesota corporation, and Suzuki Motor Corporation, a Japanese Corporation,

Counterdefendants. Civ. No. 01-543(MJD/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 15th day of November, 2002.

123

FILED NOV 15 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK mjb

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Motion of the Defendants/Counterclaimants Injection Research Specialists, Inc., and Pacer Industries, Inc. ("IRS"), to compel the Counterclaim Defendant Suzuki Motor Corporation ("Suzuki"), to produce documents, which Suzuki has withheld because, in Suzuki's view, they are beyond the scope of discovery to which IRS is entitled. A Hearing on the Motion was conducted on September 4, 2000, at which time, IRS appeared by Anthony de Alcuaz, Esq., and Suzuki appeared by Thomas H. Jenkins, and Neil M. Kliebenstein, Esqs.[1] We grant, in part, IRS's Motion to Compel.

## II. Factual and Procedural Background

The Plaintiff Arctic Cat, Inc. ("Arctic Cat"), which is a snowmobile manufacturer, commenced this action on March 28, 2001, in order to obtain a declaration that it was not infringing upon IRS's U.S. Patent Re. 34,803 ("'803 Patent"), which relates to an electronic fuel injection system ("EFI"). At issue in this case are EFI systems, which were manufactured by two Japanese corporations, which were purchased by Suzuki, and which were incorporated

---

[1]No appearance was made by, or on behalf of, the Plaintiff Arctic Cat, Inc. ("Arctic Cat").

into Suzuki's two-cycle engines. Notably, Suzuki incorporates those two-cycle EFI systems into the snowmobile engines that it sells to Arctic Cat.

Suzuki was joined in this action when IRS filed a Counterclaim against both Suzuki, and Arctic Cat, on September 26, 2001. Suzuki filed its separate Answer to the Counterclaim on January 4, 2002. Discovery responses from Suzuki was slow in coming, in part due to the need to translate the requested documents into English from Japanese and, accordingly, it was not until August 27, 2002, that Suzuki produced what it regarded as complete responses to IRS's discovery requests.[2] In this Motion, IRS seeks to compel further discovery from Suzuki, and contends that Suzuki has improperly refused to produce any documents in two specific categories of discovery.

First, IRS complains that Suzuki has refused to produce documents which relate to any of its EFI-equipped, two-cycle engines, that it does not sell, to Arctic Cat, as snowmobile engines. As the only engines Suzuki sells to Arctic Cat are snowmobile engines, and since it exclusively sells its snowmobile engines to Arctic Cat, Suzuki's refusal translates into a refusal to produce docu-

---

[2]At the Hearing, Suzuki admitted that it had found some additional documents, which had not previously been produced, and counsel for Suzuki represented that those documents would be produced promptly.

ments relating to anything other than to the EFI-equipped snowmobile engines that it sells to Arctic Cat. IRS complains that it has asserted independent claims against Suzuki, for the infringement of the '803 Patent, and thus, information relating to all of Suzuki's EFI-equipped two-cycle engines, and not merely those engines that it sells to Arctic Cat, is properly discoverable.

IRS also maintains that those documents are relevant to issues such as commercial success, non-infringing alternatives, expected profits, and licencing values, and therefore, the documents should be produced forthwith. Suzuki disagrees with IRS's assertions, claiming that this action is, and always has been, directed at Arctic Cat snowmobiles, and the Suzuki EFI-equipped engines that propel those snowmobiles. Suzuki argues that the pleadings, and the infringement Claims Chart that has been submitted by IRS, are limited to Arctic Cat snowmobile engines. As a consequence, Suzuki asserts that the discovery being requested by IRS is overly broad, insofar as it seeks discovery beyond Arctic Cat snowmobile engines.

Second, IRS objects to Suzuki's refusal to produce certain financial documents. Part of this dispute relates to the same scope of discovery dispute we have just related, but IRS also maintains that, even if other engines are not directly at issue in this litigation, information concerning those engines would, nonetheless, be discoverable, since information as to those engines is

essential to IRS's computation of its damages, under a reasonable royalty theory, to IRS's defense to Suzuki's assertion that the '803 patent is invalid for obviousness, and to IRS's attempt to prove that Suzuki, and Arctic Cat, had not developed EFI technology on their own, but rather, had derived that technology from the '803 patent, or from its inventor. In response, Suzuki contends that, even if some of the withheld financial documents were discoverable under any such legal theories, the scope of IRS's discovery would still be overly broad, as Suzuki urges that discovery should be limited to producing financial documents that are relevant to the EFI systems, and not to the entirety of the Suzuki engines.

## III. Discussion

The general scope of Discovery is governed by Rule 26(b)(1), Federal Rules of Civil Procedure, which provides, in pertinent part, as follows:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party * * *. Relevant information need not be admissible at the trial of the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

The dispute between the parties centers on the application of this Rule. IRS contends that it properly seeks material that falls within the scope of this Rule, while Suzuki claims that compliance with IRS's discovery requests would require it to produce materials

which extend well beyond the proper scope of discovery. As this dispute arises from to two distinct Requests for Production, we address the Production Requests separately.

A. Documents Concerning EFI-equipped Two-cycle Engines Not Sold by Suzuki to Arctic Cat as Snowmobile Engines.

As we have noted, IRS contends that it is entitled to discovery as to all Suzuki EFI-equipped two-cycle engines, without regard to whether those engines were sold to Arctic Cat as snowmobile engines, because IRS has asserted a separate claim for infringement of the '803 patent against Suzuki, as a Counterclaim Defendant, under Rule 13, Federal Rules of Civil Procedure. Suzuki disagrees and points us to the Claims Charts prepared by IRS, which list the products which IRS alleges as infringing the '803 patent, and which do not contain any Suzuki products other than in snowmobile engines. IRS counters by noting that the pleadings sufficiently placed Suzuki on notice as to the scope of IRS's claim against it, and claims that it was not required to include any allegedly infringing Suzuki products, in its Claims Charts.

Plainly, the key issue resolves on whether Suzuki was properly placed on notice, either through IRS's pleadings, or through IRS's Claims Charts, that Suzuki's products, in general, and not limited to the snowmobile engines Suzuki sold to Arctic Cat, were at issue in this litigation. Accordingly, we look to IRS's pleadings, and

Suzuki's response to those pleadings, as well to IRS's Claims Chart.

1. The Pleadings. As previously related, Suzuki was joined in this case by a Counterclaim for Patent Infringement which was served upon both Suzuki and Arctic Cat. There is a single Count alleged in that Counterclaim, for infringement of the '803 patent "[a]gainst Arctic Cat and Suzuki." Injection Research Specialists, Inc's and Pacer Industries, Inc.'s Counterclaim for Patent Infringement and Demand for Jury Trial ("Counterclaim"), at 3. The pertinent Count contains five paragraphs, of which one is particularly relevant to our inquiry, in that it provides as follows:

> 10. Arctic Cat and Suzuki and each of them are responsible for infringement of the '803 patent directly and continuously by at least making, using, selling, offering for sale, having made, and/or importing infringing products, and/or actively inducing, and contributing to, literal and equivalent infringement by at least some of [C]ounterdefendants' products.

Id.

In their prayer for Judgment, IRS asks "[t]hat judgment be entered against Arctic Cat and Suzuki as to its [sic] infringement of the '803 patent." Id. Further, they ask for injunctive relief "precluding Arctic Cat and Suzuki, their subsidiaries, officers, agents, servants, employees, and all other persons in active con-

cert or participation with each from further infringement of the '803 patent." Id.[3]

According to IRS, the plain language of the Counterclaim is sufficient to place Suzuki on notice that all of Suzuki's potentially infringing products are at issue in this matter, and not merely those that Suzuki sold to Arctic Cat. In support of this construction, IRS points to that part of Paragraph 10 of its Counterclaim, where IRS alleges that "Arctic Cat and Suzuki **and each of them** are responsible for infringement of the '803 patent," and that this infringement was occasioned by "some of **counterdefendants'** products." Id. [emphasis added]. According to IRS, by alleging independent claims of infringement against Suzuki, arising from Suzuki's own products, Suzuki was on notice that the scope of the litigation went beyond the Suzuki engines that were sold to Arctic Cat.

Suzuki has acknowledged that IRS's interpretation of Paragraph 10 is one possible reading of the claims that IRS has asserted against it. However, Suzuki maintains that the mere fact that IRS alleged direct infringement against Suzuki, arising from some of

---

[3]IRS also sought damages, increased damages under Title 35 U.S.C. §284, and a determination that, under Title 35 U.S.C. §§284 and 285, the case be declared an exceptional case, in order that IRS could request an award of their reasonable costs and attorneys' fees.

Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc, 564 F. Supp. 1358, 1370 (D. Del. 1983). Paine Webber does hold that, when there "is no allegation that the acts of infringement are connected in any manner," and are "against two unrelated parties based on different acts," the allegations "do not arise from the same transaction." However, that holding arose in a consideration of whether the joinder of a party had been proper, and was not expressed in the context of notice pleading. Id. at 1370.

Nevertheless, as to the issue presented here, we would reach the same conclusion. Any alleged patent infringement claims against Suzuki, which pertain to products that Suzuki did not sell to Arctic Cat, would, by definition, be separate from Suzuki's acts of infringement related to the products Suzuki did sell to Arctic Cat. If Suzuki had been the sole Counterdefendant, IRS's allegations would have been sufficient to notify Suzuki that all of Suzuki's EFI-equipped engines were at issue, irrespective of whether those engines had been sold to Arctic Cat. Likewise, if IRS had alleged separate counterclaims against Arctic Cat, and Suzuki, Suzuki would have been on fair notice that the scope of the products, which are at issue in this case, extend beyond those that Suzuki had sold to Arctic Cat. The same would be true if IRS had asserted its charges against Arctic Cat, and Suzuki, in the same claim, but expressed in separate paragraphs. When, however, the sole alle-

gation against Suzuki is intertwined with the allegations against Arctic Cat, as is the case here, we agree with Suzuki that, had IRS intended to allege infringement of the '803 patent as to any of Suzuki's products, and not simply those Suzuki had in common with Arctic Cat, it should have asserted those more expansive claims in separate paragraphs. We conclude, on the face of IRS's own pleadings, that Suzuki's denial of proper notice of a broader scope of alleged infringement, appears to have more than passing merit.

However, even if IRS improperly pled its Counterclaim, the question remains as to whether Suzuki was, nonetheless, properly placed on notice that the claimed infringement extended beyond the products that Suzuki sold to Arctic Cat. As explained by the Court of Appeals for the Eleventh Circuit:

> The purpose of [Rule 10(b)] is self-evident, to require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not. "Shotgun" pleadings, calculated to confuse the "enemy," and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked, are flatly forbidden by the letter, if not the spirit, of these rules.

TDS Inc. v. Shelby Mutual Ins. Co., 760 F.2d 1520, 1543 n. 14 (11th Cir. 1985).

Simply stated, "[p]leadings will serve the purpose of sharpening and limiting the issues only if claims based [on one transaction] are set forth separately from those based on [a different transaction]." O'Donnell v. Elgin, J. & E. Ry. Co., 338 U.S. 384, 391 (1950), citing and quoting, in a footnote, Rule 10(b), Federal Rules of Civil Procedure; see also, Windsor v. A Federal Executive Agency, 614 F. Supp. 1255, 1258 (M.D. Tenn. 1983). In this sense, the purpose of Rule 10(b) is congruent with the intent of Rule 8, Federal Rules of Civil Procedure, which "merely require[s] the plaintiff to provide a statement of [its] claim that gives 'the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Lederman v. Cragun's Pine Beach Resort, 247 F.3d 812, 818 (8th Cir. 2001), citing Conley v. Gibson, 355 U.S. 41, 47 (1957).

Thus, under "notice pleading," as permitted by Rule 8, even if IRS had erred in pleading its infringement claims, by combining those against Suzuki and Arctic Cat in the same paragraph of its Counterclaim, so long as that error did not mislead Suzuki, we would conclude that the error was harmless, for "notice pleading" only requires fair notice. See, In re NationsMart Corp. Securities Litigation, 130 F.3d 309, 315 (8th Cir. 1997)("Federal Rule 8(a)(2) requires a plaintiff to plead only 'a short and plain statement of the claim showing that the pleader is entitled to relief * * *."),

cert. denied, 524 U.S. 927 (1998). Here, IRS asserts that Suzuki actually was put on notice of IRS's intent to allege claims against Suzuki which extended beyond the Arctic Cat snowmobile engines, and directs us to Suzuki's separate Answer to IRS's Counterclaim.

IRS maintains that Suzuki's Answer is clear evidence that Suzuki was aware of the scope of IRS's claims. First, IRS points to Paragraph Sixteen, which is part of Suzuki's affirmative defense of non-infringement, and in which Suzuki claims that it "has not infringed, contributed to the infringement of, or induced infringement of the '803 patent." Answer of Suzuki Motor Corporation to Injection Research Specialists, Inc.'s and Pacer Industries, Inc.'s Counterclaim for Patent Infringement, ("Answer"), at 3. Next, IRS underscores Paragraph 30 of the Answer, in which Suzuki asserts that "IRS and Pacer should be precluded under [Title] 35 U.S.C. §252 from preventing and obtaining relief for the alleged infringement by Suzuki's continued manufacture, use, sale or offer for sale of EFI-equipped two-cycle engines by Suzuki on or after the date of the '803 patent." Id. at 5-6.

Further, IRS notes that similar language, concerning the "EFI-equipped two-cycle engines," is employed in Paragraphs Thirty-One and Thirty-Two of the Answer, where Suzuki has advanced other affirmative defenses. Id. at 6. Finally, IRS directs us to Suzuki's Prayer for Relief, in which, Suzuki asks, in part, "[t]hat

the '803 patent be adjudged not infringed, contributorily infringed, or infringed through inducement by Suzuki." Id. IRS argues that Suzuki never conditioned the scope of its request for relief in any way but, instead, asked for relief concerning its "EFI-equipped two-cycle engines," which might infringe the '803 Patent. Thus, IRS claims that Suzuki was properly placed on notice of the broad scope of IRS's claims against it, such that, even if IRS's Counterclaim breached the proscriptions of Rule 10(b), the breach was, at most, harmless.

Suzuki disagrees, and asks that we consider the Answer as a whole, and read the contents of that Answer as if we accepted, as Suzuki urges, that, when it drafted the Answer, Suzuki was under the impression that this lawsuit only concerned those engines which Suzuki had sold to Arctic Cat. Such a reading, we find, demonstrates repeated references, by Suzuki, to the engines that Suzuki sold to Arctic Cat, and to snowmobile engines, in general. We find no reference, in Suzuki's Answer, to its sale of "EFI-equipped, two-cycle engines," to any other customer than Arctic Cat, or to any other recreational, or other vehicle, than snowmobiles. While this reading is not dispositive, it does corroborate Suzuki's representation that, at the time the Answer was drafted, Suzuki was of the view that Arctic Cat snowmobile engines were the sole focus of IRS's litigation.