UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

ORDER

* * * * * * * * * * * * * * * * * * *

Arctic Cat, Inc., a Minnesota Corporation,

Plaintiff,

vs.

Injection Research Specialists, Inc., a Colorado corporation, and Pacer Industries, Inc., a Missouri corporation,

Defendants.

and

Injection Research Specialists, Inc., a Colorado corporation, and Pacer Industries, Inc., a Missouri corporation,

Counterclaimants,

vs.

Arctic Cat, Inc., a Minnesota corporation, and Suzuki Motor Corporation, a Japanese Corporation,

Counterdefendants. Civ. No. 01-543(MJD/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 30th day of June, 2003.

FILED JUN 3 . 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Motion of the Plaintiff Arctic Cat, Inc. ("Arctic Cat"), to compel the Defendants/Counterclaimants Injection Research Specialists, Inc., and Pacer Industries, Inc. (collectively "IRS"), to respond to requests for admissions, or to deem those requests admitted, and upon the Motion of Pacer Industries, Inc. ("Pacer") to compel further response, by Arctic Cat, to Pacer's Interrogatory No. 1, and to sanction Arctic Cat for its failure to fully respond to that Interrogatory, by either precluding Arctic Cat's use of its variable timing injection defense, or limiting Arctic Cat to the use of the facts supporting that defense that it has already produced.[1]

---

[1]In addition to these formally filed Motions, the parties also presented a series of informal Motions. First, Arctic Cat moved to strike Pacer's Reply Memorandum in support of its Motion to Preclude Arctic Cat from introducing Evidence or Argument, as an improper filing. While we found abundant cause to grant such relief, in the interests of being fully informed, and since we had already considered the offending document, we declined to do so. We reiterate our statement, first expressed at the time of the Hearing that, without leave of the Court, the briefing of nondispositive Motions should conform to our Local Rules. The burden on the Court is overwhelming, when the parties brief an issue to the point of their exhaustion. As a result, at the Hearing, we distributed a series of ground-rules for all future filings in this action. We expect that the parties will strictly comply with that advisory, or risk the imposition of appropriate sanctions.

(continued...)

A Hearing on the Motions was conducted on April 11, 2003, at which time, Arctic Cat appeared by Andrew W. Horstman, Esq.; IRS appeared by Robert J. Blanch, Esq.; and Counterclaim Defendant Suzuki Motor Corporation ("Suzuki") appeared by Thomas H. Jenkins, Esq.

For reasons which follow, we grant Arctic Cat's Motion to Compel, we grant Pacer's Motion to compel Arctic Cat to supplement its response to Pacer's Interrogatory No. 1, and deny Pacer's Motion to sanction Arctic Cat for failing to properly respond to that Interrogatory. Since we have recited the factual background of the case

[1](...continued)
In the second informal Motion, IRS sought to resolve a discovery dispute with Suzuki Motor Corporation ("Suzuki"), concerning whether Suzuki intends to invoke an advice of counsel defense. We declined to reach that issue on an informal basis, and we advised IRS that, if it wanted a ruling on the issue, a formal Motion should be filed. For the same reason, we declined to hear IRS's Motion to Compel Arctic Cat to immediately produce financial documents and information, concerning IRS's expert damage report. We also noted that Arctic Cat had promised to make that information available to IRS, by no later than April 17, 2003, and we advised IRS that, if the promised production did not occur, and the parties were unable to resolve the issue without Court intervention, then IRS could file a formal Motion to Compel.

Finally, we considered IRS's informal Motion to Stay all discovery, and proceedings concerning the '374 patent, pending a determination by the District Court, on an anticipated Motion to Sever and Stay the proceedings as to that patent. We denied the Motion, as we are not inclined to preliminarily comment on issues properly before the District Court.

on several prior occasions, we now only recite those facts which are pertinent to the Motions pending before us.

## II. Discussion

### A. Arctic Cat's Motion to Compel Responses to Requests for Admissions, or in the Alternative, to Deem those Requests Admitted.

In its Motion, Arctic Cat has requested that we compel IRS to respond to its Requests for Admission Nos. 6-12 and 51, which were served on IRS in October of 2001, or deem those requests admitted. Request for Admission 51 relates to Claim 1 of the '803 patent, while Requests 6 through 12 relate to Claims 1 through 6, respectively, of the '374 patent. According to Arctic Cat, IRS originally responded by claiming that those Requests were premature, or that IRS lacked the necessary information to respond to the Requests, and that now, well over a year later, with extensive discovery having already been completed, IRS should be compelled to either supplement its answers, or have those Requests deemed admitted. Since different considerations arise from the Requests, as they related to two different patents, we will address the Motion in two parts.

#### 1. Requests of Admission Regarding Claim 1 of the '803 Patent.

Arctic Cat's Request for Admissions No. 51 asks IRS to admit that Arctic Cat has not infringed Claim 1 of the '803

patent. In its response, IRS objected to the request as vague and ambiguous as to time, and product, as premature, since discovery had not yet occurred, and on the ground that the Request sought the disclosure of privileged information. Subject to those objections, IRS denied the Request for Admission. Thereafter, on April 3, 2003, IRS served a Supplemental Response to Request for Admission No. 51, in which, after raising twelve general objections to the Request, IRS stated that it remained unable to confirm or deny the Request, because it lacked sufficient information to do so, consistent with its obligations under Rule 11, Federal Rules of Civil Procedure.

In particular, IRS claimed a need for additional information relating to part "(i)" of Claim 1 of the '803 patent, which relates to the priming control signals for the electronic fuel injection ("EFI") system. IRS maintained that, despite its numerous attempts, in both written discovery and in depositions, to gather the information it needed in order to admit or deny the Request, Arctic Cat had yet to provide a definitive response on that specific topic. However, at the Hearing, IRS did relate that it expected to receive a response to a new Interrogatory, on that topic, which it had served upon Suzuki, and represented that, if Suzuki provided a good faith Answer to that Interrogatory, then IRS could, forthwith, supplement its response to the Admission Request.

For its part, Arctic Cat maintains that it has consistently claimed that its products do not prime, and has produced documents to that effect. Arctic Cat contends that it has produced full control specifications from the EFI-system manufacturer, as well as software information, and raw data, and that Suzuki has also provided discovery on that issue, such that IRS should now be able to supplement its response to the Request. As we related at the time of the Hearing, IRS must, at some point, elect whether to assert a claim of infringement as to Claim 1 of the '803 patent. The issue before us is whether that time has now come. We think that it has.

Initially, we note that, despite IRS's contention that it is unable to supplement its response to the Request because of Arctic Cat's failure to provide sufficient discovery, IRS has not moved the Court for an Order compelling Arctic Cat to provide such discovery. We find it somewhat disingenuous for IRS to claim that Arctic Cat's production has been so lacking, such that IRS is unable to make that type of an election, consistent with its Rule 11 obligations, while never having filed a Motion to Compel production of the information in question. IRS has not been hesitant, in other contexts, to file Motions to Compel in this Court, and we have granted those Motions when warranted. While, no doubt, IRS would always prefer to have more information, on which to predicate its response to the Request, at some point, IRS has to make an

election on the information reasonably available to it, without deferring, indefinitely, a proper response.

IRS contends, however, that the case is still "in the middle of" fact discovery, as the discovery period is scheduled to close on July 13, 2003, and therefore, it should be entitled to continue discovering until the close of that period before providing a meaningful response to the Request. It asserts that it will re-spond to the Request as soon as it has sufficient information on which to base its response. IRS's Claim Chart was initially due on June 4, 2002. As of the date of the Hearing, ten full months had expired since that deadline, during which time, IRS has taken extensive discovery of the parties, and has not moved to compel additional production on this specific factual issue.

In our Order directing that the parties create Claims Charts, we provided that IRS could amend its Claims Chart, in order to reflect any additional Claims that it contends were infringed, and any additional products which it claims were infringing, without leave of the Court, if that amendment was made during the discovery period.[2] Our Order might seem to suggest that, since IRS had until the close of discovery to amend its Claims Chart, it should also

[2]The Order only requires that IRS and Pacer obtain leave of the Court to add new claims to the Claim Chart after the discovery period has closed.

have until that date in order to supplement its response to Arctic Cat's discovery requests on the same topic. However, the discovery period is not for IRS alone, and we must consider, as well, the effect that permitting IRS to wait until the last day of discovery to make such an election, would have on the disposition of this action. Were IRS permitted to wait until the last day of discovery in order to make its election, Arctic Cat would be precluded from conducting any discovery, relative to that claim, and we would be forced to once again extend the discovery in this action. Thus, we conclude that the time has come for IRS to make its election relative to Claim 1 of the '803 patent, and we direct it to supplement its responses to Arctic Cat's Request for Admission No. 51.

2. <u>Requests for Admission as to the '374 Patent</u>.

Requests for Admission Nos. 6-12 asked IRS to admit that Arctic Cat did not infringe upon Claims 1-6 of the '374 patent. IRS initially objected to the Requests as premature, saying that it could neither admit nor deny the Requests, but reserved the right to supplement its response, as discovery continued. Even though IRS' Claims Chart asserts that Arctic Cat infringed all six Claims of the '374 patent, IRS has still not supplemented its responses to these Requests for Admission. Instead, it now asserts that it should not be required to render such admissions, because

it believes that is likely that the District Court will grant its recently filed Motion to Sever and Stay the '374 patent issues from the current litigation, until the completion of the reissuance proceedings involving this patent.[3]

We do not predict the future and, unlike IRS, we harbor no certainty that the District Court will grant the Motion to Sever and Stay. In any event, the issue of whether to sever and stay the proceedings as to the '374 patent is not before us, as we have declined to grant a stay of discovery as to the '374 patent until the District Court has heard the Motion to Sever. See, fn.1, supra. Accordingly, this case must proceed, as to the '374 patent, just as it must as to all other claims in this action.

Unlike with the '803 patent, in its Claims Chart, IRS did assert that Arctic Cat infringed its '374 patent. Accordingly, there is no dispute that IRS is required to produce discovery as to that claimed infringement. However, since the '374 patent is currently involved in reissue proceedings, and since both parties have agreed that the '374 patent should not be a part of this litigation,[4] we have some question as to whether anything material would

---

[3]This Motion was filed on May 1, 2003, and was set to be heard, by the District Court, on June 6, 2003.

[4]While agreeing that the '374 patent should not be a part of this litigation, the parties disagree as to how to reach that end.
(continued...)

be accomplished by compelling IRS to further respond to this Request. We are persuaded, however, that something would be gained. Notwithstanding the parties' agreement, that the '374 patent should not be in this litigation, it remains an issue to be tried, or otherwise resolved, and therefore, it has the status of all of the other active claims in litigation. While it may be that IRS's responses to these Requests will have little practical meaning, after the resolution of the reissuance proceeding, we are confident that IRS can draft its responses to these Requests, in such a way as to provide substantive information, on the current status of the patent, subject to modification if the reissuance proceeding bears any impact on IRS's responses. Accordingly, we grant this part of Arctic Cat's Motion, and direct IRS to supplement its response to Arctic Cat's Requests for Admission Nos. 6-12.

B. Pacer's Motion to Preclude Arctic Cat from Introducing Evidence or Argument or, alternatively, to Compel Further Response to Interrogatories and for Sanctions.

Pacer contends that one of the key issues in this litigation is when, in any given cycle, Arctic Cat's EFI-equipped snow-

---

[4](...continued)
IRS believes that the action should be severed, and litigation as to the '374 patent be stayed, until the resolution of the reissue proceedings, while Arctic Cat believes that the '374 claims should be removed by means of a covenant not to sue. The parties have been unable to amicably resolve that dispute.

mobiles inject fuel, and how that occurs. According to Pacer, in its response to Pacer's Interrogatory No. 1 of January 6, 2003, Arctic Cat alleged that some of its products were non-infringing, because they employed a variable injection timing feature, but that, despite numerous attempts by Pacer to discover the facts upon which that response is based, Arctic Cat has failed to produce that information. Pacer complains that, despite detailed questions about the defense, Arctic Cat has only provided conclusory responses, and has generally pointed to hundreds of documents, when asked to provide the basis for that defense. As a result, Pacer seeks to compel Arctic Cat to identify, expressly, what facts it has relied upon for its assertion, in response to Pacer's Interrogatories, that some of its products are non-infringing because they employ a "variable injection timing" mechanism. In addition, Pacer asks that, as a sanction for Arctic Cat's failure to produce that evidence, we either preclude Arctic Cat, entirely, from presenting that defense at Trial, or we limit Arctic Cat to presenting those facts which it has already expressly disclosed, in support of that defense.

In response, Arctic Cat contends that it, and Suzuki, have already produced responsive materials on the topic. Arctic Cat maintains that it properly responded to Pacer's discovery requests, by referring to a number of produced documents as providing the sup-

port for its defense, and claims that it would be equally burdensome for it, or Pacer, to go through those documents, in order to identify the facts that Pacer seeks through this discovery request. Arctic Cat believes that Pacer expects it to have more information than it does, and it points to Suzuki, as the engine vendor, and the Japanese manufacturer of the engines, and not Arctic Cat, as the entities with detailed information about the engine's operation. Consequently, Arctic Cat contends that it has properly responded to the discovery requests, and asks that Pacer's Motion be denied.

While, "of necessity, the Court must accept, at face value, a party's representation that it has fully produced all materials that are responsive to a specific discovery request," Marvin Lumber v. PPG Industries, Inc., 168 F.R.D. 641, 641 n.1 (D. Minn. 1996), we must also monitor whether that production has been proper. Here, we conclude that Arctic Cat must provide a more detailed response to Pacer's Interrogatory, in which it must either specifically describe the facts upon which it bases its variable injection timing defense or, alternatively, specifically enumerate the documents in which responsive facts may be found.

In response to Pacer's Interrogatory, Arctic Cat referred Pacer to the control specifications from Kokusan, the Japanese engine manufacturer, to copies and printouts of computer software,

to several 30(b)(6) depositions, and to six specific documents, which were identified by Bates numbers, and contends that such a disclosure is a proper response under Rule 33(d), Federal Rules of Civil Procedure. However, the Rule provides as follows:

> Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whim the interrogatory has ben served or from an examination, audit or inspection of such business records * * * and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford the party serving the interrogatory reasonable opportunity to audit or inspect such records * * *. **A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.**

Rule 33(d), Federal Rules of Civil Procedure [emphasis added].

We find that Arctic Cat's response does not do proper justice to the final sentence of the Rule, as the Advisory Committee comments to that Rule, explain as follows:

> The Committee is advised that parties upon whom interrogatories are served have occasionally responded by directing the interrogating party to a mass of business records or by offering to make all of their records available, justifying the response by the option provided by that subdivision. **Such practices are an abuse of the option.** * * * The final sentence is added to make it clear that a responding party has the duty to specify, by category and

> location, the records from which answers to interrogatories can be derived.

Advisory Committee Notes to Rule 33, 1980 Amendment [emphasis added].

As a result, Arctic Cat cannot simply refer to numerous documents, but must either produce a full and intelligible Answer to Pacer's Interrogatory, which expressly identifies the facts upon which its claimed defense is based, or it must comport with the requirements of Rule 33(d), and specify where, in the referenced documents, Pacer may find information which answers the inquiry. Pacer is entitled to learn what Arctic Cat knows about the claimed defense, and the Rules do not allow Arctic Cat to leave it to Pacer to divine such information, on its own, by a review of a stack of documents. Arctic Cat must provide an Answer which would bind it, in such a way, that the response could be employed at Trial either to impeach, or to establish, facts relevant to the defense presented. Accordingly, Arctic Cat must supplement its response, in order to specify the facts upon which it relies on in support of its defense.

Although we do not now accede to Pacer's other request, that we sanction for Arctic Cat's failure to fully respond to this Interrogatory, by precluding it from raising that defense, or by limiting the facts it may present in support of this defense, we think it bears repeating our cautionary that, at the time of Trial,

the parties will be limited to presenting the evidence which it has disclosed to the opposition, and they cannot then present new evidence that unfairly surprises an opposing party. Simply stated, parties bear a risk that, having failed to fully discover as to relevant and material requests for information, they will be unable to rely upon a claim, or defense, to which such information pertains, at the time of Trial.

Accordingly, we grant Pacer's Motion to the extent it seeks to require Arctic Cat to supplement its response to Pacer's Interrogatory No. 1, but deny its request for sanctions as premature.

NOW, THEREFORE, It is --

ORDERED:

1. That Arctic Cat Inc.'s Motion to Compel Responses to its Request for Admission Nos. 6-12, and 51 [Docket No. 164] is GRANTED.

2. That Pacer Industries, Inc.'s Motion to Compel Further Responses to Interrogatory from Arctic Cat Inc. [Docket No. 161-2] is GRANTED.

3. That Pacer Industries, Inc.'s Motions for Sanctions, and to Strike any Evidence or Argument regarding Variable Injection Timing [Docket Nos. 161-1 and 161-3] are DENIED.

4. That Injection Research Specialists, Inc.'s Informal Motion to Stay all Discovery and Proceedings Concerning the '374 Patent is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE