UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

ORDER

* * * * * * * * * * * * * * * * * * *

Arctic Cat, Inc., a Minnesota Corporation,

Plaintiff,

vs.

Injection Research Specialists, Inc., a Colorado corporation, and Pacer Industries, Inc., a Missouri corporation,

Defendants.

and

Injection Research Specialists, Inc., a Colorado corporation, and Pacer Industries, Inc., a Missouri corporation,

Counterclaimants,

vs.

Arctic Cat, Inc., a Minnesota corporation, and Suzuki Motor Corporation, a Japanese Corporation,

Counterdefendants. Civ. No. 01-543(MJD/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 26th day of August, 2003.

FILED AUG 26 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Joint Motion of Arctic Cat, Inc. ("Arctic Cat"), and Suzuki Motor Corporation ("Suzuki"), to compel the production of certain documents, and deposition testimony, free from assertedly improper claims of privilege, and upon the Motions of Arctic Cat for leave to file a Second Amended Complaint, and to serve supplemental Invalidity Claims Charts.

A Hearing on the Motions was conducted on June 26, 2003, at which time, Arctic Cat appeared by Annamarie A. Daley, Esq., IRS and Pacer appeared by Anthony de Alcuaz, Esq., and Suzuki appeared by Thomas H. Jenkins, Esq.

For reasons which follow, we grant, in part, Arctic Cat's, and Suzuki's, Joint Motion to compel discovery and deposition testimony; we deny Arctic Cat's Motion for Leave to File a Second Amended Complaint; and we deny Arctic Cat's Motion to Submit Additional Invalidity Claims Charts. Since we have previously recited the factual background to the parties' arguments, we will not do so again but, instead, we reference only those facts which are pertinent to the Motions now pending before us.

## II. Discussion.

A. Arctic Cat's, and Suzuki's, Joint Motion to Compel Discovery.

Arctic Cat and Suzuki (hereinafter, "Arctic Cat") seek to compel the production of certain documents, and to compel two deponents to fully respond to questions, without the interposing of what, Arctic Cat claims, are improper privilege objections by counsel for IRS. Arctic Cat maintains that IRS and Pacer Industries, Inc. (collectively "IRS"), have improperly interposed the attorney-client privilege, and the attorney-work product doctrine, in an attempt to obstruct Arctic Cat's inquiry into the circumstances surrounding the destruction of documents which, Arctic Cat maintains, are relevant to this litigation. Arctic Cat argues that it is entitled to discover the reasons, as well as the circumstances, which underlie the destruction that occurred, and to inspect any non-privileged documents, and things, that have, as yet, not been produced.

In its attempt to obtain the "relevant" documents, Arctic Cat served a Subpoena on the law firm of Kutak Rock, which had represented IRS in the prior Polaris action. Kutak Rock responded to the Subpoena by representing that it had either transferred the responsive documents to IRS's current counsel, or had destroyed those documents, under Kutak Rock's routine document destruction procedures. Arctic Cat attempted to inquire as to that document de-

struction process, during its Rule 30(b)(6) deposition of IRS in January of 2003, and was provided a listing of documents that had been destroyed by Kutak Rock. See, Exhibit D to Sorenson Declaration. However, IRS's deponent was unable to testify as to the circumstances which surrounded the documents' destruction.

A second Subpoena was then served on Kutak Rock. In response to that Subpoena, Kutak Rock related that it did have some responsive documents, but that it was withholding them from production, on the basis of privilege, and it produced a privilege log of the documents. Thereafter, a Rule 30(b)(6) deposition was taken, as to Kutak Rock, during which John Bernstein ("Bernstein"), who was Kutak Rock's designee, and who was represented, at that deposition, by current counsel for IRS, testified that Kutak Rock's previous assertion, that responsive documents were destroyed according to "routine document destruction procedures," was a "misstatement," and that, in fact, those documents had been destroyed "pursuant to the protective orders that had been entered in the [Polaris] case * * *." See, Exhibit G to Sorenson Declaration, at 15-16. Bernstein further testified, that the reason for the destruction of the documents was due to "a general understanding * * * developed throughout a long period of time with respect to the disposition of these documents." Id. at 17-18. During the deposition, Bernstein was advised not to answer questions concerning whether Kutak Rock

had taken direction from IRS, or its attorneys, as to which documents should be destroyed. He further suggested that Peter Clark ("Clark"), who is a paralegal at Kutak Rock, would have more information concerning the document destruction process.

During the course of Clark's deposition, Arctic Cat asked about the listing of destroyed documents, which had been produced at the Rule 30(b)(6) deposition of IRS. Clark testified that he believed that the listing had been prepared by IRS's current counsel, on the basis of a Kutak Rock document, which was entitled "Index of boxes in storage," and which was listed on Kutak Rock's privilege log. Clark also testified that Peter Van Mieghem, or other attorneys from the law firm that represents it in these proceedings, had, in fact, been personally involved in reviewing the Polaris documents, and in designating which should be transferred, and which should be destroyed.

According to Arctic Cat, the evidence shows that, between May and June of 2002 -- well after the start of this litigation -- Kutak Rock destroyed one hundred boxes of documents, under the instruction, or supervision, of IRS's current counsel. Arctic Cat believes that, among those documents, were certain original papers, including: documents relevant to the issue of damages, which were contained in IRS's expert witness files from the Polaris litigation; a number of three-ring binders, which were created by IRS

concerning the patents-in-suit, and potential purchasers of the technology involved; and original deposition exhibits from the Polaris litigation, including, at least, two exhibits relating to prior art, which IRS has admitted as now being missing.

Arctic Cat maintains that it should be able to inquire into the circumstances which surround the document destruction, but that it has been hampered, at every turn, by IRS's attorneys, who are improperly advising non-party deponents to assert a privilege, in response to certain questions. Arctic Cat asserts that it is entitled to discovery of the facts which underlie the destruction of documents, including the "who, when, and why," of that destruction. According to Arctic Cat, that information is necessary in order to determine whether IRS, and its current counsel, might be subject to sanctions for spoliation of evidence in this case, or some lesser sanction.

Arctic Cat also complains that IRS has improperly failed to produce documents, which are in the possession, custody, or control, of Ron Chasteen ("Chasteen"), who is one of the inventors of the relevant patents. In particular, Arctic Cat maintains that IRS has failed to produce an agreement, that extends between Chasteen and John Balch, who is either the owner of IRS, or the business person, at IRS, who is in charge of this litigation, which memorializes IRS's promise to pay Chasteen $135.00 per hour, plus ten

percent of any recovery from the litigation, in return for Chasteen's providing testimony, conferring with IRS's attorneys, and examining documents.[1] Arctic Cat not only seeks the production of any such contract, between Chasteen and IRS, but all similar contracts between IRS and any fact witness.

As a result, Arctic Cat asks that we overrule the instructions not to answer, during the Kutak Rock depositions, and that we compel a second deposition of Kutak Rock, at IRS's expense, in order to permit Arctic Cat to inquire into the topic of document destruction, without further objection from counsel for IRS. Arctic Cat also asks that we compel the production of any agreement concerning the compensation that Chasteen, or any other fact witness, is to receive from IRS, in connection with their participation in this litigation. Our analysis starts with Arctic Cat's request that we compel IRS to produce any contracts evidencing a promise to pay fact witnesses, in return for work on this case.

---

[1]Arctic Cat had also asserted that IRS had failed to produce documents which are in Chasteen's possession, concerning electronic fuel injection, and which were responsive to a personal Subpoena served on Chasteen. At the Hearing, we were informed that such production was scheduled to occur on that same date and, accordingly, we believe that this aspect of Arctic Cat's Motion to Compel is moot, and we do not address it further.

We also do not address Arctic Cat's allegation that IRS wrongfully designated, as privileged, certain documents from its privilege log, as owing to an error in briefing this issue, Arctic Cat had withdrawn that portion of its Motion.

Although, at the Hearing, IRS had asserted that this part of Arctic Cat's Motion was moot, Arctic Cat responded that there were a number of contracts that it had not yet received, including, but not limited to, the one between Chasteen and IRS, which is purported to allow Chasteen to receive a percentage of the proceeds of this litigation, for certain work performed. IRS has not asserted that such documents are irrelevant, nor has it objected to their production on any other ground. We find that such agreements are relevant, and therefore, are discoverable, and we direct IRS to produce all such contracts, forthwith.[2]

We turn, then, to the issue of whether the privilege objections were properly asserted. We first address IRS's contention that this aspect of Arctic Cat's Motion is not properly before this

---

[2]We do not predicate this ruling on any violation to public policy that such a witness fee may entail, as the Record before us is not sufficient to address that issue on any informed basis. See, e.g., <u>In re Robinson</u>, 151 A.D. 589, 136 N.Y.S. 548, 556 (N.Y.App.Div. 1912), aff'd, 209 N.Y. 354, 103 N.E. 160 (1913) ("[P]ayment * * * to a witness to testify in a particular way, the payment of money to prevent a witness's attendance at a trial and the payment * * * to make him 'sympathetic' * * * are all payments were are absolutely indefensible," and "[t]he payment of a sum of money to a witness 'to [sic] tell the truth' is as clearly subversive of the proper administration of justice as to pay him to testify to what is not true."); <u>Rentclub, Inc. v. Transamerica Rental Fin. Corp.</u>, 811 F. Supp. 651, 654-55 (M.D. Fla. 1992), aff'd, 43 F.3d 1439, 1440 (11th Cir. 1995); <u>Rule 3.4(b), Minnesota Rules of Professional Conduct</u>. Rather, such information plainly goes to the credibility of the witness, whether he is to provide facts or expert opinion.

Court. The Subpoena which compelled Kutak Rock's Rule 30(b)(6) deposition, and its production of documents, was issued by the District Court of the District of Colorado and, therefore, this Court lacks jurisdiction to compel Kutak Rock, which is not a party to this action, to give deposition testimony, or produce documents. IRS maintains that the Motion must be brought before the United States District Court for the District of Colorado.

The Federal Rules of Civil Procedure plainly contemplate that disputes, as to the taking of a deposition of a nonparty witness, are to be resolved by the District Court in the District in which the deposition is to be taken. See, Rule 37(a)(1), Federal Rules of Civil Procedure ("An application for an order [compelling disclosure or discovery] to a person who is not a party shall be made to the court in the district where the discovery is being, or is to be, taken."); see also, In re Digital Equipment Corp., 949 F.2d 228, 231 (8th Cir. 1991). Nevertheless, Arctic Cat argues that its Motion is properly before this Court, because it is the corporate rights of IRS, which is a party to this litigation, and not the personal rights of the non-party deponents, that are being asserted in the privilege objections. Under Rule 37(a)(1), Federal Rules of Civil Procedure, "[a]n application for an order to a party [to compel disclosure or discovery] shall be made to the court in which the action is pending." Arctic Cat maintains that we can direct

IRS not to interpose objections, based on IRS's own interests, in the referenced depositions, because we do have jurisdiction over IRS.

We find the issue presented to be a close one. While we are loathe to intrude upon another Court's jurisdiction, and to direct the actions of persons falling under that jurisdiction, we do have jurisdiction over the conduct of the parties in this litigation, irrespective of where that conduct occurs. Thus, we think that Arctic Cat is correct and, while we cannot direct Kutak Rock to produce documents, or to answer questions in a Rule 30(b)(6) deposition, we can instruct a party, which is participating in that deposition, or discovery production, not to impede that process, by wrongfully advising the non-party witnesses to object on the ground of a privilege, purportedly held by that party. Accordingly, we proceed to the issue of whether IRS properly recommended interposing a claim of privilege in response to certain of the deposition questions asked.

We are troubled by the substance of the Motion. Arctic Cat's allegation, that a party to this litigation purposefully destroyed documents which were relevant to the litigation, and were responsive to production requests, is not one that we take lightly. However, as we have often stated, we guard the attorney-client privilege closely, as we believe that the privilege assures effective

communication, and representation, between an attorney and his or her client. That having been said, we conclude that the attorney-client privilege is being employed by IRS, in this case, as both a sword and a shield. When Arctic Cat has asked who was involved in Kutak Rock's decision to destroy the documents, Kutak Rock has asserted that IRS's counsel was involved, and yet IRS has prevented Kutak Rock from answering any further questions about those decisions, on privilege grounds. However, IRS's counsel later filed an Affidavit in which it is claimed that IRS was not involved in the decision to destroy documents. Thus, IRS claims the attorney-client privilege when the disclosure of information may not inure to its benefit, but addresses the same core issues, by conclusory statement which plainly arises from the attorney-client relationship. IRS cannot have it both ways. It either was, or was not, involved in the destruction of documents by Kutak Rock, and Arctic Cat is entitled to discovery on that subject.

If, in fact, IRS was not involved in the decision, then IRS wrongfully instructed Kutak Rock to assert an attorney-client privilege as to the questions concerning the decision to destroy documents. If IRS was involved, then that assertion may be proper, unless some exception to the privilege applies, or that privilege was waived. In either event, we believe that Arctic Cat is entitled to reopen its deposition of Kutak Rock, so as to inquire

into the law firm's previous assertion that IRS was involved in the decision to destroy documents.

We also conclude that Arctic Cat is entitled to inquire as to which documents were destroyed, and when they were destroyed. This information is the type of factual information, that may be discovered without invading an attorney-client communication. See, In re Bieter Co., 16 F.3d 929, 940-41 (8th Cir. 1994)(The attorney-client privilege shields only communications, and not the facts contained therein, from discovery.). However, we have reviewed the depositions of the Kutak Rock designees, and have not found that any arguably improper assertions of privilege were interposed as to questions about what was destroyed, and when. A document which was prepared, and that listed by Bates number, the documents destroyed by Kutak Rock, and the dates that they were destroyed, has been produced. The listing provides Arctic Cat with an identification of what documents were destroyed, their description, and the dates on which the documents were sent by Kutak Rock for shredding.

Finally, we address Arctic Cat's assertion, that it is entitled to discover what criteria were applied in determining which documents were to be destroyed, so as to understand the "why" of the document destruction. This inquiry will depend, in no small part, on whether IRS was involved in that decision. To the extent that the decision was rendered only by Kutak Rock, we find that the

information is discoverable. We cannot see how the attorney-client privilege, which shelters communications between an attorney and his client, would apply to intra-company decisions on document retention and destruction. If, however, IRS was involved in deciding which documents to destroy, and why, its communications with Kutak Rock on this topic may be sheltered from inquiry, or the privilege may have been waived, or vitiated, by an intent to commit a wrongful act. We cannot make the latter determination on this Record and, therefore, we now limit our ruling to the circumstance that Kutak Rock solely made the destruction decision. If it is determined, that IRS was also implicated in the document destruction decisions, then we will need additional briefing on the far more complex issue that will then be presented.

B. <u>Arctic Cat's Motion for Leave to File a Second Amended Complaint</u>.

Arctic Cat seeks leave to file a Second Amended Complaint, in order to supplement its allegation that the patents-in-suit are unenforceable due to inequitable conduct. Although it acknowledges that its Motion comes well-after the deadline of March 4, 2002, for the filing and hearing of Motions to amend the pleadings, which was set in our Pretrial Order, Arctic Cat maintains that it should be permitted to make this late amendment, because it has acted with diligence and good faith, since there is a high probability that

they will be successful on such claims, and in view of their belief that the Defendants will not thereby be prejudiced. Not surprisingly, the Defendants oppose the Motion, because it is untimely, and because Arctic Cat was not diligent in seeking leave to amend, as it has been aware of the facts underlying its proposed new claim, for some time.

Arctic Cat claims that the patents-in-suit were obtained as a result of misrepresentations made by the patents' inventor, Chasteen, and his attorney, to the United States Patent and Trademark Office ("PTO"). Specifically, Arctic Cat asserts that Chasteen used sham numbers in a figure presented as part of his patent application, which relate to the fuel map, which is stored in the system's data processor, and which designates the appropriate amount of fuel that should be injected into the engine, at any given combination of speed, and throttle position. According to Arctic Cat, Chasteen's misrepresentations were later compounded by certain representations of his patent attorney, in the prosecution of both the '803 and '374 patents. In addition, Arctic Cat claims that Chasteen failed to disclose material information about prior art which, it claims, would have rendered the '803 patent invalid.

Arctic Cat relates that it did allege inequitable conduct as an affirmative defense to the counterclaims asserted by the Defendants, but that those allegations were limited to assertions that

Chasteen made false statements in a reissue oath, which Chasteen had submitted during the prosecution of the '803 patent. It asks that we now permit it to amend its Complaint, so as to include further allegations of inequitable conduct, as well as to include a more detailed version of its original inequitable conduct allegations. According to Arctic Cat, permitting it to make such an amendment would not inject any significant new issues in the case, because Suzuki already placed the sham data at issue by arguing, in its discovery responses, that the disclosure of sham data constituted a failure to disclose the best mode, as is required by Title 35 U.S.C. §112. As such, it contends that "the nature, meaning, and accuracy of the representations about the fuel map in the specification are already being litigated in this action."

Arctic Cat maintains that Under Rule 15(a), Federal Rules of Civil Procedure, it should be allowed the amendment it requests, because it has not been dilatory, in moving to do so. Arctic Cat contends that, in deciding when to move for leave to amend its Complaint, it was mindful of the Federal Circuit's statements on allegations of inequitable conduct in patent litigation; namely, that "the habit of charging" such "conduct in almost every major patent case has become an absolute plague," and that "[a] patent litigant should be made to feel, therefore, that an unsupported charge of 'inequitable conduct in the Patent Office' is a negative

contribution to the rightful administration of justice." Burlington Industries, Inc. v. Dayco Corp., 849 F.2d 1418, 1422 (Fed. Cir. 1988).

Accordingly, Arctic Cat represents that it was "hesitant" to move to amend its Complaint, until it had all the relevant evidence, and that it was impeded in its attempts to gather that evidence, because it was prevented from deposing the patent attorney, who prosecuted the '374 patent. Arctic Cat further maintains that its inequitable conduct defense is not futile. As a result, it contends that it has provided the good cause required by Rule 16(b), in order to bring a Motion outside of the deadlines imposed in the Scheduling Order, since it has acted diligently, and cause exists for any resultant delay.

IRS objects to the Motion on the ground that Arctic Cat cannot satisfy the good cause requirement of Rule 16(b), nor the standards for amending its Complaint under Rule 15(a). According to IRS, the amendments, which Arctic Cat has proposed, are not based on newly discovered evidence but, instead, on documents and testimony that Arctic Cat has long known. In support of that contention, IRS relates that, on October 18, 2002, Arctic Cat produced to IRS a number of pleadings from the Polaris litigation, including some related to a Summary Judgment Motion, which actually raised that same issue. Accordingly, IRS maintains that, at least by that

date, Arctic Cat was aware of the facts supporting its inequitable conduct claims, at least sufficiently to have satisfied the standards imposed by Rules 11 and 9, Federal Rules of Civil Procedure, and could have moved, at that time, to amend its Complaint to include such a claim. Further, IRS maintains that, contrary to Arctic Cat's assertion, IRS will be prejudiced by a late amendment, because it comes too close to the discovery deadline, and would set the case back, as IRS would need to conduct additional discovery on that issue.

Where, as here, the deadline for the amendment of pleadings has long since expired, the propriety of the Motion for leave to amend "is most properly considered within the framework of Rule 16(b), Federal Rules of Civil Procedure." Alholm v. American Steamship Co., 167 F.R.D. 75, 77 (D. Minn. 1996). As we have reiterated:

> Rule 16(b), Federal Rules of Civil Procedure, provides that a Scheduling Order "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." The "good cause" standard is an exacting one, for it demands a demonstration that the existing schedule "cannot reasonably be met despite the diligence of the party seeking the extension." Rule 16(b), Federal Rules of Civil Procedure, Advisory Committee Notes -- 1983 Amendment; see also, Julian v. Equifax Check Services, Inc., 178 F.R.D. 10, 16 (D. Conn. 1998). It hardly bears mention therefore, that "carelessness is not compati-

> ble with a finding of diligence and offers no reason for a grant of relief." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). Nor does the question of good cause turn on the existence or absence of prejudice to the non-moving party. Luigino's Inc. v. Pezrow Cos., 178 F.R.D. 523, 525 (D. Minn. 1998).

Scheidecker v. Arvig Enterprises, Inc., 193 F.R.D. 630, 631-32 (D. Minn. 2000), quoting Archer Daniels Midland v. Aon Risk Services Inc., 187 F.R.D. 578, 581-582 (D. Minn. 1999).[3]

Our Court of Appeals has emphasized that Rule 16(b) provides the appropriate test for Motions to Amend, which arise after the deadline for such Motions has expired, as follows:

> It is true that the Federal Rules are usually liberally construed to permit parties to amend pleadings, add additional parties and to similarly control the pace of litigation. See, e.g., Hopkins v. Saunders, 199 F.3d 968, 974 (8th Cir. 1999), cert. denied, [531 U.S. 873], 121 S.Ct. 176, 148 L.Ed.2d 121 (2000); Gray v. Bicknell, 86 F.3d 1472, 1481 (8th Cir. 1996). As regards case management orders, however, the Federal Rules set a less forgiving standard. Federal Rules of Civil Procedure 16(b) specifies that such an order "shall not be modified except upon a showing of good cause and by leave of the district judge." Thus, a moving party must first make the requisite showing. Even then the district court retains discretion as to whether to grant the motion. As a vehicle designed to streamline the flow of litigation through our crowded dockets, we

---

[3]Local Rule 16.3 serves to reinforce the need for a party to show good cause, when seeking to extend the deadline for amending the pleadings. The Advisory Committee Notes to Local Rule 16.3 explain that the Rule is "* * * intended to discourage modifying pretrial schedules unless good cause has been shown." Local Rule 16.3, Advisory Committee Notes.

> do not take case management orders lightly, and will enforce them. In re Milk Prods. Antitrust Litig., 195 F.3d 430, 437 (8th Cir. 1999), cert denied sub nom. Rainy Lake One Stop, Inc. v. Marigold Foods, Inc., 529 U.S. 1038, 120 S.Ct. 1534, 146 L.Ed.2d 348 (2000).

Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001).

As the Court expressed, in Rouse v. Farmers State Bank of Jewell, 866 F. Supp. 1191, 1198 (N.D. Iowa 1994):

> A scheduling order is an important tool in controlling litigation. Jochims v. Isuzu Motors, Ltd., 145 F.R.D. 507, 510 (S.D. Iowa 1992). A magistrate judge's scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D. Me. 1985).

"Scheduling orders have become increasingly critical to the district court's case management responsibilities because '[i]t is well known that we litigate these days under the burden of heavy caseloads and clogged court calendars.'" Id. As observed by the Court, in Geiserman v. MacDonald, 893 F.2d 787 (5th Cir. 1990), the flouting of pretrial deadlines causes substantial harm to the judicial system. Accordingly, "[w]e doubt that it can be seriously questioned that '[a]dherence to reasonable deadlines is * * * critical to maintaining integrity in court proceedings.'" Alholm v. American Steamship Co., supra at 79, quoting Rouse v. Farmers State Bank of Jewell, supra at 1199.

Under this standard, we find no merit to Arctic Cat's Motion. First, we disagree with Arctic Cat's assertion that no prejudice would befall IRS if the Motion were granted, as the facts sought to be alleged were already known because of Suzuki's discovery responses. As we have observed elsewhere, however, "the perception of prejudice, like beauty, is largely in the eyes of the beholder." Luigino's Inc. v. Pezrow Cos. Inc., supra at 525. "Here, [IRS] can legitimately complain" that Arctic Cat's untimely filing of its Motion, so close to the close of discovery, and after it has had its trial strategy in place, could effectively deny IRS "an opportunity to fully explore the dimensions of the proposed claim," or by "requir[ing] a further delay in the scheduling of a Trial, as discovery on that issue ensues." Id. "We need not, however, exhaustively examine the issue of prejudice for, as we have already related, Rule 16(b) is driven by 'good cause' on the part of the proponent of a newly formulated claim, and not by a showing of prejudice on the part of the nonmoving party." Luigino's Inc. v. Pezrow Cos. Inc., supra at 525; see also, Bradford v. DANA Corp., supra at 809.

We are also unable to agree with Arctic Cat's assertion that it has satisfied the good cause standard required for allowance of its Motion. Arctic Cat contends that it was not dilatory in bringing its Motion, because it was waiting to make sure that it had all