of the relevant evidence on the issue, so as not to advance an unsupported claim of inequitable conduct. While we applaud Arctic Cat's intent in not spreading the "plague" of unsupported inequitable conduct charges, such an intent does not satisfy the good cause requirement so as to permit a proposed amendment which is substantially untimely. IRS argues, and Arctic Cat does not dispute, that the acts, which are alleged to have been inequitable, happened years ago. Further, Arctic Cat has not disputed that, in October of 2002, it produced to IRS, certain pleadings from the Polaris case, which raised the same inequitable conduct charges. We find no excuse for Arctic Cat's failure to seek an amendment to its Complaint on a timely basis. Arctic Cat's only excuse is that it was unable to conduct certain discovery, relating to the patent attorney on the '374 patent, but no Motion to Compel that discovery was timely filed, and we are without a competent showing that, without such discovery, the proposed inequitable conduct amendments would not have been cognizable. Therefore, finding no good cause to excuse Arctic Cat's delay in bringing its Motion to Amend, we deny the Motion.

C. Arctic Cat's Motion to Submit Additional Invalidity Claims Charts.

Arctic Cat also seeks relief from the deadline imposed for its service of invalidity Claims Charts, in order to serve supplemental

invalidity Claims Charts, that are based upon prior art references and documents which, it claims, were only recently received. Arctic Cat maintains that it will be prejudiced if it is not permitted to supplement those Claims Charts, and that the Defendants will suffer no prejudice if it is allowed to do so. For their part, IRS and Pacer dispute that any of the prior art, on which the supplement Claims Charts are based, was newly discovered. IRS maintains that Arctic Cat was aware of the prior art for months, but failed to take the requisite steps to obtain that art, and that, even after it did acquire the art, Arctic Cat waited a number of months before seeking to amend its Claims Charts. Accordingly, IRS maintains that Arctic Cat has not made the required showing to obtain relief from the dates imposed for the service of its invalidity Claims Charts. Finally, IRS maintains that it will be prejudiced by the requested extension, as it has already filed its expert rebuttal report.

We set forth the requirements for the parties' service of Claims Charts, in an Order dated May 15, 2002, which provided as follows:

> The Plaintiff and Counterdefendant can add prior art to their original Statements only by leave of the Court, upon a showing:
>
> a. that they were not, and could not reasonably have been located earlier by the party seeking leave to add such art, and

> b. that it is not merely cumulative or prior art already listed, and
>
> c. how the party seeking the amendment would be prejudiced if leave were denied, and how the Defendants would not be prejudiced if leave were granted.

[Docket No. 77].

There is no dispute that element "b" in this showing has been met, as there is no assertion, by IRS, that the prior art, which Arctic Cat seeks to add to its invalidity Claims Charts, is not duplicative of art already disclosed by Arctic Cat. Accordingly, the disposition of the Motion turns on whether the prior art was, or could have been, reasonably located by Arctic Cat earlier, and the respective prejudice to the parties in granting, or denying, the Motion.

Without doubt, our grant of the Motion would work a prejudice to IRS, because IRS has already filed its rebuttal expert report, in which its experts reviewed the invalidity Claims Charts of Arctic Cat, and expressed their opinions as to that art. While Arctic Cat claims that there would be no prejudice to IRS, because its delay in moving to serve supplemental Claims Charts is due to IRS' production delays, because IRS is already familiar with the prior art from earlier litigation, and because IRS was forewarned that Arctic Cat intended to update its Claims Charts after IRS had provided Arctic Cat with pertinent prior art, the fact remains that

IRS formulated Trial strategies based upon Arctic Cat's initial invalidity Claims Charts, and would be required to present the new evidence to its experts, for a reevaluation of their earlier opinions. Moreover, we cannot foreclose the possibility that amended Claims Charts, at this late date, will not force IRS to alter tactical decisions, as to how to defend the claims against it, or prosecute its counterclaims, based upon the Claims Charts that Arctic Cat served over a year ago. While IRS might have had some knowledge of the proposed prior art, by virtue of prior litigation in which it was involved, we do not share Arctic Cat's confidence that the requested late supplementation will cause IRS no prejudice.

However, we also find it is equally plain, that were we to deny Arctic Cat's Motion, Arctic Cat would also suffer prejudice. For its part, Arctic Cat has argued that, without the ability to supplement its Charts, it will be foreclosed from presenting a claim-by-claim analysis of how the prior art invalidated the patents in suit. Accordingly, irrespective of our decision, here, either one party, or the other, would be prejudiced, and we proceed to the question of whether Arctic Cat has shown that the prior art, that it seeks to add to its Claims Charts, "w[as] not, and could not reasonably have been located earlier" by Arctic Cat.

In addressing that question we are, once again, faced with the familiar refrain in this case, that a failure to timely act by one party was owing to delays in the production of documents, and materials, by another. Here, according to Arctic Cat, when it served its initial invalidity Claims Charts, it identified Mercury Marines ("MM"), Outboard Marine Corporation ("OMC"), Bosch, Kawasaki, and others, as the source of prior art which either anticipated, or rendered obvious, the claims of the patents-in-suit, and stated that IRS was in possession of that prior art and had not yet produced it, and that Arctic Cat would update its Claims Charts when it had received that discovery. As related by Arctic Cat, despite being aware that Arctic Cat planned to rely on that prior art, and despite Arctic Cat's production requests to IRS to disclose that art, Arctic Cat continued to receive relevant prior art, from IRS, as late as June 3, 2003. Accordingly, Arctic Cat asserts that, since IRS was aware of Arctic Cat's intention to supplement its Charts upon receipt of that art, and because of IRS's dilatory production of that art, we should permit it to supplement its Claims Charts at this time.

As to its claims that IRS unfairly delayed production of the prior art, Arctic Cat relates that the majority of the prior art, which it seeks to add to its Claims Charts, was produced as part of the Polaris litigation and, although IRS possessed, and could have

produced that art, Arctic Cat was forced to obtain the references through timely subpoenas to third parties, including IRS's former legal counsel. Arctic Cat contends that IRS's claim, that it could not produce that art, was false.

IRS counters that Arctic Cat became aware of the prior art references, which it now seeks to add to its Claims Charts, a considerable time ago, but failed to take steps, on its own part, to obtain that art. It notes that Arctic Cat referenced certain prior art in its original invalidity Claims Chart, which was served in July of 2002, evidencing that it was aware of the prior arts' existence. It further asserts that the prior art was available to Arctic Cat, by way of a publicly available pleading, entitled "Prior Art Under 35 U.S.C. §282," which was filed in the Polaris litigation on January 3, 1997 -- a pleading that Arctic Cat actually produced to IRS in October of 2002. Arctic Cat does not deny that it had the pleading, and knew of the existence of that prior art, but maintains that, without the exhibits to that pleading, which it did not have, it did not have the necessary details, and explanations of that art, to add the art to its Claims Chart.

IRS also asserts, however, that even if it were true that Arctic Cat could not supplement its Claims Charts until it had received certain, more detailed production concerning that art, Arctic Cat had that detailed discovery, well before it noted this

Motion. First, IRS asserts that the Ohmori SAE paper, which is one of the prior art references Arctic Cat seeks to add to the Claims Chart -- and one which was not referenced in the initial invalidity Chart -- was actually reviewed by Arctic Cat's counsel in April of 2002, and Arctic Cat is unable to explain why it waited until June of 2003, to prepare a Claims Chart as to that reference.

As to the Bosch Handbooks, which Arctic Cat also seeks to add to its Claims Chart, IRS maintains that Arctic Cat produced those handbooks to IRS on January 24, 2003, and that, again, Arctic Cat has failed to explain why it waited six months to seek to add claims based on that prior art. With respect to the OMC prior art, IRS asserts that, despite mentioning the prior art in its initial Claims Charts, and thereby acknowledging its existence, Arctic Cat inexplicably waited until the Fall of 2002 to seek permission, from OMC, to use the prior art which was covered by the Protective Order in the Polaris litigation. IRS further contends that it was IRS which eventually sought, and received permission from OMC's successor, to produce certain of those documents to Arctic Cat, and that it produced that art to Arctic Cat in February of 2003. Again, IRS argues that Arctic Cat has failed to explain its considerable delay in moving to supplement its Claims Chart, after receiving that material.

Likewise, with regard to the MM prior art, IRS relates that it was aware of that art reference at the time of its initial Claims Chart, and that the art was covered by the Polaris Protective Order, that Arctic Cat neither sought third-party discovery, nor permission from MM to use the prior art, until many months after it had served its initial Claims Chart. IRS argues that Arctic Cat received the MM prior art on January 24, 2003, and then, again, on April 8, 2003, but failed to move quickly to obtain Court leave to supplement its Claims Charts.

In addition to objecting to the Motion on the basis that Arctic Cat might have, and should have, acted in a more diligent fashion, IRS also objects for the reason that the Motion is an effort by Arctic Cat to supplement its own expert report, after the deadline for the filing of such reports had expired, and after IRS had served its responsive report. According to IRS, Arctic Cat's expert report on invalidity did not contain a Claims Chart, had no element by element analysis of the alleged prior art, few suggestions to combine prior art, and did not include a number of the combinations set forth in Arctic Cat's proposed invalidity Claims Charts. IRS contends that such an attempt is evidenced by the fact that Arctic Cat maintains that it would be prejudiced if we deny its Motion, because it will be unable to make a claim-by-claim explanation of the invalidating prior art.

Like other Courts which have provided for the use of claims charts in patent infringement litigation, we do so "'to prevent the "shifting sands" approach to claim construction,'" so as to force the parties to make an election as to their theory of the case which, in turn, promotes more focused discovery, and Motion practice. Genentech, Inc. v. Amgen, Inc., 289 F.3d 761, 774 (Fed. Cir. 2002), quoting Atmel Corp. v. Info. Storage Devices, Inc., 1998 WL 775115, at *2 (N.D. Cal., November 5, 1998). Here, we note that Arctic Cat made IRS aware that it intended to rely on the prior art references, and that it would update its Claims Chart when it had received those references. We also note that IRS had a familiarity with the prior art references, through its involvement in the Polaris case. Thus, in a literal sense, it is unlikely that IRS is surprised by the proposed amendment, and perhaps, permitting the late amendment to the Claims Chart, would not return the case to its infancy.

However, we are troubled by the fact that Arctic Cat's Motion has come after the expert disclosure deadline, and after IRS has served its responsive expert reports. IRS has asserted that Arctic Cat's proposed Amended Claims Chart contains an element-by-element analysis of how each claim of the '803 patent is present in a specific prior art reference, but that Arctic Cat's expert report only made vague references to the prior art, without quoting any

claim language, enumerating the documents it relied upon to reach its conclusions, or citing to any specific page numbers where the elements to the claim are allegedly found. Further, IRS lists thirteen combinations of art that appear in the Amended Claims Chart, which do not appear in the expert report. In preparing its expert opinion report, then, IRS did not have this particularized information. We are further troubled by the fact that it appears that Arctic Cat had these prior art references in the early part of this year, but waited until now, after the expert disclosure deadline, to bring this Motion. We cannot exclude the potential, for it is as plausible as any explanation offered by Arctic Cat, that the delay was caused by a change in Arctic Cat's legal counsel, who now may have different Trial strategies than those pursued by its previous counsel.

In sum, we are confronted with the characteristic finger-pointing that has bedeviled this case since its inception, with each party contend to assert that any delay is owing to the actions, or inaction, of an opposing party. As has been our experience in the past, any delay, doubtlessly, has been caused by a combination of acts by both parties. This Motion, however, comes over a year after the Arctic Cat's deadline to file its Claims Charts, several months after Arctic Cat had the prior art that it now seeks to add to the Chart, and after the expert reports have

been served. At some point, the "sands" must stop "shifting," such that the parties, and the Court, can identify, and focus, upon the substantive issues in the litigation. We find that the time for additional shifting has now passed, and frankly, we are confident that if the proposed prior references had any importance, Arctic Cat would have promptly drawn to our attention, the need to allow for supplementation of its Claims Chart, well before the date on which this Motion was filed. For these reasons, we deny Arctic Cat's Motion to Supplement its Claims Charts.

NOW THEREFORE, It is --

ORDERED:

1. That Arctic Cat and Suzuki's Joint Motion to Compel Documents and Testimony [Docket No. 266] is GRANTED, in part.

2. That Arctic Cat's Motion for Leave to File a Second Amended Complaint [Docket No. 270] is DENIED.

3. That Arctic Cat's Motion to File Supplemental Invalidity Claims Charts [Docket No. 263] is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE