UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

ORDER

* * * * * * * * * * * * * * * * * * *

Arctic Cat, Inc., a Minnesota Corporation,

Plaintiff,

vs.

Injection Research Specialists, Inc., a Colorado corporation, and Pacer Industries, Inc., a Missouri corporation,

Defendants.

and

Injection Research Specialists, Inc., a Colorado corporation, and Pacer Industries, Inc., a Missouri corporation,

Counterclaimants,

vs.

Arctic Cat, Inc., a Minnesota corporation, and Suzuki Motor Corporation, a Japanese Corporation,

Counterdefendants. Civ. No. 01-543(MJD/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 26th day of August, 2003.

AUG 26 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the following Motions of the parties:

1. Counterdefendant Suzuki Motor Corporation's ("Suzuki") Motion to Compel Production of Documents Relating to Tests Conducted by Defendant/Counterclaimant Injection Research Specialists ("IRS").

2. Defendant/Counterclaimant Pacer Industries, Inc.'s ("Pacer") Motion to Compel Interrogatory Responses from Plaintiff Arctic Cat, Inc. ("Arctic Cat") and Suzuki.

3. IRS' Motion to Compel Responses to Requests for Production, and Deposition Testimony from Suzuki.

4. IRS' Motion to Compel Production of Documents Relating to Opinions of Counsel from Suzuki, or to Preclude Use of Such Opinions at Trial.

5. Arctic Cat's Motion to Compel IRS's Production of Documents for Re-Inspection.

6. Arctic Cat's Motion to Compel IRS to Produce Documents Related to Damages.

7. Arctic Cat's Motion to Compel a Further Deposition of IRS Pursuant to Rule 30(b)(6), and for Sanctions.

A Hearing on the Motions was conducted on May 15, 2003, at which time, Arctic Cat appeared by Annamarie A. Daley and Andrew W.

Horstman, Esqs.; IRS, and Pacer, appeared by Anthony de Alcuaz, Esq.; and Suzuki appeared by Thomas H. Jenkins, Esq.

For the reasons which follow, we grant Suzuki's Motion to Compel the production of testing documents from IRS, to the extent provided in the text of this Order; we grant Pacer's Motion seeking to Compel Interrogatory responses from Arctic Cat and Suzuki; we deny that portion of IRS' Motion to Compel which seeks responses to Requests for Production from Suzuki, and grant that portion which seeks to compel deposition testimony from Suzuki; we deny IRS's Motion to Compel Production of Opinions of Counsel from Suzuki; we grant Arctic Cat's Motion to Compel IRS and Pacer to produce documents for re-inspection, but direct that Arctic Cat must pay all reasonable costs associated with that production; we grant Arctic Cat's Motion to Compel IRS to produce documents related to damages, to the extent provided in the text of this Order; we grant, in part, Arctic Cat's Motion to Compel further 30(b)(6) deposition testimony of IRS, and grant, in part, its related Motion for Sanctions. As we have recited the factual background of this case on numerous prior occasions, we will not do so here, but will recite only those facts which are pertinent to the Motions now before us.

## II. Discussion

### A. Suzuki's Motion to Compel IRS to Produce Documents Related to Testing.

Suzuki seeks to compel IRS to produce documents related to tests which were conducted by IRS on Suzuki's EFI-equipped two-cycle snowmobile engines, which IRS is withholding on the ground of claimed privilege. Suzuki contends that IRS conducted testing on its engines in 1993, prior to the initiation of this action, and again, in 2001, after this action had started, and that it should be compelled to produce the results of those tests, under our holding in Marvin Lumber v. PPG Industries, Inc., 168 F.R.D. 641 (D. Minn. 1996). IRS counters that both tests were conducted at the direction, and with the participation of, its attorneys, and therefore, the test results are protected from disclosure by the work-product doctrine, and/or are privileged attorney-client communications. Suzuki argues that the asserted privileges are improper, and asks that we compel production of the facts ascertained in the conduct of those tests.

As to its assertion that the results of the testing are protected from discovery by the attorney-client privilege, we find IRS's assertion to be without merit. As is oft-repeated, the attorney-client privilege does not shield facts simply because those facts have been included in a communication between a client

and an attorney. Thus, while the communications themselves may be privileged, the facts contained therein are not, see, In re Bieter Co., 16 F.3d 929, 940-41 (8th Cir. 1994), and accordingly, the attorney-client privilege cannot shield those facts from production.

However, the question of whether the work product doctrine can shield those test results is more complicated. The work product doctrine is codified in Rule 26(b)(3), Federal Rules of Civil Procedure, and provides, in pertinent part, as follows:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable * * * and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative * * * only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Thus, the Rule sets up two distinct work product privileges, one for any document prepared "in anticipation of litigation," which may be defeated by a showing of need, and hardship, on the part of the requesting party, and a second for "opinion work product," which "enjoys a very nearly absolute immunity and can be discovered

only in very rare and extraordinary circumstances." In re Chrysler Motors Corp. Overnight Evaluation, 860 F.2d 844, 846 (8th Cir. 1988), citing In re Murphy, 560 F.2d 326, 336 (8th Cir. 1977).

In considering whether the work product doctrine precludes the production of the test results here, our analysis starts with a determination of whether the materials were prepared in anticipation of litigation -- an assessment that is highly fact-driven. See, Marvin Lumber v. PPG Industries. Inc., supra at 645, citing Banks v. Wilson, 151 F.R.D. 109, 112 (D. Minn. 1993). The applicable test is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987). Accordingly, even when litigation has already commenced, the work product doctrine does not apply to "documents prepared in the regular course of business rather than for the purposes of litigation." Id.

In Marvin Lumber, which is the case relied upon by Suzuki, the plaintiff received a number of complaints that the wood in its windows and doors was rotting, and its counsel advised it to conduct an investigation into the problem. The plaintiff did so and, believing it was the defendant's wood preservative which caused the rot, the plaintiff informed the defendant of its belief. In re-

sponse, the defendant's counsel advised the defendant to investigate the allegation. Both parties sought the results of the other's tests, and both sought to shield their own results, as work product. We based our holding, that the results of the tests were discoverable, on the reasoning employed in Mission National Ins. Co. v. Lilly, 112 F.R.D. 160 (D. Minn. 1986).

In Mission National, the Court held that an insurer, who had sued for a determination of liability after its insured had submitted a policy claim, could not hide the results of its investigation of that claim, by retaining a law firm to conduct, and oversee, that investigation, on the ground that the mere involvement of an attorney, in the ordinary business of an insurance company -- that is, in investigating claims from its insureds -- could not shield those activities from discovery, without doing violence to the purpose behind the work product doctrine. In applying that holding to the facts before us in Marvin Lumber, we found that the mere employment of attorneys was insufficient to cloak the investigations with protection, as both parties would have conducted the investigations into customer complaints in the ordinary course of their respective businesses.

IRS contends that, under the holdings in Mission, and Marvin Lumber, the results of its testing of Suzuki's EFI-snowmobile engines would be protected from disclosure, because such testing is

not part of the ordinary course of IRS's business. We cannot agree. Suzuki has presented evidence showing that by 1995, IRS's only business was the licensing, and enforcing, of its patents, and that, even prior to that year, in 1993, when the first testing occurred, such testing was a significant part of IRS's business. Suzuki argues, and we agree, that the testing that IRS conducted on Suzuki's products, in order to determine whether those products were infringing on IRS's patents, was part of the ordinary course of IRS's business, such that the work product doctrine would not shield the results of the tests from discovery.

IRS also argues, however, that, because its attorneys dictated what tests should be conducted, and how the results should be presented, in an effort to help those attorneys evaluate infringement in anticipation of litigation, revealing the tests results could reveal opinion work product. Of course, "while historical facts are not privileged, when those facts are collated or categorized by legal counsel they may well be entitled to protection from disclosure under the work product doctrine," Marvin Lumber v. PPG Industries, Inc., supra at 646, citing Shelton v. American Motors Corp., 805 F.2d 1323, 1326 (8th Cir. 1986). However, we reiterate, that the mere communication, or transfer, of documents to an attorney, is insufficient to provide protection to those documents under the work product doctrine. See, Petersen v. Douglas County Bank &

Trust Co., 967 F.2d 1186, 1189 (8th Cir. 1992), citing Shelton v. American Motors Corp., supra at 1326.

Accordingly, while IRS "may lawfully assert a privilege as to a chart or other compilation of facts, that was specifically generated to respond to a specific request from legal counsel, [it] may not generally assert a blanket privilege as to those facts that were generated by its investigation merely because those facts were incorporated into a communication to counsel." Marvin Lumber v. PPG Industries, Inc., supra at 646. Therefore, we direct IRS to respond to Suzuki's discovery requests, which relate to IRS' testing of Suzuki's EFI-equipped engines, in accordance with the principles we have addressed.

B. Pacer's Motion to Compel Interrogatory Responses from Arctic Cat and Suzuki.

At issue, in Pacer's Motion, are Interrogatories Nos. 5 and 6, which were served upon both Arctic Cat, and Suzuki, and which seek the factual bases for Arctic Cat's and Suzuki's claims that the patents in suit are invalid under Title 35 U.S.C. §102(g), for anticipation based on prior invention, and Title 38 U.S.C. §103, for obviousness. Each of the Interrogatories contains an enumeration of specific details, relative to each of the claims, and Pacer maintains that neither Arctic Cat, nor Suzuki, has yet to provide a complete response to the Interrogatories, as neither has

identified all prior art relevant to the claims, and they have also failed to provide all of the information Pacer seeks, as to the prior art which has been disclosed.

According to Pacer, Arctic Cat and Suzuki have continued to claim that the additional factual bases for their invalidity claims are contained in prior art that was produced in the previous litigation, between the Defendants and Polaris, and therefore, until the Defendants produce those documents, they cannot fully answer the Interrogatories. Pacer maintains, however, that such an argument is a "red herring," for several reasons. First, Pacer relates that Arctic Cat's own correspondence shows that it is in possession of documents relating to the companies it claims to have prior art, such that it need not await any production from Pacer. Second, Pacer maintains that it has "already produced most if not all of the prior art documents produced in the previous litigation, to the extent such documents are in [its] possession, custody or control, and are non-privileged and not covered by the protective order in the Polaris litigation." Memorandum in Support of Motion to Compel Interrogatory Responses from Arctic Cat and Suzuki, at 7.

To the extent that such materials were not in Pacer's possession, Pacer asserts that it also sought to acquire those materials, and produced them to the Plaintiffs when the materials were obtained from third parties. Thus, Pacer maintains that Arctic Cat

and Suzuki have the information necessary to supplement their Interrogatory responses and, since they have the burden of proving invalidity, they must supplement, forthwith. Lastly, Pacer claims that Arctic Cat's current counsel was Polaris' counsel in the prior litigation, and as a result, must have personally reviewed, and used, many of the third-party documents that the Plaintiff here claims have to been produced before supplementation is possible, and thus, Plaintiff's counsel is more knowledgeable than any of the parties, concerning the existence and location of prior art documents from the Polaris litigation, and is better equipped to obtain such documents.

In response, both Suzuki and Arctic Cat have maintained that there is no longer anything in dispute between the parties, concerning this issue. Prior to the Hearing, Suzuki agreed to, and did, supplement its responses to the Interrogatories. Likewise, Arctic Cat agreed to supplement its responses, as soon as it had an opportunity to review certain materials that had been recently produced by the Defendants, or that the Defendants were promising to produce "shortly." As to Suzuki, however, Pacer maintains that its supplementation was insufficient, as it still was not responsive to each of the categories of information sought by Pacer.

Accordingly, since both Arctic Cat and Suzuki appear to have dropped their assertion that additional production was needed prior

to their being able to supplement their responses, we direct both parties to serve supplemental responses to Interrogatories Nos. 5 and 6, on Pacer, as soon as is practicable. We believe that, by now, a sufficient amount of time has passed to afford Arctic Cat a full opportunity to have reviewed any additional discovery produced by the Defendants, and that further delay in providing a complete response to the Interrogatories is unwarranted. Therefore, we grant Pacer's Motion in its entirety.

C. <u>IRS's Motion to Compel Responses to Requests for Production, and Deposition Testimony from Suzuki</u>.

IRS seeks to compel responses to certain document requests, and also seeks to address disputes which have arisen from certain topics in IRS's Rule 30(b)(6) deposition notice to Suzuki. We address the Motion in separate parts, as the two issues raise different considerations.

1. <u>Motion to Compel Production of Documents</u>. IRS seeks an Order compelling Suzuki to produce certain transfer pricing, and custom documents. IRS contends that these materials are relevant, both because they would be useful as a means of performing a statistical sampling, in order to independently verify whether the summary sales information already produced by Suzuki is accurate, and because they consist of direct proof of infringement, as importation of an infringing product is, in and of itself, an act of

patent infringement. IRS asks that we compel the production of those documents.

Suzuki objects to the discovery request on overly burdensome grounds. According to Suzuki, it has already produced monthly sales reports, in response to IRS's document production requests, and IRS had raised no objection as to that production until months later, when it suggested that Suzuki should also produce its customs documents. Suzuki maintains that it attempted to search for the documents, but found that its customs documents were not separated by product, so that, in order to produce the documents, it would have to review all of its customs documents, in order to determine which contain information relevant to the products in suit, and that such a review would take, at the least, one month to complete. Suzuki maintains that such an effort is overly burdensome, particularly given the marginal relevance of the documents. Suzuki asserts that the information in the customs forms are duplicative of the information it has already produced in the form of monthly sales reports. As to IRS' desire to "double check" the figures in those reports, Suzuki claims that the monthly sales reports, that it has produced, are accurate, as is evidenced by the fact that those are the same reports provided to Japanese tax authorities, and that IRS could compare those figures to the sales data produced by Arctic Cat.

While IRS does not deny that it seeks the information, in large part, so as to double check the reports Suzuki has already produced, it maintains that it cannot do so by reference to Arctic Cat's materials, because Suzuki is a twenty percent shareholder of Arctic Cat. Further, IRS asserts that, despite Suzuki's contention, that it would take one month to search through the documents, Suzuki has made no showing of that fact, as it has not presented any averments as to how the estimated month's time was calculated.

While we do not quarrel with IRS's assertion that it is Suzuki's burden to show that the requested production is overly burdensome, see, St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp., 198 F.R.D. 508 (N.D. Iowa 2000), and cases cited therein, we conclude that Suzuki's objections meet that burden, given the tenuous showing of relevance made by IRS. We accept the representations of Suzuki's counsel, that the customs documents are not stored by product, but rather, by shipment; that Suzuki is in the business of manufacturing products and exporting them from Japan to the United States; that the relevant information contained in the customs documents is duplicative of that already produced in the sales report; and that it would be a substantial undertaking to review, and cull, those documents requested by IRS. Although Suzuki might have bolstered its showing by providing us with specific information as to the number of customs documents it retains,

how they are stored, and how many people, working how many hours per day, would be needed in order to constitute the claimed expenditure of a month's time, we find its representations sufficient, when they have a logical basis, and are substantively unrefuted.

Further, IRS' stated reason for needing the documents, so as to "double check" the sales figures already provided by Suzuki, is not particularly compelling, when the monthly sales documents that have been produced by Suzuki are the same as Suzuki provides to the Japanese tax authorities, and when IRS has access to Arctic Cat's financial documents. While there is certainly some overlap between these two corporations, as Suzuki owns a portion of Arctic Cat's stock, that overlap is not complete, and it is clear from the Protective Order entered in this case, that Arctic Cat and Suzuki keep certain sales information confidential from each other. Further, we are not swayed by IRS' assertion that it should be provided the documents, because they are direct evidence of infringement on Suzuki's part. Again, as the documents are duplicative of the monthly sales documents already produced by Suzuki, nothing will be added by the additional production of the customs documents. Accordingly, we deny this aspect of IRS' Motion.

2. Motion to Compel Deposition Testimony. In this Motion, IRS seeks to compel the production, by Suzuki, of a 30(b)

(6) deponent, on seven of the 30(b)(6) deposition topics that IRS has noted. We will take the requests in turn.

a. Topic No. 3. First, IRS seeks to compel Suzuki to produce a deponent to testify as to "[a]n identification of documents related to the sale of such engines (including computer records) as well as the location of such documents." Memorandum in Support of Motion to Compel Responses to Request for Production and Deposition Testimony from Suzuki, at 4. In response, Suzuki stated that it would agree "to make a witness available to authenticate Suzuki's sales documents that IRS intends to use at the deposition." Id. IRS maintains that it wants a deponent who can not only authenticate the documents that Suzuki has produced on this issue, but who also can testify about "**all** documents relating to [Suzuki's] EFI two cycle engine sales to Arctic Cat, including, but not limited to, memoranda, minutes of meetings between Arctic Cat and Suzuki and other such documents, as will [sic] as the location of such documents." Id.

Suzuki claims that it does not understand what IRS means by "identification," and as such, it cannot prepare a witness to testify on that subject matter. Suzuki maintains that it is willing to make a witness available to authenticate documents, but that, until IRS further explains what it seeks by this topic specification, Suzuki cannot adequately prepare its witness. While

we agree that IRS' phrasing is not a model of clarity, it appears that IRS seeks a witness who can testify as to what documents exist concerning Suzuki's sales of two-cycle EFI snowmobile engines to Arctic Cat, and the location of those documents. We find that to be a proper topic for deposition and, absent some other ground for objection by Suzuki, we grant that portion of IRS' Motion, and direct that Suzuki produce a 30(b)(6) deponent who can testify as to what documents record information about Suzuki's sales of engines to Arctic Cat, and the location of those documents.

b. Topic Nos. 8, 10 and 11. Deposition topics 8, 10, and 11, ask Suzuki to designate a deponent(s) who can testify as to the "commercial success and popularity of Suzuki two-cycle EFI-equipped engines sold to Arctic Cat snowmobiles," "the utility and advantages of" EFI-equipped products over non-EFI-equipped products, and the "benefits to the owner of using the EFI-equipped product." Suzuki has asserted that it would produce a deponent as to those issues, to the extent that such information could be ascertained from Suzuki's own documents, and IRS complains that, in so doing, Suzuki has unfairly attempted to narrow the scope of the deposition, to only its documents, and that it must produce a person who can respond to the extent that other sources of information may also exist, including discussions, and other non-documentary sources.

Although Suzuki has agreed to make a deponent available to testify as to the noted topics, we share IRS' concern that Suzuki may have unfairly limited the scope of that testimony, by noting that it would only prepare a witness concerning information contained in Suzuki's own documents. Instead, Suzuki must prepare a witness to testify as to the topics noted, and we agree with IRS, that the topic includes all of Suzuki's knowledge on that subject, not just that which can be found in Suzuki's documents. See, Rule 30(b)(6), Federal Rules of Civil Procedure (Persons designated as a Rule 30(b)(6) deponent "shall testify as to matters known or reasonably available to the organization."). While, in reality, Suzuki may not know more about the topics than is reflected in its own documents, we are unable to find such a categorical restriction proper. Therefore, we direct Suzuki to prepare a witness to testify as to Suzuki's knowledge on these topics, without limitation as to the source of that knowledge.

c. Topic Nos. 16 and 17. IRS also sought to compel the production of a deponent as to Topics 16 and 17, which relate to licenses, and contemplated licenses, between Suzuki and Arctic Cat, or between Suzuki and non-parties. In response, Suzuki stated that it would "make a witness available to testify for licenses relating to its two-cycle EFI engines from January 1, 1988 as requested by IRS." In its Motion, IRS simply seeks to ensure

that Suzuki's response contemplates the production of a witness to testify as to contemplated, as well as completed, licensing agreements, urging that such evidence is relevant to a determination of "the established profitability of the product made under the patent; its commercial success; and its current popularity," which are factors in computing reasonable royalty damages, under Georgia-Pacific Corp. v. United States Plywood Corp., 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970). See also, Multi-Tech Sys. v. Dialpad.Com., Inc., 2002 WL 27141 (D. Minn., January 8, 2002). We agree that such evidence is relevant to the issues in this case, particularly as to the hypothetical license negotiation which is employed in determining a reasonable royalty, and that Suzuki's deponent, on such topics, should be prepared to testify as to actual licensing agreements, as well as contemplated licensing agreements. Accordingly, we grant this portion of IRS's Motion.

d. Topic No. 18. Finally, IRS has sought to compel Suzuki's production of a 30(b)(6) witness on the topic of "[p]rojected or anticipated sales, profits, costs and margins for EFI-equipped engines sold to Arctic Cat from 1988 to the present." In response, Suzuki stated that it would produce a deponent, on the topic, only for the period after January 1, 1991. Suzuki maintains that, when it initially responded to IRS' document requests on this topic, it objected to producing documents which were dated before

September 26, 1995, and that, without objecting to that limitation for over a year, IRS is now seeking information back to January of 1988. Suzuki maintains that any information prior to December 6, 1994, is irrelevant, because that was the date that the '803 patent was issued, and as such, would be the date that the hypothetical negotiation for a license agreement would be contemplated, under the reasonable royalty test. Nevertheless, Suzuki states that it has agreed to produce such information as far back as January 1, 1991, which is the date that it first started selling the engines to Arctic Cat.

For its part, IRS maintains that evidence from the three years prior to the time that Suzuki sold these engines to Arctic Cat is relevant, because it may reflect anticipated sales, profits, costs, and margins, which may, in turn, demonstrate evidence of "the established profitability of the product made under the patent; its commercial success and its current popularity," for the reasonable royalty calculation. According to IRS, what Suzuki thought its sales and profits from this engine might be is relevant to the reasonable royalty issue, and is, therefore, discoverable.

We agree, generally, with IRS, that evidence of Suzuki's anticipated sales, profits, costs, and margins, would be relevant to the issue of reasonable royalty. "A reasonable royalty should be based upon the amount that a willing licensor and a willing

licensee would have agreed upon during a hypothetical negotiation at the time the infringement began, if both parties had been reasonably and voluntarily trying to reach an agreement." Schneider (Europe) AG v. Scimed Life Systems, Inc., 852 F. Supp. 813, 860 (D. Minn. 1994); citing Georgia-Pacific Corp. v. United States Plywood Corp., supra at 1120. In the hypothetical negotiations, "[e]vidence of a reasonable royalty can be presented in various ways, including: a) [the] defendant's anticipated profits, as indicated by actual profits made; b) expert testimony regarding reasonableness under the circumstances; and c) the rate the patentee would have required to grant a license." Id., citing Trell v. Marlee Elec. Corp., 912 F.2d 1443, 1446 (Fed. Cir. 1990). By the time of a license negotiation in 1994, Suzuki would have had three years of actual profits, realized from its sales to Arctic Cat, on which to base the fee it would be willing to pay. However, we cannot foreclose the potential that Suzuki's initial projections as to the profitability of its sales of the engine would not somehow guide its decision as to what it would be willing to pay for a license to continue its sales.

As a result, while we believe that the information obtained is likely to have little relevance to the damages issue here, we will, nevertheless, grant IRS' Motion, and direct Suzuki to prepare a 30(b)(6) deponent on the issue of Suzuki's anticipated sales,

profits, costs, and margins for its EFI-equipped two-cycle snowmobile engines from 1988 to the present.

D. IRS' Motion to Compel Production of Documents Relating to Opinions of Counsel from Suzuki, or to Preclude Use of Such Opinions at Trial.

IRS also seeks an Order compelling Suzuki to immediately elect whether or not it intends to rely on an advice-of-counsel defense as to allegations of willful infringement -- and to produce the relevant related documents, if it chooses to rely on such a defense -- or to preclude Suzuki from using those opinions at Trial. IRS maintains that such an election should be made, forthwith, because discovery is drawing to a close, and IRS needs time to review, and to evaluate, any documents produced which may be relevant to that defense, and to propound additional discovery, if necessary.

In response, Suzuki has asserted that it should not have to make this election until the Court has ruled on claims construction, arguing that it will not know, until then, whether it needs to rely on an advice-of-counsel defense. Alternatively, Suzuki asserts that it should not have to make its election until after this Court decides its noticed Motion to Bifurcate -- in which it seeks to bifurcate the Trial on infringement, from the Trial of willfulness and damages, and also its Motion to stay discovery as to willfulness and damages -- because earlier disclosure might