**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| ARCTIC CAT INC.,<br>a Minnesota corporation,<br><br>Plaintiff,<br><br>v.<br><br>INJECTION RESEARCH SPECIALISTS, INC., a Colorado corporation, and PACER INDUSTRIES, INC.,<br>a Missouri corporation,<br><br>Defendants. | Civil Action No. 01-CV-543 (MJD/RLE)<br><br>Hon. Michael J. Davis<br>Hon. Raymond L. Erickson (Magistrate)<br><br>**<u>ORAL ARGUMENT REQUESTED</u>** |
| INJECTION RESEARCH SPECIALISTS, INC., a Colorado corporation, and PACER INDUSTRIES, INC.,<br>a Missouri corporation,<br><br>Counterclaimants,<br><br>v.<br><br>ARCTIC CAT INC.,<br>a Minnesota corporation, and SUZUKI MOTOR CORPORATION,<br>a Japanese corporation,<br><br>Counterclaim Defendants. | |

**ARCTIC CAT'S AND SUZUKI'S REPLY TO IRS'S OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT OF THE '803 PATENT**

# TABLE OF CONTENTS


Page

INTRODUCTION ..... 1

SUMMARY JUDGMENT STANDARD ..... 1

ARGUMENT ..... 3

I. NONE OF THE ACCUSED PRODUCTS INFRINGES THE '803 PATENT BECAUSE EACH DOES NOT INJECT FUEL "ONCE PER ENGINE REVOLUTION AT ALL ENGINE SPEEDS" ..... 3

A. IRS Has Distorted Judge Weinshienk's Ruling in the *Polaris* Case and Its Effect on This Case ..... 3

B. IRS Has Raised No Disputed Factual Issues That Preclude Granting Arctic Cat's and Suzuki's Motion for Summary Judgment ..... 7

1. IRS Has Failed to Identify Any Factual Disputes Regarding Arctic Cat's and Suzuki's Use of "Zeros in the Fuel Map" ..... 7

2. IRS Has Failed to Identify Any Factual Disputes Regarding Arctic Cat's and Suzuki's Use of "Skip Cycle" ..... 8

II. THE ACCUSED PRODUCTS WITH KOKUSAN EFI SYSTEMS, WITH ONE EXCEPTION, DO NOT INFRINGE THE '803 PATENT BECAUSE THEY COMPUTE RPM-DEPENDENT INJECTION TIMING DELAYS ..... 9

A. The Claims Require That Fuel Is Injected When the System Senses a Predetermined State of the Engine Cycle That Is Selected in Advance and Is the Same for Each Cycle, and Exclude Injection Timing That Is Computed from Instantaneous Engine Operating Conditions ..... 9

B. IRS Has Raised No Disputed Factual Issues That Preclude Granting Arctic Cat's and Suzuki's Motion for Summary Judgment ..... 12

1. With One Exception, All of the Kokusan EFI Systems Compute RPM-Dependent Injection Timing Delays ..... 12

2. The Fact That the Calculation in the Kokusan EFI Systems Results in an RPM-Dependent Injection Delay at Only Some Speeds Does Not Create a Triable Issue of Fact ..... 13

III. THE DOCTRINE OF EQUIVALENTS CANNOT CREATE A TRIABLE ISSUE OF FACT ..... 14

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundations*,
402 U.S. 313 (1971)....................5

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................1, 2

*Crossley v. Georgia-Pacific Corp.*,
355 F.3d 1112 (8th Cir. Jan. 22, 2004)....................2

*Dancy v. Hyster Co.*,
127 F.3d 649, 652 (8th Cir. 1997)....................2

*Jaurequi v. Carter Manufacturing Co.*,
173 F.3d 1076 (8th Cir. 1999)....................2

*Lindgren v. Camphill Village Minn., Inc.*,
2002 WL 1332796 (D. Minn. 2002)....................2

*Lujan v. National Wildlife Federation*,
497 U.S. 885 (1990)....................2

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996)....................1

*McDermott v. Internal Revenue Service*,
2001 WL 1771645 3 (D. Minn. 2001) (J. Davis)....................2

*Vivid Techs. Inc. v. American Science & Engineering, Inc.*,
200 F.3d 795 (Fed. Cir. 2000)....................1

## FEDERAL STATUTES

Fed. R. Civ. P. 56(e)....................2

## SECONDARY AUTHORITIES

Terril G. Lewis, *Collateral Estoppel as Applied to the Construction of Patent Claims (Part I)*, 83 J. Patent & Trademark Off. Soc'y 851, 852 n.1 (Dec. 2001)....................1

## INTRODUCTION

Infringement in this case, like many patent cases, will be determined by the Court's claim interpretation, and IRS's opposition to Arctic Cat's and Suzuki's motion for summary judgment of no infringement is a testament to that reality because it focuses almost entirely upon rehashing claim interpretation issues. Beyond this, IRS attacks the conclusions drawn by Dr. Cuzzillo, the expert who conducted testing for Arctic Cat and Suzuki, but does not challenge the results of his tests. Indeed, IRS has presented no evidence of its own supporting infringement if the Court adopts the claim constructions advocated by Arctic Cat and Suzuki. IRS's only evidence of infringement is premised on the Court adopting the claim constructions advocated by IRS. Thus, in the end, Arctic Cat and Suzuki's summary judgment motion reduces to the legal question of claim construction. And once those claim construction rulings are made, this case will be ripe for summary adjudication.[1]

## SUMMARY JUDGMENT STANDARD

This Court is empowered to grant summary judgment of no infringement where the adverse party fails "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). And a "district court is not 'obligated to wade through and search the entire record for some specific facts which might

---

[1] In the aftermath of the Supreme Court's ruling in *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996), holding that claim construction is an issue of law, infringement issues in many, and perhaps most, cases are decided on summary judgment. *See, e.g.*, *Vivid Techs. Inc. v. American Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 2000) ("It is well recognized that the construction of the claims may resolve some or all of the issues of infringement."); Terril G. Lewis, *Collateral Estoppel as Applied to the Construction of Patent Claims (Part I)*, 83 J. Patent & Trademark Off. Soc'y 851, 852 n.1 (Dec. 2001).

support the nonmoving party's claim.'" *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999).

The adverse party thus has the affirmative burden to designate specific facts creating a triable controversy. *See* FED. R. CIV. P. 56(e); *Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1113 (8th Cir. Jan. 22, 2004). The adverse party cannot sustain this burden "merely by pointing to some alleged factual dispute between the parties. Instead, any fact alleged to be in dispute must be 'outcome determinative under prevailing law,' that is, it must be material to an essential element of the specific theory of recovery at issue." *Lindgren v. Camphill Village Minn., Inc.*, 2002 WL 1332796 *4 (D. Minn. 2002) (quoting *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997)); *McDermott v. Internal Revenue Serv.*, 2001 WL 1771645 *3 (D. Minn. 2001) (J. Davis).

Here, IRS is guilty of a complete failure of proof for its infringement case. IRS bears the burden of proof on infringement, and yet it has failed to offer any evidence of infringement if the Court adopts Arctic Cat's and Suzuki's claim interpretations. The United States Supreme Court has gone to careful lengths to explain that in situations where the responding party bears the burden of persuasion at trial, the movant may be entitled to summary judgment by showing that the existing record contains no evidence to prove an essential element of the respondent's case.[2] In this case, IRS relies on blanket assertions that triable issues of fact exist, but has ignored the necessity for identifying specific trial evidence as to each element of IRS's infringement allegations. Thus, regardless of any alleged deficiencies in Suzuki's evidence, summary judgment of noninfringement should be granted because of IRS's failure of proof.

[2] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 885, 889 (1990) ("Rule 56 does not require the moving party to negate the elements of the nonmoving party's case." The object of requiring the respondent to set forth specific facts "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").

## ARGUMENT

### I. NONE OF THE ACCUSED PRODUCTS INFRINGES THE '803 PATENT BECAUSE EACH DOES NOT INJECT FUEL "ONCE PER ENGINE REVOLUTION AT ALL ENGINE SPEEDS"

#### A. IRS Has Distorted Judge Weinshienk's Ruling in the *Polaris* Case and Its Effect on This Case

IRS argues that the impact of Judge Weinshienk's ruling in the *Polaris* case is limited to the particular EFI systems that were litigated there, and places importance on the fact that neither "zeros in the fuel map" nor "short electrical signals" were found not to infringe in that case. Indeed, IRS argues as though Judge Weinshienk's claim construction ruling was little more than an analysis of whether the claims of the '803 patent covered the *Polaris* EFI system. Both arguments distort Judge Weinshienk's analysis and ruling.

IRS ignores the distinction between claim construction rulings and infringement findings. Following the guidelines of the *Markman* decision, the claims must first be construed, and then those constructions are applied to the products accused of infringement. The collateral estoppel in this case arises from the *claim construction rulings* in the *Polaris* case, not from the *infringement findings*. Thus, the fact that Judge Weinshienk did not decide whether "zeros in the fuel map" or "short electrical signals" infringe the '803 patent is irrelevant. What is important is how she construed the '803 claims.

IRS then mischaracterizes Judge Weinshienk's decision by arguing that "[t]he construction of certain '803 terms was never divorced from the structure of the accused products as required by Federal Circuit practice."[3] In fact, Judge Weinshienk followed the proper two-step process of construing the claims in light of the intrinsic record and then comparing the accused products to the claims as construed, which she expressly articulated:

---

[3] Opp'n at 6-7.

> Evaluating patent infringement claims is a two-step process. First, as a matter of law, the Court construes the claims at issue to ascertain their meanings and scope. Meaning is determined by looking [at] the claims, the specifications contained in the patent, and the prosecution history. The words used in the claims are given their ordinary meaning as understood by one of ordinary skill in the art unless contrary intent was manifested by the patentee.
>
> Second, the accused devices are compared to the claims as construed by the Court. This is a factual question. To establish infringement, every limitation set forth in the claims must be found in the accused device.[4]

And Judge Weinshienk's analysis of "the timing sensing element" shows that she limited her analysis of disputed claim language to examining the intrinsic evidence. Only after she construed the claim language did she even mention the structure of the accused devices.[5]

IRS's argument that Judge Weinshienk construed the '803 patent as precluding coverage of "skip cycle" is another mischaracterization of her decision.[6] In fact, she construed the "cyclically repeating" claim language in the '803 patent "as requiring injection to occur once per engine revolution at all engine speeds."[7] She then applied that construction to the accused products and found that "[i]t is uncontested that defendants' devices do not inject fuel in every cycle for each cycle."[8] Thus, she based her finding of noninfringement on the absence of "injection" during the skip cycle regime, not the complete absence of a "pulse" (i.e., electrical signal), as IRS argues.

IRS's plea that it is not bound by Judge Weinshienk's claim interpretations is equally unavailing. The Eighth Circuit's requirements for collateral estoppel are met here. Even though the products accused in this case may differ somewhat from the products accused in the *Polaris*

---

4 Opening Summ. J. Mem., Ex. D, *Polaris* Order dated Feb. 11, 1997 at 5.

5 *Id.* at 3-5.

6 Opp'n at 6.

7 Opening Summ. J. Mem., Ex. D at 5.

8 *Id.*

case, the claim interpretation issue is the same – do the claims of the '803 patent require injection to occur once per engine revolution at all engine speeds. A final judgment was entered in the *Polaris* case on July 24, 1997, into which the claim interpretation rulings and summary judgment decision merged, and that judgment was never vacated – thus, IRS's subsequent grant of a covenant not to sue had no impact on the judgment. In addition, Judge Weinshienk's claim interpretation rulings were essential to the summary judgment decision, and, thus, became part of the final judgment. Nor has the law on claim construction changed since Judge Weinshienk's decision in the *Polaris* case, as IRS alleges. Judge Weinshienk's recitation of the law could have been lifted from any number of decisions from the Federal Circuit within the last year, and IRS's citations to recent decisions where the claim language was unambiguous have little relevance to this case where the disputed claim terms have no ordinary and customary meaning.

IRS's last argument that Judge Weinshienk's decision should be ignored because she "did not grasp important technical issues" is based on a misreading of *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundations*, 402 U.S. 313 (1971). IRS turns *Blonder-Tongue* on its head. *Blonder-Tongue* holds that a patentee is estopped from asserting a patent that has been held invalid in a prior suit against a different defendant unless the patentee demonstrates that "he did not have a full and fair opportunity, procedurally, substantively, and evidentially, to litigate the validity of the patent in the prior suit." *Id.* at 328. By analogy, the same rule applies to IRS's litigation of claim construction in the *Polaris* case unless IRS can show that it did not have "a full and fair opportunity" to litigate claim construction in the *Polaris* case. IRS has made no such showing. Instead, it simply argues that Judge Weinshienk made a "mistake." Arctic Cat and Suzuki disagree that Judge Weinshienk made a mistake, but if she did, IRS bears the responsibility because it was a litigant in the *Polaris* litigation. In addition, IRS had its opportunity to correct any mistake by appealing the decision, and it did not.

Moreover, IRS's argument that Judge Weinshienk failed to understand the technical issues does not withstand scrutiny. IRS premises this argument on its contention that Judge Weinshienk "failed to grasp the fundamental difference between timing sensing and fuel injection," and argues that "[t]here is no requirement that the injection signal be coincident with the timing signal, nor is there a requirement that a control signal be generated every cycle."[9] As usual, IRS ignores the '803 prosecution history, where IRS plainly stated that its control means (element j(viii) of claim 1) sent an electrical pulse to open the injectors (the "control signal") when the sensing means (element (f) of claim 1) sensed the predetermined state of the engine:

> Chasteen's system injects the fuel at a predetermined point of time in the engine cycle which is the same for each injection event (see elements (f) and (viii) in Claim 1 and the corresponding elements and steps in Claims 2-6).[10]

As another example, IRS argued to the Patent Office:

> The timing sensing means referred to in this element of the claim indicates to the CPU when the cyclically repeating event takes place in one of the cylinders of the engine, if there be more than one cylinder, so that the injection of fuel is timed to correspond to that repeating event.[11]

Thus, the distinction IRS tries to make between the timing generated by the sensing means and the timing of fuel injection, which it argues Judge Weinshienk overlooked, is refuted by the prosecution history. Judge Weinshienk made no error.

Finally, the equities flowing from Judge Weinshienk's decision and IRS's failure to appeal deserve comment. The *Polaris* litigation is part of the public record of the '803 patent. After thorough briefing and a day-long evidentiary hearing, Judge Weinshienk concluded that the claims of the '803 patent require injection to occur once per engine revolution at all engine speeds. Since IRS had every opportunity to litigate the claim construction issue during the

---

[9] Opp'n at 15.

[10] Opening Summ. J. Mem., Ex. E, Paper No. 23 at 20.

[11] *Id.* at 23-24.

*Polaris* litigation, Judge Weinshienk expended considerable effort and public resources to construe the claim, and IRS failed to appeal or move to vacate the ruling, the public had a right to rely on that ruling. As a matter of equity and public policy, a patent owner should not be permitted to assert its patent, lose because of an adverse claim construction ruling, and then sweep the decision under the rug, so that it can sue another party and hope to obtain a more favorable claim interpretation. Consequently, IRS should be precluded from relitigating the issue and seeking to undo what another court has already decided.

### B. IRS Has Raised No Disputed Factual Issues That Preclude Granting Arctic Cat's and Suzuki's Motion for Summary Judgment

#### 1. IRS Has Failed to Identify Any Factual Disputes Regarding Arctic Cat's and Suzuki's Use of "Zeros in the Fuel Map"

IRS has submitted no evidence whatsoever challenging or disputing Dr. Cuzzillo's test results or his conclusions. As detailed in Arctic Cat's and Suzuki's opening brief, those results show that no fuel flow could be detected in many of the accused products when they are operating in the "zero region" of the fuel map, and that in the remainder of the accused products, only leakage far below the amount of fuel required for combustion could be detected.[12] And both Dr. Cuzzillo and IRS's expert, Dr. Ribbens, agree that "leakage" is not "injection."[13] Thus, IRS cannot create an issue of fact out of Dr. Cuzzillo's undisputed test results.

IRS's argument that zeroes in the fuel map are "base" values that could be modified depending upon air temperature, engine temperature, and barometric pressure to become non-zero numbers (and thus cause fuel to be injected) is unsupported by any citation to the record, and fails to satisfy Rule 56(e)'s specificity requirement. Moreover, it makes no sense. If

---

[12] *Id.* at 9-12.

[13] *Id.* at 9, nn.50-51 and accompanying text (citing Ex. I, Ribbens Dep. Tr. at 106, ll. 12-13, & 107, ll. 6-15, and Ex. J, Cuzzillo Dep. Tr. at 173, ll. 8-17, & 180, ll. 19-23).

you start with a base value of zero and multiply it by various factors to compensate for air temperature, engine temperature, and barometric pressure, the result is still zero.[14] Furthermore, IRS's conclusion that "Dr. Cuzzillo's own testing information is inadequate to establish no literal infringement for all engine conditions" turns IRS's burden of proof on its head. The relevant consideration is that IRS has cited no evidence that would permit a jury to conclude that IRS has met its burden of proving that the accused products "inject fuel once per engine revolution at all engine speeds."

Lastly, IRS argues that there is a triable issue of fact as to whether the leakage observed by Dr. Cuzzillo is sufficient to cause combustion. To the extent IRS is arguing that "leakage of fuel insufficient to support combustion" qualifies as an "injection" as that term is used in the '803 patent and its prosecution history, that is a claim interpretation issue and a legal issue. To the extent IRS is arguing that there is a disputed issue of fact as to whether the observed leakage is insufficient fuel to support combustion, IRS has again presented no evidence that would permit a jury to conclude that the leakage observed by Dr. Cuzzillo is sufficient to support combustion. Neither argument precludes a decision by summary judgment.

### 2. IRS Has Failed to Identify Any Factual Disputes Regarding Arctic Cat's and Suzuki's Use of "Skip Cycle"

IRS suggests that Arctic Cat's and Suzuki's implementation of their skip cycle regime, by sending an electrical pulse to the injectors that is too short to cause the injectors to open, raises a triable issue of fact. Dr. Cuzzillo's expert report and testimony on this point, however, are unequivocal – no detectable fuel is injected during the skip cycle,[15] and IRS has presented no evidence to the contrary. In addition, it is completely irrelevant to the infringement analysis of

[14] Ex. 1, Dr. Cuzzillo's Dep. Tr. at 22, ll. 4-14.

[15] Opening Summ. J. Mem. at 12, n.53 and accompanying text; *id.* at 13, nn.56-57 and accompanying text; *id.*, Ex. C, App. 2, Dr. Cuzzillo's Report at ¶¶ 13-15.

the '803 patent claims, which require "*injection* to occur once per engine revolution at all engine speeds," whether engines implement skip cycle by employing a pulse that is too short to cause injection or by withholding the pulse entirely. Finally, IRS suggests that an issue of fact was raised by virtue of the fact that skip cycle occurs in only a portion of the engines' RPM range. That issue, however, was resolved by Judge Weinshienk's claim interpretation, which requires injection "once per engine revolution *at all engine speeds*." Thus, it makes no difference to the infringement analysis that skip cycle is employed at only some RPMs (as was also true in the *Polaris* case),[16] and it certainly does not raise a triable issue of fact.

## II. THE ACCUSED PRODUCTS WITH KOKUSAN EFI SYSTEMS, WITH ONE EXCEPTION, DO NOT INFRINGE THE '803 PATENT BECAUSE THEY COMPUTE RPM-DEPENDENT INJECTION TIMING DELAYS

### A. The Claims Require That Fuel Is Injected When the System Senses a Predetermined State of the Engine Cycle That Is Selected in Advance and Is the Same for Each Cycle, and Exclude Injection Timing That Is Computed from Instantaneous Engine Operating Conditions

IRS begins this argument by implying that Arctic Cat's and Suzuki's defense is a repeat of a defense that was rejected in the *Polaris* case. In this instance, IRS is apparently content to rely on Judge Weinshienk's claim interpretation, even though Arctic Cat and Suzuki were not parties to the *Polaris* litigation. Judge Weinshienk's claim interpretation on this issue, however, is consistent with Arctic Cat's and Suzuki's claim interpretation. But the Kokusan EFI systems have a feature that was not present in the products accused in the *Polaris* case. Thus, Judge Weinshienk was not asked by the *Polaris* parties to decide the claim interpretation issue that is being raised by IRS's infringement accusations directed to the Kokusan EFI systems.

---

[16] *See id.*, Ex. D, *Polaris* Order at 5 (rejecting IRS's argument that the accused products infringed because they employed the skip cycle "at speeds below 3800 rpm").

Distilled to its essence, IRS's claim interpretation argument is that a distinction must be drawn between the "timing sensing means," which senses a predetermined state of the engine, and the "control means," which sends an electrical pulse to the fuel injectors that causes them to open. IRS concedes that the "timing sensing means" must sense a "predetermined" (fixed in advance) state of the engine, but argues that the resulting timing signal does not necessarily dictate when the "control means" sends its electrical pulse to the injectors, even though the specification teaches that the electrical pulse is sent to the injectors as soon as the timing signal is received by the CPU. Aside from the prosecution history statements to the contrary cited above, this argument fails because the claims specify that the "control means" sends its electrical pulse ("control signal") "at a predetermined point in time determined from the timing sensing signal." IRS takes comfort in the dictionary definition for "determined" as meaning "to fix conclusively," but that definition makes the case for Arctic Cat and Suzuki. If the timing sensing signal "fixes conclusively" the point in time when the control signal is sent to the injectors, no calculation or computation is performed by the CPU to determine the optimal time in the engine cycle to inject fuel. Thus, contrary to IRS's repeated protests that the claim language does not support Arctic Cat's and Suzuki's claim interpretation, in fact, it does.

As in its supplemental *Markman* brief, IRS again argues that Arctic Cat's and Suzuki's claim interpretation would not cover a "preferred" embodiment disclosed in the '803 patent. As a preliminary matter, the '803 patent does not characterize the embodiment singled out by IRS as "preferred," and even if it did, there is no rule against interpreting claims to exclude a preferred embodiment if the intrinsic record requires such a construction. In addition, the two sentences from the patent quoted by IRS are not related, and neither represents a computation of when to inject. The first sentence says that in a three-cylinder embodiment, the CPU would respond to only one timing sensing signal and injection would occur *simultaneously* in all three cylinders

(the antithesis of computing the best time in the engine cycle of each cylinder to inject). The second sentence refers to a method for counting pulses from an "encoder." In both cases, the "counting" is fixed in advance and simply generates the timing signal that indicates the same predetermined state of the engine cycle for each cycle. Moreover, by distinguishing its invention from the Okumura reference on the ground that Okumura "calculated" the optimal point in the cycle to inject, IRS was clearly distinguishing between "counting" to inject at the same "predetermined" (fixed in advance) state for each cycle and "calculating" when to inject from instantaneous operating conditions. Finally, as to IRS's quotations from Dr. Cuzzillo's testimony, IRS has misrepresented his testimony. He actually reached the opposite conclusion of what IRS asserts – namely that the '803 embodiment presented to him at his deposition would fall within the scope of the claims as construed by Arctic Cat and Suzuki. Thus, Arctic Cat's and Suzuki's claim interpretation does not exclude any embodiments disclosed in the '803 patent.

With regard to the prosecution history and IRS's distinctions over the Okumura reference, Arctic Cat and Suzuki responded to most of IRS's arguments in their reply to IRS's supplemental *Markman* brief. A few points, however, merit emphasis. First, IRS distinguished the Okumura reference on the computed injection timing ground *repeatedly*. This is not a case where Arctic Cat and Suzuki have singled out an isolated statement that was not integral to IRS's arguments. Second, IRS distinguished the Okumura reference on multiple grounds. While it is true that IRS also distinguished the reference on the ground that it disclosed controlling the amount of fuel injected through injection timing, that argument in no way diminishes the arguments IRS made to distinguish Okumura on the ground that it calculated the optimal point in the cycle to inject and the '803 patent did not. And third, IRS acknowledged that one embodiment of Okumura used a map stored in the CPU to calculate the optimal time to inject from instantaneous operating conditions like "crank chamber pressure," "throttle position," and

"speed."[17] Similarly, in the case of the Kokusan EFI systems, the system uses a map to calculate the optimal time to inject from an instantaneous operating condition, namely engine speed.

### B. IRS Has Raised No Disputed Factual Issues That Preclude Granting Arctic Cat's and Suzuki's Motion for Summary Judgment

#### 1. With One Exception, All of the Kokusan EFI Systems Compute RPM-Dependent Injection Timing Delays

IRS tries to create a factual issue where none exists by arguing that Kokusan EFI systems have varied over the years and, therefore, there is an issue as to which Kokusan EFI systems would infringe and which would not if the claims exclude calculated injection timing. It is true that the Kokusan EFI systems have varied somewhat over time, but with the exception of one model (which is excluded from Arctic Cat's and Suzuki's summary judgment motion), all of the Kokusan EFI systems use a map ("look-up table") to calculate injection timing and add a non-zero RPM-dependent injection delay between engine speeds of 2000-4000 RPMs.[18] IRS has cited no evidence to the contrary. As to the additional "fixed" injection delays of either 200 or 300 μsec, Arctic Cat and Suzuki are not relying on those delays as the sole basis for their summary judgment motion.

It is noteworthy that IRS has not challenged Arctic Cat's and Suzuki's evidence as to how the Kokusan EFI systems operate, adjust injection timing delay, and thus calculate when to inject. Thus, there are no "factual" disputes. The only open question is whether the claims of the '803 patent cover the Kokusan EFI systems. In other words, the dispute between the parties is a dispute over claim construction, an issue of law for the Court to decide. Thus, infringement can be decided as a matter of law, and should be decided by summary judgment.

---

17 Opening Br. on Claim Construction, Ex. 6, Paper No. 30, Ex. C, Blair Second Aff. at 4.

18 Opening Summ. J. Mem., Ex. C, App. 2, Dr. Cuzzillo's Report at ¶¶ 20-22. In addition, IRS's own expert has acknowledged that "there is purportedly an RPM-dependent time delay." Opening Summ. J. Mem., Ex. G, Ribbens Report at 60.

### 2. The Fact That the Calculation in the Kokusan EFI Systems Results in an RPM-Dependent Injection Delay at Only Some Speeds Does Not Create a Triable Issue of Fact

For purposes of this motion, Arctic Cat and Suzuki acknowledge that the calculation in the Kokusan EFI systems results in an RPM-dependent injection delay at only some engine speeds, namely 2000-4000 RPMs. As a practical matter, it should be noted that this is a common engine speed, and the engine passes through this range whenever the rider is accelerating from, or decelerating to, idle conditions.[19] But, in any event, whether these systems infringe because they also operate at speeds where the calculation results in no RPM-dependent delay is an issue of claim construction and a matter of law.

As a matter of claim construction, the claims should be interpreted to require injection when the system *senses a predetermined state of the engine that is the same for each cycle.* During prosecution, on multiple occasions, IRS defined the '803 patent as so limited:

> This electrical pulse controls the open duration of an electrical fuel injector which is operated at the same *predetermined* point in time during an engine cycle *for each cycle.*[20] * * *
>
> Chasteen's system injects the fuel at a predetermined point in time in the engine cycle which is the same *for each injection event*.[21]

Thus, if the Kokusan EFI systems compute injection timing *for any cycles*, which they indisputably do, they do not infringe the claims of the '803 patent.

Moreover, during prosecution, IRS argued that Okumura employed a system that calculated the optimal point in the engine cycle to inject and that the '803 patent did not. Like the Okumura reference, the Kokusan EFI systems calculate the optimal point to inject. For the Suzuki engines, this optimal point is when low pressure conditions exist in the intake manifold,

---

[19] Ex. 1, Dr. Cuzzillo Dep. Tr. dated Jan. 21, 2004 at 257-58.

[20] Opening Summ. J. Mem., Ex. F, Paper 30 at 16 (emphasis added).

[21] *Id.*, Ex. E, Paper 23 at 20 (emphasis added).

which produces optimal mixing of fuel and air.[22] The fact that this optimal point does not require an RPM-dependent delay from the look-up table at certain engine speeds does not diminish the fact that the Kokusan EFI system nonetheless injects fuel at the optimal point in the engine cycle. And since IRS distinguished such systems during prosecution, the Kokusan EFI system cannot infringe the '803 patent.

## III. THE DOCTRINE OF EQUIVALENTS CANNOT CREATE A TRIABLE ISSUE OF FACT

IRS complains that "Arctic Cat and Suzuki have presented no evidence on the doctrine of equivalents,"[23] but it is not Arctic Cat's and Suzuki's burden to do so. The burden is on IRS, and it is IRS who has presented absolutely no evidence supporting infringement under the doctrine of equivalents if the Court adopts the claim constructions advocated by Arctic Cat and Suzuki. IRS turns logic on its head when it argues that if the Court finds that there is no disavowal of claim coverage in the prosecution history, there can be no prosecution history estoppel. Presumably, if the Court finds that the prosecution history does not support Arctic Cat's and Suzuki's claim interpretations, there will be no need for IRS to resort to the doctrine of equivalents. However, the converse to IRS's proposition is relevant to the doctrine of equivalents. That is, if the Court finds that the prosecution history of the '803 patent mandates Arctic Cat's and Suzuki's claim interpretations, that same prosecution history would give rise to prosecution history estoppel, and IRS would be estopped from asserting the doctrine of equivalents to expand its claims to encompass claim scope that it relinquished during prosecution.

## CONCLUSION

Arctic Cat's and Suzuki's motion for summary judgment should be granted.

---

[22] *Id.*, Ex. C, App. 2, Dr. Cuzzillo's Report at ¶ 22.

[23] Opp'n at 33.

SUZUKI MOTOR CORPORATION
By its attorneys

Dated: May 21, 2004

s/William F. Forsyth

William F. Forsyth (MN Atty ID #31070)
Henson & Efron, P.A.
220 South Sixth Street, Suite 1800
Minneapolis, MN 55402-4503
Telephone: (612) 339-2500
Facsimile: (612) 339-6364

Thomas H. Jenkins (Pro Hac Vice)
Bruce C. Zotter (Pro Hac Vice)
Christopher W. Day (Pro Hac Vice)
Finnegan, Henderson, Farabow,
Garrett & Dunner L.L.P.
1300 I Street, N.W.
Washington, D.C. 20005-3315
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

ARCTIC CAT INC.
By its attorneys

Dated: May 21, 2004

s/Annamarie A. Daley

Annamarie A. Daley (MN #158112)
Andrew W. Horstman (MN #47259)
Christopher J. Sorenson (MN #270118)
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone: (612) 349-8500
Facsimile: (612) 339-4181