**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

ARCTIC CAT INC., a Minnesota corporation,

Plaintiff,

v.

INJECTION RESEARCH SPECIALISTS, INC., a Colorado corporation, and PACER INDUSTRIES, INC., a Missouri corporation,

Defendants,

INJECTION RESEARCH SPECIALISTS, INC., a Colorado corporation, and PACER INDUSTRIES, INC., a Missouri corporation,
Counterclaimants,
v.

ARCTIC CAT INC., a Minnesota corporation, and SUZUKI MOTOR CORPORATION, a Japanese corporation,

Counterdefendants.

Civil Action No.: 01-CV-543 MJD/RLE

**ARCTIC CAT'S AND SUZUKI'S SUPPLEMENTAL SUBMISSION OF MINNESOTA LAW REGARDING MOTION FOR SUMMARY JUDGMENT ON CHAMPERTY AND MAINTENANCE GROUNDS**

In supplement to Arctic Cat's and Suzuki's Submission of Minnesota Law Regarding Motion for Summary Judgment on Champerty and Maintenance Grounds dated April 9, 2004,

Arctic Cat and Suzuki submit the Minnesota Court of Appeals decision in *Johnson v. Wright* issued on July 13, 2004.

Dated July 20, 2004.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By s/Annamarie A. Daley

Annamarie A. Daley (MN #158112)
Andrew W. Horstman (MN #47259)
Aaron A. Myers (MN #0311959)
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402.2015
(612) 349-8500

ATTORNEYS FOR ARCTIC CAT INC.

HENSON & EFRON, P.A.

By s/William F. Forsyth

William F. Forsyth (MN #31070)
220 South Sixth Street, Suite 1800
Minneapolis, MN 55402-4503
Telephone: (612) 339-2500
Facsimile: (612) 339-6364

and

Thomas H. Jenkins (Pro Hac Vice)
Bruce C. Zotter (Pro Hac Vice)
Christopher W. Day (Pro Hac Vice)
Finnegan, Henderson, Farabow, Garrett & Dunner L.L.P.
1300 I Street N.W.
Washington, D.C. 20005-3315
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

ATTORNEYS FOR SUZUKI MOTOR CORPORATION

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A03-1511**

Brent A. Johnson,
Respondent,

vs.

Jill M. Wright,
f/k/a Jill Gavle,
Appellant.

**Filed July 13, 2004**
**Affirmed in part and reversed in part**
**Forsberg, Judge***

Dakota County District Court
File No. C7-02-8307

Sharon K. Hills, Severson, Sheldon, Dougherty & Molenda, P.A., 7300 West 147th Street, Suite 600, Apple Valley, MN 55124-7580 (for respondent)

Richard G. McGee, 8028 Morgan Circle, Brooklyn Park, MN 55444; and

Nathan M. Hansen, 2440 North Charles Street, Suite 224, North St. Paul, MN 55109 (for appellant)

Considered and decided by Klaphake, Presiding Judge; Stoneburner, Judge; and Forsberg, Judge.

## SYLLABUS

1. An agreement is champertous when a person without interest in another's lawsuit undertakes to carry it on at his or her own expense, in whole or in part, in consideration of receiving, in the event of success, a part of the proceeds of the litigation.

* Retired Judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

2. A loan agreement wherein a third party financially assists a litigant throughout the litigation process is valid if the third party has an expectation of reimbursement for the expenses paid regardless of the outcome of the litigation.

3. Jurisdiction by Minnesota courts is proper where there is nothing to suggest that exercise of such jurisdiction would interfere with or infringe on a Native American tribe's self-government, government functions, laws, or customs.

## OPINION

**FORSBERG**, Judge

Appellant assigned to respondent some proceeds from litigation against her former employer in exchange for respondent's payment of litigation costs, and assigned a percentage of her daughter's benefits from tribal enrollment in exchange for payment of costs associated with enrollment. Appellant also signed a note for some of the funds advanced by respondent. In this action, respondent sued appellant for recovery of funds pursuant to the assignment, and the district court granted summary judgment in his favor. Appellant contends that (1) the agreements constitute maintenance and champerty and violate Minnesota law; (2) the agreement relating to the minor child's potential tribal benefits is an invalid assignment of a minor's rights by a parent and is null and void; (3) the district court lacks jurisdiction over monies disbursed by a federally recognized tribe to its member; and (4) because respondent failed to list agreements or notes with appellant as an asset in his personal bankruptcy filing, he is estopped from pursuing those claims under judicial estoppel and lacks standing to do so. Because the note is a valid agreement between

the parties, we affirm the district court's finding that respondent is entitled to full payment on the note. But because we conclude that the assignment agreements are champertous, we reverse the district court's ruling that the agreements are enforceable.

## FACTS

In 1994, appellant Jill Wright sues Little Six, Inc., d/b/a Mystic Lake Casino; Leonard Prescott; Arlene Rose; and William Johnson. At about the same time, appellant sought to enroll her daughter, M.W., into the Shakopee Mdewakanton Sioux Tribe (the tribe) as a member.[1] Because appellant could not afford her attorney's retainer fee, respondent Brent Johnson, through his business, Money Changer LLC (MCM), agreed to financially assist appellant with her litigation expenses.

Throughout the litigation, respondent and/or his company financially assisted appellant with her litigation, enrollment, and personal expenses. In consideration of the funds loaned to appellant, the parties executed an assignment agreement wherein appellant assigned to respondent "a total of 27.67% of her right, claim and interest in and to any and all recovery by her, through suit, arbitration, settlement or otherwise, from all of her causes of action arising on or before September 14, 1994 against Little Six, Inc. d/b/a Mystic Lake Casino[.]" Respondent's loan was also secured by a promissory note (the Note) executed in November 1999 and payable to MCM in the amount of $140,000, plus annual interest at the rate of four percent. As the sole owner of MCM, respondent assigned the Note to himself.

[1] M.W.'s biological father is a member of the tribe.

Appellant settled her lawsuit in the fall of 2000. The district court ordered the settlement confidential and sealed the records. It is undisputed that appellant received a substantial monetary recovery. Also in the fall of 2000, M.W. was enrolled in the tribe as a member, which provided her with the right to receive per capita and other distribution payments.

In November 2000, appellant directed her attorney to disburse to respondent $38,976.22 from her litigation settlement proceeds that were held in the firm's trust account. But because the district oourt ordered that the settlement be confidential, respondent has no evidence of appellant's total settlement recovery to determine if the $38,976.22 represents the agreed upon 27.67% of the recovery. In addition, respondent claims that as additional consideration for financing appellant's legal actions, appellant assigned to him seven percent of all proceeds received by either appellant, her daughter, or a third party for the benefit of her daughter, from Little Six, Inc., and/or the tribe as a result of M.W.'s tribal membership enrollment, including M.W.'s per capita and other distributions resulting from enrollment.

Respondent commenced this action against appellant to enforce the Note and the two assignment agreements and moved for summary judgment. The district court granted summary judgment in favor of respondent on the Note in the amount of $140,000, plus interest. The district court also ordered appellant to provide respondent with a copy of the settlement agreements and an accounting of any and all monies received by appellant. Finally, the district court ordered appellant to pay respondent the amount claimed under the

two assignment agreements subject to court approval of assignment of M.W.'s funds under Minn. R. Gen. Pract. 145.01. This appeal followed.

## ISSUES

I. Did the district court err by granting summary judgment in favor of respondent on the basis that the Note and the assignment agreements were valid and did not constitute champerty and maintenance?

II. Did the district court have subject matter jurisdiction to enforce the assignment agreements between appellant and respondent?

III. Did the district court err by rejecting appellant's claim of judicial estoppel concerning the assignment agreements, which respondent did not claim as assets in his 1998 involuntary bankruptcy proceeding?

IV. Are there documents in appellant's appendix that are outside the district court record and should be stricken by this court?

## ANALYSIS

### I.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from summary judgment, we ask whether there are any genuine issues of material fact in dispute and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990).

Reviewing courts must view the evidence in a light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). The moving party bears the burden of demonstrating that no material fact issues exist. *Thiele v. Stich*, 425 N.W.2d 580, 583 (Minn. 1988). This court need not give deference to a district court's decision on a purely legal issue. *Modrow v. JP Foodservice, Inc.*, 656 N.W.2d 389, 393 (Minn. 2003).

Appellant argues that the district court erred by granting summary judgment in favor of respondent because the entire transaction between the parties constituted maintenance and champerty, and was therefore void as a matter of public policy. Champerty is defined as "[a]n agreement between a stranger to a lawsuit and a litigant by which the stranger pursues the litigant's claims as consideration for receiving part of any judgment proceeds." *Black's Law Dictionary* 224 (7th ed. 1999). Similarly, maintenance is defined as "[a]ssistance in prosecuting or defending a lawsuit given to a litigant by someone who has no bona fide interest in the case; meddling in someone else's litigation." *Black's Law Dictionary* 965 (7th ed. 1999).

> The general purpose of the law against champerty and maintenance was to prevent officious intermeddlers from stirring up strife and contention by vexatious or speculative litigation which would disturb the peace of society, lead to corrupt practices, and pervert the remedial process of the law. The principle upon which it proceeded was the contracts conducive of such results were against public policy.

*Huber v. Johnson*, 68 Minn. 74, 79, 70 N.W. 806, 807 (1897).

*A. Champerty and Maintenance in Minnesota*

Case law in Minnesota concerning champerty and maintenance is neither abundant nor recent. We therefore begin our analysis with the 1897 case of *Huber v. Johnson*, in which the defendant had a claim for damages against a railway company. 68 Minn. at 76, 70 N.W. at 806. The defendant and the plaintiff entered into a contract by which the plaintiff, who was a stranger to both the defendant and the claim, was to employ an attorney and institute a lawsuit in the name of the defendant for the collection of the claim, but wholly at the plaintiff's own cost. *Id.* The agreement stipulated that, as compensation for his services, the plaintiff was entitled to an amount equal to one-half of what was collected. *Id.* If nothing was collected, the agreement further stipulated that the plaintiff would not charge anything for his services. *Id.* Finally, as per the agreement, the defendant was not to settle the claim without the plaintiff's written consent, but if the claim was settled without the plaintiff's consent, the defendant was obligated to pay the plaintiff a fixed and arbitrary sum. *Id.* at 76-77, 70 N.W. at 806-07.

After plaintiff employed an attorney and brought an action to collect on behalf of defendant, the defendant settled the claim with the railway company without plaintiff's consent. *Id.* at 77, 70 N.W. at 807. The plaintiff then brought suit against defendant to enforce their agreement. *Id.* The defendant argued that the contract was champertous and void as against public policy. *Id.* The Minnesota Supreme Court agreed, explaining that the contract was void as champertous because plaintiff was a stranger to both defendant and the claim, and had no object in intermeddling in the matter except pure speculation. *Id.* at 79, 70 N.W. at 808. The court went on to hold that the most objectionable provision of the

contract was the portion requiring that defendant gain plaintiff's written consent before settling the claim; if defendant settled without written consent, then plaintiff was entitled to a fixed and arbitrary sum, without any regard to the amount or value of the services that plaintiff may have performed. *Id.*

The issue of champerty and maintenance was most recently before the supreme court in *Hackett v. Hammel*, 185 Minn. 387, 388, 241 N.W. 68, 69 (1932), where defendant was engaged in litigation regarding a northern Minnesota iron mine. Pursuant to an agreement between the parties, plaintiff advanced $705 to defendant to assist in the litigation. *Id.* The terms of the agreement specified that "if said defendant was successful in said litigation, the defendant would pay to plaintiff ten times the amount so advanced out of the proceeds of the recovery, while if the defendant was unsuccessful in said litigation . . . the defendant was to repay plaintiff nothing." *Id.*

Ultimately, defendant was successful in the litigation, and he repaid plaintiff $700. *Id.* No more was paid to plaintiff until a few years later when defendant gave plaintiff a promissory note for $3,200 in supposed settlement of the matter. *Id.* The plaintiff then brought suit against defendant, and defendant prevailed. On appeal, the supreme court noted that plaintiff, who was a layman with no interest in the lawsuit or its subject matter and no relation to defendant, advanced money to carry on the litigation, not as a loan, but to speculate upon and purchase a share in the outcome. *Id.* The court reiterated that if defendant lost in the litigation matter, plaintiff would get nothing, but if defendant won,

plaintiff was entitled to ten times his investment. *Id.* In holding that the agreement was champertous and therefore void, the court stated:

> Such speculation in litigation in which the adventurer has no interest otherwise, and where he is in no way related to the party he aids, is champertous. The element of intrusion for the purpose of mere speculation in the troubles of others introduces the vice fatal to what otherwise would be a contract.

*Id.*

Respondent argues that the present case is distinguishable from *Huber* and *Hackett* because, unlike *Huber*, respondent did not hire appellant's attorney, nor did he undertake to prosecute appellant's suit against Little Six. Respondent also contends that he simply financed appellant's legal matters and, unlike *Huber*, respondent had no control over appellant's legal matters. And unlike *Hackett*, respondent contends that the money he advanced to appellant was a loan, as evidenced by the Note. Respondent asserts that appellant was required to repay the money regardless of the result in her litigation and enrollment matters, and therefore his involvement in the matter was not mere speculation.

In order to determine whether the agreements are champertous, an examination of the contents of the Note is appropriate to establish the Note's effect on the parties' agreements. The record reflects that because appellant could not afford to pay her attorney's retainer, respondent loaned her the money to assist her with her legal expenses. The Note stipulates that

> [appellant] promises to pay to the order of [respondent], the principal sum of One Hundred Forty Thousand Dollars ($140,000), including interest on the unpaid principal amount

> hereof outstanding from time to time at the rate of four percent (4%) per annum, from the date hereof. The entire indebtedness hereunder, including all principal and accrued interest shall be due and payable upon demand by Payee, but in no event shall such amount be due prior to the time [appellant] receives a recovery, if any, from the litigation entitled *Jill Gavle v. Little Six, Inc. et al.*

Although the Note specifies that respondent could not demand payment until after the litigation was decided, the Note was not contingent on the outcome of the litigation. If repayment of the Note were contingent upon appellant recovering in her litigation, the agreement would be considered champertous. *See Hackett*, 185 Minn. at 387-88, 241 N.W. at 69; *see also Huber*, 68 Minn. at 79, 70 N.W. at 808. But the last sentence of the Note requires appellant to repay respondent the full $140,000, plus interest. Because respondent had an expectation that the $140,000 would be repaid, regardless of the outcome of the litigation, we conclude that the Note was a valid loan made to appellant. Therefore, the Note is not champertous, and the district court did not err by granting summary judgment to respondent for the full amount of the Note, plus interest.[2]

---

[2] Appellant argues that respondent's acceptance of $38,976.22 that had been held in her attorney's trust account, as payment from her settlement proceeds in the litigation, constitutes an accord and satisfaction of respondent's interest in her litigation. But there is no evidence in the record that appellant tendered this amount to respondent in full satisfaction of the claims, nor is there any evidence in the record of a written communication from appellant to respondent containing "a conspicuous statement" that the $38,976.22 was tendered in full satisfaction of the debt. *See Webb Bus. Promotions, Inc. v. Am. Elecs. & Entm't Corp.*, 617 N.W.2d 67, 73 (Minn. 2000) (listing elements that are generally required to establish the defense of accord and satisfaction). The district court did not err by rejecting appellant's claim that accord and satisfaction discharged any of appellant's legal obligations.

Appellant argues that notwithstanding the validity of the Note, the 27.67% assignment agreement is champertous. We agree. The record reflects that the 27.67% assignment agreement was executed on April 8, 1997. The record also reflects that the Note was executed on November 1999, well after the execution of the 27.67% assignment agreement. The 27.67% assignment agreement makes no mention of repayment for monies loaned to appellant. In fact, the assignment agreement merely states that

> [f]or and in Consideration Of the sum of [$1.00] and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, [appellant] does hereby Sell, Transfer, and Assign to [respondent] . . . a total of 27.67% of her right, claim and interest in and to any and all recovery by her, through suit, arbitration, settlement or otherwise, from all of her causes of action arising on or before September 14, 1994 against Little Six, Inc. . . .

Based on the language of the agreement, appellant was required to transfer 27.67% of her recovery in the litigation to respondent. But had there been no recovery, respondent would have been entitled to nothing. Through this agreement, respondent effectively intermeddled and speculated in appellant's litigation and its outcome. We conclude that because recovery is tied to the outcome of the litigation, the 27.67% agreement is champertous. *See Black's Law Dictionary* 224 (7th ed. 1999) (stating that an agreement between a stranger to a lawsuit and a litigant by which the stranger pursues the litigant's claims as consideration for receiving part of any judgment proceeds is champertous).

Appellant also contends that the seven percent assignment agreement regarding M.W.'s enrollment is champertous. As with the 27.67% agreement, the seven percent agreement was executed more than a year before the execution of the Note and does not set

forth the amount loaned to appellant or require repayment of the loan despite the outcome of enrollment efforts. Rather, the agreement states that in exchange for the amount of money expended by respondent to cover the expenses associated with M.W.'s enrollment with the tribe, respondent is entitled to seven percent of all proceeds paid to M.W. after enrollment as a tribal member.

Based on the plain language of this agreement, we conclude that the agreement is champertous. *See id.* Respondent offered to pay the expenses associated with M.W.'s tribal enrollment. The agreement says nothing about repayment of these expenses. Instead, respondent was only entitled to the seven percent if and when M.W. was successfully enrolled as a tribal member. Such an agreement in which respondent had no interest otherwise, and when he is in no way related to the party he aids, is champertous and void as against public policy. *Hackett*, 185 Minn. at 388, 241 N.W. at 69.[3]

*B. Champerty and Maintenance Throughout the United States*

Respondent argues that even if the agreements are champertous, this court should reevaluate its position on the doctrine of champerty and maintenance. In support of his contention, respondent asserts that many states, such as South Carolina and Massachusetts, have completely abandoned the champerty doctrine because many of the public policy

[3] Although we conclude that the seven percent agreement was invalid under the doctrine of champerty and maintenance, we also note that appellant had no legal right to assign to respondent seven percent of the proceeds M.W. would receive upon her enrollment with the tribe. *See In re Wretlind*, 225 Minn. 554, 563, 32 N.W.2d 161, 167 (1948) (stating that where there is conflicting interest between a minor and person representing her, the person whose interest is adverse to the minor's interest should not be appointed guardian ad litem, or permitted to act as the next friend of the minor).

reasons behind institution of the doctrine no longer exist. *See, e.g., Saladini v. Righellis*, 687 N.E.2d 1224, 1226-27 (Mass. 1997) (holding that the champerty doctrine is no longer needed to protect against the evils once feared, such as speculation in lawsuits, the bringing of frivolous lawsuits, or financial overreaching by a party of superior bargaining position because there are now other devices that more effectively accomplish these ends); *Osprey, Inc. v. Cabana Ltd. P'ship*, 532 S.E.2d 269, 277 (S.C. 2000) (abolishing champerty as a defense because other well-developed principles of law can more effectively accomplish the goals of preventing speculation in groundless lawsuits and the filing of frivolous suits than dated notions of champerty).[4]

Although a few states have modified or abandoned the champerty doctrine, many still apply the doctrine. The Ohio Supreme Court recently held that an agreement similar to the agreement in the present case was void because it constituted champerty. *Rancman v. Interim Settlement Funding Corp.*, 789 N.E.2d 217 (Ohio 2003). In that case, a car accident victim entered into contracts with two settlement funding corporations prior to resolution of her case with the insurer, whereby the corporations forwarded the victim money in exchange for a percentage of the funds she would collect from the insurer. *Id.* at 218-19. Following a settlement with the insurer, the victim refused payment on the contracts with the corporations, but tendered a return of the monies advanced to her, with

[4] The courts in *Saladini* and *Osprey* cited the rules against bringing frivolous lawsuits and excessive attorney fees as devices that more effectively guard against the evils the champerty doctrine sought to protect against. *Saladini*, 687 N.E.2d at 1227; *Osprey*, 532 S.E.2d at 277.

interest. *Id.* at 219. The victim then filed suit against the corporations, seeking rescission of the contracts and a declaratory judgment. *Id.* The court stated that, except as otherwise permitted by legislative enactment or the Code of Professional Responsibility, a contract making the repayment of funds advanced to a party to a pending case contingent on the outcome of that case is void as champerty and maintenance. *Id.* at 221 (stating that such an advance constitutes champerty and maintenance because it gives a nonparty an impermissible interest in a suit, impedes the settlement of the underlying case, and promotes speculation in lawsuits). Thus, the court held that the advances made to the victim were void as champertous because the corporations sought to profit from the victim's case. *Id.* at 220-21.

Similarly, other courts have declined to abolish the champerty doctrine. *See, e.g., Fleetwood Area School Dist. v. Berks County Bd. of Assessment Appeals*, 821 A.2d 1268, 1273 (PaComwlth 2003) (stating that doctrine of champerty continues to be viable in Pennsylvania and can be raised as a defense); *Lingel v. Olbin*, 8 P.3d 1163, 1167-68 (Ariz. App. 2000) (stating that personal injury and wrongful death claims are not assignable because of the increased risk of promoting maintenance and champerty). These courts recognize the potential ill effects that a champertous agreement can have on the legal system. Although there are safeguards in place to alleviate the potential evils associated with champertous agreements, respondent fails to provide a compelling reason to completely abandon the doctrine. As an error correcting court, we do not presume to abandon the champerty doctrine simply because a few states have chosen to do so.

II.

Next, appellant argues that the district court lacked jurisdiction over the use or disposition of monies that may be disbursed by a federally recognized tribe to its member. Subject matter jurisdiction is a question of law, which this court reviews de novo. *Shaw v. Bd. of Regents of Univ. of Minn.*, 594 N.W.2d 187, 190 (Minn. App. 1999), *review denied* (Minn. July 28, 1999).

Public Law 280, codified at 18 U.S.C. § 1162 and 28 U.S.C. § 1360, grants jurisdiction to many states over certain civil matters. *Duluth Lumber & Plywood Co. v. Delta Dev., Inc.*, 281 N.W.2d 377, 380 (Minn. 1979). State courts generally have full jurisdiction over common-law disputes such as torts or contracts involving Native Americans. *Id.* at 381. However, state jurisdictions must not interfere with Native American self-government, absent some compelling state interest. *Id.*

In *Duluth Lumber*, the question before the supreme court was whether a Minnesota court would adversely affect the Chippewa Tribe's self government by assuming jurisdiction over a civil dispute involving monies disbursed by the Fon du Lac Housing Authority. 281 N.W.2d at 382. The supreme court stated that Minnesota courts may generally assume jurisdiction over disputes arising from commercial transactions between Native Americans and non-Native Americans if the transaction is not confined to the reservation. *Id.* Because state jurisdiction did not interfere with the right of the Native Americans on the Fond du Lac Reservation to make their own laws and be ruled by them, the court held that the Fond du Lac Housing Authority was deemed to have submitted itself to the jurisdiction of non-

Native American institutions for the purpose of construing and enforcing the agreement between the United States and a private developer. *See id.* at 383 (holding that the construction and application of the agreement were at stake and not the governmental functions, laws, or customs of the tribe). Thus, the supreme court held that jurisdiction in a Minnesota state court was proper. *Id.*

Here, the seven percent agreement concerns a transaction that occurred entirely off the reservation involving two non-tribal members. Although M.W. is now a tribal member, she and her mother live and conduct their affairs off the reservation and within the jurisdiction of the Minnesota court system. There is nothing to suggest that jurisdiction by Minnesota courts over the assignment of M.W.'s tribal per capita distributions would interfere with or infringe on the tribe's self-government, government functions, laws, or customs. Jurisdiction in this matter was proper.

**III.**

In October 1998, respondent was the target of an involuntary bankruptcy petition in the Northern District of Iowa Bankruptcy Court. Appellant asserts that as part of the bankruptcy proceeding, respondent was required to list all of his known assets. Appellant argues that because respondent did not claim the assignment agreements as assets in the bankruptcy proceeding, he is judicially estopped from bringing claims based on the assignment agreements.

Judicial estoppel prevents a party from contradicting previous declarations made during the same or later proceedings if the change in position would adversely affect the

proceeding or constitute a fraud on the court. *Bauer v. Blackduck Ambulance Ass'n*, 614 N.W.2d 747, 749 (Minn. App. 2000). But it is an open question whether the doctrine of judicial estoppel even exists in Minnesota. *See State v. Larson*, 605 N.W.2d 706, 713 n.11 (Minn. 2000) (refusing to expressly recognize the theory of judicial estoppel); *see also State v. Profit*, 591 N.W.2d 451, 462 (Minn. 1999); *Illinois Farmers Ins. Co. v. Glass Services Co., Inc.*, 669 N.W.2d 420, 426 (Minn. App. 2003). Under these facts, we decline to recognize the theory here.

IV.

Finally, respondent claims that certain documents in appellant's appendix are outside the district court record and should be stricken. "An appellate court may not base its decision on matters outside the record on appeal, and may not consider matters not produced and received in evidence below." *Thiele*, 425 N.W.2d at 582-83. Because these documents are outside the district court record, they are stricken.

## DECISION

The Note is a valid agreement between the parties, and therefore respondent is entitled to full payment on the Note. The assignment agreements, under which respondent financed appellant's legal action in exchange for a percentage of the proceeds if the action were successful, however, are champertous, and void as against public policy.

**Affirmed in part and reversed in part.**

**CERTIFICATE OF SERVICE**

I, Annamarie A. Daley, hereby certify that on July 20, 2004, I caused a copy of:

1. Arctic Cat's and Suzuki's Supplemental Submission of Minnesota Law Regarding Motion for Summary Judgment on Champerty and Maintenance Grounds

to be served upon the attorneys of record listed below:

Anthony de Alcuaz, Esq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *(Via E-Filing)*
McDERMOTT, WILL & EMERY
3150 Porter Drive
Palo Alto, CA 94304.1212
Facsimile: (650)-813-5100

David P. Pearson, Esq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *(Via E-Filing)*
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402.4629
ATTORNEYS FOR INJECTION RESEARCH SPECIALISTS, INC. AND PACER INDUSTRIES

Thomas H. Jenkins, Esq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *(Via E-Filing)*
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
1300 I Street NW
Washington, D.C. 20005.3315

William F. Forsyth, Esq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *(Via E-Filing)*
HENSON & EFRON, P.A.
220 South Sixth Street, Suite 1800
Minneapolis, MN 55402.4503
ATTORNEYS FOR SUZUKI MOTOR CORPORATION

Dated: July 20, 2004.

/s/ Annamarie A. Daley
Annamarie A. Daley