**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| ARCTIC CAT INC.,<br>a Minnesota corporation,<br><br>Plaintiff,<br><br>v.<br><br>INJECTION RESEARCH SPECIALISTS, INC.,<br>a Colorado corporation, and<br>PACER INDUSTRIES, INC.,<br>a Missouri corporation,<br><br>Defendants.<br><br>INJECTION RESEARCH SPECIALISTS, INC.,<br>a Colorado corporation, and<br>PACER INDUSTRIES, INC.,<br>a Missouri corporation,<br><br>Counterclaimants,<br><br>v.<br><br>ARCTIC CAT INC.,<br>a Minnesota corporation, and<br>SUZUKI MOTOR CORPORATION,<br>a Japanese corporation,<br><br>Counterclaim Defendants. | Civil Action No. 01-CV-543 (MJD/RLE)<br><br>Hon. Michael J. Davis<br>Hon. Raymond L. Erickson (Magistrate) |

**DECLARATION OF AARON A. MYERS IN SUPPORT OF ARCTIC CAT'S AND SUZUKI'S RESPONSE TO IRS'S OBJECTIONS TO MAGISTRATE JUDGE ERICKSON'S AUGUST 6, 2004 REPORT AND RECOMMENDATION**

I, Aaron A. Myers, declare that:

1. I am an attorney with the law firm of Robins, Kaplan, Miller & Ciresi L.L.P., and am one of the attorneys representing plaintiff Arctic Cat Inc. ("Arctic Cat") in this matter and have personal knowledge of the facts stated herein. I make this declaration in support of Arctic

Cat's and Suzuki's Response to IRS's Objections to Magistrate Judge Erickson's August 6, 2004, Report and Recommendation.

1. Exhibit A is a true and correct copy of *Honeywell, Inc. v. U.S. JVC Corp.*, No. 99-1607 (DWF/AJB), Dkt. No. 289 (March 19, 2004).

2. Exhibit B is a true and correct copy of *Toro Co. v. Ariens Co.*, No. 3-96-416/RHK/FLN, 1998 U.S. Dist. LEXIS 22856 (D. Minn. 1998).

3. Exhibit C is a true and correct copy of *Toro Co. v. Ariens Co.,* Nos. 99-1285, 99-1307, 2000 U.S. App. LEXIS 8253 (Fed. Cir. 2000).

4. Exhibit D is a true and correct copy of *MacPike v. American Honda Motor Co.*, No. 92-30094/LAC, 1993 WL 632261 (N.D. Fla. 1993).

5. Exhibit E is a true and correct copy of excerpts from the Cuyuna statement of work.

6. Exhibit F is a true and correct copy of excerpts from the Cuyuna "Phase II" proposal.

7. Exhibit G is a true and correct copy of excepts from the Arctco EFI report.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 7, 2004

s/Aaron A. Myers
Aaron A. Myers



Word 20105932.1

# Exhibit A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Honeywell, Inc., a Delaware corporation,

Plaintiff,

v.

Victor Company of Japan, Ltd., a Japanese corporation, and U.S. JVC Corp., a New York corporation,

Defendants.

Civil No. 99-1607 (DWF/AJB)

**MEMORANDUM ORDER AND OPINION**

---

Martin R. Lueck, Esq., Michael V. Ciresi, Esq., Matthew L. Woods, Esq., Keiko L. Sugisaka, Esq., Robins, Kaplan, Miller & Ciresi, 2800 LaSalle Plaza, 800 LaSalle Avenue, Minneapolis, MN 55402-2015, counsel for Plaintiff.

Anthony W. Shaw, Esq., Dewey Ballantine, 1775 Pennsylvania Avenue N.W., Washington, DC 20006-4605; Anthony F. Lo Cicero, Esq., Morton Amster, Esq., Michael J. Berger, Esq., Charles R. Macedo, Esq., Holly Pekowsky, Esq., Richard S. Mandaro, Esq., and Kenneth M. Bernstein, Esq., Amster Rothstein & Ebenstein, 90 Park Avenue, New York, NY 10016; David P. Pearson, Esq., Winthrop & Weinstine, 60 South Sixth Street, Suite 3000, Minneapolis, MN 55402-4430, Jeffrey L. Kessler, Esq., and Joseph E. Czerniawski, Esq., Dewey Ballantine, 1301 Avenue of the Americas, Room 2810, New York, NY 10019-6092; and David J. Lender, Esq., Steven J. Rizzi, Esq. and John D. Garretson, Esq., Weil Gotshal & Manges, 767 Fifth Avenue, New York, NY 10153, counsel for Defendants.

---

## INTRODUCTION

The above-entitled matter came on for hearing before the undersigned United States District Judge on January 21, 2004, pursuant to the following post-trial motions: (1) Defendants Victor Company of Japan, Ltd., and U.S. JVC Corp.'s (herein collectively referred to as "JVC") Renewed Motion for Judgment as a Matter of Law ("JMOL") or, in the alternative, a Motion for a New Trial, or Remittitur; and (2) JVC's Motion for Summary Judgment on Plaintiff Honeywell, Inc.'s ("Honeywell")

claims for willful infringement. For the reasons stated below, JVC's Renewed Motion for JMOL or, in the alternative, a Motion for a New Trial, or Remittitur is denied, and JVC's Motion for Summary Judgment on Honeywell's claims for willful infringement is granted.

On January 26, 2004, the Court entered judgment denying JVC's Renewed Motion for JMOL, or, in the Alternative, a New Trial or Remittitur and granting JVC's Motion for Summary Judgment on Honeywell's Claims for Willful Infringement. At that time, the Court stayed the entry of judgment for a period of 60 days so that the Court could file this order and memorandum.

## BACKGROUND

### I. PROCEDURAL HISTORY

Honeywell filed this action on October 20, 1999. On July 25, 2000, the Court granted JVC's Motion for Partial Summary Judgment finding that the Matsushita Electric Industrial Co., Ltd.'s ("MEC") imaging chips that were incorporated in JVC's camcorders were licensed. After a *Markman* hearing was held, the Court rendered its claim construction. On the basis of that claim construction, on March 29, 2001, the Court granted JVC's Motion for Summary Judgment of non-infringement with regard to the Sony Corp. ("Sony") and Toshiba Corp. ("Toshiba") imaging chips that were incorporated in JVC's camcorders.

Honeywell appealed both of these decisions to the Court of Appeals for the Federal Circuit. On August 1, 2002, the Federal Circuit affirmed this Court's ruling regarding the license issue, but reversed and remanded the non-infringement ruling. *See Honeywell Inc. v. Victor Co. of Japan, Ltd.*, 298 F.3d 1317 (Fed. Cir. 2002).

On April 25, 2003, the Court denied JVC's motion for summary judgment on noninfringement and Defendant's motion for summary judgment of invalidity based on the on-sale bar.

A jury trial commenced on May 19, 2003, on all issues except Honeywell's claims for willful infringement. The issue of willful infringement was bifurcated. At the close of Honeywell's case-in-chief, JVC moved for JMOL with respect to the issues of on-sale bar, anticipation, obviousness, infringement, enforceability and entitlement to damages. The Court denied those motions as well as the JMOL motions brought by both JVC and Honeywell at the close of the evidence.

On June 9, 2003, the jury returned a verdict finding for Honeywell on all issues and awarding damages to Honeywell in the amount of $30,041,191. As discussed above, JVC brought a Renewed Motion for JMOL or, in the alternative, a Motion for a New Trial, or Remittitur on August 19, 2003.

Subsequent to the completion of the first phase of the trial, the parties engaged in discovery on the issue of Honeywell's claims for willful infringement. The second phase of trial was scheduled to begin on February 9, 2004. Later, JVC brought a Motion for Summary Judgment on Honeywell's claims for willful infringement. On January 26, 2004, the Court entered judgment denying JVC's Renewed Motion for JMOL or, in the alternative, a Motion for a New Trial, or Remittitur, and granting JVC's Motion for Summary Judgment on Honeywell's Claims for Willful Infringement. In the Court's order of January 26, 2004, the Court stated that a memorandum opinion would follow.

## DISCUSSION

## I. JVC'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, A NEW TRIAL OR REMITTITUR

### A. Standards of Review

#### 1. Rule 50(b) - JMOL

If a jury returns a verdict and a party challenges the jury's verdict, the court must determine "whether there is sufficient evidence supporting a jury verdict." *White v. Pence*, 961 F.2d 776, 779 (8th Cir. 1992). In considering the motion, a court must: (1) view the evidence in the light most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party; (3) assume as proved all facts that the prevailing party's evidence tended to prove; and (4) give the prevailing party the benefit of all favorable inferences that reasonably may be drawn from the facts proved. *See Haynes v. Bee-Line Trucking Co.*, 80 F.3d 1235, 1238 (8th Cir. 1996) (citations omitted).

#### 2. Rule 59(a) - New Trial

"A court may grant a new trial on the basis that the verdict is against the weight of the evidence, if the first trial results in a miscarriage of justice." *Shaffer v. Wilkes*, 65 F.3d 115, 117 (8th Cir. 1995) (citing *White*, 961 F.2d at 780). On a motion for a new trial, a court can interpret the evidence and judge the credibility of witnesses. *See id.* at 118. However, in granting a motion for a new trial, a court must "articulate its reasons for finding the verdict is against the great weight of evidence." *Id.*

**3. Rule 59(e) - Remittitur**

A court should grant remittitur only when the verdict is "so grossly excessive as to shock the court's conscience." *Kociemba v. G.D. Searle & Co.*, 707 F. Supp. 1517, 1536 (D. Minn. 1989) (Renner, J.). A verdict is not considered excessive unless there is "plain injustice" or a "monstrous" or "shocking" result. *Eich v. Board of Regents for Cent. Missouri State University*, 350 F.3d 752, 763 (8th Cir. 2003) (quoting *Jenkins v. McLean Hotels, Inc.*, 859 F.2d 598, 600 (8th Cir. 1988)).

**B. On-Sale Bar Defense**

JVC moves the Court for JMOL, asserting that the TCL Agreements were commercial offers for sale, and thus, the '501 patent was invalid based upon the statutory on-sale bar. Specifically, JVC asserts that the language of the TCL Agreements and the testimony of certain Honeywell witnesses indicate that the TCL Agreements were commercial in nature. In addition, JVC asserts that Honeywell presented misleading information regarding the status of the development of a commercial embodiment of the invention that likely confused the jury as to the law.

Honeywell contends that this Court had previously reviewed the TCL Agreements and found that genuine issues of material fact existed regarding the true nature of the transactions embodied in the TCL Agreement. *See Honeywell Inc. v. Victor Co. of Japan, Ltd.*, 2003 WL 1966348 at *5 (April 25, 2003). Honeywell asserts that the language of the TCL Agreements and testimony presented at trial to the jury confirm that the TCL Agreements had both developmental and commercial goals, but that the TCL program participants did not have the power of acceptance until the TCL reached some later stage in its development. Finally, Honeywell asserts that the evidence presented regarding the developmental status of the TCL was relevant to a jury

in determining whether the TCL had reached the stage in its development at which the TCL program participants had the power to accept the commercial portions of the TCL Agreement.

The Court finds that sufficient evidence supports the jury's verdict that JVC did not "prove by clear and convincing evidence that the invention described in claims 1 and 2 of the '501 patent was the subject of a commercial offer for sale prior to March 30, 1980." (Special Verdict Form p. 2.) Consistent with the Court's prior ruling on this issue, the Court finds that the jury was presented with conflicting language in the TCL Agreements and testimony from witnesses for both parties regarding the nature of the TCL Agreements. Specifically, the jurors were presented with the language of Paragraphs 6 and 7 of the TCL Agreements and with testimony from witnesses concerning the interpretation to be given to those portions of the TCL Agreements.

In addition, the Court finds that the evidence presented by Honeywell regarding the stage of development of the TCL was not misleading. Instead, the evidence presented provided the jurors with Honeywell's position regarding the level of development of the TCL that was at issue under Honeywell's interpretation of the TCL Agreements because, at a certain stage of development, the TCL program participants would have had the right to purchase the product pursuant to the TCL Agreements. Accordingly, the Court declines to issue JMOL, or a new trial, to JVC based on its on-sale bar defense.

### C. Damages Award

JVC moves the Court for a new trial or, in the alternative, remittitur, with respect to the damages award. JVC asserts that the testimony of Honeywell's sole expert on damages, Carl Degen, was entirely speculative and gave the jury a false idea of the appropriate level of damages. JVC also

asserts that the jury verdict should be overturned because the verdict was irreparably tainted by improper and misleading evidence.

JVC relies heavily on the Federal Circuit's decision in *Integra Lifesciences I, Ltd., v. Merck KGaA*, 331 F.3d 860 (Fed. Cir. 2003). In *Integra*, the Federal Circuit reversed a jury award of $15 million based on a finding of infringement and remanded the case to the district court for a re-calculation of damages. *See id.* The Federal Circuit reversed the jury award based on the fact that: (1) the plaintiff acquired the patents-at-issue as part of a larger acquisition of an entire company for $20 million; (2) the plaintiff's expert attempted to support the damages award based on technology license agreements between the defendant and other companies that were not similar to the technology at issue in the case; and (3) the number of patents needed to develop a product affected the value placed on any single technology used in the development process and that the cumulative effect of "stacking royalties" can be substantial. *See id.*

JVC asserts that each of the facts that the Federal Circuit relied on in reversing the damage award in *Integra* is present in this case. First, JVC asserts that Honeywell sold the division of its company that was responsible for manufacturing the TCL components for $18.6 million in 1989. Second, JVC asserts that the licenses that Degen relied on to form an opinion as to a reasonable royalty related to technology that was not like the '501 patent technology. Third, JVC asserts that Degen failed to consider the concept of royalty stacking when coming to an opinion as to a reasonable royalty rate.

JVC also contends that Degen's expert testimony that the upper end for license agreements was 10% should have been excluded because the basis for such an opinion had either already been

excluded or was never introduced to the jury. Specifically, Degen's expert report contained references to *Honeywell v. Minolta* and *Polaroid v. Kodak*. However, the Court granted JVC's motion *in limine* regarding the exclusion of evidence regarding *Minolta* and Honeywell introduced no evidence concerning *Polaroid*. Finally, JVC asserts that the introduction of evidence regarding information about JVC's total revenues was in error and prejudiced the jury.

Honeywell asserts that *Integra* is factually distinguishable from this case. First, Honeywell notes that its sale of Amtel did not result in a sale of ownership of the '501 patent technology, but only allowed the purchasing company the right to manufacture the TCL modules as the TCL modules had been manufactured in 1989. Second, Honeywell asserts that Degen himself stated that he did not rely on the consumer electronic licenses to support his opinion, but instead that he relied on the MEC license agreement and two adjudicated royalty agreements to determine the range. Third, Honeywell contends that JVC did not offer any evidence comparable to that offered by the defendant in *Integra* regarding patents on which it pays a royalty.

Honeywell also responds to JVC's assertion that it introduced misleading or improper evidence. Honeywell asserts that as an expert, Degen could rely on inadmissable information in coming to his opinion regarding a reasonable royalty rate so long as it was information that was reasonably relied on by someone in the field. Honeywell also contends that the introduction of evidence regarding JVC's revenues was appropriate because Degen's opinion was that had JVC agreed to a royalty, it would have been 2% of the company's total revenues from the infringing camcorders.

The Court finds that no basis exists for granting JVC a new trial or remittitur of the damages awarded by the jury. The Court agrees in large part with Honeywell's assessment of *Integra* and the

differences that existed between the facts of this case and *Integra*. The Court also finds that Degen appropriately relied on the *Minolta* and *Polaroid* decisions in forming his opinion as to what constituted a reasonable royalty. As an expert, Degen was entitled to rely on even inadmissable information so long as it was "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject . . . ." Fed. R. Evid. 703.

Finally, discussion of JVC's total revenues was appropriate because Degen's assessment of a reasonable royalty was based on a model that required a calculation of JVC's total revenues. JVC's expert had an opportunity to dispute the revenue figure presented by Honeywell, but its expert determined that the figure presented was correct. While the Court is mindful of the affect that such large dollar figures may have on jurors, the fact remains that Degen's royalty model required that JVC's total revenues be presented to the jury. Accordingly, the Court denies JVC's Motion for a New Trial or, in the alternative, Remittitur with respect to the damages award.

**D. Anticipation and Obviousness**

JVC moves the Court for JMOL, or in the alternative, a new trial, with respect to the issues of anticipation and obviousness. JVC's primary contention with regard to anticipation is that no reasonable jury could have found that Claims 1 and 2 of the '501 patent were not anticipated by Norman Stauffer's '191 patent. Specifically, JVC asserts that the '191 patent inherently discloses a mask or light shield. JVC asserts that even if the Court does not find that the '191 patent anticipated the '501 patent, the Court should still grant it JMOL or a new trial because the '501 patent is invalid on the separate ground of obviousness. The basis for JVC's assertion of obviousness with regard to the '501 patent is that even if the '191 patent did not disclose the mask or light shield, a person of ordinary

skill in the art would have been motivated to combine the light shield with the '191 patent so that the '191 patent could be made to work.

Honeywell responds to JVC's anticipation argument by pointing out that evidence was presented by Stauffer himself, the inventor of the '191 and '501 patents, that the two inventions were different. Specifically, Stauffer testified that the '191 patent did not have a mask or light shield. Honeywell also points out that its expert, Dennis Wilwerding, testified that the '191 patent did not have all of the elements of the '501 patent.

In response to JVC's contentions regarding invalidity of the '501 patent on the ground of obviousness, Honeywell asserts that evidence was presented at trial that showed the Nakaoka '470 patent post-dates the invention of the '501 patent. Honeywell also asserts that it presented evidence at trial that parts of the '470 patent may have been based on confidential information Honeywell shared with Ricoh as part of an advanced disclosure program. Honeywell's final assertion regarding JVC's obviousness defense is that the secondary factors of non-obviousness are strongly in favor of Honeywell's position–the most important being that seven other camera manufacturers felt the need to take licenses of the '501 patent.

The Court finds that sufficient evidence exists for the jury's verdict regarding JVC's anticipation and obviousness defenses. As previously stated, both parties presented evidence regarding whether the '191 patent disclosed a mask or light shield. The jury clearly felt that the '191 patent did not do so. In addition, JVC was allowed to present evidence that the '501 patent would have been obvious to a person of ordinary skill in the art. Honeywell presented evidence discrediting some of the prior art references presented by JVC and supporting its position regarding what a person of ordinary skill in the

art would have been motivated to do. The jury weighed the conflicting evidence and found that JVC did not meet its burden of proving by clear and convincing evidence either anticipation or obviousness. Accordingly, the Court denies JVC's Motion for JMOL, or, in the alternative, a new trial, with respect to the issues of anticipation and obviousness.

**E. Infringement**

JVC also requests that the Court grant it JMOL, or, in the alternative, a new trial, with respect to the jury's finding that there was literal infringement of the '501 patent. JVC's primary contention is that the testimony of certain witnesses establishes that no reasonable jury could find that the color filters layer was part of the transparent member. JVC also asserts that Honeywell confused the jury by introducing evidence that the color filters layer was an additional component that could not affect the infringement analysis.

Honeywell asserts that several witnesses, most notably that of Hideshi Abe, established that the color filters are transparent to certain wavelengths of light, and therefore the color filters are part of the transparent member. Honeywell responds to JVC's assertions that Honeywell introduced evidence that could have confused the jury by pointing out that its argument was in line with a jury instruction that had been submitted and agreed to by both of the parties. (Joint Instruction No. 31.)

The Court finds that sufficient evidence existed to support the jury's finding that JVC infringed the '501 patent. Evidence was presented in the form of testimony by both parties regarding whether the color filters were part of the transparent member. The jury found that the conflicting evidence supported Honeywell's position that the color filters were part of the transparent member. The Court finds that the arguments of Honeywell's counsel were not contrary or otherwise inconsistent with the

law submitted to the jury by the Court, including those instructions submitted jointly by the parties. A reasonable jury could have found, and did find, that the color filters layer was transparent and that there was therefore infringement. Because the Court finds that sufficient evidence supported the jury's verdict and that the evidence presented to the jury was in conformance with the law, the Court denies JVC's request for JMOL, or, in the alternative, a new trial.

### F. Inequitable Conduct

JVC requests that if the Court is to grant it a new trial on any grounds that the Court also allow Honeywell to re-try the issue of Honeywell's allegedly inequitable conduct. Because the Court has denied JVC's motion for a new trial on all grounds, the Court finds that this issue is moot.

## II. JVC'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF HONEYWELL'S CLAIMS FOR WILLFUL INFRINGEMENT

### A. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and

that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**B. Willful Infringement**

Under 35 U.S.C. § 284, a trial court, in its discretion, may enhance damages up to three times the compensatory award. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992), *abrogated on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995). "While no statutory standard dictates the circumstances under which the district court may exercise its discretion, this court has approved such awards where the infringer acted in wanton disregard of the patentee's patent rights, that is, where the infringement is willful." *Read*, 970 F.2d at 826 (citing *Great Northern Corp. v. Davis Core & Pad Co., Inc.*, 782 F.2d 159, 166 (Fed. Cir. 1986)). However, a finding of willful infringement does not mandate that damages be enhanced. *Read*, 970 F.2d at 826 (citing *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990)).

Infringement is willful if, based on the totality of the circumstances, it is determined that the infringer acted in bad faith and without a reasonable basis for believing it was not infringing the patent-in-suit. *See Gustafson, Inc. v. Intersystems Indus. Products, Inc.*, 897 F.2d 508, 510-11 (Fed. Cir. 1990). Infringement need only be shown by a preponderance of the evidence, but clear and convincing

evidence is required to show that infringement was willful. *See State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1581 (Fed. Cir. 1989).

A court must determine whether under the circumstances, "a reasonable person would prudently conduct himself with any confidence that a court might hold the patent invalid or not infringed." *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1580 (Fed. Cir. 1992). A potential infringer having received actual notice of a patent has an affirmative duty of care to obtain legal advice before continuing or engaging in potentially infringing activities. *See id.* at 1580.

The existence of an opinion letter is an "important factor in determining the willfulness of infringement . . . ." *Ortho Pharmaceutical Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992). However, willful infringement can be found even when an accused infringer has obtained an opinion letter. *See Read*, 970 F.2d at 828-29. "Those cases where willful infringement is found despite the presence of an opinion of counsel generally involve situations where opinion of counsel was either ignored or found to be incompetent." *Id.*

The critical determination in deciding whether to grant enhancement and the amount of such an enhancement is the severity of defendant's conduct based on all of the facts and circumstances of the case. *See Read*, 970 F.2d at 826 (citing *Rite-Hite Corp. v. Kelley Co., Inc.*, 819 F.2d 1120, 1124-25 (Fed. Cir. 1987). The court must consider all factors that render defendant's conduct more culpable, as well as those factors that are mitigating or ameliorating. *See id.* In *Bott v. Four Star Corp.*, 807 F.2d 1567, 1572 (Fed. Cir. 1986), the Federal Circuit identified three factors to consider in determining whether an infringer acted with such bad faith as to merit an enhancement of damages,

including: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, knowing of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; and (3) the infringer's behavior as a party to the litigation. In addition to the *Bott* factors, courts have identified several other factors that courts may consider. *See Read*, 970 F.2d at 827-28.

Honeywell asserts that correspondence between itself and JVC beginning in 1989 was sufficient to put JVC on notice that it was infringing the '501 patent. JVC, on the other hand, contends that a lengthy list of patents sent to JVC almost three years before JVC stopped using licensed TCL modules could not be sufficient, as a matter of law, to put it on notice that it was infringing the '501 patent.

Honeywell asserts that even if the Court finds that the 1989 correspondence did not put JVC on notice of its possible infringement, the failure of JVC to investigate whether its products infringed the '501 patent in 1991 and 1992 is a sufficient basis upon which a jury could find that JVC's infringement was willful. Honeywell bases this assertion on the fact that JVC was aware that its chip suppliers had taken a license to the '501 patent. In fact, MEI had invited JVC to join in the license agreement between Honeywell and MEI that involved the '501 patent. In addition, Honeywell asserts that a jury could find that the invalidity opinions prepared by JVC's legal counsel were incompetent because the 1995 opinion relied solely on the obviousness defense and did not discuss secondary considerations and because the subsequent opinions were prepared too late to insulate JVC from liability.

JVC, on the other hand, contends that it did not need to investigate or join in the license agreement between Honeywell and its chip suppliers because none of its suppliers were solely licensing

the '501 patent. JVC points out that Honeywell asserted a group of patents against JVC in 1992 and 1993, including at least one that was being licensed by JVC's chip suppliers, but did not assert the '501 patent against JVC at that time. In response to Honeywell's assertion of these patents, JVC requested that its legal counsel review the patents asserted. JVC's legal counsel concluded that JVC's products did not infringe the Honeywell patents. Once Honeywell was made aware of the findings of JVC's counsel, Honeywell dropped its dispute with regard to the patents that it was asserting against JVC.

JVC contends it was first made aware of its alleged infringement of the '501 patent when it was notified by Honeywell's counsel via a letter dated November 20, 1995. On December 7, 1995, JVC received the first opinion from its legal counsel regarding the validity of the '501 patent. JVC asserts this opinion was facially competent and was sufficient to give JVC a reasonable belief that its actions were justified. JVC asserts that secondary considerations were not discussed in the opinion because JVC's legal counsel felt so strongly about its conclusions regarding the '501 patent's invalidity.

The Court rejects Honeywell's assertion that JVC was put on notice of the '501 patent in 1989 when Honeywell sent JVC a letter containing a reference to the '501 patent's existence along with a list of 73 other patents. In that 1989 correspondence, Honeywell accused JVC of possibly infringing 17 auto-focus patents owned by Honeywell, none of which was the '501 patent. Moreover, the Court has carefully scrutinized the entire record before it, and, based upon that scrutiny and the totality of the circumstances as set forth in the record, no reasonable jury could find that JVC was acting without a reasonable basis to believe that it was not infringing the '501 patent.

A closer call for the Court is whether MEI's invitation to JVC to join in a license agreement between Honeywell and MEI put JVC on notice. However, the Court finds that the license negotiated

between Honeywell and MEI covered more than just the '501 patent. In particular, the license covered the '762 patent that Honeywell had only recently stopped asserting against JVC. Therefore, the Court is left only to accept the very words of Honeywell's counsel, William Udseth, in his November 20, 1995, letter to JVC's outside counsel that asserted the '501 patent against JVC for the first time as "a patent not heretofore brought to JVC's attention."

Within one week of receiving Udseth's letter, JVC received a formal written opinion from its outside counsel that the '501 patent was invalid. The Court finds that the written opinion of JVC's outside counsel was both competent and reasonably relied upon by JVC. No reasonable jury could conclude that it was not reasonable for JVC to rely on the opinions of its counsel, based upon the record before the Court.

Without question, when a person or entity becomes aware that a patent may have relevance to their activities, that person or entity has a duty to exercise due care and investigate whether or not their activities or proposed activities infringe any valid, enforceable claim of the patent. Of course, if the individual or entity does not do this and is found to infringe the patent claims, then the infringement is willful. Irrespective of how the parties characterize the duty of JVC to exercise due care or the duty to investigate whether JVC's activities infringed the '501 patent, given the totality of the circumstances before the Court, no reasonable jury could conclude that JVC breached their duty to exercise due care and investigate. The record establishes that JVC proceeded in good faith and did not turn a blind eye.

Alternatively, as noted in the Court's Order dated February 3, 2004, even if a jury were to determine that JVC had willfully infringed the '501 patent, this Court would not be persuaded to enhance the damages awarded to Honeywell. Honeywell has primarily relied upon instances of JVC's

alleged misconduct in litigating this dispute. Specifically, Honeywell points to statements made by JVC's legal counsel regarding whether JVC was invited to join in the MEI license and whether JVC had discussions with its suppliers regarding indemnification. The Court has reviewed the statements brought to its attention by Honeywell and disagrees with Honeywell's assessment of the conduct of JVC's counsel. As the Court has stated throughout this litigation, the Court appreciates the manner and zealousness with which counsel for both parties has represented their clients.

Even if the Court were to find that JVC had engaged in some form of inappropriate litigation conduct, the Court would also need to consider a number of other factors to reach a conclusion that an enhancement of damages was appropriate. Several factors weigh against enhancing damages in this case. First, JVC purchased the infringing chips from suppliers and there is no evidence that JVC attempted to copy Honeywell's patent. Second, when notified by Honeywell of its alleged infringement, JVC immediately sought the advice of its legal counsel. Third, the closeness of this case weighs in favor of denying an enhancement of damages. Accordingly, even if the Court views the record in the light most favorable to Honeywell, there is no basis on this record upon which the Court could conclude that Honeywell is entitled to an enhancement of damages. There is nothing about JVC's conduct that would allow this Court to enhance the damages. For the reasons stated above, the Court has granted JVC's motion for summary judgment as to the issue of willful infringement.

## CONCLUSION

For the reasons stated, **IT IS HEREBY ORDERED:**

1. JVC's Renewed Motion for Judgment as a Matter of Law, or, in the Alternative, a New Trial or Remittitur (Doc. No. 255) is **DENIED**.

2. JVC's Motion for Summary Judgment on Plaintiff Honeywell's Claims for Willful Infringement (Doc. No. 271) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 19, 2004

s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court