# Exhibit B

LEXSEE 1999 U.S. DIST. LEXIS 21688

**The Toro Company, Plaintiff, vs. Ariens Company, Defendant.**

**Civ. No. 3-96-416/RHK/JMM**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA, THIRD DIVISION**

***1999 U.S. Dist. LEXIS 21688***

**January 28, 1999, Decided**
**January 28, 1999, Filed**

**DISPOSITION:** [*1] Ariens's Motion for Summary Judgment of Non-Infringement (Doc. No. 62) GRANTED with respect to claims 37-42; and Toro's Motion for Summary Judgment that Ariens Infringes Claim 37 (Doc. No. 44) DENIED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff and defendant, companies engaged in the business of producing and selling snowthrowers, filed cross motions for summary judgment on plaintiff's claim for patent infringement.

**OVERVIEW:** The court granted defendant's motion for summary judgment of non-infringement. In construing the claim, the court considered the language of the claim, the specification, and the prosecution history. Plaintiff's claim addressed the meaning of the term "ledge," as it applied to plaintiff's snowthrower. The court held that the term "ledge" indicated some sort of projection and found that defendant's product did not have a ledge to prevent snow from dribbling off the impeller but that defendant used a different means to accomplish that purpose. The court held that even if it were to accept plaintiff's proposed construction of the term "ledge," no reasonable finder of fact would come to the conclusion that defendant's product had "ledges" as that term was used in plaintiff's patent. The court held that plaintiff presented no evidence from which a reasonable jury could conclude that defendant's product addressed the issue of prevention of "snow spit" in the same way that plaintiff's product did; therefore, the court found that plaintiff failed to create a genuine issue of material fact with regard to the issue of infringement under the doctrine of equivalents.

**OUTCOME:** Defendant was granted summary judgment on plaintiff company's claim for patent infringement. The court found that defendant's product did not infringe plaintiff's patent because the two products used a substantially different device to accomplish the same purpose. Plaintiff's case was dismissed, and its motion for summary judgment was denied.

**LexisNexis(R) Headnotes**

***Civil Procedure > Summary Judgment > Burdens of Production & Proof***
***Civil Procedure > Summary Judgment > Summary Judgment Standard***
[HN1] Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. The court views the evidence and the inferences which may reasonably be drawn from it in the light most favorable to the nonmoving party. The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. The nonmoving party must demonstrate the existence of specific facts which create a genuine issue for trial; mere allegations or denials are not enough. Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party.

***Civil Procedure > Summary Judgment > Supporting Papers & Affidavits***
***Civil Procedure > Summary Judgment > Summary Judgment Standard***
[HN2] Ordinarily, the court does not weigh facts or evaluate the credibility of affidavits and other evidence on a motion for summary judgment. The nonmovant cannot, however, avoid summary judgment in favor of the movant merely by pointing to some alleged factual dispute between the parties. Instead, any fact alleged to be in dispute must be "outcome determinative under prevailing law," that is, it must be material to an essential element of the specific theory of recovery at issue. Essentially, the court performs the threshold inquiry of determining whether there is a need for a trial.

***Patent Law > Infringement > Acts of Infringement***
[HN3] A claim of literal patent infringement requires a two-step analysis: claim construction, which is a question of law and a determination of whether the accused product infringes the asserted claim, as properly construed, which is a question of fact for the jury.

***Patent Law > Infringement > Claim Interpretation***
[HN4] In interpreting a claim under patent law, a court first looks to the intrinsic evidence, such as the claims themselves, the specification, and the prosecution history. In construing the language in a claim, a court is guided by the principle that although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history.

***Patent Law > Infringement > Claim Interpretation***
[HN5] If the meaning of the claim to be construed is clear from an examination of the language of the claim at issue, the patent specification, and the prosecution history, it is inappropriate for a court to consider extrinsic evidence, such as expert testimony.

***Patent Law > Infringement > Doctrine of Equivalents***
[HN6] A device that does not literally infringe a claim may nonetheless infringe under the doctrine of equivalents if every element in the claim is literally or equivalently present in the accused device. A claim element is equivalently present in an accused device if only insubstantial differences distinguish the missing claim element from the corresponding aspects of the accused device. While the question of whether two elements are equivalent is a factual matter that is normally reserved for a finder of fact, district courts are obliged to grant summary judgment where the evidence is such that no reasonable jury could determine two elements to be equivalent. Equivalence of elements is determined by the "triple identity" test: an accused element is equivalent to the claimed or original element if it performs substantially the same function in substantially the same way to produce substantially the same result.

***Patent Law > Infringement > Doctrine of Equivalents***
[HN7] The doctrine of equivalents must be applied to individual elements of a claim, not to the invention as a whole.

***Patent Law > Infringement > Doctrine of Equivalents***
[HN8] The doctrine of equivalents cannot be used to erase meaningful structural and functional limitations of a claim on which the public is entitled to rely in avoiding infringement.

**COUNSEL:** Earl D. Reiland, Daniel W. McDonald, and Joseph M. Kastelic, Merchant, Gould, Smith, Edell, Welter & Schmidt, Minneapolis, Minnesota, for Plaintiff.

Donald S. Trevarthen, The Toro Company, Bloomington, Minnesota, for Plaintiff.

Joseph A. Gemignani, Michael E. Husmann, Jonathon H. Margolies, and J. Christopher Carroway, Michael, Best & Friedrich, Milwaukee, Wisconsin, for Defendant.

Daniel J. Maertens, Fredrikson & Byron, Minneapolis, Minnesota, for Defendant.

**JUDGES:** RICHARD H. KYLE, United States District Judge.

**OPINIONBY:** RICHARD H. KYLE

**OPINION:**

**MEMORANDUM OPINION AND ORDER**

**Background**

The Toro Company ("Toro") filed the instant lawsuit against Ariens Company ("Ariens"), alleging that Ariens's snowthrower infringed a patent belonging to Toro, U.S. Patent Re. *33,726* ("the *'726* Patent"). The *'726* Patent, entitled "Single Stage Snowthrower," was issued to Toro on October 29, 1991. (See Am. Compl. P 4; Answer P 4.) Ariens, denying that its product infringes the *'726* Patent [*2] and contending that the *'726* Patent is invalid, filed Counterclaims against Toro, seeking a declaratory judgment that the *'726* Patent is invalid and unenforceable, and that Ariens has not infringed it.

The *'726* Patent describes a single stage snowthrower. Single stage snowthrowers differ from "dual stage" or "two stage" snowthrowers in that they use only one implement to both pick up the snow and throw it, while dual stage snowthrowers use separate powered implements to do each task consecutively. ( *'726* Patent, Background of the Invention.) The *'726* Patent describes a device with a single rotatable "impeller" with at least one paddle that rotates around an axis. The paddle, as it rotates, picks up and throws snow upwardly and outwardly along the rear wall of the housing of the snowthrower (or snow collecting chamber) and away from the snowthrower. (Id.) In a dual stage snowthrower, by contrast, a snow-gathering auger feeds the snow into the center of the housing, and a high-speed fan then blows it upwardly and away from the snowthrower. (Id.) Single stage snowthrowers are generally lighter and less expensive than dual stage snowthrowers, and lack the power and other features [*3] found in dual stage snowthrowers. (Id.)

On September 2, 1998, this Court issued a Memorandum Opinion and Order granting Ariens's Motion for Summary Judgment of Non-Infringement with regard to almost all of the disputed claims. It denied Ariens's Motion for Summary Judgment, however, with regard to claim 37 and its dependent claims, and also denied Toro's Motion for Summary Judgment with regard to claim 37. (See Sept. 2, 1998 Mem. Op. & Order.) Based on the submissions at that time, the Court ordered that a Markman hearing be held on claim 37 and its dependent claims. After receiving and reviewing the parties' materials submitted in anticipation of the Markman hearing, however, the Court determined that expert testimony on this issue would be unnecessary and that the remaining claims could be resolved based upon the existing record, as supplemented by the additional submissions related to the Markman hearing. Accordingly, the Court canceled the scheduled Markman hearing, vacated that portion of the September 2, 1998 Memorandum Opinion and Order that dealt with claim 37 and its dependent claims, and stated its intention to resolve the pending cross-motions for [*4] summary judgment based on the record before it. (See Jan. 15, 1999 Order.) Because of this change in procedure, the Court allowed the parties an opportunity to supplement the record with additional memoranda on the sole remaining issue of the construction of claim 37 and its dependent claims. For the reasons set forth below, the Court will grant Ariens's Motion for Summary Judgment of Non-Infringement and will deny Toro's Motion for Summary Judgment that Ariens Infringes Claim 37.

**Analysis**

**A. Standard of Review**

"Summary judgment is as appropriate in a patent case as in any other." *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc., 853 F.2d 1557, 1561 (Fed. Cir. 1988)* (quotation and citations omitted). [HN1] Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. The court views the evidence and the inferences which may reasonably be drawn from it in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996)*; see also *Adkison v. G.D. Searle & Co., 971 F.2d 132, 134 (8th Cir. 1992)*. [*5]

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank, 92 F.3d at 747;* see also *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)*. The nonmoving party must demonstrate the existence of specific facts which create a genuine issue for trial; mere allegations or denials are not enough. See *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995)*. Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. See *Liberty Lobby, 477 U.S. at 250, 106 S. Ct. at 2511.*

[HN2] Ordinarily, the court does not weigh facts or evaluate the credibility of affidavits and other evidence on a motion for summary judgment. The nonmovant cannot, however, avoid summary judgment in favor of the movant merely by pointing to some alleged factual dispute between the parties. Instead, any fact alleged to [*6] be in dispute must be "outcome determinative under prevailing law," that is, it must be material to an essential element of the specific theory of recovery at issue. See *Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992)*. Essentially, the court performs the threshold inquiry of determining whether there is a need for a trial. *Liberty Lobby, 477 U.S. at 250; 106 S. Ct. at 2510.*

**B. Claim 37 -- Literal Infringement**

Both parties contend that they are entitled to summary judgment on the issue of infringement of claim 37 based on their respective interpretations of the term "ledges." (See Ariens Co.'s Mem. of Law in Supp. of its Mot. for Summ. J. of Non-Infringement at 20-21 ("Def.'s Supp. Infringement Mem."); Toro's Mem. in Opp'n to Ariens's Mot. for Summ. J. of Non-Infringement at 1-7 ("Pl.'s Opp'n Infringement Mem.").) Ariens argues that because its accused product has surfaces that extend outward but without any discontinuity in the surface of the rear wall, they are part of a continuous curve and

cannot be characterized as "ledges." (See Def.'s Supp. Infringement Mem. at 20-21; Def.'s Reply Infringement [*7] Mem. at 11-13.) Toro responds that Ariens is not entitled to summary judgment with regard to claim 37 because: (1) Ariens's proposed construction of the term "ledges" is improper because it would add limitations to claim 37; (2) the accused product literally infringes claim 37 even under the proposed construction of the term "ledges" advanced by Ariens; and (3) the accused product infringes claim 37 under the doctrine of equivalents. (See Pl.'s Opp'n Infringement Mem. at 1-7.)

Element (d) of claim 37 describes: "two downwardly facing ledges located on the rear wall of the housing beneath the upper edge of the housing, wherein the ledges are positioned on each side of the snow collecting chamber to lie above the end sections of the impeller." ( *'726* Patent column 18, lines 54-58.) Although claim 37 contains three other elements (see id. column 18, lines 37-58), the only one in dispute is element (d).

[HN3] A claim of literal patent infringement n1 requires a two-step analysis: claim construction, which is a question of law, and a determination of whether the accused product infringes the asserted claim, as properly construed, which is a question of fact for the jury. *Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1581-82 (Fed. Cir. 1996);* [*8] see also *Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995)* (en banc), aff'd, *517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996).* [HN4] In interpreting a claim, a court first looks to the intrinsic evidence, such as the claims themselves, the specification, and the prosecution history. *Vitronics, 90 F.3d at 1582* (citing *Markman, 52 F.3d at 979).* In construing the language in a claim, a court is guided by the principle that:

> Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history.

Id. (citing *Hoechst Celanese Corp. v. BP Chems. Ltd., 78 F.3d 1575, 1578 (Fed. Cir. 1996)).* [HN5] If the meaning of the claims to be construed is clear from an examination of the language of the claims at issue, the patent specification, and the prosecution history, it is inappropriate for a court to consider extrinsic evidence, such as expert testimony. [*9] *Id. at 1584* ("In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a claim term. In such circumstances, it is improper to rely on extrinsic evidence."); see also *Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1216 (Fed. Cir. 1995),* cert. denied, *520 U.S. 1115, 117 S. Ct. 1243, 137 L. Ed. 2d 326 (1997); Hormone Research Found., Inc. v. Genentech, Inc., 904 F.2d 1558, 1562 (Fed. Cir. 1990).* n2

> n1 Toro's Amended Complaint does not specify whether it is alleging literal infringement of the *'726* Patent or infringement under the doctrine of equivalents. In its Memorandum in Opposition to Ariens's Motion for Summary Judgment of Non-Infringement ("Pl.'s Opp'n Infringement Mem."), however, it argues that Ariens's accused product infringes both literally and under the doctrine of equivalents. (See Pl.'s Opp'n Infringement Mem. at 5-7, 15-16, 30-31.) The Court will address both arguments in turn.

> n2 Claims 38-42 are dependent on claim 37, the only remaining independent claim at issue. (See *'726* Patent.) Accordingly, if the Court finds that Ariens is entitled to summary judgment with regard to whether the accused product infringes claim 37, it must also grant summary judgment with regard to claims 38-42. See *Wolverine World Wide, Inc. v. Nike, Inc., 38 F.3d 1192, 1199 (Fed. Cir. 1994)* (if non-infringement is found with regard to independent claim, it must also be found with regard to all claims dependent thereon); see also *Wahpeton Canvas Co. v. Frontier, Inc., 870 F.2d 1546, 1553 (Fed. Cir. 1989)* ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed . . . .").

[*10]

To interpret the term "ledges," the Court must first look to the plain meaning of the term in question, and apply that construction of the term unless intrinsic evidence indicates that it is to be construed differently. See *In re Paulsen, 30 F.3d 1475, 1480 (Fed. Cir. 1994).* The definition of the term "ledge" is: "A horizontal projection forming a narrow shelf on a wall." American Heritage Dictionary 721 (2d ed. 1985). n3 Ariens argues that a "ledge" connotes a discontinuity in a surface, and because the protrusions in the accused product are part of the same unbroken surface, they cannot be considered "ledges." (Def.'s Supp. Infringement Mem. at 21.) Toro argues that the accused product literally infringes claim 37 because, even under Ariens's proposed construction of the term "ledges," the protrusions in the accused product constitute discontinuities in the surface of the rear wall. (See Pl.'s Opp'n Infringement Mem. at 3-4; see also Pl.'s Mem. in Supp. of its Mot. for Summ. J. that its Patent is

Not Invalid Under *35 U.S.C. § § 102* or 112, P1 and that Ariens Infringes Claim 37 at 15-18 ("Pl.'s Supp. Infringement Mem.").)

n3 Toro chooses a different dictionary to define the term "ledge." According to Toro, Merriam-Webster's Collegiate Dictionary defines a ledge as "a raised or projecting edge or molding intended to protect or check." (See Toro's Mem. in Supp. of its Mot. for Summ. J. that its Patent is not Invalid Under *35 U.S.C. § § 102* or 112, P 1 and that Ariens Infringes Claim 37 at 16 ("Pl.'s Supp. Infringement Mem.") (citing Merriam-Webster's Collegiate Dictionary at 684 (10th ed. 1995).) Because the Court finds no substantive difference between the two definitions (and because Toro concedes that its proffered definition "varies only slightly" from Ariens's definition), the Court will consider both definitions in its construction of the term "ledges."

[*11]

The specification of the *'726* Patent discusses the "ledges" and their purpose. The Court has considered this discussion in its construction of the disputed term. See *Novo Nordisk of North America, Inc. v. Genentech, 77 F.3d 1364, 1368 (Fed. Cir. 1996)* ("In construing a claim, we will consider the language of the claim, the specification, and the prosecution history.") After explaining how the impeller described in the *'726* Patent would result in more efficient snow removal and an improved aesthetic appearance due to "less forward snow spit or dribbling coming from [the] snowthrower," the specification discusses the role of the ledges. It states that "whatever snow does escape upwardly from the end sections . . . before feeding onto the central section . . . is quickly knocked down by two downwardly directed ledges or kickers . . . located on the upper portion . . . of rear wall . . . on either side of snow collecting chamber . . . ." ( *'726* Patent column 11, lines 53-58.)

Ariens urges the Court to examine the drawings contained in the *'726* Patent and, from them, to construe the term "ledge" to require a discontinuity in an otherwise smooth surface. To the extent [*12] that the requirement of a discontinuity differs from the requirement that a device "project" in order to constitute a ledge, the Court rejects Ariens's contention. Ariens cites to no authority that a Court may use the drawings contained in a patent to add limitations to that patent's claims. See *In re Paulsen, 30 F.3d 1475, 1480 (Fed. Cir. 1994)* ("Although it is entirely proper to use the specification to interpret what the patentee meant by a word or phrase in the claim, this is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.") (citations and ellipses omitted). This question, however, is not crucial to the resolution of the instant Motions, because the term "discontinuity," as used in the parties' briefs, has substantially the same meaning as the term "projects" or "projection," which Toro agrees comprises a part of the meaning of the term "ledge." Because, as discussed below, the accused product does not use a projection or projecting device to prevent snow spit or dribble, the Court finds that claim 37 is not infringed.

The Court construes the term "ledge" to require some sort of projection or protrusion, [*13] and finds that the common meaning of the term (and the constructions offered by the parties) necessarily contains such a concept. Without a projection into a space or protrusion from a surface, an item does not fit within any reasonable construction of the term "ledge." Ariens's accused product contains a means of combating forward snow spit that does not project into the stream of snow spit but fits relatively tightly around the impeller, thereby preventing the snow from "spitting" or "dribbling" off of the impeller. Because there is no "projection," the means used by Ariens for this purpose cannot be considered "ledges." n4

n4 The Court finds, therefore, that even if it were to accept verbatim Toro's proposed construction of the term "ledge," (see Toro's Proposed Definition of "Ledge"), no reasonable finder of fact could come to the conclusion that the accused product has "ledges," as that term is used in claim 37, because it does not project in any way.

Toro argues that the accused product does have a [*14] discontinuity -- where the arcuate surface of the rear wall of the housing begins. (See Berner Decl. Ex. C.) The edge of the housing, according to Toro, constitutes the discontinuity or projection that renders the device a ledge. According to this interpretation, however, virtually any physical object would constitute a ledge, because it necessarily has an outer edge. As counsel for Ariens aptly put it, however, "[a] ledge is not an edge." (See Ariens Co.'s Reply to Toro's Mem. of Law for Markman Hearing at 5-6 & n.5.)

The accused product addresses the problem of snow spit or dribble not by using ledges that project outward to knock down snow and prevent it from escaping but by including a arcuate surface that fits relatively tightly around the impeller, thereby confining more of the snow to the impeller and eliminating the need for ledges to

knock escaping snow down. Simply put, there is no part of the accused product that "projects forward and protects (or checks) against snow being thrown upward and out of the front of the snowthrower." (See Toro's Proposed Construction of Claims 37-41 for Presentation to Jury; see also Toro's Proposed Definition of "Ledge; [*15] " Pl.'s Opp'n Mem. at 3 ("The parties generally agree on the ordinary meaning of a ledge as a horizontal projection.").) Not only does the accused product use a tightly-fitting arcuate surface around the impeller instead of a horizontal projection, it also does not knock down escaped snow, but instead prevents the snow from escaping from the impeller. Because the accused product includes no such horizontal projection, the Court finds that no reasonable jury could conclude that the accused product infringes.

**C. Claim 37 -- Infringement Under the Doctrine of Equivalents**

Toro contends that, even if the accused product does not literally infringe the *'726* Patent, it infringes under the doctrine of equivalents because it contains "a structure equivalent to the specific 'ledge' limitation of claim 37." (Pl.'s Opp'n Infringement Mem. at 5-7.) " [HN6] A device that does not literally infringe a claim may nonetheless infringe under the doctrine of equivalents if every element in the claim is literally or equivalently present in the accused device." *Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1423 (Fed. Cir. 1997)* (citation omitted). n5 "A claim element is equivalently [*16] present in an accused device if only 'insubstantial differences' distinguish the missing claim element from the corresponding aspects of the accused device." Id. (citation omitted). While the question of whether two elements are equivalent is a factual matter that is normally reserved for a finder of fact, district courts are obliged to grant summary judgment "where the evidence is such that no reasonable jury could determine two elements to be equivalent." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 117 S. Ct. 1040, 1053 n.8, 137 L. Ed. 2d 146 (1997).* Equivalence of elements is determined by the "triple identity" test: an accused element is equivalent to the claimed or original element if it performs substantially the same function in substantially the same way to produce substantially the same result. See *Warner-Jenkinson, 117 S. Ct. at 1054.*

n5 [HN7] The doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 117 S. Ct. 1040, 1049, 137 L. Ed. 2d 146 (1997).*

[*17]

As explained above, the accused product addresses the problem of snow spit and dribble by using a closely-fitting arcuate surface around the impeller to prevent the snow from escaping the impeller. Instead of knocking down snow that has escaped from the impeller (like the ledges described in the *'726* Patent), the accused product prevents snow from leaving the impeller, thereby eliminating the need for ledges. Toro does not address the "triple identity" test but instead asserts that, because the arcuate surfaces of the accused product perform the same function as the ledges -- prevention of snow spit and dribble -- the accused product infringes claim 37 under the doctrine of equivalents. (See Pl.'s Opp'n Mem. at 5-7.) Toro has presented no evidence from which a reasonable jury could conclude that the accused product's arcuate surfaces accomplish this goal in "substantially the same way" as the downwardly facing ledges described in the *'726* Patent. As a matter both of common sense and physics, the accused product's structure prevents snow spit and dribble in a different manner than the ledges described in the *'726* Patent. Toro urges this Court to eliminate a limitation -- ledges [*18] -- from claim 37. The doctrine of equivalents, however, cannot be used to erase such limitations, and a party cannot simply invoke the "triple identity" test and then ignore claim limitations. See *Sage Prods., 126 F.3d at 1429;* see also *Conopco, Inc. v. May Dep't Stores Co., 46 F.3d 1556, 1562 (Fed. Cir. 1994)* (" [HN8] The doctrine of equivalents cannot be used to erase meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement.") (citations and quotation marks omitted); *Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 935 (Fed. Cir. 1987)* (stating that the "triple identity" test "does not mean one can ignore claim limitations") (en banc).

Toro has presented no evidence from which a reasonable jury could conclude that the accused product addresses the issue of prevention of snow spit and dribble in the same way that the *'726* Patent does. Accordingly, the Court finds that Toro has failed to create a genuine issue of material fact with regard to the issue of infringement under the doctrine of equivalents.

Because Toro has failed to present evidence that creates a genuine [*19] issue of material fact with regard to whether Ariens's accused product infringes claim 37, the Court will grant Ariens's Motion for Summary Judgment of Non-Infringement and will deny Toro's Motion for Summary Judgment that Ariens Infringes Claim 37. n6

n6 Because claims 38-42 are dependent upon claim 37, the Court will also grant summary judgment with regard to those claims. See *Wolverine World Wide, 38 F.3d at 1199; Wahpeton Canvas, 870 F.2d at 1553.*

**Conclusion**

For the foregoing reasons, and based upon all of the files, records and proceedings herein, **IT IS ORDERED** that: (1) Ariens's Motion for Summary Judgment of Non-Infringement (Doc. No. 62) is **GRANTED** with respect to claims 37-42; and (2) Toro's Motion for Summary Judgment that Ariens Infringes Claim 37 (Doc. No. 44) is **DENIED**.

January 28, 1999

RICHARD H. KYLE

United States District Judge

# Exhibit C

LEXSEE

**THE TORO COMPANY, Plaintiff-Appellant, v. ARIENS COMPANY, Defendant-Cross Appellant.**

**99-1285, 99-1307**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

***2000 U.S. App. LEXIS 8253***

**April 27, 2000, Decided**

**NOTICE:** [*1] RULES OF THE FEDERAL CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:**

Rehearing and Rehearing En Banc Denied June 5, 2000, Reported at: *2000 U.S. App. LEXIS 15505.* Reported in Table Case Format at: *2000 U.S. App. LEXIS 32111.*

**DISPOSITION:** Affirmed-in-part and reversed-in-part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, patent holder, appealed from a decision of the United States District Court for District of Minnesota granting defendant's motion for summary judgment that claims 20, 24, 36, and 37 of U.S. Patent Re. *33,726* were not infringed. Defendant cross-appealed from the district court's decision granting plaintiff's motion for summary judgment that claims 36-41 were not invalid for lack of adequate written description under *35 U.S.C.S. § 112.*

**OVERVIEW:** Plaintiff, patent holder, appealed from the decision of the district court granting defendant's motion for summary judgment that claims 20, 24, 36, and 37 of U.S. Patent Re. *33,726* were not infringed and denying plaintiff's corresponding cross-motion. Defendant cross-appealed from the district court's decision granting plaintiff's motion for summary judgment that claims 36-41 were not invalid for lack of adequate written description under *35 U.S.C.S. § 112* and denying defendant's corresponding cross-motion. The court of appeals held that the district court erred as a matter of law in concluding that claims 36-41 were not invalid under § 112, and reversed that portion of the judgment. However the court found that the district court was correct in holding as a matter of law that claim 42 was not invalid under *37 C.F.R. § 1.175*, none of the claims was willfully infringed, and that claims 20 and 24 were not infringed. Accordingly, the court affirmed those parts of the judgment.

**OUTCOME:** Affirmed-in-part and reversed-in-part. The district court erred as a matter of law in concluding that claims 36-41 were not invalid. However, the district court correctly held as a matter of law that claim 42 was not invalid, that none of the claims was willfully infringed, and that claims 20 and 24 were not otherwise infringed.

**LexisNexis(R) Headnotes**

***Patent Law > Specification & Claims > Description Requirement***
[HN1] See *35 U.S.C.S. § 112,* para. 1.

***Patent Law > U.S. Patent & Trademark Office Prosecution Procedures > Reissue***
[HN2] See *37 C.F.R. § 1.175(a)(3)*, (5) (1990).

***Civil Procedure > Summary Judgment > Burdens of Production & Proof***
***Civil Procedure > Summary Judgment > Summary Judgment Standard***

[HN3] Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.

***Civil Procedure > Summary Judgment > Summary Judgment Standard***
***Civil Procedure > Appeals > Standards of Review > De Novo Review***
[HN4] Appellate courts review a district court's grant of a motion for summary judgment without deference, applying the summary judgment standard anew.

***Patent Law > Infringement > Acts of Infringement***
[HN5] Determining whether an accused process or device infringes a patent claim is a two-step process. The first step is claim construction, which involves ascertaining the scope and meaning of the claims at issue, while the second step involves determining whether the claims as construed read on the accused device.

***Patent Law > Infringement > Acts of Infringement***
[HN6] Claim construction is a question of law, while infringement, either literal or under the doctrine of equivalents, is a question of fact. Whether infringement is willful is a question of fact that the patentee must establish by clear and convincing evidence.

***Patent Law > Specification & Claims > Description Requirement***
[HN7] Whether a claim fails to meet the written description requirement under *35 U.S.C.S. § 112*, para. 1 is a question of fact.

***Patent Law > Jurisdiction & Review > Standards of Review***
[HN8] Whether an inventor has failed to disclose all differences between original and reissue claims is essentially an exercise in claim construction, and is therefore an issue of law, reviewed de novo.

***Patent Law > Specification & Claims > Description Requirement***
[HN9] *35 U.S.C.S. § 112*, para. 1 requires that a patent's written description allows persons skilled in the art to discern that the inventor has in fact invented what has been claimed. Thus, the written description requirement is different from the requirement to disclose how to "make and use" an invention in requiring the written description to show that the inventor was in possession of the claimed invention as of the filing date sought.

***Patent Law > Specification & Claims > Description Requirement***
***Patent Law > Infringement > Exclusive Rights***
[HN10] In a given case, the scope of the right to exclude may be limited by a narrow disclosure.

***Patent Law > Infringement > Acts of Infringement***
[HN11] A finding of willfulness requires the fact-finder to find that clear and convincing evidence shows that the infringer acted in disregard of the patent and had no reasonable basis for believing it had a right to do the acts. Such a determination is made after consideration of the totality of the circumstances of a particular case, including any mitigating or ameliorating factors.

**JUDGES:** Before LOURIE, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and GAJARSA, Circuit Judge.

**OPINIONBY:** LOURIE

**OPINION:** LOURIE, Circuit Judge.

DECISION

The Toro Company appeals from the decision of the United States District Court for the District of Minnesota granting Ariens Company's motion for summary judgment that claims 20, 24, 36, and 37 of United States Patent Re. *33,726* were not infringed and denying Toro's corresponding cross-motion. See *Toro Co. v. Ariens Co., 1998 U.S. Dist. LEXIS 22856*, No. 3-96-416/RHK/FLN, slip op. at 38-39 (D. Minn. Sept. 2, 1998) ("Toro I"); *Toro Co. v. Ariens Co., 1999 U.S. Dist. LEXIS 21688*, No. 3-96-416/RHK/JMM, slip op. at 14 (D. Minn. Jan. 28, 1999) ("Toro II"). Ariens cross-appeals from the district court's decision granting Toro's motion for summary judgment that (1) claims 36-41 are not invalid for lack of adequate written description under *35 U.S.C. § 112*, P 1, n1 (2) claims 37-41 are not invalid as anticipated under *35 U.S.C. § 102* [*2] (a), (3) claims 36-41 are not invalid for failure to comply with *35 U.S.C. § 251*, and (4) claims 37-42 are not invalid for failure to comply with *37 C.F.R. § 1.175*, and denying Ariens' corresponding cross-motion. See Toro I, slip op. at 38. The result of these and other rulings was finally to dispose of the case. Because the district court erred as a matter of law in concluding that claims 36-41 are not invalid under section 112, paragraph 1, we reverse that portion of the judgment. n2 Because the court correctly held as a matter of law that (1) claim 42 is not invalid under section 1.175, (2) none of the claims was willfully infringed, and (3) claims 20 and 24 were not infringed, we affirm those parts of the judgment.

n1 As Ariens indicates, the district court held that claims 37-41 were not invalid under section 112, paragraph 1, omitting claim 36. See Toro I, slip op. at 30. It is clear to us, however, that this omission was inadvertent, as the court was fully aware that claims 36-41 were at issue and provided no reason why claim 36 should be treated any differently from the other reissue claims. See id. at 28-30. Moreover, since both parties treat claim 36 as though the district had in fact ruled it not invalid under section 112, paragraph 1, we consider the district court's omission unintentional and rule on that claim along with the other disputed reissue claims. [*3]

n2 In view of this conclusion, we do not reach the infringement issues relating to claims 36 and 37, the section 102(a) issues relating to claims 37-41, or the section 251 issues relating to claims 36-41.

DISCUSSION

A. Background

Toro's *'726* patent is directed to single-stage snowthrowers, i.e., snowthrowers that use an impeller both to pick up and to throw snow from the snowthrower. See *'726* patent, col. 1, ll. 40-43. While single-stage snowthrowers are typically lighter and less costly than two-stage snowthrowers, which use different means to pick up and to throw the snow, two-stage snowthrowers throw snow further and control the direction of that snow more effectively than their single-stage analogs. See id. at col. 1, ll. 43-46, 63-68. In an attempt to combine the advantages of both types of snowthrowers, the inventors of the *'726* patent designed a single-stage snowthrower with "an improved impeller and an improved impeller/housing combination. . . ." Id. at col. 1, ll. 13-14. The *'726* patent contains 45 claims, ten of which were granted following reissue proceedings. [*4] Exemplary claim 24, one of the original 35 claims, reads as follows:

> 24. An improved single stage snowthrower, which comprises:
>
> (a) a housing having a front portion which engages the snow and which includes a rear wall and spaced side walls, wherein the rear wall comprises an arcuate lower portion and an upper portion that extends upwardly relative to the lower portion;
>
> (b) a rotatable impeller located on the housing in front of the rear wall thereof and having a predetermined length between the side walls wherein the rotation of the impeller describes a cylinder that is bounded along the rear thereof by the arcuate lower portion of the rear wall and by at least a lower section of the upper portion of the rear wall, wherein the impeller includes an outwardly extending paddle having a curved central snowthrowing section for throwing upwardly away therefrom at approximately the juncture between the lower and upper portions of the rear wall a snow stream which has a width as it departs the snowthrowing section of at least approximately one-half the impeller's predetermined length and in which axially outermost portions of the snow stream have a component of motion that [*5] is directed axially inwardly; and
>
> (c) upwardly extending collecting means located on at least the lower section of the upper portion of the rear wall for receiving the snow stream from the impeller and for conducting that snow stream vertically upwardly, wherein the collecting means includes a trough means which tapers inwardly from side-to-side as it rises, and wherein the trough means at its lower end has a width which is at least approximately one-half the impeller's predetermined length.

Id. at col. 17, ll. 3-37.

Figure 5 of the *'726* patent, which has been modified for clarity, depicts the improved impeller as follows:

[SEE FIGURE 5 IN ORIGINAL]

Figure 5 shows that impeller **30** comprises two paddles **32** that extend outwardly and are offset by 180 degrees. See id. at col. 5, ll. 25-28. The written description discloses that "each paddle **32** includes a relatively long, central snowthrowing section **34** surrounded on either side by . . . relatively short, end sections **36** that . . . take that snow which lies outwardly of central section **34** and feed it inwardly onto central section **34**." Id. at col. 5, ll. 28-31, 48-50. As [*6] for the shape of the central snowthrowing section, the patent explains that "central

section **34** is generally concave in shape between each side thereof, i.e., it curves forwardly in the direction of rotation of impeller **30** from the midpoint to each side. . ." Id. at col. 5, ll. 31-34.

Ariens' single-stage snowthrower contains a somewhat similar impeller, depicted in the following illustration:

[SEE ILLUSTRATION IN ORIGINAL]

It is readily apparent that the central portion of the accused impeller lacks the curvature of the impeller depicted in Toro's patent. The two paddle portions of the accused impeller contain a flat, central section bounded on both sides by curved "transition sections," as indicated by the notations of Toro's expert, John Berner.

Toro sued Ariens, alleging that Ariens willfully infringed the *'726* patent by making, using, and/or selling snowthrower products covered by that patent. Ariens denied those allegations and raised several affirmative defenses, including, inter alia, invalidity under *35 U.S.C. § 112,* P 1. n3 Ariens filed a declaratory judgment counterclaim that essentially repeated the allegations in its [*7] answer, and subsequently alleged that certain reissue claims were invalid under *37 C.F.R. § 1.175* n4 for failure to specify all differences between the original and the reissue claims.

n3 [HN1] Section 112, paragraph 1 provides that:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

*35 U.S.C. § 112,* P 1 (emphasis added).

n4 [HN2] The relevant version of section 1.175 provides that:

> (a) Applicants for reissue, in addition to complying with the requirements of § 1.63, must also file with their applications a statement under oath or declaration as follows:
>
> * * *
>
> (3) When it is claimed that such patent is inoperative or invalid "by reason of the patentee claiming more or less than he had the right to claim in the patent," distinctly specifying the excess or insufficiency in the claims.
>
> * * *
>
> (5) Particularly specifying the errors relied upon, and how they arose or occurred.
>
> * * *

*37 C.F.R. § 1.175(a)(3)*, (5) (1990).

[*8]

Toro and Ariens cross-moved for summary judgment. On the issue of infringement, the district court held in favor of Ariens, concluding, inter alia, that there was no genuine issue of material fact that claims 20, 24, 36, and 37 were not infringed, willfully or otherwise. See Toro I, slip op. at 38-39; Toro II, slip op. at 14. As to validity, the court held in favor of Toro, concluding, inter alia, that as a matter of law claims 36-41 were not invalid under section 112, paragraph 1, and claims 37-42 were not invalid under section 1.175. See Toro I, slip op. at 38.

Toro appeals the district court's infringement and willfulness rulings, and Ariens cross-appeals the court's validity rulings. We have jurisdiction pursuant to *28 U.S.C. § 1295*(a)(1) (1994).

B. Standard of Review

[HN3] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. "The evidence of the nonmovant is to be believed, and [*9] all justifiable inferences are to be drawn in his favor." See *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).* [HN4] We review a district court's grant of a motion for summary judgment without deference, applying the summary judgment standard anew. See *Atmel Corp. v. Information Storage Devices,*

*Inc., 198 F.3d 1374, 1378, 53 U.S.P.Q.2D (BNA) 1225, 1227 (Fed. Cir. 1999).*

[HN5] Determining whether an accused process or device infringes a patent claim is a two-step process. "The first step is claim construction, which involves ascertaining the scope and meaning of the claims at issue, while the second step involves determining whether the claims as construed read on the accused device." *Streamfeeder, LLC v. Sure-Feed Sys., Inc., 175 F.3d 974, 981, 50 U.S.P.Q.2D (BNA) 1515, 1519 (Fed. Cir. 1999).* [HN6] Claim construction is a question of law, see *Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456, 46 U.S.P.Q.2D (BNA) 1169, 1174 (Fed. Cir. 1998)* (en banc), while infringement, either literal or under the doctrine of equivalents, is a question of fact, see *Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353, 48 U.S.P.Q.2D (BNA) 1674, 1676 (Fed. Cir. 1998).* [*10] Whether infringement is willful is a question of fact that the patentee must establish by clear and convincing evidence. See *Georgia-Pacific Corp. v. United States Gypsum Co., 195 F.3d 1322, 1334, 52 U.S.P.Q.2D (BNA) 1590, 1600 (Fed. Cir. 1999).*

[HN7] Whether a claim fails to meet the written description requirement under section 112, paragraph 1 is a question of fact. See *SunTiger, Inc. v. Scientific Research Funding Group, 189 F.3d 1327, 1334, 51 U.S.P.Q.2D (BNA) 1811, 1815 (Fed. Cir. 1999).* [HN8] Whether an inventor has failed to disclose all differences between original and reissue claims is essentially an exercise in claim construction, and is therefore an issue of law, reviewed de novo. Cf. *Cybor, 138 F.3d at 1456, 46 U.S.P.Q.2D (BNA) at 1174.*

C. Validity

1. Written Description

Ariens argues in its cross-appeal that the district court erred in denying its motion for summary judgment that claims 36-41 are invalid under section 112, paragraph 1 for failure to comply with the written description requirement. Citing *Gentry Gallery, Inc. v. Berkline Corp., 134 F.3d 1473, 45 U.S.P.Q.2D (BNA) 1498 (Fed. Cir. 1998),* Ariens contends that Toro was only [*11] in possession of snowthrowers with a curved impeller, and that the *'726* patent's narrow written description does not support claims directed to a snowthrower without such an impeller. Toro responds that the district court correctly held that claims 36-41 were not invalid as a matter of law, and that the written description does support the claims at issue. Toro also asserts that Gentry is inapposite, because in that case the original specification did not describe what was later claimed.

[HN9] Section 112, paragraph 1 requires that a patent's written description allow persons skilled in the art to discern that the inventor has in fact invented what has been claimed. See *Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 993, 50 U.S.P.Q.2D (BNA) 1607, 1613 (Fed. Cir. 1999).* Thus, the written description requirement is different from the requirement to disclose how to "make and use" an invention in requiring the written description to show that the inventor was in possession of the claimed invention as of the filing date sought. *Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1563-64, 19 U.S.P.Q.2D (BNA) 1111, 1117 (Fed. Cir. 1991).*

We agree with Ariens that claims [*12] 36-41 do not satisfy section 112, paragraph 1. Toro has broadened the claims beyond what the original claims claim and the written description discloses. Despite Toro's protests to the contrary, we believe that Gentry is directly applicable to the facts here. In Gentry, the patentee claimed sectional sofas in which the location of recliner controls was not limited to a console between the two reclining portions of the claimed sectional sofa, despite the fact that the written description only disclosed sectional sofas that were so limited. See *Gentry, 134 F.3d at 1478-79, 45 U.S.P.Q.2D (BNA) at 1502-03.* Berkline argued that such limited disclosure rendered those claims invalid for lack of adequate written description and we agreed, reasoning as follows:

> [HN10]
> In a given case, the scope of the right to exclude may be limited by a narrow disclosure. . . . In this case, the original disclosure clearly identifies the console as the only possible location for the controls. It provides for only the most minor variation in the location of the controls, noting that the control "may be mounted on top or side surfaces of the console rather than on the front wall . . . without [*13] departing from this invention." No similar variation beyond the console is even suggested. Additionally, the only discernible purpose for the console is to house the controls. As the disclosure states, identifying the only purpose relevant to the console, "another object of the present invention is to provide . . . a console positioned between [the reclining seats] that accommodates the controls for both of the reclining seats." Thus, locating the controls anywhere but on the console is outside the stated purpose of the invention. Moreover, consistent with this disclosure, Sproule's broadest original claim was directed to a sofa comprising,

> inter alia, "control means located upon the center console to enable each of the pair of reclining seats to move separately between the reclined and upright positions." . . . Accordingly, when viewed in its entirety, the disclosure is limited to sofas in which the recliner control is located on the console.

*Id. at 1479, 45 U.S.P.Q.2D (BNA) at 1503* (citations omitted).

Similarly to the patent in Gentry, the written description in the *'726* patent discloses that the only type of impeller to be used in the claimed snowthrowers [*14] is a curved one. The written description describes the key role of the impeller's curved shape in the function of the claimed snowthrowers as follows:

> The shape of impeller **30** along with the shape and placement of collecting chamber **22** yield a single stage snowthrower **2** having performance characteristics which begin to approach the performance of much larger two-stage snowthrowers. In this regard, Applicants believe that the shape of central snowthrowing section **30**, including its slight amount of forward facing, is more efficient than prior art straight paddle impellers in collecting and throwing snow, i.e., the snow appears to be firmly cupped and held by central section **34** until it is released into chamber **22** with less spillage of snow on the paddle.

*'726* patent, col. 11, ll. 1-12 (emphasis added). Moreover, the written description teaches that:

> Applicants have discovered that paddles **32** shaped as illustrated and described herein appear to maintain their ability to throw snow at longer hours of operation than more conventionally shaped flat, radial paddles. It is believed this is due to the use of a flexible [*15] material having the concave shape for central section **34** which acts as a rigid cup in scooping and throwing the snow such that its ability to do so does not degrade as much even when the clearance between the central section **34** and the arcuate lower portion **19** of rear wall **18** increases.

Id. at col. 12, ll. 2-12 (emphasis added). In fact, the written description discloses that in the construction of the impeller of the claimed snowthrower, the curved shape is a built-in feature. See id. at col. 6, ll. 41-43 ("The first stamping **40** is a generally concave stamping which helps define the generally concave shape of central section **34**. . . .").

As in Gentry, the written description here identifies curved impellers as the only impellers to be used in the claimed invention and makes no mention of any other possible design to be used in the claimed snowthrowers. See id. at col. 3, ll. 31-33 (describing the curved shape as "necessary"); see id. at col. 6, ll. 64-66 (describing the curved shape as "required"). Likewise, nearly all of the original thirty-five claims of the *'726* patent explicitly require that the impeller be curved. [*16] n5 Clearly the reissue claims exceeded what the inventors had possession of when they filed the patent application.

n5 Only claims 20 and 21 do not include the curved limitation. However, since Ariens did not argue the invalidity of these claims under section 112, paragraph 1, we do not pass judgment on those claims.

Based on the reasoning in Gentry, we therefore conclude that reissue claims 36-41 are invalid under section 112, paragraph 1 as a matter of law, because none of these claims is limited to a curved impeller, and the written description fails to support claims in which a snowthrower contains an impeller that is anything other than curved. Toro used the reissue process to impermissibly obtain claims that were unsupported by the narrow disclosure in the written description, and the district court therefore erred in denying Ariens' motion for summary judgment of invalidity as to the disputed claims.

2. Reissue Requirements under Section 1.175 n6

n6 While Ariens argues that claims 37-42 are all invalid under *37 C.F.R. § 1.175*, we only address claim 42, in view of our holding that claims 36-41 are invalid under section 112, paragraph 1.

[*17]

Ariens argues in its cross-appeal that claim 42 is invalid for failure to comply with section 1.175, because the inventors of the *'726* patent failed to set forth every difference between that new reissue claim and the original claims. Ariens contends that the following underscored language in claim 42 (dependent indirectly

from claim 37) was not explained in the inventors' Supplemental Declaration:

> (c) an upwardly extending snow collecting chamber located on the rear wall of the housing and having a lower end disposed beneath the upper edge of the housing; and
>
> (d) two downwardly facing ledges located on the rear wall of the housing beneath the upper edge of the housing, wherein the ledges are positioned on each side of the snow collecting chamber to lie above the end sections of the impeller.

*'726* patent, col. 18, ll. 50-58 (emphasis added). Toro responds that the inventors of the *'726* patent did comply with section 1.175, because all material differences were disclosed in the Supplemental Declaration, in which the inventors compared reissue claim 42 to original claim 24. Toro argues that that the underscored language in claim 42 was not a material [*18] change, as demonstrated by subsection (c) of claim 24:

> (c) upwardly extending collecting means located on at least the lower section of the upper portion of the rear wall for receiving the snow stream from the impeller and for conducting that snow stream vertically upwardly, wherein the collecting means includes a trough means which tapers inwardly from side-to-side as it rises, and wherein the trough means at its lower end has a width which is at least approximately one-half the impeller's predetermined length.

Id. at col. 17, ll. 28-37 (emphasis added). n7 Ariens replies that even if only material changes must be disclosed, the change at issue is material.

n7 Neither party disputes that the "snow collecting chamber" structure recited in claim 37 is the structure corresponding to the "collecting means" limitation in claim 24, which is written in means-plus-function format. See *35 U.S.C. § 112,* P 6 (1994). Since the "snow collecting chamber" is indeed the structure disclosed in the written description that corresponds to the "collecting means," we need not address this issue further.

[*19]

Although we agree with Ariens that changes have been made in claim 42 relative to claim 24, we will not reverse the district court on this ground. In its Supplemental Declaration, the inventors explained at length how independent claim 37 and dependent claim 42 differed from the original claims, noting that: (1) claim 37 included the "ledges" limitation found only in original claims 33 and 34, (2) that claim 37 lacks the curved impeller shape or dimension required of claim 24 and other original independent claims, and (3) that claim 42, while having a curved impeller shape limitation, lacked the impeller dimension language present in original independent claims. See Supplemental Decl. at 3-4. Moreover, the inventors indicated, in underscore, that as a result of the modified impeller language, claim 42 was broader than any of the original claims in the patent. See id. at 4. While claim 42 has been heavily redrafted relative to claim 24, resulting in further undisclosed differences between the two claims, we do not consider this minor infraction sufficient to invalidate the claim in light of the otherwise extensive recitation of the differences. Cf. *Nupla Corp. v. IXL Mfg. Co., 114 F.3d 191, 192, 42 U.S.P.Q.2D (BNA) 1711, 1712 (Fed. Cir. 1997)* [*20] (holding that failure to disclose all material changes renders reissue claims invalid for failure to comply with section 1.175). We therefore conclude that claim 42 is not invalid for failure to comply with section 1.175.

D. Infringement

1. Claims 20 and 24

Toro argues that the district court erred in holding that claim 20 was not infringed as a matter of law based on its determination that the accused device does not contain an "impeller means . . . wherein the throwing means comprises a paddle portion which extends over at least approximately one-half of the impeller means' total length." Toro contends that the court misinterpreted the written description in calculating the length of the "throwing means" of the accused impeller, and that the court impermissibly decided disputed issues of fact on summary judgment. Toro argues in essence that the transition sections must be counted as part of the throwing means. Toro also asserts that the court performed an inadequate analysis under the doctrine of equivalents.

Ariens responds that the district court properly granted its motion for summary judgment of noninfringement as to claim 20 because the accused impeller does [*21] not meet the disputed limitation in that claim. Ariens points out that the "throwing means" of the accused impeller is only three to four inches long, much less than "approximately one-half of the impeller means' total length" of eighteen inches. Ariens continues

that the district court properly interpreted the written description in its infringement analysis and correctly concluded that the transition sections of the accused impeller are not counted as part of the "throwing means." As such, Ariens argues that the district court correctly held that it does not infringe as a matter of law, either literally or under the doctrine of equivalents. For these reasons Ariens also contends that the district court correctly held that claim 24 is not infringed, as that claim contains a limitation similar to the disputed one in claim 20. Toro does not reply to Ariens' contention with respect to claim 24, or challenge the district court's ruling of noninfringement based on that limitation.

As an initial matter, we agree with Ariens that the district court properly interpreted the written description and correctly concluded that there is no genuine issue of material fact that Ariens' device does [*22] not infringe claim 20. The disputed portion of claim 20 reads as follows, with the key limitation underscored:

> (b) rotatable impeller means carried on the housing for throwing snow upwardly relative to the housing, wherein the impeller means includes means for throwing a snow stream which tapers inwardly as it rises away therefrom, wherein the throwing means comprises a paddle portion which extends generally radially relative to the impeller means and extends over at least approximately one-half of the impeller means' total length. . . .

*'726* patent, col. 16, ll. 10-18 (emphasis added). n8 The district court observed, and Toro did not dispute, that the flat, central section of the accused impeller is approximately three to four inches long, and that the total length of the impeller is approximately 18 inches. See Toro I, slip op. at 17. As for the remainder of the impeller, the court agreed with Toro's own expert, John Berner, that the curved portions between the central section and the end sections of the impeller were "transition sections." See id. at 16-17 & n.3; Berner Dep. at 160-161. n9 The court then turned to the following portion of the written [*23] description for guidance as to whether it should attribute the "transition sections" to the central snowthrowing section or the end sections:

> While each end section **36** has been described as being relatively distinct from central section **34**, the axially inwardmost portion of each end section **36** might be considered a transition section in which the shape of the end section is blended to match the shape of the central section **34** at the side thereof. However, if such a transition section does in fact exist, it will be considered as part of the end section for the purposes of definition herein.

Id. at col. 5, l. 67 to col. 6, l. 7; see also Toro I, slip op. at 14-15. The court correctly interpreted the plain language of this passage to mean that any transition portions are considered part of the end sections, not the central snowthrowing section. See Toro I, slip op. at 16-17. Thus, we agree with the district court's holding that Ariens did not infringe as a matter of law, as the central snowthrowing section in Ariens' impeller is only three to four inches in length, which is considerably less than "approximately one-half" of that impeller's [*24] total length of eighteen inches. See id. at 17.

n8 Neither party disputes that the structure corresponding to the "throwing means" limitation is the "central snowthrowing section" disclosed in the specification. We also note that while the term "means" is used in the "impeller means" limitation, adequate structure is revealed by the term "impeller," such that section 112, paragraph 6 is not invoked. See *Personalized Media Communications, LLC v. ITC, 161 F.3d 696, 703-04 & n.10, 48 U.S.P.Q.2D (BNA) 1880, 1886-87 & n.10.*

n9 Berner's characterization of what constituted "transition sections" was drawn directly onto the figure of the accused impeller, as shown above, and initialed with "J.B."

We also find no error in the district court's conclusion that Ariens' device does not infringe under the doctrine of equivalents as a matter of law. Even assuming that the accused central snowthrowing section is four inches, it is still less than a fourth of the total length of the impeller. It is beyond argument [*25] that a fourth of the impeller's length is not insubstantially different from "approximately one-half" of its length.

Moreover, we agree with Ariens that the district court properly granted its motion for summary judgment of noninfringement of claim 24 for the same reasons as claim 20. The key portion of claim 24 reads as follows:

> (b) a rotatable impeller . . . wherein the impeller includes an outwardly extending paddle having a curved central snowthrowing section for throwing upwardly away therefrom at approximately the juncture between the lower and upper portions of the rear wall

> a snow stream which has a width as it departs the snowthrowing section of at least approximately one-half the impeller's predetermined length and in which axially outermost portions of the snow stream have a component of motion that is directed axially inwardly. . . .

*'726* patent, col. 17, ll. 10, 17-27 (emphasis added). Although this claim describes the dimensions of the snow stream that is expelled from the central snowthrowing section rather than the central snowthrowing section itself (cf. claim 20), we do not believe (and Toro does not contend) that the district court erred [*26] in concluding that this limitation is the functional equivalent of the disputed limitation in claim 20. See Toro 1, slip op. at 13 n.2. For the central snowthrowing section to eject a snowstream of that dimension, it is only logical the central snowthrowing section itself must have approximately the same dimensions. Accordingly, for the reasons articulated above with respect to claim 20, we conclude that the court correctly held as a matter of law that Ariens' device does not infringe claim 24, either literally or under the doctrine of equivalents.

2. Willfulness

Toro argues that the district court erred in concluding that Ariens did not willfully infringe as a matter of law, and that genuine issues of material fact preclude summary judgment. Toro makes a number of allegations against Ariens, including that Ariens acted against, or failed to consider, the advice of its counsel, concealed a key change in design from that counsel, failed to obtain an opinion on the design that was ultimately generated, and copied Toro's design. Ariens responds that these allegations lack any factual support, and that accordingly, the district court correctly granted its motion for summary judgment [*27] on this issue.

[HN11] "A finding of willfulness requires the fact-finder to find that clear and convincing evidence shows 'that the infringer acted in disregard of the patent . . . [and] had no reasonable basis for believing it had a right to do the acts.'" *American Med. Sys., Inc. v. Medical Eng'g Corp., 6 F.3d 1523, 1530, 28 U.S.P.Q.2D (BNA) 1321, 1325 (Fed. Cir. 1993)* (quoting *Stickle v. Heublein, Inc., 716 F.2d 1550, 1565, 219 U.S.P.Q. (BNA) 377, 388 (Fed. Cir. 1983))*. Such a determination is "made after consideration of the totality of the circumstances" of a particular case, including any "mitigating or ameliorating factors." See id.

We agree with Ariens that, in view of the totality of the circumstances, the court did not err in concluding that it did not willfully infringe as a matter of law. First of all, the fact that we have held claims 20 and 24 to be not infringed and claims 36-41 to be invalid strongly supports the court's conclusion of lack of willfulness. The idea of acting in conscious disregard of another's valid patent rights is inconsistent with a conclusion that the claims are invalid and/or not infringed. This is so, even though the district court [*28] only found lack of infringement, rather than invalidity. Moreover, the record reveals that Ariens worked closely with its counsel, Joseph A. Gemignani, in designing the accused device. See, e.g., Daniel T. Ariens Deposition at 105 ("We were always in communication both with Mr. Gemignani and Design Concepts and Clarence Harms, Don Berchem. That was our approach from the beginning."). Further, Toro fails to cite any record evidence that Ariens concealed changes in the accused device from its counsel. While Toro asserts that Ariens failed to obtain an opinion letter on the design that was actually manufactured, Toro fails to explain how the final design differed in any material way from the design analyzed in the second opinion letter. As for Toro's contention that Ariens unlawfully copied its invention, we agree with the district court that Ariens' behavior is more accurately characterized as "designing around," an activity that the patent system encourages. See *Westvaco Corp. v. International Paper Co., 991 F.2d 735, 745, 26 U.S.P.Q.2D (BNA) 1353, 1361 (Fed. Cir. 1993).* Based on the totality of the circumstances of this case, we conclude that the district court did not [*29] err in concluding that Ariens did not willfully infringe as a matter of law.

E. Conclusion

The district court erred as a matter of law in concluding that claims 36-41 were not invalid under section 112, paragraph 1. However, the district court correctly held as a matter of law that claim 42 was not invalid under section 1.175, that none of the claims was willfully infringed, and that claims 20 and 24 were not otherwise infringed. We therefore affirm-in-part and reverse-in-part.