**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

ARCTIC CAT INC.,
a Minnesota Corporation,

Plaintiff,

v.

INJECTION RESEARCH SPECIALISTS, INC., a Colorado Corporation, and PACER INDUSTRIES, INC., a Missouri Corporation,

Defendants.

INJECTION RESEARCH SPECIALISTS, INC., a Colorado Corporation, and PACER INDUSTRIES, INC., a Missouri Corporation,

Counterclaimants,

v.

ARCTIC CAT INC.,
a Minnesota Corporation, and
SUZUKI MOTOR CORPORATION,
a Japanese Corporation,

Counterclaim Defendants.

Civil Action No. 01-CV-543 (MJD/RLE)

Hon. Michael J. Davis
Hon. Raymond L. Erickson (Magistrate)

**ORAL ARGUMENT REQUESTED**

**ARCTIC CAT'S AND SUZUKI'S RESPONSE TO**
**IRS'S OBJECTIONS TO MAGISTRATE JUDGE ERICKSON'S**
**AUGUST 6, 2004 REPORT AND RECOMMENDATION**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ... 1

II. THE COURT SHOULD ADOPT MAGISTRATE JUDGE ERICKSON'S RECOMMENDATIONS ON THE CROSS MOTIONS FOR SUMMARY JUDGMENT ON THE WILLFUL INFRINGEMENT CLAIM ... 1

A. IRS has not carried its burden of presenting clear and convincing evidence that Arctic Cat acted unreasonably under the totality of the circumstances. ... 2

B. Magistrate Judge Erickson properly considered IRS's lack of notice in recommending that this Court should grant Arctic Cat's motion under the "totality of the circumstances" standard ... 3

1. IRS's Unsubstantiated Claim that Arctic Cat Copied the '803 Patent Cannot be a Basis to Reject Magistrate Judge Erickson's Recommendation. ... 6

2. Arctic Cat Properly Obtained and Relied on Opinions of Counsel ... 10

3. IRS Objections on Remedial Actions are Irrelevant ... 13

D. Under the totality of the circumstances, Arctic Cat reasonably believed that a court would find the '803 patent invalid or unenforceable and that it was not liable for patent infringement. ... 14

E. Magistrate Judge Erickson Committed No Error in Not Recommending IRS's Proposed Rule 56(d) Findings ... 15

III. THE COURT SHOULD ADOPT MAGISTRATE JUDGE ERICKSON'S RECOMMENDATION TO GRANT SUMMARY JUDGMENT TO ARCTIC CAT AND SUZUKI FOR THOSE PRODUCTS THAT USE JECS EFI SYSTEMS ... 16

A. A Final Judgment on the Patent Issues in the *Polaris Case* Was Entered on May 5, 1997, Amended on July 24, 1997, and Corrected on August 28, 1997, Each of Which Is a Final Judgment Providing a Basis for *Res Judicata* ... 16

B. Arctic Cat and Suzuki Did Not Waive Their Legal Estoppel Defense ... 18

C. Whether IRS Intended Its Covenant Not To Sue to Cover JECS's Customers, Arctic Cat and Suzuki Is Irrelevant to Magistrate Judge Erickson's Legal Estoppel Findings ... 20



Word 20105898.1

D. By Granting JECS a Covenant Not to Sue, IRS Authorized JECS to Sell Its EFI Systems and Exhausted IRS's Patent Rights as to Those EFI Systems....22

IV. THE COURT SHOULD ADOPT MAGISTRATE JUDGE ERICKSON'S RECOMMENDATION THAT IRS'S SUMMARY JUDGMENT MOTION ON THE CUYUNA PRIOR ART SHOULD BE DENIED ....25

A. IRS's motion is improper under Rule 56. ....25

B. IRS has not sustained its burden for summary judgment on the Cuyuna prior art. ....28

V. MAGISTRATE JUDGE ERICKSON'S FINDING THAT ARCTIC CAT AND SUZUKI WERE MISLED BY IRS'S CONDUCT SHOULD BE ADOPTED ....30

A. The Uncontroverted Record Supports the Magistrate's Report on IRS's Misleading Conduct. ....30

B. Any Estoppel As to Arctic Cat Applies to Suzuki By Virtue of the "Customer/Vendor" Relationship Between Arctic Cat and Suzuki....33

VI. THE COURT SHOULD ADOPT MAGISTRATE JUDGE ERICKSON'S RECOMMENDATION TO DENY IRS'S SUMMARY JUDGMENT MOTION CONCERNING OBVIOUSNESS CONTENTIONS ON WHICH NO EXPERT OPINIONS WERE RENDERED....37

A. Arctic Cat and Suzuki Have Met Their Burden Of Providing Evidence From Which The Jury Could Properly Find Obviousness Based On Each Of The Combinations In Issue....37

B. Magistrate Judge Erickson Did Not Fail To Properly Allocate The Burden Of Proof....41

C. Magistrate Judge Erickson Did Not Misconstrue Arctic Cat's And Suzuki's Alleged Evidence Of Obviousness To Be Presented At Trial ....42

D. IRS's Motion Is, In Effect, A Motion To Exclude The 17 Prior Art Combinations And Is Improper Under Rule 56....43

VII. MAGISTRATE JUDGE ERICKSON PROPERLY CONCLUDED THAT OHIO LAW GOVERNS THE LITIGATION AGREEMENT BETWEEN IRS AND PACER....43

## I. INTRODUCTION

Arctic Cat and Suzuki submit the following response to the objections of IRS and Pacer to Magistrate Judge Erickson's August 6, 2004 Report and Recommendation ("Report"). Contrary to the arguments of IRS and Pacer, that Report's recommendations regarding the cross motions for summary judgment on IRS's and Pacer's willful infringement claim and the motion for summary judgment on legal estoppel are not based on "clear error" and should be adopted. Consistent with the findings and recommendations of Magistrate Judge Erickson and as more fully explained below, IRS's and Pacer's motions for summary judgment should not be granted and its request for Rule 56(d) findings rejected.

## II. THE COURT SHOULD ADOPT MAGISTRATE JUDGE ERICKSON'S RECOMMENDATIONS ON THE CROSS MOTIONS FOR SUMMARY JUDGMENT ON THE WILLFUL INFRINGEMENT CLAIM[1]

IRS's argument that this Court should reject Magistrate Judge Erickson's recommendation to grant Arctic Cat's motion for summary judgment and deny IRS's cross motion on IRS's claim of willful infringement is based solely on a speculative "inference" of copying and a conscious disregard of Arctic Cat's counsel's letters and the opinions expressed in those letters. IRS's Objections also completely ignore IRS's higher evidentiary burden to prove willful infringement with clear and convincing evidence. Applying the proper legal standard to the undisputed facts, as Magistrate Judge Erickson did, confirms that no reasonable jury could

---

[1] In this Response, Arctic Cat and Suzuki address the issues in the same order as IRS and Pacer addressed them in their Objections. Additionally, Arctic Cat and Suzuki agree with the de novo legal standard for this Court's review of the August 6, 2004 Report and Recommendation as described at pages 1-2 of Injections Research Specialists, Inc.'s and Pacer Industries, Inc.'s Objections to August 6, 2004 Report and Recommendation of the Magistrate Judge ("IRS Objections"). For most parts of this Response and unless otherwise specified, Arctic Cat and Suzuki's reference to "IRS" should be construed as a collective reference both to Injection Research Specialists, Inc. ("IRS") and to Pacer Industries, Inc. ("Pacer").

find that clear and convincing evidence demonstrates Arctic Cat willfully infringed the '803 patent.

### A. IRS has not carried its burden of presenting clear and convincing evidence that Arctic Cat acted unreasonably under the totality of the circumstances.

To avoid dismissal of its claim of willful patent infringement, IRS bears the burden of coming forth with sufficient evidence to prove with clear and convincing evidence[2] that Arctic Cat did not act with a reasonable belief that its products did not infringe the '803 patent. A patentee must establish willful patent infringement by clear and convincing evidence. *State Contracting & Engineering Corporation v. Condotte America, Inc*., 346 F.3d 1057, 1063 (Fed. Cir. 2003); *Pall Corp. v. Micron Separations,* 66 F.3d 1211, 1221 (Fed. Cir. 1995). As explained by Magistrate Judge Erickson, the test for willfulness is "whether, under all the circumstances, a reasonable person would prudently conduct himself with any confidence that a court might hold the patent invalid or not infringed."[3]

In recently granting summary judgment against a claim of willful patent infringement, Judge Donovan Frank explained: "Infringement is willful if, based on the totality of the circumstances, it is determined that the infringer acted in bad faith and without a reasonable basis for believing it was not infringing the patent-in-suit. … A court must determine whether under the circumstances, a reasonable person would prudently conduct himself with any confidence that a court might hold the patent invalid or not infringed." *Honeywell, Inc. v. U.S. JVC Corp.*, No. 99-1607 (DWF/AJB), Dkt. No. 289, pp. 13-14 (March 19, 2004) (internal citation omitted). Similarly, in granting summary judgment against a claim of willful infringement, Judge Richard

[2] As IRS quoted when it argued that the Court should reject one of Arctic Cat's invalidity defenses (also requiring clear and convincing evidence): "[i]n rendering a decision on a Motion for Summary Judgment, a Court must view the evidence presented through the prism of the substantive evidentiary burden that inheres at Trial ...' *Transclean v. Bridgewood Servs*., 77 F. Supp. 2d 1045, 1071 (D. Minn. 1999)." IRS's Objections at 31.

[3] Report at 153.

Kyle explained: "A finding of willfulness requires the fact-finder to find that clear and convincing evidence shows that the infringer acted in disregard of the patent and had no reasonable basis for believing it had a right to do the acts."[4]

In *Toro Co. v. Ariens Co*., the patentee, Toro, offered only unreliable evidence of copying and argument that the accused infringer, Ariens, had disregarded the legal opinion it obtained from its patent counsel. That court concluded this evidence was insufficient to withstand summary judgment:

> Ariens is entitled to summary judgment if it can show that no reasonable jury could make a finding of willfulness. Because willfulness must be proved by clear and convincing evidence, Ariens is entitled to summary judgment if it can show that no reasonable jury could find willfulness by that standard. *** Based on the evidence presented by Toro, the Court finds that no reasonable jury could determine by clear and convincing evidence that Ariens willfully infringed the '726 Patent.[5]

As shown below, IRS has presented no direct evidence of willful infringement, let alone the requisite clear and convincing evidence from which a reasonable jury could determine that Arctic Cat willfully infringed the '803 patent. Magistrate Judge Erickson's recommendations on these cross motions should be adopted.

### B. Magistrate Judge Erickson properly considered IRS's lack of notice in recommending that this Court should grant Arctic Cat's motion under the "totality of the circumstances" standard.

IRS devotes much of its objections to highlighting its own failure to provide Arctic Cat any notice of the alleged infringement by Arctic Cat's Kokusan-equipped EFI snowmobiles. IRS argues that Magistrate Judge Erickson "confused" the notice issue under 35 U.S.C. § 287 with

---

4 *Toro Co. v. Ariens Co.*, No. 3-96-416/RHK/FLN, 1998 U.S. Dist. LEXIS 22856, *51-*52 (D. Minn. 1998) (internal citations omitted), aff'd at Nos. 99-1285, 99-1307, 2000 U.S. App. LEXIS 8253, *26-*29 (Fed. Cir. 2000).

5 *Toro Co. v. Ariens Co.*, 1998 U.S. Dist. LEXIS 22856 at *50-*55.

the analysis for willful infringement. The lack of notice is highly relevant to Arctic Cat's reasonable non-infringement belief because Arctic Cat's Kokusan snowmobiles first appeared in the market shortly before IRS commenced the first trade secret lawsuit against Arctic Cat, Suzuki and JECS. And IRS was aware of these Kokusan snowmobiles during the trade secret lawsuit. At that time, if IRS intended to pursue patent infringement against the Kokusan snowmobiles, then it would have given a Section 287 notice. But IRS never gave any such notice. Magistrate Judge Erickson properly considered this factor within the requisite "totality of the circumstances" analysis.

Courts consider the notice provided to an accused infringer in granting the accused infringer summary judgment on the patentee's claim of willful infringement. In *Honeywell, Inc. v. U.S. JVC Corp.*, Judge Frank reviewed Honeywell's evidence submitted in opposition to a summary judgment motion on willfulness. Judge Frank rejected Honeywell's argument that JVC was put on notice of the patent in suit when Honeywell sent JVC a letter containing only a reference to the patent along with dozens of other patents. He then stated, "when a person or entity becomes aware that a patent may have relevance to their activities, that person or entity has a duty to exercise due care and investigate whether or not their activities or proposed activities infringe any valid, enforceable claim of the patent."[6] The Court explained: "[T]he Court has carefully scrutinized the entire record before it, and, based upon that scrutiny and the totality of the circumstances as set forth in the record, no reasonable jury could find that JVC was acting without a reasonable basis to believe that it was not infringing the '501 patent."[7]

---

[6] *Honeywell, Inc. v. U.S. JVC Corp.*, No. 99-1607 (DWF/AJB), Dkt. No. 289, pp. 15-18 (March 19, 2004) (internal citation omitted).

[7] *Id.* at 16.

In light of the history between Arctic Cat and IRS, this lack of notice is a compelling component of the "totality of the circumstances." Certainly, given IRS's and Arctic Cat's previous business contacts and intellectual property disputes about EFI, where IRS specifically accused Arctic Cat products with JECS EFI systems of patent infringement, but neglected to accuse a product from a different EFI supplier of patent infringement, this is highly relevant to the issue of whether Arctic Cat became aware that the '803 patent was relevant to the Kokusan EFI-equipped snowmobiles.

More directly, it appears that IRS is plainly incorrect in its belief that Magistrate Judge Erickson confused the notice issue under 35 U.S.C § 287 with the accused infringer's notice of the patent for purposes of willfulness. Section 287 requires the patentee to provide infringers notice of the accused infringer's infringement (i.e., not just the patent's existence) to recover *any* damages against the infringer. This distinction was the specific basis for Judge Frank's decision in the Honeywell case. Because IRS's 1995 notice specifically singled out the JECS-equipped EFI snowmobiles, and IRS provided no other notice, Magistrate Judge Erickson correctly found that IRS had not provided the notice required under 35 U.S.C. § 287 of the alleged infringement by Arctic Cat's Kokusan-equipped EFI snowmobiles to commence accrual of damages for willful infringement by those products.

**C. IRS offers no evidence to establish Arctic Cat's willful infringement, much less clear and convincing evidence**.

Although IRS needed to provide the Court with clear and convincing evidence to prevail on its willful infringement claim, IRS offered *no evidence* from which a reasonable fact finder could conclude that Arctic Cat willfully infringed the '803 patent. As Magistrate Judge Erickson

concluded, "IRS has provided no direct evidence of willful infringement ... ."[8] IRS continues to argue only for inferences from unsubstantiated evidence or for unreasonable inferences from the correspondence of Arctic Cat's patent counsel—all inferences that cannot withstand summary judgment on a claim that requires clear and convincing evidence.

### 1. **<u>IRS's Unsubstantiated Claim that Arctic Cat Copied the '803 Patent Cannot be a Basis to Reject Magistrate Judge Erickson's Recommendation.</u>**

IRS argues that deliberate copying should be considered as a factor in favor of denying Arctic Cat's notion on willful infringement. After a thorough review of the voluminous record, Magistrate Judge Erickson concluded that IRS offered no actual evidence of copying, but only a "bare assertion" incapable of withstanding summary judgment.[9] Rather than meeting its burden to present actual evidence, IRS proposes that the Court accept a "justifiable inference" of copying based solely on evidence of contacts between IRS and Arctic Cat without any evidence regarding how the actual information purportedly exchanged related to the patent. The proposed inference is unsustainable.

Because willfulness must be proven by clear and convincing evidence, speculative and inferential copying allegations cannot create a jury issue on a claim of willful infringement. *See, e.g., Windsurfing Int'l v. Fred Ostermann GmbH*, 668 F. Supp. 812, 818 (S.D.N.Y. 1987) (rejecting claim of willful infringement where patentee had suggested inference of copying drawn from defendant's access to plaintiff's product), *aff'd in relevant part*, 1 F.3d 1214 (Fed. Cir. 1993); *MacPike v. American Honda Motor Co.*, No. 92-30094/LAC, 1993 WL 632261, *8-*9 (N.D. Fla. 1993) (granting directed verdict on claim of willful infringement, finding

---

8 Report at 166.

9 Report at 163.

ambiguous evidence supporting no more than an inference of copying was insufficient). In *Windsurfing Int'l v. Fred Osterman GmbH*, for example, the court rejected the patentee's copying allegation, which was not based on actual evidence but merely a proposed inference unsupported by the evidence.

> WSI argues that copying may be inferred by the fact that BIC Leisure had access to WSI's sailboards before it began to manufacture its own, and by the similarity between WSI's and Bic's sailboards. WSI has not pointed to any cases where an inference of deliberate copying was used to support a finding of willful infringement under § 284, and at any rate, such an inference would not be justified here, where the allegations of access and similarity are general rather than specific.[10]

The Court also rejected the patentee's proposed inference based on the fact that the accused infringer had not successfully developed an alternative design. The Court rejected this argument as "purely speculative."[11]

In *MacPike v. American Honda Motor Co.*, the patentee proposed an inference of copying based on: (1) access to the patentee's design from trade journals; (2) unnamed "Honda Team" members having viewed the patentee's device; (3) one individual connected to the accused infringer having been given a sample kit; (4) one of the accused infringer's employees having been present during initial testing of the device; and (5) an instruction manual for the device in question having been sent to one of the accused infringer's research and design employees.

The court rejected the patentee's copying allegation and granted a direct verdict in favor of the accused infringer, explaining:

> Based on the plaintiffs' failure to make a critical connection in the evidence presented, the Court must conclude that there was insufficient evidence to offer to

---

[10] 668 F. Supp. at 818.

[11] *Id.* at 818-19.

> the jury on the question of whether defendant willfully infringed the '697 patent. The Court rejects the argument that willfulness can be established through an inference of copying, especially where, as here, the evidence was so sparse and the two devices were not virtually identical. Again, the Court emphasizes its unwillingness to force a jury into such speculation.[12]

In both *Windsurfing Int'l* and *MacPike*, the courts rejected proposed inferences based – like IRS's proposed "inference" in this case – on little more than speculation and circumstance. The patentees in those cases tried to contrive claims of willful infringement based on the same kind of inadequate arguments made by IRS in this case.

IRS proposes an inference that simply is unsupported by the record evidence. Its inference is based on its own argument. For example, as IRS argued in its opposition to Arctic Cat's motion for summary judgment:

> During his deposition, IRS's Rule 30(b)(6) witness testified that IRS believed Arctic Cat was guilty of willful infringement based, among other things, on the fact that Arctic Cat copied Mr. Chasteen's invention after "we worked with them, gave them our stuff" [13] and that Arctic Cat continued to infringe IRS's patents even after IRS's counsel "wrote them a letter telling them that we thought they infringed in '95 . . ." See Horstman Exh. 1; Preisser Depo. Tr. P. 152:22-153:18. Mr. Preisser's common sense analysis is, in fact, dead on.[14]

But Mr. Preisser's "common sense analysis" is not evidence.

---

[12] 1993 WL 632261 at *9.

[13] Arctic Cat objects to Magistrate Judge Erickson's conclusion that "a factfinder could find willfulness on the basis of trade secret misappropriation, alone." Report at 159. Obviously, if an item or idea is a trade secret, it cannot be in the patent (which, by its very nature, is a disclosure to the public). Such a finding also would depend on whether actual misappropriation was established and then whether the trade secret was actually a trade secret, and other factors. As the patent laws require full disclosure of the claimed invention, there is a fundamental inconsistency with IRS's argument that the invention claimed in the '803 patent is the same as IRS's purported trade secrets.

[14] Injection Research Specialists, Inc.'s and Pacer Industries, Inc.'s Opposition to Motion for Summary Judgment Dismissing Claims Against Arctic Cat for Willful Infringement, Dkt. #486, pp. 7-8.

Moreover, IRS's copying allegations involve events that pre-date the '803 patent by approximately six years.[15] Evidence relevant to this issue and that once existed is now gone. IRS's opposition to Arctic Cat's summary judgment motion refers to a "research prototype" shown to Arctic Cat, but that research prototype no longer exists.[16] The Report characterized this missing prototype as but one part of the "glut of evidentiary prejudice" attributable to IRS.[17] The disappearance of this prototype strongly impairs Arctic Cat's and Suzuki's ability to disprove IRS's proposed inference. IRS should not be permitted to evade summary judgment on an argument that an inference is justifiable when it has lost perhaps the most relevant evidence that would prove or disprove the inference sought.

Although IRS claims it has a "substantial body of facts, IRS Objections at 7,-[18] not one of those facts contains any <u>fact</u> regarding the actual limitations in the '803 Patent and evidence that Arctic Cat copied those limitations. Similarly, IRS repeatedly contends that because Arctic Cat snowmobiles were not introduced to the market "until after [Arctic Cat] had had access to IRS's technology" such a statement alone suffices to meet its burden. *See* IRS Objections at 9-10.

---

15 Notably, none of the "indirect evidence of copying" cases cited in IRS's objections (p. 7) propose an inference of copying based on a disputed version of events occurring some six years before the patent in suit even issued. Although the '803 patent is a reissue of IRS's '701 patent that issued in 1990, IRS has no claim in this lawsuit that Arctic Cat infringes claim 1 of the '803 patent (the only claim in the '701 patent).

16 *See* Exhibit 14 to Daley Declaration submitted in support of Arctic Cat's and Suzuki's motion for summary judgment on the basis of laches and equitable estoppel, at pp. 157, 214-215. IRS never produced in this case any prototype it claimed it gave to Arctic Cat.

17 Report at 149.

18 Likewise, IRS's argument at page 11 of IRS Objections that the Polaris Memorandum "was never provided to IRS executives until shortly before the Polaris case went to trial in 1997 owing to the existence of a Protective Order" is completely unsubstantiated. Although IRS refers the Court to a Protective Order entered in the Polaris case, a review of that Protective Order confirms that it applies only to documents marked "Confidential" and a review of the Polaris Memorandum is not marked "Confidential." Additionally, a review of the Polaris memorandum demonstrates that the memorandum does not mention the '803 Patent or make any statement that could be inferred that Arctic Cat is copying the '803 Patent.

Finally, nowhere in the 18 pages of IRS Objections which IRS devoted to the willfulness issue does IRS acknowledge its clear and convincing burden of proof. Because the inference invited by IRS lacks foundation in the record evidence, they are far from a justifiable inference capable of withstanding summary judgment.[19]

### 2. <u>Arctic Cat Properly Obtained and Relied on Opinions of Counsel</u>

An accused infringer is not required to obtain a written opinion of counsel to establish a reasonable non-infringement belief.[20] However, Arctic Cat *did* obtain written opinions of counsel upon which it relied. Arctic Cat obtained advice of counsel in 1995 when IRS threatened suit on the '803 patent. Arctic Cat's explanation of non-infringement, conveyed to IRS on December 22, 1995, was relied upon by Arctic Cat. Significantly, IRS never advised Arctic Cat that its lawyer's conclusion of no infringement was in error. Arctic Cat also sought and obtained the opinion of counsel in 2001. That opinion again found that the Arctic Cat snowmobiles did not infringe the '803 patent.

The Magistrate correctly found that "[q]uite plainly, by uncontroverted evidence in the Record, Arctic Cat sought the advice of counsel in response to Hanes's letter in 1995."[21] Arctic Cat's interrogatory responses listed the multiple opinion letters obtained by Arctic Cat in response to IRS's infringement allegations, and the December 22, 1995 letter was specifically referenced in the May 18, 2001 letter discussed in Arctic Cat's interrogatory responses. That

---

[19] *See, e.g., Toro Co. v. Ariens Co.*, 1998 U.S. Dist. LEXIS 22856 at *50-*55 (finding patentee's purported evidence of copying was insufficient to withstand summary judgment against claim of willful infringement).

[20] In the recent *Condotte* decision, the Federal Circuit confirmed that reasonableness under the total circumstances is the test for willfulness, not whether a particular opinion letter has been obtained. *State Contracting & Engineering Corporation v. Condotte America, Inc.*, 346 F.3d at 1064.

[21] Report at 169. That reference is to the Underhill letter. Although IRS objects to the "late" disclosure of Mr. Underhill as a witness, *see* IRS Objections at 14-15, Magistrate Judge Erickson was well aware that IRS had withheld 40-50 boxes of documents and evidence from production until the last week of discovery and also added witness to its list during the last weeks of discovery.

letter states: "In December of 1995, we had previously advised you, in connection with a letter responding to IRS' charge of infringement, that Arctic Cat's manufacture, sale, and use of its snowmobiles would not infringe upon any claim of U.S. Patent No. Re. 34,803. We confirm that earlier opinion."[22] Such evidence also supports the Report's finding of oral legal opinions.

IRS was given notice of the December 22, 1995 letter in this litigation and evidence of Arctic Cat's reliance on that letter. For example, Ole Tweet, Arctic Cat's vice president, testified that Arctic Cat not only relied on the December 22, 1995 letter, but also believed that it contained a satisfactory explanation of Arctic Cat's non-infringement position.[23] IRS's counsel also questioned Christopher Twomey, Arctic Cat's CEO, about a May 2, 1997 letter from Merchant & Gould to Grant Thornton[24] stating the following:

> On October 28, 1991 we provided a written opinion to Arctco, Inc. to the effect that the Arctco fuel injection system did not infringe the patent. A letter from that company to Arctco, Inc. dated February 2, 1995 again charged Arctco with infringement of U.S. Patent No. Re 34,803, which is a reissue of U.S. Patent No. 4,901,701. We have again advised Arctco, Inc. that the original claims of the '701 patent are, in our opinion, not infringed by Arctco. We have also advised Arctco with respect to the claims of the '803 reissue patent that in our opinion those claims are not infringed by Arctco.[25]

Arctic Cat's belief was reasonable especially because IRS never rebutted any of the opinions in the December 22, 1995 letter.

IRS is well aware that the December 22, 1995 letter expressed the legal opinion that Arctic Cat did not infringe the '803 patent and that the patent was invalid. IRS's argument that advice of counsel on which one relies for a defense to a willful infringement can never be

---

[22] Exhibit G, p. 1, Wilcox Declaration to IRS Motion for Summary Judgment on Willful Infringement.

[23] Tweet Deposition Testimony, p. 250, Exhibit 13, Horstman Declaration in Support of Arctic Cat's Motion for Partial Summary Judgment on IRS's Claim of Willful Infringement.

[24] Grant Thornton was Arctic Cat's auditor.

[25] Exhibit 15, Horstman Second Declaration in Support of Arctic Cat's Motion for Partial Summary Judgment on IRS's Claim of Willful Infringement, May 2, 1997 letter at p. 3.

disclosed to the opposing party should be rejected. Such a legal principle would discourage parties from exchanging their viewpoints on infringement and invalidity.

IRS erroneously contends that Arctic Cat's interrogatory answer negates the actual advice of Arctic Cat's counsel received in 1995. IRS offers no convincing basis, especially in light of IRS's undisputed knowledge of this letter throughout this litigation, and the testimony of Arctic Cat's reliance thereon, for disregarding this important evidence. If IRS's complaint is taken seriously at all, it merely demonstrates that this Court should grant Arctic Cat's and Suzuki's equitable estoppel motion, as Arctic Cat relied on IRS's lack of any response to Arctic Cat's counsel's December 1995 letter and did not secure additional legal opinions.[26]

Moreover, almost a year after Arctic Cat's counsel sent the December 1995 letter, Arctic Cat became aware of the Colorado federal court's decision that JECS systems did not infringe the '803 patent. Although IRS had every opportunity to notify Arctic Cat and Suzuki that it still intended to pursue a patent infringement claim, it remained silent on that issue. IRS's silence on this topic is especially significant since it did commence a lawsuit against Arctic Cat and Suzuki on EFI intellectual property – but not for patent infringement. Under such compelling circumstances, where the patentee does not respond to an explanation of non-liability, where the patentee receives an adverse claim construction and a finding of non-infringement by a United States District Court and still remains silent, where the patentee grants a covenant not to sue to the supplier, and where the patentee fails to sue when it originally promised, Arctic Cat undisputedly had a reasonable basis for believing a court would rule it was not liable for patent infringement.

---

[26] *See Wafer Shave, Inc. v. The Gillette Company*, 857 F.Supp. 112, 123-24 (D. Mass. 1993) ("One aspect of the prejudice caused by the accuser's misleading conduct was that the alleged infringer did not obtain more detailed legal opinions or consider alternative engineering steps."), aff'd without op., 26 F.3d 140 (Fed. Cir. 1994).

### 3. IRS Objections on Remedial Actions are Irrelevant

IRS's accusations concerning remedial efforts are not deserving of consideration because Arctic Cat and Suzuki reasonably believed remedial action was not necessary, and were misled by IRS into believing that no remedial actions were necessary. The reasonableness of Arctic Cat's belief is shown by its December 22, 1995 explanation of non-infringement and invalidity; by Arctic Cat's understanding of the disposition of IRS's patent claims in the *Polaris* litigation; by the covenant not to sue JECS; by IRS's failing to sue Arctic Cat and Suzuki for patent infringement following the *Polaris* litigation; and by IRS's two failed trade secret claims brought without asserting patent claims.

Had IRS timely asserted its patent claims, or even bothered to respond to Arctic Cat's December 22, 1995 explanation of non-infringement, Arctic Cat could have pursued alternatives that are no longer available to it.[27] Arctic Cat had no reason to believe remedial actions were necessary, and any lack of remedial actions were caused by IRS misleading conduct.[28] In light of these circumstances, this factor should not be considered on a willful infringement claim.

---

[27] For discussion of Arctic Cat's reliance on IRS's misleading conduct, see the equitable estoppel discussion at Arctic Cat's and Suzuki's Objections to the Magistrate's Report and Recommendation of August 6, 2004. There is no merit to IRS's argument (IRS objections, p. 18) that statements made in the context of accounting audit letters, which are subject to very specific legal requirements regarding past threats of litigation, disprove Arctic Cat's being misled by IRS's misleading conduct.

[28] As explained in the summary judgment motion on no infringement, Arctic Cat's snowmobiles produced after 2000 contained the additional feature of intermittent injection that further distanced the products from the 803 Patent. Arctic Cat also believed that the use of Kokusan EFI systems, rather than JECS EFI systems, further distanced Arctic Cat from the 803 Patent.

**D. Under the totality of the circumstances, Arctic Cat reasonably believed that a court would find the '803 patent invalid or unenforceable and that it was not liable for patent infringement.**

Willful infringement is precluded where the accused infringer had a reasonable belief that it did not infringe the patent, or that the patent was invalid or unenforceable.[29] Here, Arctic Cat had much more than a reasonable belief that it had the legal right to continue manufacturing and selling its EFI snowmobiles. Although Magistrate Judge Erickson focused largely on IRS's failure to accuse the Kokusan-equipped EFI snowmobiles of patent infringement, this lack of notice is only one component of the total facts and circumstances that would prevent a reasonable jury from finding willful infringement in this case. The Report and Arctic Cat's motion papers specify numerous other facts supporting the Recommendation to grant Arctic Cat's motion. Having found that "IRS has provided no direct evidence of willful infringement,"[30] Magistrate Judge Erickson hardly needed to limit his recommendation to the notice issue.

IRS provides no evidence, much less clear and convincing evidence, casting any serious doubt on the reasonableness of Arctic Cat's conduct in light of the totality of the circumstances, which include: (1) the December 1995 opinion of counsel and IRS's failure to respond to the letter explaining Arctic Cat's non-infringement and invalidity position; (2) the District of Colorado's adverse claim construction and disposition of IRS's patent claims; (3) IRS's covenant not to sue JECS, Suzuki's EFI supplier, on the '803 patent; and (4) IRS's failure to sue Arctic Cat for patent infringement when originally stated. Under these total circumstances, no reasonable jury could conclude that Arctic Cat's belief that it would not be held liable for patent

29 *See* discussion at section A, *supra*.

30 Report at 166.

infringement was unreasonable, and no reasonable jury could find willful infringement in this case.

**E. Magistrate Judge Erickson Committed No Error in Not Recommending IRS's Proposed Rule 56(d) Findings**

IRS's objection that Magistrate Judge Erickson did not issue certain Rule 56(d) findings deserves little comment. Magistrate Judge Erickson acted well within his discretion in not entering factual findings under Rule 56(d). Rule 56(d) provides for such findings only if deemed "practicable" by the Court. *See* Fed. R. Civ. P. 56(d). One court has suggested that such findings are proper only where "helpful to the progress of the litigation." *Capitol Records, Inc. v. Progress Record Distributing, Inc.*, 106 F.R.D. 25, 29-30 (N.D. Ill. 1985).

On the merits, the findings sought by IRS are improper because they are not "without substantial controversy" under Rule 56(d). Arctic Cat disputes to various degrees the proposed findings asserted by IRS, as well as the meanings of the proposed findings in the context of this litigation. As to the actual notice of the '803 patent, such a finding is insufficient without specifying that such notification was limited only to JECS EFI systems, and that IRS never provided any notice relating to the Kokusan EFI systems. Regarding Arctic Cat's obtaining opinion of counsel, the undisputed fact is that Arctic Cat relied upon the opinion of counsel obtained in December 1995, and this is the only correct Rule 56(d) finding. Finally, any finding concerning Arctic Cat's remedial action is insufficient unless accompanied by findings regarding Kokusan, intermittent injection and that Arctic Cat relied on IRS's years of misleading conduct in foregoing certain opportunities to further distance itself from the '803 patent.

## III. THE COURT SHOULD ADOPT MAGISTRATE JUDGE ERICKSON'S RECOMMENDATION TO GRANT SUMMARY JUDGMENT TO ARCTIC CAT AND SUZUKI FOR THOSE PRODUCTS THAT USE JECS EFI SYSTEMS

In his Report and Recommendations, Magistrate Judge Erickson recommended that the Court deny summary judgment barring IRS's infringement claims against those products that use JECS's EFI systems based on *res judicata*, but grant summary judgment to Arctic Cat and Suzuki for those same products based on legal estoppel arising from IRS's covenant not to sue JECS.[31] IRS objects to the Report and Recommendations and argues that the Magistrate Judge committed several errors of law and fact.[32] In making these objections, IRS has once again misconstrued the law and the undisputed facts of record.

### A. A Final Judgment on the Patent Issues in the *Polaris Case* Was Entered on May 5, 1997, Amended on July 24, 1997, and Corrected on August 28, 1997, Each of Which Is a Final Judgment Providing a Basis for *Res Judicata*

With regard to *res judicata*, IRS objects to the Magistrate Judge's finding that there was a final judgment entered in the *Polaris* case on IRS's claims of infringement by products that use JECS EFI systems.[33] In making this objection, however, IRS does not dispute the fact that a "judgment" after trial was entered on May 5, 1997 and an "amended judgment" was entered on July 24, 1997.[34] Those judgments followed the *Polaris* court's February 11, 1997 summary judgment decision finding no infringement. Procedurally, the summary judgment ruling merged

---

[31] Report at 51.

[32] IRS Objections at 19-22 (arguing waiver under Fed. R. Civ. P. 8(c)); *id.* at 22-24 (arguing that IRS's covenant not to sue was not intended to cover anyone other than Polaris, Fuji, and JECS); *id.* at 24-27 (arguing that IRS did not exhaust IRS's right to assert its patent infringement claims against Arctic Cat and Suzuki in this action).

[33] *Id.* at 19.

[34] *See* Yoshida Decl. Supporting Mot. for Partial Summ. J. dated Nov. 6, 2003, Ex. 5, Judgment dated May 5, 1997; *id.*, Ex. 7, Order and Amended Judgment dated July 24, 1997.



Word 20105898.1

into those judgments and became final and appealable at that time. *See Barton v. Columbia Mut. Cas. Ins. Co.*, 930 F.2d 1337, 1338 n.2 (8th Cir. 1991).

In the *Polaris* case, IRS's own actions show that it conceded that the *Polaris* court's May 5, 1997 judgment was a final judgment on the patent issues because it filed a "Notice of Cross Appeal" on July 14, 1997. In that notice, IRS expressly appealed "from the February 11, 1997 Order granting summary judgment of non-infringement and dismissing with prejudice [IRS's] claims for infringement of [the '803 patent]."[35] And in its July 24, 1997 amended judgment, the *Polaris* court expressly stated that it had "entered judgment in defendants' favor on all patent infringement claims."[36]

In its objections, IRS argues that its claims of patent infringement in the *Polaris* case "were severed and stayed," but that statement is demonstrably false. Following its summary judgment decision of no infringement, the *Polaris* court severed and stayed the *defendants' invalidity defenses* because it concluded that its decision in the defendants' favor on infringement rendered their invalidity defenses moot.[37] The decision of no infringement, however, remained part of the case and merged into the final judgments, as confirmed by IRS's appeal from the May 5, 1997 judgment and the *Polaris* court's statement in its July 24, 1997 amended judgment.

Nor can it be argued that IRS's covenant not to sue the *Polaris* defendants (filed on August 4, 1997) and the *Polaris* court's subsequent dismissal of the patent claims with prejudice (on August 28, 1997) nullified the earlier judgments. Nothing in the August 28, 1997 Order vacated the earlier judgments. And by failing to seek vacatur, IRS is bound by the earlier

---

35 *Id.*, Ex. 6, IRS's Notice of Cross-Appeal dated July 24, 1997 at 1

36 *Id.*, Ex. 7 at 2.

37 Day Decl. Supporting Mot. for Partial Summ. J. dated Dec. 12, 2003, Ex. 5, Hearing Tr. dated Mar. 4, 1997 at 23-25.

judgments under *res judicata*. *See United States. v. Munsingwear,* 340 U.S. 36, 38-40 (1950).[38]

Moreover, the *Polaris* court's August 28, 1997 Order dismissed "all remaining claims on the patent issues" with prejudice.[39] Therefore, even if this Order somehow *sub silentio* vacated the earlier judgments, this dismissal acts as a final judgment on the patent issues for *res judicata* purposes. *See TCBY Sys., Inc. v. EGB Assocs., Inc.,* 2 F.3d 288, 290 (8th Cir. 1993) (stating that "[a] dismissal with prejudice has the effect of a final adjudication on the merits").

Thus, Magistrate Judge Erickson correctly ruled that there was a final judgment on the patent infringement issues in the *Polaris* case.

**B. Arctic Cat and Suzuki Did Not Waive Their Legal Estoppel Defense**

With regard to legal estoppel, IRS first argues that Arctic Cat and Suzuki waived their legal estoppel defense.[40] This argument ignores Arctic Cat's and Suzuki's pleadings and interrogatory answers. Both Arctic Cat's Amended Complaint and Suzuki's Answer to IRS's Counterclaim expressly pled "estoppel" as a defense.[41] IRS's Interrogatory No. 17 to Suzuki asked Suzuki to explain the basis for its pleaded defenses, including the estoppel defense.[42] On July 22, 2002, Suzuki first answered that interrogatory and, while Suzuki did not refer to the covenant not to sue, it explained that discovery was ongoing and reserved the right to supplement

---

38 Indeed, by voluntarily granting a covenant not to sue and deliberately mooting its appeal, IRS would not have been eligible for vacatur, even if it had asked. *See United States Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994) ("Where mootness results from settlement, however, the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur.")

39 Yoshida Decl. Supporting Mot. for Partial Summ. J. dated Nov. 6, 2003, Ex. 10, Order Correcting Amended J. dated Aug. 28, 1997 at 2.

40 IRS's Obj. at 19-21.

41 *See* Kastner Decl. Supporting Opp'n Br. dated Dec. 3, 2003, Ex. 20, IRS's Mot. to Dismiss at ¶ 21; *id.*, Ex. 21, Arctic Cat's Second Amended Compl. at ¶ 32.

42 *See* Day Decl. Supporting Mot. for Partial Summ. J. dated Dec. 12, 2003, Ex. 8, IRS's First Set of Interrog. dated June 4, 2002 at 5.

its answer.[43] On October 23, 2002, Suzuki supplemented its answer, cited to the covenant not to sue that IRS had given JECS in the *Polaris* case, and stated:

> IRS's covenant not to sue JECS covers all JECS's EFI systems, and IRS is estopped from asserting a patent infringement claim as to Suzuki engines incorporating EFI systems purchased from JECS.[44]

Thus, IRS has been on notice since at least October 2002 that the "estoppel" defense pled by Suzuki includes estoppel arising from the covenant not to sue JECS that IRS granted in the *Polaris* case.[45]

IRS complains that Arctic Cat and Suzuki did not plead a "license" defense and suggests that this should preclude the court from accepting Magistrate Judge Erickson's finding that IRS's covenant not to sue JECS gave rise to an "implied license." But Magistrate Judge Erickson correctly recognized that an implied license is a remedy that follows from an "estoppel" and is not a true "license." *See Wang Laboratories, Inc. v. Mitsubishi Electronics of America, Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997) ("[C]ourts generally have first looked for facts which give rise to an estoppel in the process of concluding that there is an implied license."); *Travelers Exp. Co., Inc. v. American Exp. Integrated Payment Systems Inc.*, 80 F. Supp.2d 1033, 1038 (D. Minn. 1999) ("An implied license may arise by acquiescence, conduct, equitable estoppel or by legal estoppel" and "[t]hese labels describe not different kinds of license, but rather different categories of conduct which lead to the same conclusion: an implied license."). And as

---

43 *See id.*, Ex. 9, Suzuki's Interrog. Responses dated July 22, 2002 at 24.

44 *Id.*, Ex. 10, Suzuki's First Amended Responses dated Oct. 23, 2002 at 26.

45 Arctic Cat similarly notified IRS that its "covenant not to sue JECS covers all of JECS's EFI systems, and IRS is estopped from asserting a patent infringement claim as to Arctic Cat EFI-equipped snowmobiles incorporating EFI systems purchased from JECS." *Id.*, Ex. 11, Arctic Cat's Suppl. Responses dated Mar. 27, 2003 at 7.

explained above, Arctic Cat and Suzuki answered IRS's complaint by pleading "estoppel" as a defense and later identified IRS's covenant not to sue JECS as a basis for this defense.

Thus, any claim by IRS that it was surprised or prejudiced by Arctic Cat's and Suzuki's pleading is a fiction. Suzuki specifically notified IRS of its intent to file a "summary judgment motion based on IRS's covenant not to sue JECS" before Suzuki had taken a single deposition.[46] Thereafter, IRS had more than eight months to take discovery on this issue.

For at least these reasons, Magistrate Judge Erickson correctly ruled that Arctic Cat and Suzuki did not waive their legal estoppel defense based on IRS's covenant not to sue JECS.

### C. Whether IRS Intended Its Covenant Not To Sue to Cover JECS's Customers, Arctic Cat and Suzuki Is Irrelevant to Magistrate Judge Erickson's Legal Estoppel Findings

IRS's second objection to Magistrate Judge Erickson's findings on legal estoppel is that it did not intend its covenant not to sue to cover anyone other than Polaris, Fuji and JECS.[47] On this record, however, there is no dispute that IRS's its covenant not to sue JECS for patent infringement "for any past, present or future acts" authorized JECS to sell its EFI systems. Because "an authorized sale of a patented product places that product beyond the reach of the patent," *Intel Corp. v. ULSI Corp.*, 995 F.2d 1566, 1568 (Fed Cir. 1993), that sole undisputed fact warrants summary judgment as to IRS's claims of patent infringement by the JECS EFI systems purchased by Arctic Cat and Suzuki.

IRS attempts to manufacture a disputed issue of fact by misrepresenting Magistrate Judge Erickson's Report and Recommendation. According to IRS, Magistrate Judge Erickson found

---

[46] *Id.*, Ex. 12, Letter dated Feb. 4, 2003 at 1 ("[O]ur answer to IRS interrogatory no. 17 put IRS on notice that we intended to rely on this defense. We believe the defense is properly characterized as an 'estoppel,' which we pled.").

[47] IRS Objections at 22-24.

"that 'the clear and unambiguous language' of IRS's covenant not to sue covered JECS *and its customers.*"[48] But Magistrate Judge Erickson made no such finding. And no part of his analysis depends upon whether IRS intended its covenant not to sue to cover Arctic Cat and Suzuki.

Magistrate Judge Erickson's analysis involved two steps. First, he examined IRS's covenant not to sue JECS for patent infringement and found that it authorized JECS to make and sell EFI systems, regardless of who purchased those systems:

> [W]e find that the clear and unambiguous language of the covenant extends to any claims of infringement of the '803 Patent against JECS and, as the covenant applies to any future claims, we find that the covenant extends to not only those JECS EFI systems that were sold to Fuji for use in the Polaris snowmobiles—which were directly involved in the Polaris litigation—but also to all JECS's products, including its EFI systems sold to Suzuki for use in the Arctic Cat snowmobiles.[49]

Second, he examined the legal effect of that authorization, and he concluded that IRS's authorization to JECS exhausted IRS's patent rights as to JECS's products and barred IRS from suing JECS' s customers for infringement by those products.[50]

Neither step in Magistrate Judge Erickson's analysis depends upon whether IRS intended its covenant not to sue JECS to cover Suzuki or Arctic Cat. As to the first step, the focus is on whether IRS intended its covenant not to sue JECS to extend to products other than the products it sold to Polaris and Fuji, the other parties in the *Polaris* case. IRS does not dispute that the covenant not to sue was so intended. As to the second step, the exhaustion doctrine that bars IRS from suing Arctic Cat and Suzuki for their purchase and use of the JECS EFI systems arises as a matter of law. And the exhaustion doctrine trumps any subjective intent held by IRS as to the effect of the covenant on its ability to sue Arctic Cat and Suzuki.

---

48 IRS Objections at 22 (emphasis added).

49 Report at 40.

50 *Id.* at 45.

The *Intel* case illustrates this last principle. There, Intel had entered into a license agreement that permitted Hewlett-Packard to sell chips covered by Intel's patents. *See Intel Corp.*, 995 F.2d at 1567-68. Hewlett-Packard, in turn, made chips for the accused infringer, ULSI. *Id.* Despite the fact that *both* Intel and Hewlett-Packard agreed that the license was *not intended* to immunize third-party infringers, the court held that the sale of the chips by an authorized party, Hewlett-Packard, exhausted Intel's patent rights as to those chips. *Id.* at 1568-69. Thus, Intel was precluded from suing the party that purchased the chips for patent infringement. *Id.*; *cf. Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg.*, 123 F.3d 1445, 1453 (Fed. Cir. 1997) ("[A] seller's intent, unless embodied in an enforceable contract, does not create a limitation on the right of a purchaser to use, sell, or modify a patented product as long as a reconstruction of the patented combination is avoided.").

Thus, IRS did not create a triable issue of fact by submitting a declaration in which any IRS representative averred that IRS did not intend its covenant to cover Arctic Cat or Suzuki. Even if this averment were true, IRS's subjective intent cannot trump the legal principle of exhaustion.

### D. By Granting JECS a Covenant Not to Sue, IRS Authorized JECS to Sell Its EFI Systems and Exhausted IRS's Patent Rights as to Those EFI Systems

IRS raises two additional objections to Magistrate Judge Erickson application of the exhaustion doctrine to the undisputed facts of record in this case, arguing (1) that Arctic Cat and Suzuki failed to offer evidence that JECS sold a "patented product," and (2) that a sale outside the United States is not subject to exhaustion. Neither argument withstands scrutiny.

IRS argues that Arctic Cat and Suzuki failed to offer evidence that JECS sold a "patented product" because no evidence was presented to Magistrate Judge Erickson that "JECS's EFI systems are specifically designed for use in two cycle engines" and have "no noninfringing

uses."[51] This argument is disingenuous at best. IRS carefully argues that no such evidence was *presented* to Magistrate Judge Erickson – not that no such evidence exists. And to the extent such evidence was not presented to Magistrate Judge Erickson, it is only because IRS did not make these arguments before him.[52]

JECS EFI systems qualify as a "patented product" for purposes of this defense because IRS's infringement charge is predicated on that allegation. The '803 patent covers EFI systems for two-stroke cycle engines. To prove infringement, IRS's technical expert, Dr. Ribbens, is relying on components of the JECS systems to meet IRS's burden of proof as to *every element* in the body of *every claim* asserted by IRS.[53] In addition, Dr. Ribbens stated in his expert report:

> "It is my opinion that the accused products manufactured by JECS are fuel control systems *for 2 stroke engines."[54]*

And any suggestion that the JECS EFI systems were not "specifically designed for use in two cycle engines" is belied by Dr. Ribbens' statement in his report that the fuel maps in the EFI software are specifically designed for use *in each engine configuration*:

> "[A] new map would need to be created for each engine configuration."[55]

Moreover, when IRS sued JECS in the *Polaris* case, IRS expressly alleged that JECS's EFI systems "are especially made or adapted for use in a product which would infringe the claims of the '803 patent" and "are not staple articles of commerce suitable for substantial

---

51 IRS's Obj. at 25.

52 Before Magistrate Judge Erickson, IRS argued that JECS did not sell a "patented product" because JECS sells EFI systems and the '803 patent claims require an EFI system in combination with a two-cycle engine. IRS also argued that Arctic Cat and Suzuki had taken the position that the JECS EFI systems did not infringe the '803 patent. Magistrate Judge Erickson rejected both of these arguments on unassailable grounds. *See* Report and Recommendation at 44-45.

53 *See, e.g.*, Day Decl. Supporting Arctic Cat's and Suzuki's Reply to IRS's Obj. dated Sept. 7, 2004, Ex. 1, Ribbens Expert Report dated May 22, 2003 at 14-15.

54 *Id.*, Ex. 1 at 28 (emphasis added).

55 *Id.*, Ex. 1 at 29. Likewise, IRS 's inventor, Mr. Chasteen, has testified that the "[fuel map] values are different for every engine." Id., Ex. 2, Chasteen Dep. Tr. dated at 299, ll. 24-25.

noninfringing use."[56] Other than denying that it infringed IRS's patent, JECS did not deny that allegation, and there has been no evidence in this case to the contrary. Given the contrary positions that IRS has taken in this and the *Polaris* litigation, IRS cannot defeat summary judgment by suggesting that this Court could reach a different conclusion.

As to IRS's argument that a sale outside the United States cannot give rise to exhaustion of rights under a United States patent, IRS chooses to ignore reason in favor of a misreading of the applicable law. The covenant not to sue expressly authorized sales of JECS's EFI systems under the very United States patent that IRS has asserted against Suzuki and Arctic Cat in this case.[57] And the only reason for granting a covenant not to sue under a *United States patent*, as IRS did here, is to authorize products to be sold and/or used in the United States, the only jurisdiction where those patents create any rights. That is particularly true here, where the recipient of the covenant not to sue, JECS, was selling its EFI systems to Japanese engine manufacturers, Fuji and Suzuki, who in turn were selling their EFI-equipped engines to snowmobile manufacturers in the United States, Polaris and Arctic Cat. IRS's covenant not to sue JECS would have been worthless if it did not authorize JECS and its customers to continue that practice.

IRS argues that the case law requires a sale in the United States before the doctrine of exhaustion applies. But the cases cited by IRS differ from the present case in that the "authority" under the United States patent arose from the sale alone. For example, in *Jazz Photo Corp. v. U.S. Int'l Trade Comm'n*, 264 F.3d 1094 (Fed. Cir. 2001), sales of reconditioned single-use

---

[56] Yoshida Decl. Supporting Mot. for Partial Summ. J. dated Nov. 6, 2003, Ex. 2, Second Amended Compl. dated Feb. 12, 1997 at ¶¶ 72-73.

[57] *See* Yoshida Decl. Supporting Summ. J. Mem., Ex. 8 ("Plaintiffs further hereby irrevocably covenant not to sue the defendants for infringement of United States Patent No[ ]. Re. 34,803 . . . for any past, present, or future acts.").

cameras were exempt from infringement of a United States patent by virtue of the patent owner having sold the original cameras in the United States, thereby exhausting the owner's United States patent rights for those products. No such exhaustion applied to the patent owner's sales in foreign countries, because those sale s were not "under a United States patent."

Here, the authority arises from JECS's sales in combination with IRS's covenant not to sue JECS under the United States patent. Those sales were "under the United States patent" under the express terms of the covenant not to sue. In other words, the covenant not to sue authorized JECS to sell its EFI systems without fear that IRS would accuse those systems of infringement under IRS's United States patents, even if those systems were initially sold to Fuji or Suzuki in Japan for assembly into engines that were later sold in the United States. Thus, IRS authorized JECS's sale of its EFI systems, and those authorized sales exhausted IRS's patent rights as to those patents listed in the covenant not to sue.

For at least the above reasons, this Court should adopt Magistrate Judge Erickson's recommendation to grant summary judgment to Arctic Cat and Suzuki for those products that use JECS's EFI systems based on legal estoppel arising from IRS' s covenant not to sue JECS.

## IV. THE COURT SHOULD ADOPT MAGISTRATE JUDGE ERICKSON'S RECOMMENDATION THAT IRS'S SUMMARY JUDGMENT MOTION ON THE CUYUNA PRIOR ART SHOULD BE DENIED

Magistrate Erickson properly recommended denial of IRS's motion for summary judgment that the Cuyuna prior art does not anticipate any claim of the '803 patent. IRS's motion is an improper motion under Rule 56 of the Federal Rules of Civil Procedure. Even considering IRS's motion on the merits, IRS has not carried its burden for summary judgment.

### A. IRS's motion is improper under Rule 56.

In objecting to the Magistrate's recommendation to remove IRS's claim of willful infringement from this case, IRS complained, inappropriately, of the Magistrate's lack of factual

findings under Rule 56(d). Now, with its motion on the Cuyuna prior art, IRS attempts another misuse of Rule 56. Summary judgment is properly considered only upon a claim, counterclaim, or crossclaim. Fed. R. Civ. P. 56. IRS's motion does not seek judgment on all or part of a claim. IRS seeks, rather, a judicial declaration that the '803 patent is not anticipated by one discrete example in the prior art identified by Arctic Cat and Suzuki. IRS asks for something that Rule 56 does not allow.

Arctic Cat and Suzuki intend to prove at trial that the work at Cuyuna and Arctic Cat is evidence of prior invention which has legal effect under 35 U.S.C. § 102 (anticipation) and under 35 U.S.C. § 103 (obviousness).[58] IRS's motion does not seek to exclude the Cuyuna prior art from the trial, but only seeks this Court's opinion that the evidence is insufficient to anticipate the claims of the '803 patent under 35 U.S.C. § 102.

IRS's motion, however interpreted, is not a proper motion for summary judgment under Rule 56. The motion might be viewed as a narrow evidentiary motion; but, as the Magistrate already advised, Rule 56 is not a mechanism for evidentiary rulings.[59] The motion might be understood as an improper advisory request; but a motion for summary judgment without proper legal consequence violates Article III, § 2 of the United States Constitution. *See Hamman v. Southwestern Gas Pipeline, Inc.*, 721 F.2d 140, 144 (5th Cir. 1983).

If not an evidentiary request, or a forbidden motion for advisory opinion, IRS's motion is in the nature of another misguided request for a factual finding under Rule 56(d). There is no such thing, however, as a "Rule 56(d) motion." Although a court may issue Rule 56(d) findings of undisputed facts, such findings are only proper when issued ancillary to a properly filed

---

[58] Exhibit F to Wilcox Declaration, Arctic Cat's Supplemental Answer to Pacer's Interrogatory No. 6 at p. 15, (referencing Cuyuna in 35 U.S.C. § 103 context).

[59] Report at 100, footnote 16.

motion for summary judgment under Rule 56(a), (b), or (c). *See* Wright & Miller, Federal Practice and Procedure, v. 10B, § 2737 (West 1998 ed. and supp.); *see also Capitol Records, Inc. v. Progress Record Distributing, Inc.*, 106 F.R.D. 25, 29-30 (N.D. Ill. 1985).

The Northern District of Illinois has faced a similarly improper motion. In *Mendenhall v. Barber-Green Co.*, the accused patent infringer moved under Rule 56(d) for an order seeking to establish the filing dates of the two patents in suit.[60] The court denied the motion because it was not brought to dispose of all or part of a claim, finding:

> Rule 56(d) is not an independent provision permitting the singling out of limited issues on which the Court's advice may be obtained. It is solely an adjunct to Rules 56(a) to (c) under which a party may move for summary judgment as to all or part of a claim. If such a Rule 56 motion is unsuccessful but in the course of decision the Court determines that 'material facts exist without controversy,' Rule 56(d) then directs that the Court enter 'an order specifying the facts that appear without substantial controversy.'[61]

Like the defendant in *Mendenhall*, IRS has moved improperly under Rule 56. IRS seeks a discrete advisory opinion, or limited evidentiary ruling, without having properly moved for summary judgment on all or part of a claim. IRS did not move for summary judgment on Arctic Cat's invalidity claim, or even on Arctic Cat's claim that the '803 patent is invalid as anticipated by the prior art. IRS's motion would not even dispose of the Cuyuna prior art – in addition to the anticipation argument under 35 U.S.C. § 102, Arctic Cat has argued that the same prior art makes the claimed invention invalid as obvious under 35 U.S.C. § 103. IRS's motion cannot lead to the entry of judgment on any claim, counterclaim or crossclaim, will not enhance judicial economy, and has wasted the resources of this Court. IRS's motion must be denied as improper under Rule 56.

---

[60] 531 F.Supp. 947 (N.D. III. 1981).

[61] *Id*. At 948. As discussed in the willful infringement section, *supra*, the language of the rule and caselaw indicates that the Court has some discretion in entering Rule 56(d) findings.

**B. IRS has not sustained its burden for summary judgment on the Cuyuna prior art.**

Even had IRS permissibly moved under Rule 56 on the Cuyuna prior art, IRS could not carry its burden for summary judgment. Arctic Cat's invalidity defense raises fact issues not properly extracted from the province of the jury. IRS has not negated these fact issues or established its entitlement to judgment as a matter of law.

Arctic Cat can offer sufficient corroborating evidence from which a jury could determine the '803 patent's invalidity in light of the Cuyuna prior art. For example, a Cuyuna Engine Company "statement of work" shows an EFI system controlled by a central electronic control unit that would modify fuel injection according to air temperature, engine temperature, power, barometric pressure, air temperature, throttle position, and engine speed.[62] In 1983, Cuyuna described the system as follows:

> Fuel is injected into each of the engine's intake ports before the piston by means of solenoid operated injection valves. Each cylinder has one solenoid valve, which is actuated once per crankshaft revolution. The injection valves are subject to a constant fuel pressure supplied by the fuel pump and regulated by the fuel pressure regulator to approximately 36 PSI. The quantity of fuel supplied to the cylinders per working stroke is metered by controlling the opening period of the solenoid valves. For this purpose, control pulses are supplied by the electronic control module (ECM), their duration depending on the R.P.M., throttle valve openings (T.V.O.), air density and possibly other correction variables.[63]

By October 1987, the system was described as follows:

> The rate of fuel flow [in] an engine equipped with electronic fuel injection is controlled by the amount of time a selected injector is open per revolution of the engine. A 'map' of the [engine's] fuel requirements is contained in the electronic control module (ECM) and is modified by sensors (altitude, temperature, throttle

---

[62] *See* Declaration of Aaron A. Myers in Support of Arctic Cat's and Suzuki's Response to IRS's Objections to Magistrate Judge Erickson's August 6, 2004 Report and Recommendation, Exh. E at A 001987 (Fig. 5).

[63] *Id.*, Exh. F at A 002009.

> position, RPM, etc.) … An EFI system was prototyped and tested under laboratory conditions on the dynamometer. The system successfully operated the engine through all throttle valve openings and RPM's.[64]

These documents describe the same EFI system – in which fuel injection is modified according to engine speed, throttle angle, engine and air temperature, and barometric pressure – claimed in the '803 patent.

Arctic Cat's anticipation defense has many fact issues. Priority of invention is a question of law based on underlying factual determinations. *Monsanto Co. v. Mycogen Plant Science, Inc.*, 261 F.3d 1356, 1362 (Fed. Cir. 2001); *see also Beachcombers v. WildeWood Creative Products, Inc.*, 31 F.3d 1154, 1160 (Fed. Cir. 1994) (denying summary judgment against invalidity claim based on prior public use where notes in date book served as corroborating evidence, the credibility of which was a question for the jury).

IRS simply has not established that a reasonable fact finder could not conclude that the EFI development that began at Cuyuna qualifies as prior art under 35 U.S.C. § 102. Neither "commercial perfection" nor "absolute replication of the circumstances of the invention's ultimate use" is required to establish reduction to practice. *See Taskett v. Dentlinger*, 344 F.3d 1337, 1341 (Fed. Cir. 2003). An invention need not be in a "commercially satisfactory stage of development" in order to establish reduction to practice. *Id*. at 1342. Other issues to which IRS draws particular attention, such as diligence in reduction to practice, are properly left for the jury. *See In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002) ("the question of diligence is essentially one of fact").

---

64 *Id.*, Exh. G at A 002019.

Magistrate Judge Erickson properly recognized that IRS has not carried its burden for summary judgment and this Court should deny IRS's motion for summary judgment.

## V. MAGISTRATE JUDGE ERICKSON'S FINDING THAT ARCTIC CAT AND SUZUKI WERE MISLED BY IRS'S CONDUCT SHOULD BE ADOPTED

### A. The Uncontroverted Record Supports the Magistrate's Report on IRS's Misleading Conduct.

Again, after a review of the voluminous record, Magistrate Erickson found "ample misleading conduct" by IRS relevant to Arctic Cat and Suzuki's equitable estoppel defenses.[65] IRS objects to this finding solely on the grounds that Arctic Cat's counsel's audit response letters for 1995-2000 included the 1995 threat and that Arctic Cat's CEO testified that Arctic Cat wanted to stop IRS's threats that had occurred over a 13 to 14 year period of time.[66] In the review by Arctic Cat and Suzuki counsel of reported decisions on this issue, they have been unable to find any reported decision where the facts of misleading conduct were as egregious as in this case.

> As a matter of law, "[t]o prove the first element of equitable estoppel, the alleged infringer must prove that the patentee, through misleading conduct, has led the infringer to infer that it does not intend to enforce the patent. The patentee's misleading conduct may include specific statements, actions, inaction, or silence." *Gossen Corp. v. Marley Mouldings*, 977 F. Supp. 1346, 1353 (E.D. Wis. 1997) (granting summary judgment on equitable estoppel grounds). For example, *ABB Robotics, Inc. v. GMFanuc Robotics Corp.* involved the "most common situation" of misleading conduct, where a patentee initially raises infringement accusations and follows with a period of inaction combined with other facts belying an intent to assert patent claims.[67]

The court found the "other facts" constituting misleading conduct included: (1) the patentee's infringement accusation, followed by inaction; (2) the relationship between the

---

65 Report at 120-125.

66 IRS objections at 35.

67 828 F. Supp. 1386, 1398 (E.D. Wis. 1993), *aff'd*, 52 F.3d 1062 (Fed. Cir. 1995).

patentee and the accused infringer's parent company (the parent company was the patentee's largest single robotics customer); (3) the accused infringer's knowledge that the patentee was not active in the patented invention's market and therefore was not losing sales or profits as a result of the alleged infringement; and (4) the other negotiations which took place between the patentee and accused infringer with respect to certain other patents. The Federal Circuit affirmed the summary judgment on estoppel grounds, finding misleading conduct on the same bases as the district court.[68]

*Gossen Corp. v. Marley Mouldings* is another example of an equitable estoppel finding on conduct much less egregious than IRS.[69] In *Gossen*, the patentee had threatened to sue for patent infringement in April 1990. The accused infringer responded with a letter explaining its noninfringement position. This letter was followed by a two-month exchange of correspondence in which the patentee attempted to obtain additional information from the accused infringer. The patentee then remained silent for five years before renewing its infringement accusations and finally filing suit in March 1996.

On these facts, the court agreed and granted summary judgment on equitable estoppel grounds, finding:

> The documents in this case show that Gossen was silent as to its patent rights from the time it complained to Marley about its … product in 1990, until it filed suit in 1996. … The silence must be sufficiently misleading to induce the alleged infringer to infer that the patentee has abandoned its patent claims. … In this case, the only possible reasonable inference to be drawn from the parties correspondence and from the ensuing years of silence is that Gossen did not intend to press an infringement claim against Marley.[70]

---

68 52 F.3d at 1064.

69 977 F. Supp. 1346 (E.D. Wis. 1997).

70 *Id.* at 1354 (internal citations omitted).

Like the patentees in both *ABB Robotics* and *Gossen*, IRS followed initial patent allegations with years of silence and inaction. However, unlike the patentees in *ABB Robotics* and *Gossen* who responded to claims of no infringement, IRS completely and undisputedly failed to respond to Arctic Cat's non-infringement and invalidity explanations provided to IRS in December 1995. Unlike the patentees in those two cases, IRS also received a subsequent adverse claim construction in another litigation, lost and abandoned (through a covenant not to sue) its infringement claims against the same EFI supplier supplying Arctic Cat and Suzuki, and still remained silent about suing. Unlike the patentees in those two cases, IRS committed to file suit at a certain time and then failed to do so. And finally, unlike the patentees in those two cases, IRS actually sued Arctic Cat and Suzuki for claims relating to the very same EFI systems and yet failed to assert any patent infringement claim against those systems.

Arctic Cat and Suzuki have already recounted IRS's misleading conduct from 1995 to 2001, and explained how this conduct lulled Arctic Cat and Suzuki into a false sense of security.[71] Despite the ample evidence of IRS's misleading conduct, IRS now argues that Arctic Cat was not misled due to (1) audit letters referring to IRS's 1995 threat of litigation, and (2) deposition testimony by Christopher Twomey, Arctic Cat's CEO.

Both arguments are devoid of legal or factual merit. Accounting audit letters are subject to specific legal requirements regarding past threats of litigation. The fact that Arctic Cat's lawyers cautiously continued to disclose IRS's 1995 threat of patent litigation in letters to Arctic Cat's accountants does not negate, in the least, the fact that IRS's misleading conduct from 1995 to 2001 lulled Arctic Cat into a false sense of security under which Arctic Cat reasonably

---

[71] *See* Arctic Cat's and Suzuki's Objections to the Magistrate's Report and Recommendation at 9-29.

believed that IRS would not assert the '803 patent. IRS presents no evidence to connect these audit letters with Arctic Cat's actual expectations regarding the '803 patent. IRS suggests a public policy under which a defendant's lawyers' responses to accounting inquiries should be used against it, and to the benefit of a patentee who has threatened patent litigation only to follow with years of misleading conduct.

IRS's argument regarding Christopher Twomey's deposition testimony is equally baseless. Mr. Twomey's testimony only confirms Arctic Cat's exasperation at being sued for patent infringement more than a decade after IRS originally accused Arctic Cat of using IRS technology. There were no "continual" threats – it is undisputed that IRS remained silent about patent infringement for more than six years following the February 1995 letter.

Magistrate Judge Erickson correctly found that IRS's conduct was misleading. IRS has suggested nothing to make its conduct less misleading, or to change the fact that Arctic Cat and Suzuki relied on IRS's misleading conduct. Arctic Cat's and Suzuki's motion for summary judgment on the bases of laches and equitable estoppel should be granted.

### B. Any Estoppel As to Arctic Cat Applies to Suzuki By Virtue of the "Customer/Vendor" Relationship Between Arctic Cat and Suzuki

Similarly, IRS objected to the Report to the extent that it found that IRS's misleading actions inure to the benefit Suzuki for purposes of equitable estoppel by virtue of its " customer/vendor" relationship with Arctic Cat.[72] This objection is based on an incorrect application of the law of estoppel to the undisputed facts of record.

---

72 IRS Objections at 37.

With respect the law of estoppel, IRS does not dispute that estoppel not only applies to those who are direct parties, but also applies to those who are in privity with direct parties.[73] As discussed in Arctic Cat and Suzuki's opening brief, the court in *Hayden v. Chalfant Press, Inc.*,[74] applied this principle to estop a copyright owner, Hayden, from asserting an infringement claim over copyrighted maps against the defendant, a map printer, by virtue of its publisher/printer relationship with a third party map publisher, The Automobile Club.[75] As the Court explained:

> The Automobile Club, on the basis of Hayden's nonaction, had incurred great expenditures in publishing these maps. As already appears, Hayden not only knew that they were circulating them, as far back as 1939 or 1940, but admits that he met their field men in the field when they were gathering data which later found their way into their maps. The [sic: Because the] defendants in this case having [sic: have] received permission from the Automobile Club, Hayden is estopped from challenging the rights thus derived. And we have here all the elements of consent, acquiescence with the knowledge of infringement over a long period of time, which constitute estoppel, warranting the denial of all recovery to Hayden.[76]

In practice, Suzuki makes snowmobile engines for Arctic Cat under a requirements contract and supplies snowmobile engines only to Arctic Cat. As a result of this contractual relationship, but for Arctic Cat's request for EFI-equipped engines (following its reliance on IRS's actions and inactions), Suzuki would not have made these engines. In other words, Arctic Cat's reliance on IRS's actions and inactions caused Suzuki to engage in the activities, which

---

73 *See, e.g.*, 31 C.J.S. *Estoppel and Waiver*, § 158 nn.34-38 and accompanying text (2003); *Nat'l Football League v. Rondor, Inc.*, 840 F.Supp. 1160, 1167-68 (N.D. Ohio 1993) ("an estoppel operates on, or is effective as to, the parties to the transaction out of which it arises and their privies") (quoting AM.JUR.2d *Estoppel and Waiver*, § 114 at 773).

74 177 F. Supp. 303 (S.D. Cal. 1959).

75 *See id.* at 308-9.

76 *Id.* at 308 ("Estoppel inures to the benefit of a party but also to those in privity with him or who claim under him, where as assignees or not.")

IRS now accuses of infringement. Moreover, any estoppel as to Arctic Cat would enable it to continue to sell its snowmobiles with EFI engines. Unless that estoppel inures to the benefit of Arctic Cat's engine supplier, Arctic Cat will not be able to sell such snowmobiles, and its estoppel defense (at least as to future activities) would be rendered a nullity.

As purchaser and supplier, Arctic Cat and Suzuki were plainly "in privity" with each other during IRS's misleading conduct. Much like the publisher/printer relationship in *Hayden*, the customer/vendor relationship between Arctic Cat and Suzuki requires that any estoppel against Arctic Cat inure to the benefit of Suzuki. IRS's estoppel as to Arctic Cat should thus apply to Suzuki with the same vigor as a result of Arctic Cat's reliance on IRS's misleading conduct in fostering the customer/vendor relationship with Suzuki over the accused EFI systems.

Distilled to its essence, IRS argues that applicable precedent regarding the application of estoppel to parties in privity with Arctic Cat, such as Suzuki, is distinguishable from the facts in this case. IRS's opposition appears to concede that, as a general principle, estoppel inures to the benefit of not only Arctic Cat, but also those who are successors in interest to Arctic Cat. However, IRS takes the view that the "customer/vender relationship" between Arctic Cat and Suzuki over the purchase and supply of the accused EFI systems "predated" IRS's misleading conduct.

IRS's analysis is flawed for at least two reasons. First, IRS ignores the fact that it began its misleading conduct <u>before</u> Arctic Cat purchased any of the <u>accused</u> EFI systems from Suzuki. *See* IRS Opp'n Br. at 29. The critical misleading conduct was IRS's February 7, 1995 letter to Arctic Cat that it intended to sue for patent infringement, followed by years of inaction. *See*

Opening Br. at 2, ¶ 5. IRS filed its counterclaim in this action on September 26, 2001[77], and seeks damages from sales occurring within six years of that date, or September 26, 1995. *See* 35 U.S.C. § 286. Thus, all of the accused sales occurred after the misleading conduct began. Moreover, the "relationship" between Arctic Cat and Suzuki is a continuing relationship that was "created" every time Arctic Cat submitted an order to Suzuki for the purchase of the accused EFI systems.

Second, IRS fails to cite any support for its argument that estoppel does not inure to the benefit of Suzuki by virtue of a customer/vender relationship. And at least one prior decision rebuts IRS's attempt to so limit the scope of the doctrine of estoppel. More specifically, as discussed in Arctic Cat and Suzuki's opening brief, the Court in *Hayden v. Chalfant Press, Inc.*, 177 F. Supp. 303 (S.D. Cal. 1959), estopped a copyright owner, Hayden, from asserting an infringement claim over copyrighted maps against the defendant, a map printer, by virtue of its publisher/printer relationship with a third party map publisher, The Automobile Club. *See id.* at 308-9. As the Court explained:

> The Automobile Club, on the basis of Hayden's nonaction, had incurred great expenditures in publishing these maps. As already appears, Hayden not only knew that they were circulating them, as far back as 1939 or 1940, but admits that he met their field men in the field when they were gathering data which later found their way into their maps. The defendants in this case having received permission from the Automobile Club, Hayden is estopped from challenging the rights thus derived. And we have here all the elements of consent, acquiescence with the knowledge of infringement over a long period of time, which constitute estoppel, warranting the denial of all recovery to Hayden.

---

[77] At p. 36 of IRS's Objections, IRS requests a correction to the Report. IRS correctly notes that it filed its counterclaim on September (not November) 26, 2001. However, Arctic Cat and Suzuki object to IRS's request that the laches delay period terminate on the date Arctic Cat filed this declaratory judgment action rather than the date IRS filed its counterclaim. Such an argument would allow IRS, for example, to preclude Arctic Cat and Suzuki from a laches defense on the '079 Patent—a patent named in the original declaratory judgment complaint, but one on which IRS did not file a counterclaim.

*See id.* at 308 (internal citations omitted). Much like the publisher/printer relationship in *Hayden*, the customer/vender relationship between Arctic Cat and Suzuki requires that any estoppel against Arctic Cat inure to the benefit of Suzuki. IRS's estoppel as to Arctic Cat should thus apply to Suzuki with the same vigor as a result of Arctic Cat's reliance on IRS's misleading conduct in fostering the customer/vender relationship with Suzuki over the accused EFI systems.

## VI. THE COURT SHOULD ADOPT MAGISTRATE JUDGE ERICKSON'S RECOMMENDATION TO DENY IRS'S SUMMARY JUDGMENT MOTION CONCERNING OBVIOUSNESS CONTENTIONS ON WHICH NO EXPERT OPINIONS WERE RENDERED

In his Report and Recommendations, Magistrate Judge Erickson recommended that IRS's motion concerning obviousness contentions on which plaintiff's expert rendered no opinion be denied.[78] IRS objects to the Report and Recommendations and states that IRS's motion should be granted because "Arctic Cat and Suzuki have provided no evidence to support two elements of their obviousness defense with respect to the seventeen combinations of art[79] listed in their invalidity contention charts."[80] IRS has misconstrued the law and ignored Arctic Cat's and Suzuki's evidence of obviousness.

### A. Arctic Cat and Suzuki Have Met Their Burden Of Providing Evidence From Which The Jury Could Properly Find Obviousness Based On Each Of The Combinations In Issue

IRS asserts that Arctic Cat and Suzuki have no "means of (1) proving that these combinations would render the invention of the '803 patent obvious to one of skill in the art and

---

78 Report at 90-92.

79 A compilation of the "seventeen combinations" can be found on pages 3-4 of IRS's Memorandum of Points and Authorities. While this list contains only fourteen numbered entries, the subsequent discussion identifies three additional combinations that, for the subsequent discussion and the Court's convenience, are numbered as follows: "Okumura + Oyama" (15); "Okumura + Cuyuna Engine Company" (16); and "Intelligent Controls, Inc. + Cuyuna Engine Company"(17).

80 IRS Objections at 38.

(2) proving that a person with skill in the art would have a motive to combine the art."[81] IRS also argues that the evidence to prove these two alleged "missing elements" must be of a "scientific, technical, or other specialized knowledge within the scope of Rule 702."[82] In contending that the Report of Arctic Cat's and Suzuki's expert, Mr. Berry, somehow fails to provide adequate motivation to combine each of the seventeen (hereinafter "17") references, IRS's objection incorrectly concludes that "Arctic Cat [and Suzuki] cannot meet its burden for these seventeen combinations, [and] IRS's motion for summary judgment must be granted."[83]

Initially, and as the case law cited by Magistrate Judge Erickson makes clear, IRS's element (1) is not a factual issue but an issue of law, although an issue with factual underpinnings. *See Velander v. Garner*, 348 F.3d 1359, 1363 (Fed. Cir. 2003) ("The ultimate determination of whether an invention would have been obvious under section 103(a) is a legal conclusion based on underlying findings of fact."). The factual underpinnings of an obviousness conclusion include the scope and content of the prior art, the level of ordinary skill in the prior art, and the differences between the claimed invention and the prior art. *Id.* Arctic Cat and Suzuki need not offer testimony or other evidence on the ultimate conclusion of obviousness, as opposed to its factual underpinnings. *See Nutrition 21 v. United States*, 930 F.2d 867, 872 n.2 (Fed. Cir. 1991) ("An expert's opinion on the ultimate legal conclusion is neither required nor indeed 'evidence' at all.").

Further, IRS ignores case authority stating that evidence of motivation to combine the teachings of the prior art can be found not only in the knowledge of a person of ordinary skill in art, but also in the nature of the problem to be solved, and, most importantly, in the prior art

81 *Id.*

82 *Id.* at 40 (citing FED. R. EVID. 701(c)).

83 *Id.* at 42.

references themselves. As the Federal Circuit, in *Pro-Mold and Tool Co., Inc. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568 (Fed. Cir. 1996), explained

> "Such a suggestion [to make the combination] may come expressly from the references themselves . . . It may also come from the nature of a problem to be solved, leading inventors to look to references relating to possible solutions to that problem."

*Id.* at 1573 (internal citations omitted). Moreover, in *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270 (Fed. Cir. 2004), the Federal Circuit noted that the record need not include "an express written teaching in the art to make [the] combination." *Id.* at 1276. However, in citing the *Pro-Mold* opinion, the Federal Circuit nonetheless upheld an obviousness finding, explaining that

> "[T]he district court, sitting as a finder of fact, weighed the evidence and found that, because the prior art references address the narrow problem of underpinning existing building foundations, a person seeking to solve that exact same problem would consult the references and apply their teachings together."

*Id.* at 1276-77. And, consistent with *Pro-Mold* and *Ruiz*, IRS does not object to Magistrate Judge Erickson's finding there is no legal authority, which requires expert testimony to be used to present evidence of obviousness, including motivation to combine, in patent cases.[84]

On the present record, Arctic Cat and Suzuki have presented not only evidence in respect to the factual underpinnings of the ultimate conclusion of obviousness, but also evidence from which the finder of fact could determine a motivation to combine the specific references in the 17 combinations at issue, all without the necessity of requiring expert witness testimony relative to the specific combinations.

For example, in his Expert Report, Arctic Cat's and Suzuki's validity expert, Mr. Berry, specifically lists each item of the prior art used in the 17 combinations at issue, save the "Oyama

---

[84] Report and Recommendation at 89 ("To be sure, unlike claims of medical malpractice, or legal malpractice, which require expert testimony, there is no such requirement for patent invalidity on obviousness grounds.") (citations omitted).

reference" identified in Suzuki's original claim charts.[85] Mr. Berry specifically analyzed most of the individual prior art used in the 17 combinations as a consequence of those materials being common to the combinations on which he explicitly opined,[86] and during his deposition, also further discussed some of the "common" prior art.[87] Under oath, Mr. Berry testified that the other prior art references listed in his report "could have been combined to provide obviousness."[88] Finally, Mr. Berry presented evidence of the level of ordinary skill in the prior art, as acknowledged by IRS, and the '803 patent itself provides evidence of the "nature of the problem [to be] solved," namely fuel injection for a two-stroke engine under variable and extreme conditions of air temperature and pressure.[89]

Consequently, the jury in this case could properly find from the evidence of record, facts necessary to support an obviousness conclusion with respect to each of the 17 combinations at issue, including a motivation to combine the individual prior art in each combination. At the

---

[85] Day Decl. Supporting Arctic Cat's and Suzuki's Response to IRS's Objections dated Sept. 7, 2004, Ex. 3, Berry Expert Report dated May 22, 2003 at 2-4, § 3.

[86] As can be readily discerned from IRS's own pleadings, of the 17 subject combinations, eight (8) use only prior art that were discussed by Mr. Berry in his Expert Report, although not in the context of the combinations at issue, and eight (8) additional combinations use prior art discussed in Mr. Berry's Expert Report as part of the combination. *Compare* IRS's Opening Br. at 2 *with id.* at 3, n. 1 and accompanying text. Only one combination, number (17) ("Intelligent Controls, Inc. + Cuyuna Engine Company"), relies completely on prior art not specifically discussed by Mr. Berry in his Report, but these prior art reference were considered by him and are listed in his Expert Report, and are thus of record. *See* Day Decl. Supporting Arctic Cat's and Suzuki's Response to IRS's Objections dated Sept. 7, 2004, Ex. 3, Berry Expert Report at 2-3, §§ 3.8-3.9. Also, and contrary to IRS's assertion, Mr. Berry did discuss combination (2), namely "Bosch Handbook + Okumura," as part of his opinion relative to the combination of "Bosch Handbook + Okumura + Oshiage." *Id.* at 12, § 4.6.3.

[87] Prior art discussed in Mr. Berry's deposition include the Mercury Marine, Ohmori, Okumura, OMC, Bosch Handbook, Soltau, Cuyuna Engines, and Intelligent Controls, Inc. prior art. *See* Day Decl. Supporting Arctic Cat's and Suzuki's Response to IRS's Objections dated Sept. 7, 2004, Ex. 4, Berry Dep. Tr. at 120-25, 151-56, 180-96, 225-35. Notably, IRS did not question Mr. Berry as to any of the 17 combinations at issue.

[88] Day Decl. Supporting Arctic Cat's and Suzuki's Response to IRS's Objections dated Sept. 7, 2004, Ex. 4, Berry Dep. Tr. at 85-86.

[89] *Id.*, Ex. 5, '803 Patent at Background of the Invention, col. 1, l. 15, to col. 2, l. 25.

very least, the evidence proffered by Arctic Cat and Suzuki demonstrates that genuine issues of material fact exist thereby precluding the summary judgment requested by IRS.

**B. Magistrate Judge Erickson Did Not Fail To Properly Allocate The Burden Of Proof**

Based on the following statement, IRS argues that Magistrate Judge Erickson "fail[ed] to properly allocate the burden of proof in analyzing IRS's motion:"[90]

> "Here, IRS has presented no evidence describing the purported prior art, or how the purported prior art is different from the disputed Patent. As a consequence, we find that an award of Summary Judgment would be inappropriate."[91]

However, in the immediately preceding paragraph, Magistrate Judge Erickson stated:

> "While it will always remain Arctic Cat's, and Suzuki's, burden to prove obviousness at Trial, it is IRS's burden, as the moving party, to prove there are no material facts in dispute with respect to obviousness."[92]

In other words, Magistrate Judge Erickson found that IRS failed to meet its burden, as the summary judgment movant, of demonstrating the absence of a genuine issue of material fact for its assertion that Arctic Cat and Suzuki as a matter of law cannot prove obviousness of the '803 patent based on the 17 prior art combinations. For example, IRS has not identified any competent evidence, such as an admission by Arctic Cat and Suzuki, that the record could not satisfy the threshold requirements for a triable issue of obviousness based on the 17 prior art combinations.[93] Thus, as Magistrate Judge Erickson correctly found, IRS has not met its burden as movant.

---

90 IRS's Obj. at 38.

91 Report and Recommendation at 90.

92 *Id.*

93 *See, e.g.*, *Oney v. Ratliff*, 182 F.3d 893, 895 (Fed. Cir. 1999) (A movant for summary judgment has the initial burden of producing admissible evidence, either by affidavit or otherwise, to support its motion and persuasively demonstrating the absence of any genuine issue of fact on the record as a whole.); *Swanson v. Leggett & Platt, Inc.*, 154 F.3d 730, 733 (7th Cir. 1998).

### C. Magistrate Judge Erickson Did Not Misconstrue Arctic Cat's And Suzuki's Alleged Evidence Of Obviousness To Be Presented At Trial

In his Report and Recommendations, Magistrate Judge Erickson also noted that Arctic Cat and Suzuki have identified fact witnesses who will provide testimony on obviousness at trial.[94] IRS nevertheless argues that Arctic Cat and Suzuki failed to state how their fact witnesses had personal knowledge of each of the <u>combinations</u>, thereby suggesting that testimony evidence with respect to the combinations, as opposed to the individual prior art, would be required.[95] However, IRS cites no legal support for the proposition that fact witnesses who possess personal knowledge of particular prior art references are not entitled to testify as to the combination of those particular references. Moreover, Arctic Cat's and Suzuki's original and supplemental Rule 26(a)(1) disclosures specifically identified fact witnesses who could testify competently at trial under Rule 602 of the Federal Rules of Evidence as to the prior art references.[96] Thus, Arctic Cat and Suzuki will be able to present further obviousness-related testimony evidence at trial relating to the individual prior art in the 17 combinations at issue.

---

94 *Id.* at 91-92.

95 IRS's Obj. at 40-41.

96 *Id.*, Ex. 6, Artic Cat's and Suzuki's Original Rule 26(a)(1) Disclosure dated June 17, 2003; *Id.*, Ex. 7, Arctic Cat's and Suzuki's Supplemental Rule 26(a)(1) Disclosure at July 7, 2003. These individuals include Messrs. Staerzl, Earhart, and Jorgenson who have personal knowledge of the Mercury Marine ("MM Engine") prior art; Messrs. Remmers, Cahoon, Nerstrom, and Strang who have personal knowledge of the "OMC Engine" prior art; Mr. Chervestad and Mr. Eide, presently employees of Arctic Cat, who were previously employees of Cuyuna Engine Company and have personal knowledge of those prior art materials and information from Intelligent Controls, Inc.; Mr. Staerzl, who must be assumed to have personal knowledge of his own patent (the "Staerzl Patent"); and Messrs. Unger and Hunt who have personal knowledge of the Intelligent Controls, Inc. materials. Also, Mr. Berry has personal knowledge of his own paper (the "Berry Paper"), as well as the prior art materials from Intelligent Controls, Inc. of which he was a principal and owner. *Id.*

### D. IRS's Motion Is, In Effect, A Motion To Exclude The 17 Prior Art Combinations And Is Improper Under Rule 56

In effect, IRS has conceded that for at least the 12 prior art combinations it listed as having support in the Berry Expert Report for motivation to combine, the issue of obviousness of the '803 patent over the prior art must be tried to the jury. Moreover, IRS's motion does not and cannot seek to exclude the individual items of prior art used in the 17 combinations challenged by IRS because, for the most part, those items of prior art were used in the 12 combinations not challenged. Thus, the issue of obviousness of the claimed invention over the prior art cannot be removed from the jury even if this Court disregards Magistrate Judge Erickson's recommendation and grants IRS's motion as to the 17 combinations. Hence, the Court should deny IRS"s motion as being improper under Rule 56 of the Federal Rules of Civil Procedure because it does not seek summary judgment as to a "claim."

IRS's unsuccessful attempt to show that it would be impossible for Arctic Cat and Suzuki to prove up its obviousness defenses represented by the 17 combinations absent expert testimony "on the combination" clearly ignores the law and the impact of the evidence of record. For at least the above reasons, this Court should adopt Magistrate Judge Erickson's recommendation and deny IRS's motion for summary judgment concerning obviousness contentions on which plaintiffs' expert rendered no opinion.

## VII. MAGISTRATE JUDGE ERICKSON PROPERLY CONCLUDED THAT OHIO LAW GOVERNS THE LITIGATION AGREEMENT BETWEEN IRS AND PACER

IRS's objections to Magistrate Judge Erickson's conclusion that Ohio law governs the litigation agreement under which IRS and Pacer have asserted their patent claims in this

litigation should be rejected.[97] Magistrate Judge Erickson rejected IRS's claims that a later agreement superseded the previous Memorandum of Agreement, explaining:

> If we were to allow IRS to supercede the 2000 Agreement, after this litigation was commenced, by executing the 2001 Agreement[98], we would allow IRS to choose what law to apply and, as is the case here, the law they chose, retroactively, to have applied under the 2001 Agreement, appears, to no one's astonishment, not to recognize the defenses of champerty and maintenance. Moreover, the 2001 Agreement explicitly incorporates the 2000 Agreement in its entirety, with the exception of the choice of law provision. While we do not suggest that IRS had the intention of thwarting a champerty and maintenance defense, when the 2001 Agreement was drafted, we find that it would be unfair to allow a litigant to alter a choice of law provision, in a contract, once litigation has ensued on claims that are implicated by that contract. This lawsuit was commenced when the 2000 Agreement, with its choice of law provision, was in effect, and after-the-fact efforts to alter this Court's choice of law analysis, by a purportedly superseding Agreement, which has no apparent effect other than to alter, quite dramatically, the choice of law provision of the earlier agreement, should not be allowed to impermissibly fetter our analysis, for any burden imposed by a champertous claim falls upon this Court, and not upon the Courts of California. Consequently, we find that Ohio law governs the agreement of the parties.[99]

The Magistrate's analysis is appropriate and correct. In addition, IRS's objection lacks merit considering that IRS has already testified in this litigation that its current patent claims were brought under the 2000 agreement, which is explicitly subject to Ohio law. When

[97] Of note, the Magistrate's Report and Recommendation did not discuss certain evidence presented in Arctic Cat's and Suzuki's motion, including the undisputed evidence that IRS fact witnesses have agreed to improper contingent fee contracts under which these witnesses will be paid a percentage of the ultimate recovery against Arctic Cat and Suzuki should IRS prevail in this litigation. As noted in Arctic Cat's and Suzuki's motion papers, these contingent fee agreements negate the credibility of key IRS fact witnesses and implicate the federal and state anti-bribery statutes. The provision providing for witness contingent compensation only exists in the April 2000 agreement. For example, the contingent fee agreement with witness Mr. Chasteen was dated June 2000.

[98] The 2001 Agreement was executed in August or September 2001. IRS's opposition on this issue is directly opposite of the position it takes in the context of the estoppel and laches defenses. In its arguments on those defenses, IRS argues that the Court should find that it asserted its declaratory judgment action, i.e., March 28, 2001. IRS Objections @ 36. If the Court were to accept that date, then the only agreement in existence between IRS and Pacer on the topic of the Arctic Cat litigation was the April 2000 agreement with its Ohio choice of law provision.

[99] Report at 67-68.

questioned specifically on this topic, IRS president John Balch and IRS's counsel presented the 2000 agreement as the governing agreement for IRS's patent claims in this litigation. Balch testified that the current litigation against Arctic Cat and Suzuki is proceeding as described in the 2000 Memorandum of Agreement.[100] As Mr. Balch explained, the April 2000 Memorandum of Agreement was "put together so that we'd have a basis to move forward with the patent litigation with Arctic Cat."[101]

This District has upheld the choice-of-law provisions under which a contract calls for the governing laws of a particular state. *See, e.g., Minnesota Mining & Mfg. Co. v. Kirkevold*, 87 F.R.D. 324, 331 (D. Minn. 1980). IRS's arguments that a different agreement governs the parties' relationship is contrary to the admissions of IRS's president, John Balch, and should be disregarded as immaterial and irrelevant. The law in the Eighth Circuit is clear that a party cannot not submit, as IRS and Pacer have done in this case, a declaration to controvert sworn deposition testimony in an attempt to create a fact issue in opposition to a summary judgment motion. A party cannot generate an issue of fact by filing an affidavit of a witness that is not consistent with sworn deposition testimony of that witness. *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365-66 (8th Cir. 1983) (holding that a party cannot create a "sham" issue of fact in an effort to defeat summary judgment by filing an affidavit directly contradicting prior deposition testimony); *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000) (same). Magistrate Judge Erickson properly concluded that Ohio law governs the agreement under which IRS and Pacer have asserted their patent claims in this litigation.

---

[100] *See* Daley declaration, Exh. D, Balch Dep. at 201.

[101] *Id.* at 182.

SUZUKI MOTOR CORPORATION

By its attorneys

Dated: September 7, 2004

s/William F. Forsyth
William F. Forsyth (MN Atty ID #31070)
Henson & Efron, P.A.
220 South Sixth Street, Suite 1800
Minneapolis, MN 55402-4503
Telephone: (612) 339-2500
Facsimile: (612) 339-6364

Thomas H. Jenkins (Pro Hac Vice)
Bruce C. Zotter (Pro Hac Vice)
Christopher W. Day (Pro Hac Vice)
Finnegan, Henderson, Farabow,
Garrett & Dunner L.L.P.
1300 I Street, N.W.
Washington, D.C. 20005-3315
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

ARCTIC CAT INC.

By its attorneys

Dated: September 7, 2004

s/Annamarie A. Daley
Annamarie A. Daley (MN Atty ID #158112)
Aaron A. Myers (MN Atty ID #311959)
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone: (612) 349-8500
Facsimile: (612) 339-4181

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

**CERTIFICATE OF SERVICE**

I do hereby certify that on this 7th day of September, 2004, I caused the following document:

1. Arctic Cat's and Suzuki's Response to IRS's Objections to Magistrate Judge Erickson's August 6, 2004 Report and Recommendation;

2. Declaration of Aaron A. Myers in Support of Arctic Cat's and Suzuki's Response to IRS's Objections to Magistrate Judge Erickson's August 6, 2004 Report and Recommendation; and

3. Declaration of Christopher W. Day in Support of Arctic Cat's and Suzuki's Response to IRS's Objections to Magistrate Judge Erickson's August 6, 2004 Report and Recommendation.

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

Anthony de Alcuaz
Robert J. Blanch
McDERMOTT, WILL & EMERY
3150 Porter Drive
Palo Alto, CA 94304-1212

David P. Pearson
WINTHROP & WEINSTINE, P.A.
Suite 3500
225 South Sixth Street
Minneapolis, MN 55402

ATTORNEYS FOR DEFENDANTS-COUNTERCLAIMANTS

Dated: September 7, 2004

s/Annamarie A. Daley
Annamarie A. Daley (MN Atty ID #158112)
Aaron A. Myers (MN Atty ID #311959)
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone: (612) 349-8500
Facsimile: (612) 339-4181