**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| ARCTIC CAT INC.,<br>a Minnesota corporation,<br><br>Plaintiff,<br><br>v.<br><br>INJECTION RESEARCH SPECIALISTS, INC., a Colorado corporation, and PACER INDUSTRIES, INC.,<br>a Missouri corporation,<br><br>Defendants. | Civil Action No. 01-CV-543 (MJD/RLE)<br><br>Hon. Michael J. Davis<br>Hon. Raymond L. Erickson (Magistrate)<br><br>**ORAL ARGUMENT REQUESTED** |
| INJECTION RESEARCH SPECIALISTS, INC., a Colorado corporation, and PACER INDUSTRIES, INC.,<br>a Missouri corporation,<br><br>Counterclaimants,<br><br>v.<br><br>ARCTIC CAT INC.,<br>a Minnesota corporation, and SUZUKI MOTOR CORPORATION,<br>a Japanese corporation,<br><br>Counterclaim Defendants. | |

**ARCTIC CAT'S AND SUZUKI'S OBJECTIONS**
**TO MAGISTRATE JUDGE ERICKSON'S**
**REPORT AND RECOMMENDATION OF FEBRUARY 18, 2005**

# TABLE OF CONTENTS

Page

IN THE UNITED STATES DISTRICT COURT ....1

I. OBJECTIONS TO RECOMMENDATIONS ON CLAIM CONSTRUCTION ....1

A. Magistrate Judge Erickson Erred in Construing the Claims as Not Requiring a Fuel Map That Stores Fuel Values in Units of Volume ....2

B. Magistrate Judge Erickson Erred in Not Construing the Term “Injection” as Requiring “an Amount of Fuel Sufficient for Combustion” ....6

II. OBJECTIONS TO THE RECOMMENDATION TO DENY PORTIONS OF ARCTIC CAT’S AND SUZUKI’S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT ....8

A. IRS Failed to Identify Any Factual Disputes Regarding Arctic Cat’s and Suzuki’s Skip Cycle ....9

B. IRS Failed to Identify Any Factual Disputes Regarding Arctic Cat’s and Suzuki’s Zeros in the Map Defense ....13

III. OBJECTIONS TO THE RECOMMENDATION TO DENY ARCTIC CAT’S AND SUZUKI’S MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY BASED ON OBVIOUSNESS ....16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Crossley v. Georgia Pacific Corp.*,
355 F.3d 1112 (8th Cir. 2004) ....10

*Jaurequi v. Carter Manufacturing Co.*,
173 F.3d 1076 (8th Cir. 1999) ....10

*Lockwood v. American Airlines, Inc.*,
107 F.3d 1565 (Fed. Cir. 1997)....18, 19

*Lujan v. National Wildlife Federation*,
497 U.S. 871 (1990)....10, 12

*National Steel Car, Ltd. v. Canadian Pacific Railway, Ltd.*,
357 F.3d 1319 (Fed. Cir. 2004)....19, 20

*Nieves v. University of Puerto Rico*,
7 F.3d 270 (1st Cir. 1993)....10

*Novartis Corp. v. Ben Venue Laboratories, Inc.*,
271 F.3d 1043 (Fed. Cir. 2001)....10

*Orson, Inc. v. Miramax Film Corp.*,
79 F.3d 1358 (3d Cir. 1996)....10

*Ryko Manufacturing Co. v. Nu-Star, Inc.*,
950 F.2d 714 (Fed. Cir. 1991)....18

*Scherer v. Rockwell International Corp.*,
979 F.2d 356 (7th Cir. 1992) ....10

*Sulzer Textil A.G. v. Picanol N.V.*,
358 F.3d 1356 (Fed. Cir. 2004)....6

*WMS Gaming Inc. v. Int'l Game Technology*,
184 F.3d 1339 (Fed. Cir. 1999)....4

### FEDERAL STATUTES

35 U.S.C. § 103....16, 17, 18, 19, 20

35 U.S.C. § 112, ¶ 6....1, 3, 4, 5, 6

Fed. R. Civ. P. 56....11, 12, 14, 19

## I. OBJECTIONS TO RECOMMENDATIONS ON CLAIM CONSTRUCTION

Arctic Cat and Suzuki respectfully object to two of Magistrate Judge Erickson's recommended claim constructions.

First, Arctic Cat and Suzuki object to Magistrate Judge Erickson's failure to construe the claims as requiring fuel maps that store fuel values *in units of volume*. This error arose because Magistrate Judge Erickson failed to correctly apply 35 U.S.C. § 112, ¶ 6. This statute authorizes "means-plus-function" claim limitations (which recite a "means" to perform a "function" instead of reciting a specific structure), but it limits their scope to the *structures described in the patent specification* (and equivalents) that perform the recited function. Magistrate Judge Erickson recognized that fuel maps perform a function recited in a "means-plus-function" limitation, but he failed to limit the claims to the only fuel map described in the '803 patent (which stores fuel values in units of volume). In addition, Magistrate Judge Erickson failed to appreciate that his recommendation would make another claim limitation superfluous – which violates a basic principle of claim construction. Accordingly, Arctic Cat and Suzuki object to Magistrate Judge Erickson's recommendation that the claims be construed to cover any and all fuel maps.

Second, Arctic Cat and Suzuki object to Magistrate Judge Erickson's failure to construe the claim term "injection" as meaning "an amount of fuel sufficient for combustion," thus leaving this critical claim construction issue to the jury. Here, Arctic Cat and Suzuki performed tests to assess whether "injection" occurs in "each and every engine cycle," as the claims require. Some tests found no detectable fuel flow, and some tests found "leakage." To decide whether "leakage" qualifies as "injection," therefore, the term "injection" must be construed. And the relevant evidence demonstrates that the term "injection" should be construed as meaning "an amount of fuel sufficient for combustion." Accordingly, Arctic Cat and Suzuki object to Magistrate Judge Erickson's failure to recommend this construction.

### A. Magistrate Judge Erickson Erred in Construing the Claims as Not Requiring a Fuel Map That Stores Fuel Values in Units of Volume

In electronic fuel injection ("EFI"), a computer controls how much fuel is injected in each engine cycle. Typically, the computer uses a fuel map (a matrix of fuel injection values that vary with engine speed (rpm) and throttle position) to determine how much fuel should be injected under specific operating conditions. The only fuel map described in the '803 patent stores the fuel values in units of volume (milliliters).[1]

The claim limitation in the '803 patent that covers the fuel map is a "means-plus-function" limitation that reads as follows:

> "means for receiving and processing said engine speed signal and said throttle position signal for determining a base fuel injection value."[2]

The fuel map is part of the structure that serves as the "means . . . for determining a base fuel injection value."[3]

Thereafter, the '803 claims require that the "base fuel injection value" is modified to reflect any changes in operating conditions (engine temperature, air temperature, and air pressure) from the conditions that existed when the values stored in the fuel map were generated. This step is performed by the claim element that reads as follows:

> "means for determining a total fuel injection value representative of the total fuel amount which is to be injected by said fuel injection means."[4]

These modifications yield a "total fuel injection value."

---

[1] *See, e.g.*, Dkt. 249, Decl. of Bruce C. Zotter in Support of Opening Markman Br., Ex. 1, the '803 patent at col. 12, ll. 18-25.

[2] *Id.* at claim 2, col. 16, ll. 61-63.

[3] *Id.* at Fig. 4.

[4] *Id.* at col. 17, ll. 6-13.

Next, the '803 claims require a step that converts the "total fuel injection value" into an "injector open duration interval" – the length of time the injector must be opened to deliver an amount of fuel equal to the "total fuel injection value."[5] This step is performed by the claim element that reads as follows:

> "means for determining an injector open duration interval based on said total fuel injection value and a known fuel output rate of said fuel injection means."[6]

This claim element requires structure to convert a *quantity of fuel* to an *injection open duration interval* (time) using a *known fuel output rate* of the fuel injector.[7]

Magistrate Judge Erickson correctly determined that the claim elements in question must be interpreted under 35 U.S.C. § 112, ¶ 6. He also correctly found that "[t]he structure that performs the function of [determining a base fuel injection value] includes programming in CPU 130 and specific data stored in the memory component 173."[8] But despite the absence of any disclosure in the '803 patent of a fuel map that store values other than volume, Magistrate Judge Erickson concluded that the "means for . . . determining a base fuel injection value" does not require a fuel map with fuel values stored in units of volume. Instead, he concluded that the '803 patent covers the use of any fuel map that stores values "expressed in some quantifiable measurement of time, space, or weight, such as volume, regardless of whether that fuel map is disclosed in the '803 patent."[9]

---

5 *Id.* at col. 17, ll. 14-17.

6 *Id.*

7 Arctic Cat and Suzuki also object to Magistrate Judge Erickson's failure to explicitly acknowledge that the prosecution history of the '803 patent legally estops IRS from asserting that the "base fuel injection determining means," the "total fuel injection determining means," and the "injector open duration interval determining means" elements are not incorporated into each of claims 1-4. *See* Dkt. 248, Arctic Cat's and Suzuki's Opening Markman Br. at 2-9; *id.* at 16, n.7.

8 Report at 39.

9 *Id.* at 40.

This conclusion violated 35 U.S.C. § 112, ¶ 6, which states that "means-plus-function" limitations "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." Magistrate Judge Erickson's reason for ignoring the fuel map disclosed in the '803 patent is flawed. More specifically, in stating that "computers . . . do not speak in terms of volume, or time, but recognize only '1s' and '0s'," Magistrate Judge Erickson concluded that "[t]he chosen word to describe the value that is used in the fuel map, which is stored as data, is an issue of semantics, which matters not."[10] But in reaching this conclusion, Magistrate Judge Erickson ignored that the "1s" and "0s" – the binary numbers in the fuel map that represent the individual data – will be different if the data are entered in volume units or other injector units such as injector open duration.

A case from the Federal Circuit that illustrates Magistrate Judge Erickson's error is *WMS Gaming Inc. v. Int'l Game Technology*.[11] There, a means-plus-function claim limitation directed to computer-controlled slot machines was construed to cover the specific computer program disclosed in the specification.[12] As explained by the court:

> In a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm.

Similarly here, the '803 patent discloses a CPU that is specifically programmed to carry out the functions shown in Fig. 2, using the fuel map shown in Fig. 4 (where the fuel values are stored in

---

10 *Id.*

11 184 F.3d 1339 (Fed. Cir. 1999).

12 *Id.* at 1347-48.

units of volume).[13] Thus, the claims should be construed as limited to fuel maps that store fuel values in units of volume.

In addition, Magistrate Judge Erickson's recommendation also violates a basic principle of claim construction – namely that claim limitations must be construed in a way that does not make other claim limitations "superfluous."[14] Here, the claims recite an "open duration determination means," which converts the "total fuel injection value" to an "injector open duration interval." As described in the '803 patent, this conversion requires additional structure (programming in the CPU) that uses the "known output rate capacity of said fuel injection means" to calculate the "injector open duration interval." If "injection open duration intervals" (units of time) were stored in the fuel map, however, the converting step would be unnecessary because the number computed in the previous claim element for the "total fuel injection value" would be the same as the "injector open duration interval" number needed to generate the control signal to the injectors. In other words, if the claims covered a fuel map that stored fuel values in units of "injector open duration," no conversion function based on a "known output rate capacity" of the injector would be necessary, and the "injector open interval determining means" element would be superfluous, in violation of the Federal Circuit's claim construction principles.[15]

Thus, Magistrate Judge Erickson erred in recommending a claim construction that does not limit the claims to the fuel maps disclosed in the specification, which store fuel values in

---

[13] Dkt. 249, Decl. of Bruce C. Zotter, Ex. 1, the '803 patent at col. 11, ll. 18-20, and col. 12, ll. 1-33.

[14] *See* Dkt. 585, Decl. of Christopher W. Day in Support of Arctic Cat's and Suzuki's Opening Br. on No Infringement, Ex. C, App. 2, Cuzzillo Report at ¶ 29.

[15] For at least this reason, a fuel map that stores fuel values in units of injector open duration intervals cannot be an "equivalent" under 35 U.S.C. § 112, ¶ 6 to a fuel map that stores fuel values in units of volume.

units of volume. More particularly, Magistrate Judge Erickson erred in recommending a claim construction that would cover a fuel map that stores fuel values in units of injector open duration.

### B. Magistrate Judge Erickson Erred in Not Construing the Term "Injection" as Requiring "an Amount of Fuel Sufficient for Combustion"

While Magistrate Judge Erickson did not explicitly construe the term "injection" as used in the claims of the '803 patent, he did characterize the construction asserted by Arctic Cat and Suzuki – that the term must be construed as requiring an amount of fuel sufficient for combustion – as being "improper."[16] Magistrate Judge Erickson concluded, without explanation, that this construction "is not supported by either the *Polaris* court's claim construction, the language of the claims, or the specifications."[17] However, as discussed in Arctic Cat's and Suzuki's briefs on no infringement and during the Markman hearing, the claims and the specification of the '803 patent fully support Arctic Cat's and Suzuki's proposed construction of the term "injection."[18] IRS has proffered no evidence to contradict this intrinsic evidence. Thus, Magistrate Judge Erickson's failure to construe the term "injection" for the jury in accordance with the undisputed intrinsic evidence would invite error because claim construction is a matter of law, and the jury cannot be left "free to make its own determination of the meaning of the claims."[19]

---

[16] Report at 52.

[17] *Id.*

[18] *See, e.g.*, Dkt. 249, Decl. of Bruce C. Zotter in Support of Opening Markman Br., Ex. 1, the '803 Patent, claim 1, col. 15, ll. 14-15; *id.* at claim 2, col. 16, ll. 38-39 (reciting a "fuel injector means for injecting fuel for combustion with air within said cylinder."); *id.* at col. 3, ll. 45-50 (disclosing that "injection of fuel . . . provides mixing of a precise amount of fuel and air"); *id.* at col. 4, ll. 48-53 (disclosing a "fuel injection means for injecting a fine spray of fuel"); *id.* at col. 9, l. 68, to col. 10, l. 5 ("The CPU 130 also generates control signals which actuate the solenoid valve portion 94 of each fuel injector 92 to selectively open and close . . . each injector to provide a proper amount of fuel injection into the manifold as determined by the CPU.").

[19] *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366-68 (Fed. Cir. 2004).

Moreover, the testimony of the parties' experts corroborates the fact that combustion is implicit in the concept of "injection" under the '803 patent. From the perspective of one skilled in the art, Arctic Cat's and Suzuki's expert, Dr. Cuzzillo, testified as follows:

> Q: So isn't it true that for purposes of your analysis, your claim construction was actually that the claim limitation required not just injection but the injection of an amount of fuel consistent with combustion. Isn't that the way you ultimately applied the claim construction?
>
> A: Well the way that the word "injection" is used in this context means the flow of an adequate amount of fuel to produce combustion. That's the goal. That's the whole reason we have a fuel injection control system. It's the whole reason for EFI, is to refine that control.[20]

And, on the definition of "injection," IRS's expert, Dr. Ribbens, testified as follows:

> Q: What is an injection in your mind?
>
> A: An injection would be the response of the fuel injector to a signal through the solenoid coil -- a current through the solenoid coil that causes it to open up and allow fuel under pressure to be delivered.
>
> * * *
>
> Q: You would agree, I presume, that the purpose of injecting fuel is to create combustion in the cylinder?
>
> * * *
>
> A: Well, if we're talking about a production engine, yes, that's true.
>
> Q: And so implicit in -- if we're talking about a production engine, implicit in the concept of injection is the idea that there is enough fuel for combustion? --
>
> * * *
>
> A: Under normal operating conditions when the engine is producing power, certainly.[21]

Dr. Ribbens's interpretation of "injection" – "to create combustion" – is consistent with Dr. Cuzzillo's interpretation. Those skilled in the art thus agree that "combustion" is a necessary facet of the ordinary and customary meaning of "injection." As a result, this Court should

[20] Dkt. 585, Decl. of Christopher W. Day in Support of Opening Br. on No Infringement, Ex. J, Dr. Cuzzillo's Dep. Tr. dated Jan. 21, 2004 at 173.

[21] *Id.* at Ex. I, Dr. Ribbens's Dep. Tr. dated Nov. 12, 2003 at 106, l. 12, to 108, l. 3.

overrule Magistrate Judge Erickson's refusal to construe the term "injection" as requiring "an amount sufficient for combustion."

## II. OBJECTIONS TO THE RECOMMENDATION TO DENY PORTIONS OF ARCTIC CAT'S AND SUZUKI'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT

Magistrate Judge Erickson recommended granting in part, and denying in part, Arctic Cat's and Suzuki's motion for summary judgment based on noninfringement. Arctic Cat and Suzuki object to the denial of summary judgment for the Suzuki engines and Arctic Cat snowmobiles that do not "inject fuel in each and every engine cycle." Those engines and snowmobiles fall into two categories: (1) those that use a "skip cycle," and (2) those with fuel maps that include injector open duration intervals of "0."

Magistrate Judge Erickson erred in his analysis of both defenses by requiring that Arctic Cat and Suzuki "conclusively" establish that "injection" does not occur in some engine cycles. It is IRS who bears the burden of proving infringement. As the summary judgment movants, Arctic Cat and Suzuki are obligated to show that the evidence fails to raise a triable issue of fact that is essential to IRS's proof of infringement. Arctic Cat and Suzuki did that by citing facts that are dispositive of infringement. The burden then shifted to IRS to cite evidence that would raise a triable issue of fact. IRS failed to meet that burden.

Magistrate Judge Erickson also erred in his analysis of both defenses by failing to accept the material facts that Arctic Cat and Suzuki identified and IRS did not dispute. Arctic Cat and Suzuki tested their products, and their expert (Dr. Cuzzillo) presented evidence showing that their accused products do not inject fuel in every cycle when they (1) operate in the skip cycle regime, or (2) operate in the "zero region" of their fuel maps. IRS conducted no such tests. And IRS presented no expert testimony to dispute Arctic Cat's and Suzuki's tests. Instead, IRS defended against the summary judgment motion by relying upon its proferred claim construction,

which Magistrate Judge Erickson rejected. In so doing, IRS failed to raise any triable issues of fact.

### A. IRS Failed to Identify Any Factual Disputes Regarding Arctic Cat's and Suzuki's Skip Cycle

Magistrate Judge Erickson recommended interpreting the patent claims as requiring "injection in each and every engine cycle."[22] He based that recommendation in part on an earlier claim construction ruling in the *IRS v. Polaris* case. In that case, Judge Rita Weinshienk also granted summary judgment of no infringement because the accused snowmobiles used a "skip cycle" (where fuel is injected in only alternating engine cycles) under some operating conditions and, thus, did not inject fuel "in each and every cycle.[23]

Since 2001 (with the exception of the 2003 700-C EID model), the Suzuki engines used in Arctic Cat snowmobiles have also used a skip cycle, and Arctic Cat and Suzuki moved for summary judgment as to all of these late model engines and snowmobiles, except the 2003 700-C EID. That motion has taken on particular significance because the engines and snowmobiles affected include the only engines and snowmobiles that are not covered by Magistrate Judge Erickson's other recommendations for summary judgment. Thus, granting summary judgment on the skip cycle defense would dispose of the remainder of the case.

Magistrate Judge Erickson did not recommend summary judgment for the Suzuki engines and Arctic Cat snowmobiles that use skip cycle because he concluded that a triable issue of fact exists as to whether injection occurs in every cycle of those products. He based that conclusion on the one model that Arctic Cat and Suzuki had specifically excluded from their motion

---

[22] Report at 34.

[23] *Id.*; Dkt. 585, Arctic Cat's and Suzuki's Opening Br. on No Infringement at 7-8.

(because the skip cycle feature was inoperative in that model).[24] The Report also presumed the existence of a triable issue of fact because Dr. Cuzzillo "never explicitly stated that the tests conclusively demonstrated that no fuel was injected in the cycle that was skipped."[25]

In reaching his recommendation, Magistrate Judge Erickson erred by reversing the burden of proof. He explained that he was "unable to conclusively determine that no fuel is injected in the skipped cycle" because Dr. Cuzzillo "never explicitly stated that the tests conclusively demonstrated that no fuel was injected in the cycle that was skipped."[26] FED. R. CIV. P. 56, however, does not require that Arctic Cat and Suzuki conclusively negate IRS's legal theories of infringement to obtain summary judgment.[27] Rather, it was IRS who was required to identify the specific facts necessary to sustain its burden of proving infringement at trial.[28] As the Eighth Circuit, in *Crossley v. Georgia Pacific Corp.*,[29] explained:

> "In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden "to designate specific facts creating a triable controversy."[30]

IRS did not do that, choosing instead to rely upon the unsupported hypotheticals and legal suppositions of its counsel.[31] And since IRS failed to meet its burden, Magistrate Judge Erickson

---

24 *Id.* at 61.

25 *Id.*

26 *Id.*

27 *See Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 885 (1990) ("*Celotex* made clear that Rule 56 does not require the moving party to negate the elements of the nonmoving party's case . . . .").

28 *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) ("Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case.").

29 355 F.3d 1112 (8th Cir. 2004).

30 *Id.* at 1113 (quoting *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999).

erred in finding triable issues of fact and denying Arctic Cat's and Suzuki's motion for noninfringement by the engines and snowmobiles that use skip cycle.

Magistrate Judge Erickson also erred in failing to accept the undisputed factual predicates for Arctic Cat's and Suzuki's motion. Those predicates, as listed in Arctic Cat's and Suzuki's motion papers, are as follows:

- With the exception of the EFI system in the model year 2003 700-C EID Suzuki engine, all of the accused products for model years 2001, 2002, and 2003 employ a "skip cycle" regime under specified conditions of short injection durations, during which no injection occurs on alternating engine revolutions.
- With the exception of the EFI system in the model year 2003 700-C EID Suzuki engine, the specifications for all of the accused products for model years 2001, 2002, and 2003 indicate that a "skip cycle" regime is implemented under specified conditions with short injection durations, during which no injection occurs on alternating engine revolutions.
- In tests performed on behalf of Arctic Cat and Suzuki of Kokusan EFI systems for model years 2001, 2002, and 2003 under operating conditions where the specifications indicate that a "skip cycle" regime is implemented, no detectable fuel flow occurs on alternating engine revolutions.[32]

IRS presented *no evidence* to dispute *any* of these facts. Indeed, IRS's *entire* response to these undisputed facts was as follows:

> Dr. Cuzzillo concedes that only about half of the Kokusan products employ "skip cycle" based on his review of the Kokusan control specifications and his extremely limited testing. In all of these products, however, an electrical pulse is

(…continued)

[31] *See* FED. R. CIV. P. 56(e) (requiring the non-moving party to submit supporting statements of fact that are be made on personal knowledge by those who are competent to testify at trial); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1372 (3d Cir. 1996) (holding that legal and oral argument are not evidence and cannot independently create a genuine issue of disputed fact sufficient to preclude summary judgment); *Nieves v. University of Puerto Rico*, 7 F.3d 270, 276 n.9 (1st Cir. 1993) (holding that summary judgment cannot be defeated by factual assertions in the brief of the nonmoving party); *Scherer v. Rockwell Int'l Corp.*, 979 F.2d 356 (7th Cir. 1992) (holding that legal argument is not evidence upon which to base denial of summary judgment).

[32] Dkt. 584, Opening Br. on No Infringement at 9 ¶¶ 5-7; Dkt. 585, Dec. of Christopher W. Day in Support of Arctic Cat's and Suzuki's Opening Br. on No Infringement at Ex. A, Chart of Undisputed, Material Facts.

> sent to the fuel injectors every cycle, even during those alleged "skip cycles." Therefore, Dr. Cuzzillo's terminology is incorrect. It is not a "skip cycle" but a "short pulse." More importantly, that short pulse regime is programmed to occur in only a tiny fraction of the fuel map of the applicable Kokusan products. Since infringement occurs at all other RPMs and throttle angles during normal operation, infringement is established and summary judgment of noninfringement must be denied.[33]

This response was a legal argument keyed to claim construction – a construction that Magistrate Judge Erickson properly rejected. And given the absence of *any* contrary evidence, Magistrate Judge Erickson should have accepted the undisputed facts identified by Arctic Cat and Suzuki.

Instead, Magistrate Judge Erickson drew improper inferences from Arctic Cat's and Suzuki's own tests. Those inferences had no factual basis because IRS did not cite any facts that contradict either the results of those tests or the interpretation of those results by Arctic Cat's and Suzuki's expert.[34] Magistrate Judge Erickson, however, relied on IRS's general denials and his subjective evaluation of Arctic Cat's and Suzuki's tests to identify triable issues of fact. That analysis was improper and conflicts with FED. R. CIV. P. 56, as the Supreme Court explained in *Lujan v. Nat'l Wildlife Federation*:[35]

> In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint.[36]

For example, Magistrate Judge Erickson concluded that a factual dispute existed "as to the existence of skip pulse in the Accused Products" based on the fact that the skip cycle feature was

---

33 Dkt. 596, IRS's Opp'n Br. at 20-21 (internal citations omitted).

34 Dr. Cuzzillo found no detectable flow in both of his tests of skip cycle. Dkt. 584, Decl. in Support of Opening Br. on No Infringement, Ex. 2, App. 2, Dr. Cuzzillo's Report at 7, ¶ 13. Hence, the evidence does not depend on the construction of "injection."

35 497 U.S. 871 (1990).

36 *Id.* at 889-90.

"nonfunctional" in the 2003 700-C EID device due to a programming error.[37] But Arctic Cat and Suzuki specifically excluded that model from their summary judgment motion.[38] Moreover, IRS's expert never contended that a similar programming error was present in any of those products at issue. As a result, Magistrate Judge Erickson erred in inferring a dispute over facts, that IRS never contested with evidentiary support.

### B. IRS Failed to Identify Any Factual Disputes Regarding Arctic Cat's and Suzuki's Zeros in the Map Defense

Another feature of Arctic Cat's and Suzuki's engines and snowmobiles is their use of fuel maps that have regions of zero ("0") injector open duration at certain operating conditions (e.g., at a low throttle position and at high engine speeds).[39] At these zero regions, the accused devices do not inject fuel in every cycle in an amount sufficient for combustion.[40] Based on their claim interpretation of "injection," Arctic Cat and Suzuki sought summary judgment on this ground.

Magistrate Judge Erickson declined to recommend summary judgment because he concluded that Arctic Cat and Suzuki had failed to "conclusively establish" that their engines and snowmobiles did not satisfy the "injection in every cycle" limitation of the '803 patent.[41] That conclusion was based on Dr. Cuzzillo's decision to limit his testing of several of the accused devices to tests using nitrogen, instead of gasoline, because gasoline's higher viscosity rendered tests using gasoline unnecessary.[42] It was also based on the fact that Dr. Cuzzillo observed "slight leakage" ("far below the rate needed to create a combustible mixture") in three out of the

---

[37] Report at 60-61.

[38] Dkt. 584, Opening Br. on No Infringement at 12-13 ("With the exception of the model year 2003 700-C EID Suzuki engine . . . , all of the accused devices for model years 2001, 2002, and 2003 employ a skip cycle regime . . . .").

[39] *Id.* at 9-10.

[40] *Id.*

[41] Report at 59.

[42] *Id.* at 53-56.

six engines he tested[43] when the engines were operated in the zero regions of their fuel maps.[44] In light of Dr. Cuzzillo's tests and observations, Magistrate Judge Erickson decided that "fuel flow at any zero in the map calls into question the accuracy of every zero on the map."[45] He also decided that the leakage observed in the three engines tested was "attributable to injection" because "even when there are zeros in the fuel maps, the injectors are still sensing an electrical pulse, albeit a pulse of short duration."[46] In arriving at these decisions, Magistrate Judge Erickson made two legal errors.

First, by requiring Arctic Cat and Suzuki to affirmatively negate IRS's legal theories of infringement and by assuming the existence of a triable controversy over facts that IRS never contested, Magistrate Judge Erickson failed to properly apply FED. R. CIV. P. 56. The relevant consideration, however, is IRS's failure to provide any factual evidence from which a reasonable fact-finder could conclude that the accused products inject fuel (in an amount sufficient for combustion) in each cycle during the zero regions in their fuel maps. Instead of complying with Fed. R. Civ. P. 56(e)'s specificity requirement, IRS again chose to rely on legal arguments of its counsel. Those arguments, however, fail to serve as an adequate substitute for admissible factual evidence. IRS has presented no competent evidence that could permit a jury to doubt Dr. Cuzzillo's tests showing that, when the accused products operated in the "zero region" of their fuel maps:

---

[43] The six engines that were chose by Dr. Cuzzillo for testing represented the six different injector systems used in the accused products. *See* Dkt. 585, Decl. of Christopher W. Day in Support of Opening Br. on No Infringement, Ex. C, App. 2, Dr. Cuzzillo's Report at ¶ 6.

[44] *Id.* at 57.

[45] *Id.*

[46] *Id.* at 58.

- no fuel flow was detected in three of the six injector types tested;[47] and
- an amount of leakage that was "far below that needed for combustion" was detected in the other three injector types tested.[48]

On this record, these facts remain undisputed.[49]

Second, Magistrate Judge Erickson failed to appreciate the difference between the observed "leakage" in three of the accused devices tested and the required "injection" for purposes of satisfying the "injection in every cycle" limitation and the "fuel injection means . . . for combustion" element of the '803 patent. Magistrate Judge Erickson also failed to appreciate the difference between the presence of a pulse sent to an injector and "injection." Because, as IRS's expert conceded, the pulse must be of sufficient duration to activate the injector, a short pulse may not result in fuel flow.[50] These errors was manifested in Magistrate Judge Erickson's failure to accept the testimony of Arctic Cat's and Suzuki's expert (Dr. Cuzzillo) that "injection" means "the flow of an adequate amount of fuel to produce combustion" and the admission of IRS's expert (Dr. Ribbens) that "enough fuel for combustion" is "implicit in the concept of combustion."[51] Thus, there was no dispute that "leakage" does not qualify as "injection."

Finally, even if the leakage that Dr. Cuzzillo observed for three injector systems did qualify as injection, there was no dispute whatsoever that there was no fuel flow with the other three injector systems. Thus, Magistrate Judge Erickson erred in concluding that the existence of

---

[47] Dkt. 584, Arctic Cat's and Suzuki's Opening Br. on No Infringement at 10, n.47 (citing Dkt. 525, Ex. C. App. 2, Cuzzillo Report at ¶¶ 8-10).

[48] *Id.* at 12, n.54 (citing Dkt. 525, Ex. C, App. 2, Cuzzillo Report at ¶¶ 8-9).

[49] Arctic Cat and Suzuki object to Magistrate Judge Erickson's failure to deem admitted each of the undisputed facts listed in their Opening Brief on No Infringement. *See* Dkt. 584, Opening Br. on No Infringement at 8-9, ¶¶ 1-4.

[50] *See* Dkt. 584, Opening Br. on No Infringement at 12, n.53 (citing Dkt. 585, Ex. I, Ribbens Dep. Tr. at 95, l. 15 to 97, l. 22 (acknowledging that the accused EFI systems could transmit "a pulse of duration that is less than the time required to open the injector")).

[51] *See supra* nn.20-21 and accompanying text (quoting Drs. Cuzzillo's and Ribbens's testimony).

"leakage attributable to an injection" in three of the accused devices tested raised a triable issue of fact as to whether injection in each cycle occurred in all of the accused devices.

## III. OBJECTIONS TO THE RECOMMENDATION TO DENY ARCTIC CAT'S AND SUZUKI'S MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY BASED ON OBVIOUSNESS

Although his claim construction was absolutely correct and should not be disturbed, Magistrate Judge Erickson based his recommendation to deny Arctic Cat's and Suzuki's invalidity motion on a mistaken interpretation of the prior art that was inconsistent with his own claim construction. In light of the actual properties of the prior art, which IRS does not genuinely dispute, the '803 patent is invalid for obviousness under 35 U.S.C. § 103.

In this case, Arctic Cat and Suzuki identified as prior art the two-stroke EFI engine work done by Outboard Marine Corporation ("OMC"), including an actual OMC engine.[52] The invalidity summary judgment motion is based on this art, which when combined with an engine temperature sensor (such as was used in Mercury Marine EFI two stroke engines prior to the application date), rendered the '803 patent obvious.

Magistrate Judge Erickson correctly found that the '803 patent requires non-calculated injection in response to a predetermined, cyclically repeating engine event. It is undisputed that the OMC engine injected fuel in response to a predetermined, cyclically repeating event – specifically, the achieving of a particular engine position. This satisfies Magistrate Judge Erickson's construction of the '803 patent. Magistrate Judge Erickson correctly emphasized that the achieving of a particular engine position could act as the predetermined, injection-triggering event under the '803 patent:

---

[52] It is undisputed that OMC manufactured and offered this engine more than a year before IRS's original patent application. IRS only contends, without any legal support, that since such engines were purchased by racers, that such engines cannot be prior art. This contention is irrelevant and should be rejected.

> Of course, if the predetermined point in the engine cycle was not ignition, but rather was, for example, *the top dead center position of one of the pistons*, then injection would also occur at the same point in every rotation of the crankshaft. In short, injection is determined from the timing sensing signal, not the position of the crankshaft, and the timing sensing signal is determined from some predetermined point in the engine cycle, *which can either be at a point in the revolution of the crankshaft*, or at some other cyclically repeating event such as ignition, which is completely independent of the position of the crankshaft.[53]

Under Magistrate Judge Erickson's claim construction the angular position of the injection-triggering event relative to the top dead center position can vary (as with ignition), *or not vary* (as with a specific crankshaft or piston position). Because the Report erred solely in distinguishing the OMC prior art on the ground that it did not show an injection-triggering event that varied like ignition, Arctic Cat's and Suzuki's invalidity motion should be granted.

More fundamentally, IRS's complete failure to provide any controverted evidence in response to Arctic Cat's and Suzuki's invalidity motion mandates a finding that the '803 patent is invalid for obviousness under 35 U.S.C. § 103. In IRS's only evidentiary submission in response to this prior art, IRS's prior art expert (Dr. William Ribbens) essentially had no meaningful response. First, he simply restated the position of Arctic Cat and Suzuki: "[t]he OMC engine does not anticipate because it does not incorporate an engine temperature sensor."[54] However, nowhere in his report[55] did Dr. Ribbens allege that the OMC prior art is missing any of the other '803 patent claim limitations.[56] Most remarkably, Dr. Ribbens did not even claim that the combination of the OMC art with an engine temperature sensor was not obvious.

---

53 Report at 31-32 (emphasis added).

54 *See* Dkt. 600, Decl. of William Ribbens ("Ribbens Decl."), Ex. B at p. 14.

55 IRS submitted the Ribbens Declaration as part of its evidentiary opposition to Arctic Cat's and Suzuki's obviousness summary judgment motion. *See* Dkt. 600.

56 The Ribbens Report references the existence of a manual adjustment of fuel calibration. *See* Dkt. 600, Ex. B at p. 14. However, the existence of this additional feature of the OMC engine simply ignores the relevant factual conclusion—the existence of all limitations of the '803 patent claims in the OMC engine except the engine temperature sensor.

To the contrary, the only comment he made about the prior art combination of OMC and an engine temperature sensor is Dr. Ribbens's statement "in my opinion there is a strong disincentive in combining these two sets of references because they are or were rivals in the marine motor industry and are or were intensely competitive with one another."[57] This opinion is irrelevant and entirely misses the dispositive legal point. He simply ignored the motivation to combine an engine temperature sensor with the OMC engine and the OMC internal documentation which considered this exact combination.[58] Summary judgment is appropriate because Arctic Cat and Suzuki have demonstrated by clear, convincing and uncontroverted evidence that the '803 patent is invalid as obvious under 35 U.S.C. § 103.

"[A] district court can properly grant, as a matter of law, a motion for summary judgment on patent invalidity when the factual inquiries into obviousness present no genuine issue of material facts." *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir. 1991). In an analogous case, the Federal Circuit affirmed a summary judgment finding that a patent on an airline reservation system was invalid for obviousness under 35 U.S.C. § 103. *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1570-71 (Fed. Cir. 1997). There, summary judgment was required because the patentee failed to respond to the moving party's prior art "by setting forth specific facts that would raise a genuine issue for trial." *Id.* at 1571. Specifically, summary judgment was affirmed because the patentee failed to present evidence that the prior art did not disclose the very same structures disclosed in the patent in suit. *Id.*

---

57 *Id.*, Ex. B at p.15.

58 *See* Dkt. 582, Decl. of Annamarie A. Daley in Support of Arctic Cat's and Suzuki's Motion for Summary Judgment on the Basis of Invalidity of the '803 Patent under 35 U.S.C. § 103, Ex. B at 20-22, 46-47, 63-64; Ex. I (OMC documentation showing consideration of engine temperature sensor); Ex. H at 281-82, 305; Ex. J (Maier July 24, 2003 Dep.. Ex. 734 showing "Eng. Temp").

Like the patent holder in *Lockwood*, here, IRS has not submitted evidence that the OMC prior art did not disclose each limitation claimed in the '803 patent except the engine temperature sensor. As evidence of the properties of the OMC prior art, Arctic Cat and Suzuki presented deposition testimony from two former OMC employees – James Nerstrom and Gerhard Maier. They had helped design and build the OMC engine beginning in the early 1980s.[59] Mr. Nerstrom and Mr. Maier properly explained the properties of the OMC engine in context of the same terminology employed in the '803 patent. The undisputed evidence also includes clarifying testimony, including schematics and drawings, regarding the claim terms.[60]

Nor has IRS challenged Arctic Cat's and Suzuki's evidence of motivation to combine the OMC and Mercury Marine prior art. Although the OMC and Mercury Marine teachings were publicly available, a motivation to combine can also be demonstrated by non-public disclosures. *National Steel Car, Ltd. v. Canadian Pacific Railway, Ltd.*, 357 F.3d 1319, 1338-39 (Fed. Cir. 2004). In *National Steel Car*, the Federal Circuit reversed the lower court's holding of no

---

[59] *See* Dkt. 581, Memorandum of Law in Support of Arctic Cat's and Suzuki's Motion for Summary Judgment on the Basis of Invalidity of the '803 Patent under 35 U.S.C. § 103 ("Memorandum") at p. 4, ¶¶ 6-7. Mr. Maier, after working on the OMC EFI engine, undisputedly was retained by IRS to help build IRS's first prototype EFI system. *Id.* at pp. 7-8, n. 4. Although IRS may seek to impugn the credibility of Mr. Maier by accusing him of being an "admitted perjurer," such an accusation cannot go to each and every statement of such a witness. IRS must still controvert each fact as the non-moving party under Rule 56 of the Federal Rules of Civil Procedure.

[60] For example, discussing the "predetermined cyclically repeating state" limitation, Magistrate Judge Erickson quotes deposition testimony explaining exactly how the OMC engine disclosed this claim limitation:

Q: (Ms. Daley). How is it that the OMC EFI two-stroke cycle engine determined when to open the injectors?

A: (Nerstrom). There is a – a sensor on the flywheel. *** On – on the bottom side of the flywheel, this is a trigger magnet. This magnet triggers ignition and it's also used to trigger injection, and it will trigger one bank of injectors and then a second bank of four injectors.

Q: Now, does that – is that timing then varied?

A: No, the – *the injection timing is the same for every revolution. It always injects at the same point.*

Q: At the same point in relation to what?

A: *In the same point in – well, let's – let's say in – in the same – in relation to the same point of top dead center of Cylinder No. 1 as a reference.*

Report at 76-77 (emphasis Magistrate Judge Erickson's).

motivation to combine two prior art references to invalidate the patent on a railway car. *Id.* at 1337. In that case, the motivation to combine was found in internal company documents. *Id.* at 1337-39.

Here, there was ample motivation to include engine-temperature sensing on the OMC EFI system. OMC had specifically considered including an engine temperature sensor in its EFI system, but ultimately deemed the sensor unnecessary for operation of the engine during outboard races, where it would be pre-warmed rather than operated from a cold start.[61] Further, the undisputed record confirms that before November 1986 engine temperature sensors already were commonly used in two stroke internal combustion engine EFI systems, such as those manufactured and offered for sale by Mercury Marine.[62] The prior art clearly suggested the desirability of including this feature in an EFI system for an engine intended to operate in extreme weather conditions. A skilled artisan working on the same problem addressed by the alleged invention would have understood and been motivated to include an engine temperature sensor in an EFI system like the OMC EFI system to modify fuel injection to improve engine performance during "cold start" conditions.[63] For all these reasons, Arctic Cat's and Suzuki's invalidity motion should be granted.

---

[61] *See* Dkt. 582, Decl. of Annamarie A. Daley in support of Arctic Cat's and Suzuki's Motion for Summary Judgment on the Basis of Invalidity of the '803 Patent under 35 U.S.C. § 103, Ex. B at 20-22, 46-47, 63-64; Ex. I (OMC documentation showing consideration of engine temperature sensor); Ex. H at 281-82, 305; Ex. J (Maier July 24, 2003 dep. Ex. 734 showing "Eng. Temp").

[62] *See* Dkt. 581, Memorandum at pp. 4-5, ¶¶ 9-11.

[63] *See* Dkt. 581, Memorandum at pp. 4-6, ¶¶ 9-14.

SUZUKI MOTOR CORPORATION
By its attorneys

Dated: March 7, 2005

s/William F. Forsyth

William F. Forsyth (MN Atty ID #31070)
Henson & Efron, P.A.
220 South Sixth Street, Suite 1800
Minneapolis, MN 55402-4503
Telephone: (612) 339-2500
Facsimile: (612) 339-6364

Thomas H. Jenkins (Pro Hac Vice)
Bruce C. Zotter (Pro Hac Vice)
Christopher W. Day (Pro Hac Vice)
Finnegan, Henderson, Farabow,
Garrett & Dunner L.L.P.
1300 I Street, N.W.
Washington, D.C. 20005-3315
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

ARCTIC CAT INC.
By its attorneys

Dated: March 7, 2005

s/Annamarie A. Daley

Annamarie A. Daley (MN #158112)
Aaron A. Myers (MN #311959)
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone: (612) 349-8500
Facsimile: (612) 339-4181