**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**Arctic Cat, Inc.**,
a Minnesota Corporation,
Plaintiff,
v.

**Injection Research Specialists, Inc.,**
a Colorado corporation, and
**Pacer Industries, Inc**.,
a Missouri corporation,
Defendants.

---

**Injection Research Specialists, Inc.,**
a Colorado corporation, and
**Pacer Industries, Inc**.,
a Missouri corporation,
Counterclaimants,
v.

**Arctic Cat, Inc.**,
a Minnesota Corporation, and
**Suzuki Motor Corporation**,
a Japanese Corporation,
Counterdefendants.

**MEMORANDUM AND ORDER**

Civil No. 01-543 (MJD/RLE)

---

Annamarie A. Daley, Aaron A. Myers, Robins, Kaplan, Miller & Ciresi L.L.P., Counsel for **Arctic Cat, Inc**.

Thomas H. Jenkins, Bruce C. Zotter, Christopher W. Day, Finnegan, Henderson, Farabow, Garrett & Dunner L.L.P., Counsel for **Suzuki Motor Corp.**

William F. Forsyth, Henson & Efron, P.A., Counsel for **Suzuki Motor Corp.**

Anthony de Alcuaz, David W Slaby, Jill M. Kastner, Michael S. Wilcox, Robert J. Blanch, McDermott Will & Emery, Counsel for **Injection Research Specialists, Inc., and Pacer Industries, Inc.**

David P. Pearson, Tiffany Ann Blofield, Winthrop & Weinstine, Counsel for **Injection Research Specialists, Inc., and Pacer Industries, Inc.**

---

## I. INTRODUCTION

The above-entitled matter comes before the Court upon the Report and Recommendation [Docket No. 646] ("the Report") of United States Magistrate Judge Raymond L. Erickson, dated August 6, 2004, which considered cross-motions for summary judgment on several issues. The Report recommended that (1) Arctic Cat's Motion for Partial Summary Judgment based on Legal Estoppel be granted; (2) Arctic Cat's Motion for Partial Summary Judgment with regard to IRS's Claims of Willful Infringement be granted; and (3) the balance of motions for summary judgment and partial summary judgment be denied.

Pursuant to statute, the Court has conducted a de novo review of the record. 28 U.S.C. § 636(b)(1); Local Rule 72.1(c). Based on that review, the Court adopts, in part, and modifies, in part, the Report and Recommendation. The Court disagrees with the Report's conclusion that Arctic Cat did not rely on IRS's misleading conduct with regard to laches and equitable estoppel; rather, the court concludes that laches and equitable estoppel apply here and that their benefits extend to Suzuki, as Arctic Cat's supplier. The Court shall adopt the remainder of the Report and Recommendation as submitted.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This dispute involves patents for electronic fuel injection ("EFI") systems used in snowmobile engines. Plaintiff/Counterdefendant Arctic Cat, Inc. ("Arctic

Cat") manufactures snowmobiles using engines manufactured by Counterdefendant Suzuki Motor Corp. ("Suzuki"). For convenience, this memorandum shall, wherever possible, refer to both Arctic Cat and Suzuki, collectively, as "Arctic Cat." Defendants/Counterplaintiffs Injection Research Specialists, Inc., ("IRS") and Pacer Industries, Inc., (collectively, "IRS"), hold five patents relevant to this case. The three primarily disputed patents, all relating to EFI systems, are:

> (1) United States Patent No. Re. 34,803 (the "'803 Patent")[1] (issued Dec. 6, 1994);
>
> (2) United States Patent No. 5,813,374 (the "'374 Patent")[2] (issued Sept. 29, 1998), which both claims priority as a continuation of the '803 Patent and also contains broader claims than the '803 patent; and
>
> (3) United States Patent No. Re. 34,079 (the "'079 Patent")[3] (issued Sept. 29, 1992), which is a narrow improvement in EFI systems—specifically, a battery conservation circuit that disconnects the battery from the electronic control unit ("ECU") of the EFI system if the battery voltage is falling low.

**A. Earlier Related Litigation**

In 1990, IRS sued Polaris Industries ("Polaris"), Fuji Heavy Industries, Ltd. ("Fuji") (Polaris's engine supplier), and Unisia JECS Corporation ("JECS") (EFI system supplier to Fuji). That suit, referred to as the "Polaris Litigation," alleged trade secret misappropriation and infringement of the '701 and '205 Patents,

---

[1] The '803 patent is a reissue of United States Patent No. 4,901,701 (the "'701 Patent").
[2] On May 16, 2000, United States Patent No. 6,062,202 (the "'202 Patent") was issued as a continuation of the '374 Patent.
[3] The '079 Patent is a reissue of United States Patent No. 5,024,205 (the "'205 Patent").

which were subsequently reissued under the ‘083 and ‘079 Patents, respectively. The court in the District of Colorado granted summary judgment in favor of defendants Polaris, Fuji, and JECS on the patent claims, finding that the ‘803 and ‘079 patents were not infringed. The trade secret claims then went to trial, IRS prevailed, and it was awarded a $44.6 million verdict. One defendant in that case, JECS, supplies EFI systems for Suzuki's engines, which are—in turn—used in Arctic Cat snowmobiles.

During the Polaris Litigation, IRS wrote Arctic Cat, accusing it of infringing the ‘803 Patent, and notifying Arctic Cat that IRS would, “no[] later than conclusion of the Polaris litigation, . . . bring suit against [Arctic Cat] for infringement of the ‘803 patent claims, and for other causes of action based on misuse by [Arctic Cat] of the information supplied by IRS in 1988 and 1989.” Arctic Cat, Inc. v. Injection Research Specialists, Inc., Civ. No. 01-543, 2001 WL 1628634, at *1 (D. Minn. Sept. 12, 2001) (unpublished Order denying IRS's Motion to Dismiss) (quotation omitted). In 1997, IRS did sue Arctic Cat on trade secret and fraud claims: first, in the District of Missouri, and later in the District of Colorado. But IRS did not assert any patent claims in either of those cases. The Colorado District Court ultimately granted summary judgment in favor of Arctic Cat and against IRS.

**B. Instant Case**

On March 28, 2001, Arctic Cat initiated this case, seeking a Declaratory Judgment for non-infringement and invalidity of the ‘803 and ‘374 Patents. On September 26, 2001, IRS filed Counterclaims against both Arctic Cat and Suzuki, alleging infringement of the ‘803 Patent. On the same date, IRS applied for a reissue of the ‘374 Patent with the United States Patent and Trademark Office.

The parties cross-moved for summary judgment, and this Court referred the matter to Magistrate Judge Erickson for his Report and Recommendation. Magistrate Judge Erickson ruled as follows on the eight motions before him:

1. Granted in part and denied in part Arctic Cat’s Motion for Partial Summary Judgment Based on Res Judicata and Legal Estoppel.

2. Denied Arctic Cat’s Motion for Partial Summary Judgment on Invalidity and Non-Infringement of the ‘374 Patent.

3. Denied Arctic Cat and Suzuki’s Motion for Summary Judgment on Champerty and Maintenance Grounds.

4. Denied IRS and Pacer’s Motion for Summary Judgment Concerning Obviousness Contentions on which Plaintiffs’ Experts Rendered No Opinion.

5. Denied IRS’s Motion for Summary Judgment that the Bench Systems Developed by Cuyuna Engine Company and Arctic Cat Do Not Anticipate Any Claim of the ‘803 Patent.

6. Denied Arctic Cat and Suzuki’s Motion for Summary Judgment on the Invalidity of the ‘803 Patent Under Title 35 U.S.C. § 102(b).

7. Denied Arctic Cat and Suzuki’s Motion for Summary Judgment Based on Equitable Estoppel and Laches.

8. Granted Arctic Cat’s Motion for Partial Summary Judgment on IRS’s Claims of Willful Infringement

9. Denied IRS's Motion for Partial Summary Judgment on Willfulness.

The Court shall adopt the findings and conclusions of the Report and Recommendation as its own, with the exception of number 7, above, regarding summary judgment based on equitable estoppel and laches.

## III. DISCUSSION

### A. Summary Judgment Standard

When considering motions for summary judgment, a court must determine "whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Palesch v. Mo. Comm'n on Human Rights, 233 F.3d 560, 565 (8th Cir. 2000). For these purposes, "[t]he non-moving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record," and "[t]he non-moving party may not merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial." Id. at 565-66 (citations omitted).

### B. Arctic Cat's Motion for Summary Judgment on Basis of Equitable Estoppel and Laches

Arctic Cat brings a motion for summary judgment based upon IRS's allegedly unreasonable delay in asserting claims of infringement against Arctic

Cat, pointing to IRS's lack of follow-through on its warnings, dating back to 1989, threatening litigation over the ‘071 Patent and its reissue: the ‘803 Patent.

**1. IRS's Prior Warnings and Litigation**

In an internal memorandum dated November 6, 1989, IRS employee Gary Divel wrote that he had warned Arctic Cat that he "had better not see, smell, or taste anything on the Suzuki EFI system that resembled IRS or [IRS] would have to get [its] lawyers involved." Nearly one year later, Divel wrote Arctic Cat's VP of Engineering, Roger Skime, offering to sell and license an IRS EFI system for use in Arctic Cat's snowmobiles. After Arctic Cat apparently declined IRS's offer, an IRS attorney mailed a letter, dated February 11, 1991, informing Skime that IRS was aware of Arctic Cat's attempts to develop and market its own EFI system, and asking Arctic Cat to "provide immediate confirmation that [its] EFI effort does not and will not implicate . . . reliance on any IRS proprietary technology."

Four years later, on February 7, 1995, IRS's counsel mailed another letter to Skime, informing him that IRS's

> examination and electronic testing of the engine's EFI system in the ARCTCO snowmobile, apparently also furnished by UNISIA JECS, indicates that the system, as installed on the engine in the snowmobile, infringes claim 1 of the original ‘701 patent, as well as the identical claim in the ‘803 reissue patent, and also infringes the additional broader claims, 2 [to] 4, in the ‘803 patent.
>
> . . .

> Be advised that IRS intends, not later than the conclusion of Polaris, et al. litigation, to bring suit against [Arctic Cat] for infringement of the '803 patent claims, and other causes of action based on the misuse by [Arctic Cat] of the information supplied by IRS in 1988 and 1989.

(Daley Decl. Exh. 2).

Nine months later, on December 22, 1995, Arctic Cat counsel Albert L. Underhill replied to IRS's letter. Underhill gave his opinion that Arctic Cat has not infringed IRS's patent rights, and he referred to another letter dated June 27, 1995, in which another Arctic Cat attorney advised that the law firm Merchant & Gould had reviewed the '701 Patent in 1991 and concluded that Arctic Cat's EFI system did not infringe upon that patent. IRS did not respond to Underhill's 1995 letter.

More than one year later, in February 1997, the United States District Court for the District of Colorado, in the Polaris Litigation, granted summary judgment against IRS, dismissing IRS's patent claims against Polaris, Fuji, and JECS. The Federal Circuit affirmed that decision in 1998. Injection Research Specialists, Inc. v. Polaris Indus., L.P., 168 F.3d 1320, 1998 WL 536585 (Fed. Cir. Aug. 13, 1998) (unpublished).

Also in 1997, IRS sued Arctic Cat, Suzuki, and JECS in the United States District Court for the District of Missouri with claims of trade secret misappropriation. In that suit, IRS did not include any claims for patent

infringement. Arctic Cat moved for dismissal for improper venue, IRS voluntarily dismissed the action, and the suit was re-filed in the District of Colorado. Again, IRS did not include any claims of patent infringement in this second suit. In 1998, the Colorado district court dismissed the trade-secret claims as barred under the statute of limitations. The Tenth Circuit affirmed that decision in 2000. Chasteen v. Unisia JECS Corp., 216 F.3d 1212 (10th Cir. 2000).

Because in the nearly ten years after IRS's initial 1991 communication regarding EFI systems, none of IRS's lawsuits included any claims alleging infringement of the '803 Patent, Arctic Cat claims that IRS's delay "lulled Arctic Cat and Suzuki into believing that IRS was not going to sue for infringement of the '803 patent." As such, Arctic Cat asserts that IRS's infringement claims regarding the '803 Patent are barred by the doctrines of laches and equitable estoppel.

**2. Laches**

**(a) Elements**

Laches is "an equitable defense to a claim for patent infringement." Aukerman, 960 F.2d at 1028; see 35 U.S.C. § 282. A defendant asserting a laches defense must demonstrate that "the plaintiff delayed filing suit an unreasonable and inexcusable length of time after the plaintiff knew or reasonably should have known of its claim against the defendant; and . . . the delay resulted in material prejudice or injury to the defendant." Wanlass v. Gen. Elec. Co., 148 F.3d 1334,

1337 (Fed. Cir. 1998) (quotation omitted); see Intertool, Ltd. v. Texar Corp., 369 F.3d 1289, 1297 (Fed. Cir. 2004). Although the length of time deemed "unreasonable and inexcusable" is not fixed, "a presumption of laches arises 'where a patentee delays bringing suit for more than six years after the date the patentee knew or should have known of the alleged infringer's activity.'" Intertool, 369 F.3d at 1297 (quotation omitted). The required "material prejudice" may be either economic or evidentiary. Wanlass, 148 F.3d at 1337.

While "equitable estoppel requires misrepresentation by the plaintiff and reliance on the misrepresentation by the alleged infringer," the claim of laches "focuses on the reasonableness of the plaintiff's delay." State Contracting & Eng'g Corp. v. Condotte Am., Inc., 346 F.3d 1057, 1065 (Fed. Cir. 2003) (internal quotations omitted).

If a presumption of laches arises, "the patentee may offer proof directed to rebutting the laches factors." Aukerman, 960 F.2d at 1038. "Such evidence may be directed to showing either that the patentee's delay was reasonable or that the defendant suffered no prejudice or both." Aukerman, 960 F.2d at 1038 (citations omitted). "By raising a genuine issue respecting either factual element of a laches defense, the presumption is overcome." Aukerman, 960 F.2d at 1038 (citation omitted). If the presumption is overcome through a genuine issue of material fact as to either delay or prejudice, a "defendant bears the ultimate burden of

persuasion of the affirmative defense of laches." Aukerman, 960 F.2d at 1038; see Hemstreet v. Computer Entry Sys. Corp., 972 F.2d 1290, 1295 (Fed. Cir. 1992).

**(b) Analysis**

**(1) Presumption of Unreasonable Delay and Prejudice**

The Report properly found that IRS is presumed to have unreasonably delayed in asserting its patent claims, which resulted in prejudice to Arctic Cat. The record contains substantial evidence demonstrating that IRS's delay was unreasonable. As early as 1990 and 1991, IRS's internal memoranda reveal its suspicions that Arctic Cat was infringing its patent rights. The '803 Patent was issued on December 9, 1994, and IRS's February 1995 letter to Arctic Cat asserted that Arctic Cat was infringing upon its patent rights and stated that IRS would pursue patent infringement litigation against Arctic Cat "not later than the conclusion of the Polaris litigation." But the Polaris Litigation was resolved through summary judgment in 1997, and affirmed in 1998, without IRS's bringing any claims of infringement. From the date of its 1995 letter, IRS waited a full six years before making its next infringement assertion, in a letter dated March 23, 2001. Even then, IRS did not file any infringement claims until seven months later, when it filed its Counterclaim [Docket. No. 29] on November 26, 2001, in response to Arctic Cat's Complaint. This delay in filing an infringement suit spanned nearly seven years: from December 9, 1994, (the '803 Patent's issuance date) to November 26, 2001. A delay of six years results in a presumption that the

delay was unreasonable. Intertool, Ltd. v. Texar Corp., 369 F.3d 1289, 1297 (Fed. Cir. 2004) (citing Aukerman, 960 F.2d at 1028). As a result, IRS's delay is presumed to be unreasonable, and Arctic Cat is presumed to have been prejudiced by that delay.

**(2) Reasonableness of IRS's Delay**

After a presumption of unreasonable delay is established, a patentee may defeat that presumption by offering evidence of an excuse or reason that "the delay was reasonable, even if such evidence may ultimately be rejected as not persuasive." Aukerman, 960 F.2d at 1038.

The Report concluded that the pendency of various events, including the Polaris Litigation, sufficiently "burst the bubble" of the presumption of unreasonable delay, shifting the burden back to Arctic Cat to establish its laches defense. See Aukerman, 960 F.2d at 1038; see also A.C. Aukerman Co. v. Miller Formless Co., 693 F.2d 697, 700 (7th Cir. 1982) ("Patentees have no obligation to sue all alleged infringers at the same time, but concern with litigation against one asserted infringer does not automatically excuse the patentee from delays in bringing suit against others") (citations omitted). Though a three-year delay is not generally unreasonable without "extraneous improper tactics or misleading conduct," IXYS Corp. v. Advanced Power Tech., Inc., 321 F. Supp. 2d 1156, 1163 (N.D. Cal. 2004) (citing MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d 1568,

1572 (Fed. Cir. 1989)), the Court concludes that IRS delayed for a much longer period.

The Federal Circuit has noted that "[t]he period of delay is measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of suit." Aukerman, 960 F.2d at 1032. Thus, the smallest appropriate measure of the delay is six years, beginning with IRS's February 1995 letter threatening litigation against Arctic Cat for alleged infringement of its '701 and '803 Patents. Even earlier, the '803 Patent was issued in December 1994, at which time IRS undisputedly "knew or reasonably should have known of" Arctic Cat's alleged infringing activities. See id. In fact, a strong argument may be made that IRS's delay was as long as ten years, beginning in February 1991, when IRS informed Arctic Cat that it was aware of the latter firm's development of an EFI system. But even taking the shortest measure, from IRS's February 1995 letter through its September 2001 infringement claims, IRS's delay spanned more than six years. The Court finds that Arctic Cat has satisfied its burden of demonstrating—through undisputed facts—that IRS's lengthy delay, coupled with its failure to plead any infringement claims in its prior litigation against Arctic Cat, was clearly unreasonable.

IRS contends that the following events show that its delay in filing an infringement claim was reasonable: (1) the pendency of the Polaris Litigation (from 1990 to 1998), (2) the trademark and trade secret litigation against Arctic

Cat (final appeal denied in July 2000), and (3) the '374 Patent application at the PTO (through September 29, 1998). The Court is not persuaded by this argument.

While it is true that a patentee is not compelled to sue all alleged infringers at the same time, "concern with litigation against one asserted infringer does not automatically excuse the patentee from delays in bringing suit against others." Aukerman, 960 F.2d at 700. A delay is inexcusable when a party demonstrates "protracted acquiescence" in asserting a claim, and that the opposing party relies upon that acquiescence. Tonka Corp. v. Rose Art Indus., Inc., 836 F. Supp. 200, 219 (D.N.J. 1993) (quotation omitted). IRS demonstrated such protracted acquiescence by its long delay in bringing patent infringement claims against Arctic Cat, even after IRS sued Arctic Cat on related trade-secret claims.

IRS continued litigating other claims without regard to the pending suits and patent applications that it now uses as an excuse for its inaction. For example, IRS did not wait until the 1998 conclusion of the Polaris Litigation before it initiated its 1997 trade secret suit against Arctic Cat. And IRS has provided no legal authority for its contention that its delay in filing an infringement claim until the completion of either its trade secret suit or the '374 Patent application was reasonable. Further, as the Report noted, IRS did not wait until the '374 Patent had issued before pursuing and litigating infringement claims against Polaris, Fuji, and JECS.

As the above demonstrates, Arctic Cat has borne its burden of demonstrating, through undisputed facts, that IRS unreasonably delayed in bringing infringement claims. IRS's 1995 letter threatening Arctic Cat with patent infringement litigation, coupled with IRS's failure to include—or even mention—any infringement claim in its 1997 suit against Arctic Cat, corroborated the reasonable conclusion that all infringement claims against Arctic Cat had been abandoned. As such, IRS's failure to bring an infringement claim until September 2001 is the type of "protracted acquiescence" that constitutes an unreasonable delay under a laches analysis.

**(3) Prejudice**

The Report concluded that prejudice was present for the purposes of the laches defense. As applied to laches, prejudice may be either evidentiary or economic, but the prejudice must have been caused by delay. State Contracting & Eng'g Corp. v. Condotte Am., Inc., 346 F.3d 1057, 1065 (Fed. Cir. 2003). The Report properly concluded that economic prejudice was not present, but it found numerous examples of evidentiary prejudice.

> Evidentiary, or "defense" prejudice, may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts.

Aukerman, 960 F.3d at 1033 (citations omitted).

The Court agrees with the Report's conclusion that evidentiary prejudice was present in light of the following evidence: (1) IRS instructed its expert to destroy a file, (2) over 100 boxes of documents possessed by IRS's law firm were destroyed in 2002, (3) the file of one of the patent prosecuting attorneys is missing, (4) William O'Meara's inventor notebook is missing, (5) Chasteen's original prototype EFI system is missing, and (6) several witnesses have forgotten relevant and material facts. (Report at 149). As the Report noted, the destruction of documents by IRS and its attorneys may be sanctionable conduct. See Wanlass v. Gen. Elec. Co., 148 F.3d 1334, 1337 (Fed. Cir. 1998) (affirming that evidentiary prejudice may arise "as a result of unavailable or deceased witnesses and lost or destroyed documents and prototypes"). The Court agrees that the above provides ample evidence of evidentiary prejudice, and that this prejudice supports Arctic Cat's contention that laches applies here.

Because the undisputed evidence demonstrates that IRS unreasonably delayed in filing an infringement claim after it knew or reasonably should have known of its claim against the Arctic Cat, and because that delay resulted in material prejudice to Arctic Cat, the Court finds that the laches applies here.

**3. Equitable Estoppel**

The Court shall next analyze Arctic Cat's claim that IRS is subject to equitable estoppel for its delay in bringing infringement claims. The Federal Circuit defines equitable estoppel as "an equitable defense to infringement [that]

may serve as an absolute bar to a patentee's claim of infringement." Scholle Corp. v. Blackhawk Molding Co., 133 F.3d 1469, 1471 (Fed. Cir. 1998) (citation omitted). Any party who raises the defense of equitable estoppel must prove the following three elements:

> (1) The [patentee], who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. (2) The [alleged infringer] relies upon that communication. (3) And the [alleged infringer] would be harmed materially if the [patentee] is later permitted to assert any claim inconsistent with his earlier conduct.

Vanderlande Indus. Nederland BV v. I.T.C., 366 F.3d 1311, 1324 (Fed. Cir. 2004) (modifications in original) (quotation omitted).

**(a) Misleading Words, Conduct, or Silence**

Under the first element of estoppel, a patentee must "misleadingly suggest[] that the patent holder will not assert its rights." Vanderlande, 366 F.3d at 1324. This element most commonly occurs when a patentee specifically objects to allegedly infringing activities but does not follow up for years, resulting in "misleading inaction." A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1042 (Fed. Cir. 1992) (citation omitted). The Report correctly found that the undisputed facts demonstrate IRS's misleading activity under this most common situation.

IRS had warned Arctic Cat of its infringement allegations through February 1995, but it then remained in complete silence for six years until 2001, when IRS

filed its first infringement claims in the instant suit. The February 1995 letter threatened Arctic Cat with an infringement suit by "no[] later than the conclusion of Polaris, et al. litigation," which was resolved in February 1997 by a summary judgment that was affirmed on appeal in December 1998. Despite this threatened deadline for bringing an infringement suit, IRS did not act, but it instead waited until 2001 before filing any such claims.

Magistrate Erickson correctly notes that, unlike a laches defense, IRS's delay is not required for asserting an equitable estoppel defense, although "[d]elay in filing suit may be evidence which influences the assessment of whether the patentee's conduct is misleading." A.C. Aukerman Co., 960 F.2d at 1042; see also Wafer Shave, Inc. v. Gillette Co., 857 F. Supp. 112, 120 (D. Mass. 1993) (finding litigation threat became misleading when followed by nearly four years without reasserting infringement claim). The Report properly concludes that IRS's six-year delay constituted misleading conduct under Aukerman.

The Report further notes that counsel for Arctic Cat had written several letters to IRS, rebutting the infringement charges, but IRS provided no response. Hemstreet v. Computer Entry Sys. Corp., 972 F.2d 1290, 1295 (Fed. Cir. 1992) (holding communication places onus on other party to respond); see also Advanced Hydraulics, Inc. v. Otis Elevator Co., 525 F.2d 477, 480 (7th Cir. 1975) (holding patent holder had "virtual duty" to respond to alleged infringer's letter denying infringement). Again, Magistrate Erickson correctly concludes that IRS's

nonresponse provides "the reasonable inference . . . that IRS had abandoned its infringement claims." (Report at 122).

Magistrate Erickson also properly notes that IRS's 1995 letter referred to Arctic Cat's use of JECS's EFI systems, which in the Polaris Litigation eventually became the subject of IRS's covenant not to sue JECS. The Court agrees with the Report's conclusion that because the Polaris Litigation's covenant not to sue extended to JECS's customers (which included Arctic Cat and Suzuki), that covenant also bolstered the inference that IRS had abandoned its infringement claims against Arctic Cat.

Finally, the Report properly rejects IRS's argument that although it intended to bring patent infringement claims—in addition to its trade secret claims—in the second Colorado case, the defendants were granted summary judgment too quickly for them to do so. IRS also uses the '374 Patent and reissue applications as an excuse for not filing an infringement claim. But Magistrate Erickson correctly concluded that IRS's reasons for its delay were immaterial for estoppel purposes because—regardless of IRS's personal intentions—it is undisputed that IRS did not ever communicate those reasons to Arctic Cat or Suzuki. See Wafer Shave, 857 F. Supp. at 121 (holding patent holder's inaction was misleading because reasons for delay were not communicated to, or known by, the alleged infringer).

In light of IRS's six-year delay in filing suit, its nonresponse to Arctic Cat's letters asserting non-infringement, its covenant not to sue JECS and its customers, and its two intervening lawsuits against Arctic Cat and Suzuki that did not include infringement claims, the Report correctly concludes that IRS engaged in "misleading conduct" for the purposes of equitable estoppel.

**(b) Reliance**

The second factor in an estoppel analysis, reliance, requires an accused infringer to demonstrate that it (1) knew of the patent holder's claims, (2) was misled into believing that those claims would not be asserted, and (3) substantially relied on that misleading conduct in taking some action. See Aukerman, 960 F.2d at 1042-43, ABB Robotics, 52 F.3d at 1398. "Reliance is not the same as prejudice or harm, although frequently confused." Id. at 1043. The Federal Circuit, in Aukerman, provides the following illustrative example, which distinguishes reliance from prejudice or harm:

> An infringer can build a plant being entirely unaware of the patent. As a result of infringement, the infringer may be unable to use the facility. Although harmed, the infringer could not show reliance on the patentee's conduct. To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security in going ahead with building the plant.

Id. "The fact that an alleged infringer failed to take affirmative actions to protect itself from an infringement lawsuit is evidence of its reliance." Forest Labs., Inc. v.

Abbott Labs., No. 96-CV-159-A, 1999 WL 33299123, at *8 (W.D.N.Y. June 23, 1999) (unpublished) (citing ABB Robotics, Inc. v. GMFanuc Robotics Corp., 828 F. Supp. 1386, 1398-1400 (E.D. Wis. 1993), aff'd, 52 F.3d 1062 (Fed. Cir. 1995); Wafer Shave, Inc. v. Gillette Co., 857 F. Supp. 112, 124 (D. Mass. 1993), aff'd without op., 26 F.3d 140 (Fed. Cir. 1994)). Thus, for Arctic Cat to show reliance, it must show that it communicated with IRS and that this communication resulted in Arctic Cat's action or inaction.

Arctic Cat's reliance on IRS's inaction is demonstrated by its investment in, and continued sales of, EFI snowmobiles between August 1997 and March 2001. The Court disagrees with the conclusion that Arctic Cat's conduct actually constitutes prejudice or harm, rather than the reliance necessary to demonstrate equitable estoppel. Referring to the above-quoted example in Aukerman, the Report concluded that Arctic Cat's continued sales of the EFI snowmobiles is merely akin to "building the plant" and continuing the same course as before it was notified of IRS's infringement claims. The Report indicates that to demonstrate reliance, rather than merely continuing its prior behavior, Arctic Cat would have had to show that it's behavior somehow changed. The court respectfully disagrees with this conclusion.

It is true that for a defendant to demonstrate prejudice in a laches analysis, it must explicitly prove a "nexus to the patentee's delay in filing suit" and a defendant's expenditures into a technology. Hemstreet v. Computer Entry Sys.

Corp., 972 F.2d 1290, 1294 (Fed Cir. 1992). Arctic Cat has demonstrated the required nexus between IRS's delay and its investment in EFI systems.

The Court finds no authority supporting the contention that establishing "reliance" under equitable estoppel would have, in essence, required Arctic Cat to stop its sales of EFI snowmobiles prior to the misleading conduct, and then resume sales at some time thereafter. Rather, Arctic Cat convincingly contrasts its continued expansion of its EFI line with Aukerman's hypothetical example of "building the plant." The infringer in that example was unaware of the patentee's claims as it went forward with building the plant; in contrast, it is clear that Arctic Cat was fully aware of IRS's patent and its apparently abandoned infringement claims as it continued to sell and invest in the allegedly infringing snowmobiles. Further, as the Report had previously concluded, "IRS's conduct . . . lulled Arctic Cat . . . into believing that IRS's claims of infringement had been abandoned." (Report at 142). IRS's "lulling" conduct included its six years of silence and its commencement of trade secret litigation against Arctic Cat without including any infringement claims. Thus, Arctic Cat's belief that the infringement claims had been abandoned, while continuing its expanded sales of its EFI-equipped snowmobiles, satisfy Aukerman's requirement that a party alleging reliance must "substantially rel[y] on the misleading conduct of the patentee in connection with taking some action." Aukerman, 960 F.2d at 1043.

At least one district court has similarly held that continuing allegedly infringing sales—like those here—constitutes reliance, where a patent holder "was undoubtedly aware that [the alleged infringer] was continuing to invest heavily in the sale of products that [the patent holder] now alleges violate the . . . patent." Wafer Shave, Inc. v. Gillette Co., 857 F. Supp. 112, 121 (D. Mass. 1993) (emphasis added). The Wafer Shave court did not require a **change** in the alleged infringer's behavior, but the court instead noted the alleged infringer's continued sales of allegedly infringing products and its being led to believe that the patent holder had abandoned all infringement claims. See id. at 121, 123. The Wafer Shave court also noted, in finding reliance, that the alleged infringer ceased to consider the patent holder's claim as an issue, much in the same way that Arctic Cat ceased to consider IRS's claims as an issue as it continued to produce EFI snowmobiles. See id. at 123.

The Federal Circuit has held that the reliance element is satisfied by presenting the conduct of the parties, coupled with the patent holder's lulling the potential infringer into a sense of security that it would not bring an infringement suit. See ABB Robotics, Inc. v. GMFanuc Robotics Corp., 52 F.3d 1062, 1064 (Fed. Cir. 1995). The Federal Circuit, in ABB Robotics, dismissed the argument that the trial court went through the improper analysis of whether the alleged infringer "could have relied" on the misleading silence; rather, the Federal Circuit held that

the trial court properly analyzed whether there was "actual" reliance. Id. The court elaborated as follows:

> From its opinion, it is clear that the trial court did not consider abstract theoretical possibilities, but rather, looked at the conduct of the parties and decided that [the alleged infringer] had a relationship with [the patentee] that lulled [the alleged infringer] into a sense of security that it would not be sued.

Id. (citation omitted). As such, the Federal Circuit concluded that "the only possible inference from the record is that [the patentee] would leave [the alleged infringer] unmolested." Id. In the same way, Arctic Cat has demonstrated not only that the only possible inference from IRS's years of silence and its omission of infringement claims from its trade-secret suit was that IRS would not bring such claims against it, but also that Arctic Cat ***did***, in fact, rely upon that misleading behavior to its detriment.

In addition to demonstrating its continued expansion of its EFI line, Arctic Cat has established that it made decisions and relinquished opportunities as a result of being misled that IRS had abandoned its infringement claim. Other cases finding a lack of reliance have noted that the alleged infringer "failed to provide any evidence at all" of reliance on the misleading conduct, Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548 (Fed. Cir. 1996), or that the alleged infringer "totally failed to show that he acted in reliance" because he "did not establish that he would have acted differently under other circumstances." Gasser Chair Co., Inc. v.

Infanti Chair Mfg. Corp., 60 F.3d 770, 777 (Fed. Cir. 1995); see also Hemstreet v. Computer Entry Sys. Corp., 972 F.2d 1290 (Fed. Cir. 1992) (noting "a total absence in the record of any showing" that the infringer's activities "were in reliance upon supposed actions of [the patent holder], rather than a business judgment of its own").

In contrast to the above cases, Arctic Cat provides sufficient evidence that while considering IRS's apparent abandonment of its infringement claims, it has passed up the opportunity for alternative fuel delivery and fuel injection systems, as well as other EFI systems. (Daley Decl. Exh. 26 at 23-26). Further, the record shows that, while Arctic Cat believed that IRS had abandoned its infringement claims, it continued to sell EFI-equipped snowmobiles. (See Daley Decl. Exh. 26 at 36-38). In this way, Arctic Cat is more like to the alleged infringers in Forest Laboratories, who "failed to insulate themselves from [the patentee's] infringement claims and, instead, continued to invest heavily" in the accused product—all of which demonstrated the alleged infringer's "strong proof of reliance." Forest Labs., Inc. v. Abbott Labs., No. 96-CV-159-A, 1999 WL 33299123, at *19 (W.D.N.Y. June 23, 1999) (unpublished), aff'd 239 F.3d 1305 (Fed Cir. 2001). Summary judgment on equitable estoppel grounds is similarly appropriate where an alleged infringer demonstrates its heavy investment in the device after no suit is filed. Gossen Corp. v. Marley Mouldings, 977 F. Supp. 1346, 1355 (E.D. Wis. 1997). Here, Arctic Cat representatives stated that "the absence

of a claim [from IRS] affected our decision," that the company "didn't see [the IRS litigation] as anything active," and that if IRS's litigation had been active, Arctic Cat "would have at least considered that." (Daley Decl. Ex. 26, 36-40). All of the above demonstrates Arctic Cat's reliance on IRS's misleading conduct.

For the reasons explained above, the Court declines to adopt the portion of the Report finding that Arctic Cat did not rely upon IRS's misleading silence. The Court concludes that the record contains no genuine material fact disputing that Arctic Cat was misled, through IRS's six years of inaction, into believing that IRS had abandoned its claims of patent infringement, and that Arctic Cat satisfied the reliance prong by demonstrating the nexus between its being misled and its continuing to invest heavily in EFI systems while foregoing the opportunity to use alternative technologies.

**(c) Material Harm or Prejudice**

Because the Report found that reliance was not present, it did not reach the question of whether prejudice was present for the purposes of equitable estoppel. The analysis for prejudice under equitable estoppel is the same as that under laches, as analyzed above. See Aukerman, 960 F.2d at 1043 ("As with laches, the prejudice may be a change of economic position or loss of evidence.") (citation omitted). For the reasons outlined by this memorandum in its analysis of laches, the Court finds that Arctic Cat has sustained evidentiary prejudice for the purposes of equitable estoppel.

**(d) Conclusion as to Equitable Estoppel**

Because the undisputed evidence demonstrates that IRS engaged in misleading activities through its inaction spanning over six years, because Arctic Cat has shown that it relied upon IRS's misleading inaction and silence, and because Arctic Cat has demonstrated material harm and evidentiary prejudice, the doctrine of equitable estoppel applies to IRS's infringement claims.

**4. Extension of Equitable Estoppel and Laches to Suzuki, as Arctic Cat's Privy.**

Because the Report denied Arctic Cat's and Suzuki's motion for summary judgment on the grounds of equitable estoppel and laches, it did not reach IRS's argument that, even if the defenses of equitable estoppel or laches apply to Arctic Cat, they do not apply to Suzuki. In light of the Court's conclusion that equitable estoppel and laches benefit Artic Cat, the Court will next determine whether those benefits extend to a third party such as Suzuki.

In response to IRS's argument that Suzuki must prove its own estoppel defense, Arctic Cat and Suzuki contend that estoppel operates to both a party to a transaction (e.g., Arctic Cat) and to its privies (e.g., Suzuki). See 31 C.J.S. *Estoppel & Waiver* § 158; 28 AM. JUR. 2D *Estoppel & Waiver* § 128 ("Persons to whom a representation is made or who are intended to be influenced, and their privies, may take advantage of an estoppel."). Several cases have applied this principle to intellectual property disputes. E.g., Jamesbury Corp. v. Litton Indus.

Prods., Inc., 839 F.2d 1544 (Fed. Cir. 1988) (holding that estoppel defense in patent infringement case may be asserted by a "successor in interest"), overruled on other grounds by A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020 (Fed. Cir. 1992); Hayden v. Chalfant Press, Inc., 177 F. Supp. 303, 308 (S.D. Cal. 1959) (holding estoppel in copyright case benefited both printer and third-party publisher); see also Nat'l Football League v. Rondor, Inc., 840 F. Supp. 1160, 1167-68 (N.D. Ohio 1993) (noting in copyright case that estoppel extends to both parties "and their privies").

The Hayden case is particularly apposite. The patentee in that case was aware of allegedly infringing acts, but because that patentee created a misleading delay in asserting its rights, the resultant estoppel benefited both the defendant and "those in privity with him or who claim under him, whether as assignees or not." Hayden, 177 F. Supp. at 308 (footnote omitted). Further, the Hayden court noted that "[a]ll that is necessary [for the extension of estoppel] is that the relationship be created 'after the event out of which the estoppel arises.'" Id. (quotation and citations omitted).

In the same way, because Arctic Cat is entitled to estoppel for its detrimental reliance upon IRS's misleading conduct, Suzuki is similarly entitled to the benefits of estoppel as Arctic Cat's engine supplier. It would not follow that Arctic Cat may benefit from the estoppel regarding EFI systems, but that its manufacturer of those EFI systems—and privy in contract—would not receive the

same benefit. Further, Arctic Cat and Suzuki went forward with their contractual arrangement "after the event out of which the estoppel arises," which here was IRS's continued misleading conduct. See Hayden, 177 F. Supp. at 308. Because Arctic Cat and Suzuki sold and continued to invest heavily in EFI snowmobiles after IRS's misleading conduct began, and because Suzuki is Arctic Cat's privy in contract for its EFI engines, Arctic Cat's defenses of equitable estoppel and laches similarly extend to Suzuki.

### C. Arctic Cat and Suzuki's Motion for Leave to File Memorandum to Inform the Court of Recent Federal Circuit Precedent on Willful Infringement

On September 27, 2004, Arctic Cat and Suzuki filed a motion to file a memorandum outlining the Federal Circuit's decision in Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337 (Fed. Cir. 2004). In light of the extensive briefing on the issues in this case, as well as IRS's persuasive argument that the memorandum is an improper sur-reply not permitted under the Local Rules, the Court shall deny Arctic Cat and Suzuki's motion. Of course, this ruling does not imply that the Court has failed to consider the Federal Circuit's guidance in Knorr-Bremse. Rather, the Court has carefully considered the implications of this new and binding precedent when conducting its de novo review of the Report's willfulness and willful-infringement analysis. Guided by Knorr-Bremse, the Court arrives at the same conclusion that Arctic Cat is properly granted partial summary judgment on IRS's claims of willful infringement, and

that IRS and Pacer's Motion for Partial Summary Judgment on Willfulness [Docket No. 457] is properly denied.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Report and Recommendation [Docket No. 646] filed by United States Magistrate Judge Raymond L. Erickson is hereby **ADOPTED IN PART AND MODIFIED IN PART** as set forth below:

    a. The Court modifies the discussion of IRS and Arctic Cat's Motion for Summary Judgment Based on Equitable Estoppel and Laches, Section III(G) of the Report and Recommendation, as set forth in this opinion to conclude that the doctrines of laches and equitable estoppel apply to the undisputed facts here.

    b. The Court adopts the remainder of the Report and Recommendation in its entirety.

2. Arctic Cat and Suzuki's Motion for Partial Summary Judgment Based on Res Judicata and Legal Estoppel [Docket No. 401] is **DENIED, IN PART, AND GRANTED, IN PART**, as detailed in the Report and Recommendation [Docket No. 646].

3. Arctic Cat's Motion for Partial Summary Judgment on Invalidity and Non-Infringement of the '374 Patent [Docket No. 429] is **DENIED**.

4. Arctic Cat and Suzuki's Motion for Summary Judgment on Champerty and Maintenance Grounds [Docket No. 435] is **DENIED**.

5. IRS and Pacer's Motion for Summary Judgment Concerning Obviousness Contentions on which Plaintiffs' Experts Rendered No Opinion [Docket No. 443] is **DENIED**.

6. IRS and Pacer's Motion for Summary Judgment that the Bench Systems Developed by Cuyuna Engine Company and Arctic Cat Do Not Anticipate Any Claim of the '803 Patent [Docket No. 446] is **DENIED**.

7. Arctic Cat and Suzuki's Motion for Summary Judgment on Invalidity of the '803 Patent Under Title 35 U.S.C. § 102(b) [Docket No. 449] is **DENIED**.

8. Arctic Cat's Motion for Partial Summary Judgment on IRS's Claims of Willful Infringement [Docket No. 452] is **GRANTED**.

9. IRS and Pacer's Motion for Partial Summary Judgment on Willfulness [Docket No. 457] is **DENIED**.

10. Arctic Cat and Suzuki's Motion for Summary Judgment on the Basis of Equitable Estoppel and Laches [Docket No. 464] is **GRANTED**.

11. Arctic Cat and Suzuki's Motion for Leave to File Memorandum to Inform the Court of Recent Federal Circuit Precedent on Willful Infringement [Docket No. 678] is **DENIED**.

Dated: March 8, 2005

s/ Michael J. Davis
Judge Michael J. Davis
United States District Court