**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

ARCTIC CAT INC.,
a Minnesota corporation,

Plaintiff,

v.

INJECTION RESEARCH SPECIALISTS, INC., a Colorado corporation, and PACER INDUSTRIES, INC., a Missouri corporation,

Defendants.

INJECTION RESEARCH SPECIALISTS, INC., a Colorado corporation, and PACER INDUSTRIES, INC., a Missouri corporation,

Counterclaimants,

v.

ARCTIC CAT INC., a Minnesota corporation, and SUZUKI MOTOR CORPORATION, a Japanese corporation,

Counterclaim Defendants.

Civil Action No. 01-CV-543 (MJD/RLE)

Hon. Michael J. Davis
Hon. Raymond L. Erickson (Magistrate)

**ARCTIC CAT'S AND SUZUKI'S RESPONSE TO IRS'S OBJECTIONS TO MAGISTRATE JUDGE ERICKSON'S REPORT AND RECOMMENDATION OF FEBRUARY 18, 2005**

**TABLE OF CONTENTS**

Page


INTRODUCTION ....1

FACTUAL BACKGROUND ....3

ARGUMENT ....4

I. MAGISTRATE JUDGE ERICKSON CORRECTLY RECOMMENDED GRANTING SUMMARY JUDGMENT OF NO INFRINGEMENT BY THE SUZUKI ENGINES AND ARCTIC CAT SNOWMOBILES THAT EMPLOY COMPUTED INJECTION TIMING ....4

A. Magistrate Judge Erickson Correctly Recommended Construing the Claims as Requiring Injection Timing Whereby "Injection Occurs When the Timing Sensing Means Senses a Cyclically Repeating State of the Engine" and as Excluding "Computed" Injection Timing ....4

1. This Court Should Give Preclusive Effect to the *Polaris* Court's Ruling That the Timing Sensing Means Operates to Cause Injection "at the Same Predetermined Point in Time During an Engine Cycle for Each Engine Cycle" ....4

2. An Independent Analysis of the Patent Claims, Specification, and Prosecution History Shows That the Claims Must Be Construed as Excluding Injection Timing That Is Computed from Instantaneous Engine Operating Conditions ....6

B. Magistrate Judge Erickson Correctly Recommended Granting Summary Judgment of No Infringement by the Suzuki Engines and Arctic Cat Snowmobiles That Employ Computed Injection Timing ....12

1. IRS Has Identified No Disputed Issues of Fact Underlying the Infringement Analysis ....12

2. IRS Has Failed to Present Facts That Would Permit a Finding of Infringement Under the Doctrine of Equivalents ....14

II. MAGISTRATE JUDGE ERICKSON CORRECTLY RECOMMENDED CONSTRUING THE CLAIMS AS REQUIRING FUEL INJECTION IN EACH AND EVERY ENGINE CYCLE ....15

A. This Court Should Give Preclusive Effect to the *Polaris* Court's Ruling That the Claims Require Fuel Injection in Each and Every Engine Cycle ....15

B. An Independent Analysis of the Patent Claims, Specification, and Prosecution History Shows That the Claims Must Be Construed as Requiring Fuel Injection in Each and Every Engine Cycle ....................................16

III. MAGISTRATE JUDGE ERICKSON RECOMMENDED CORRECT CONSTRUCTIONS FOR THE "PRIMING" AND "FUEL PUMP CONTROL" ELEMENTS OF CLAIM 1 ..........................................................19

CONCLUSION..........................................................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*Bell Communications Research, Inc. v. Vitalink Communications Corp.*,
55 F.3d 615 (Fed. Cir. 1995)....................13

*Chasteen v. Unisia JECS Corp.*,
216 F.3d 1212 (10th Cir. 2000) ....................3

*Ferguson Beaureg/Logic Controls Division of Dover Resources, Inc.*,
350 F.3d 1327 (Fed. Cir. 2003)....................1

*Jake's Ltd., Inc. v. City of Coates*,
176 F. Supp. 2d 899 (D. Minn. 2001)....................11

*Jaurequi v. Carter Manufacturing Co.*,
173 F.3d 1076 (8th Cir. 1999) ....................15

*Johnson & Johnston Associates, Inc. v. R.E. Service Co.*,
285 F.3d 1046 (Fed. Cir. 2002)....................18

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995)....................2

*Neomagic Corp. v. Trident Microsystems, Inc.*,
287 F.3d 1062 (Fed. Cir. 2002)....................1

*Omega Engineering, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003)....................2

*Phillips v. AWH Corp.*,
363 F.3d 1207 (Fed. Cir. 2004)....................2

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
378 F.3d 1396 (Fed. Cir. 2004)....................1

*Resolution Trust Corp. v. Juergens*,
965 F.2d 149 (7th Cir. 1992) ....................11

*Spring Window Fashions L.P. v. Novo Industrial, L.P.*,
323 F.3d 989 (Fed. Cir. 2003)....................3, 18

*Storage Tech. Corp. v. Cisco Systems Inc.*,
329 F.3d 823 (Fed. Cir. 2003)....................15

## FEDERAL STATUTES

35 U.S.C. § 112, ¶ 6 .......................................................................................... 7, 17, 19, 20

FED. R. CIV. P. 56(e) .......................................................................................................... 14

## INTRODUCTION

IRS's and Pacer's (hereinafter "IRS") objections to Magistrate Judge Erickson's February 18, 2005 Report and Recommendations are based almost entirely on his reliance on the claim construction rulings issued in the *Polaris* litigation. IRS argues that issue preclusion should not apply to the *Polaris* rulings, and that it should be permitted to relitigate claim construction in this case. Its justifications for this "do-over" reduce to three contentions: (i) "the issues in the two cases are not identical," (ii) "no final judgment was entered concerning the *Polaris* claim construction," and (iii) "IRS did not have a full and fair opportunity to litigate." None of these arguments withstands scrutiny.

IRS argues that the "issues" in this case are not identical to the issues in the *Polaris* case, but it identifies differences only in the *accused products*, not in the *meaning of the claims*. This distinction is critical. An infringement analysis requires two steps – first, the claims must be construed, and second, the accused products and construed claims must be compared to decide infringement.[1] Differences between Arctic Cat and Polaris products bear only on infringement, not on claim meanings. Indeed, the Federal Circuit has cautioned repeatedly that accused products cannot be used to construe claims.[2] And although accused products may change from one case to the next, claim meanings do not. Thus, IRS cannot avoid issue preclusion from the *Polaris* claim constructions by pointing to differences in the accused products.

IRS's argument that no final judgment was entered in the *Polaris* case is a repeat of an argument that has been rejected three times in this case – twice by Magistrate Judge Erickson in his August 6, 2004 and February 18, 2005 Reports, and once by this Court in its March 8, 2005

---

1 *See, e.g., Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406 (Fed. Cir. 2004).

2 *See Ferguson Beaureg/Logic Controls Div. of Dover Resources, Inc.*, 350 F.3d 1327, 1340 (Fed. Cir. 2003); *Neomagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) ("It is well settled that claims may not be construed by reference to the accused products.").

ruling, in adopting the Magistrate Judge's conclusion that the *Polaris* Summary Judgment Order became a final judgment no later than August 28, 1997, when the *Polaris* court dismissed IRS's patent claims with prejudice. That ruing was correct and is now the law of the case.

IRS's third argument is premised on the illogical proposition that a party can unilaterally deny itself a "full and fair opportunity to litigate." IRS admits it made a strategic choice not to appeal the claim constructions and noninfringement rulings in the *Polaris* case, choosing instead to dismiss its patent claims with prejudice and to defend its trade secret judgment. Thus, IRS had every opportunity to litigate claim construction in that case, but it chose not to challenge the district court's ruling. IRS's allegation that "the *Polaris* court did not grasp important technical issues" (an allegation that Magistrate Judge Erickson rejected) is really a complaint that the *Polaris* court rejected IRS's infringement position – not a showing that IRS did not have a fair opportunity to litigate claim construction. IRS does not deny it was given a fair opportunity to present its best evidence on these "technical issues." Nor does IRS deny it could have appealed on this ground, but chose not to do so.

Finally, IRS's argument that "Federal Circuit law on claim construction has changed dramatically" since the *Polaris* decision is baseless. The *Polaris* court cited the Federal Circuit's seminal *Markman* decision for the bedrock proposition that the meaning of claims "is determined by looking [at] the claims, the specifications contained in the patent, and the prosecution history."[3] This remains the law.[4] IRS argues that the claim language must be given its "plain meaning" unless "the patentee has demonstrated a clear intention to limit the claim scope."[5] But

---

[3] Dkt. 249, Decl. Supporting Opening *Markman* Br., Ex. 4, *Polaris* Order dated Feb. 11, 1997 at 2 (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)).

[4] *See, e.g.*, *Phillips v. AWH Corp.*, 363 F.3d 1207, 1213 (Fed. Cir. 2004); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323-24 (Fed. Cir. 2003).

[5] Dkt. 695, IRS's Objections at 26-27.

the law was essentially the same in 1997, as evidenced by the *Polaris* court's description of the law in a statement that mirrors IRS's own words: "The words used in the claims are given their ordinary meaning as understood by one of ordinary skill in the art unless a contrary intent was manifested by the patentee."[6] Lastly, IRS contends that arguments made during prosecution cannot act as disclaimers if, based on a *post hoc* review, they might have been broader than needed to distinguish the prior art. That simply is not the law.[7] In short, Judge Weinshienk applied law in the *Polaris* case that is virtually unchanged today, and Magistrate Judge Erickson properly applied issue preclusion based in this case on the *Polaris* claim interpretations.

**FACTUAL BACKGROUND**

Magistrate Judge Erickson's August 6, 2004 and February 18, 2005 Reports provide a thorough discussion of the factual background needed to review his Recommendations. IRS's attempt to recast the prior rulings to its advantage is a distortion of the record. For example, IRS suggests that the Tenth Circuit has already ruled that Arctic Cat and Suzuki wrongfully acquired EFI technology from IRS. But the Tenth Circuit affirmed a *summary judgment* ruling that IRS's claim was barred by the statute of limitations, and the court expressly acknowledged that the standard of review required it to "view[] the evidence and draw[] reasonable inferences therefrom in a light most favorable to the non-moving party."[8] Moreover, both quotes cited by IRS are taken out of context. In both instances, the court was describing what IRS believed in 1994, not adjudicating what IRS alleged in the litigation.[9]

---

6 Dkt. 249, Decl. Supporting Opening *Markman* Br., Ex. 4, *Polaris* Order dated Feb. 11, 1997 at 2.

7 *See, e.g.*, *Spring Window Fashions L.P. v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) ("If the applicant mistakenly disclaimed coverage of the claimed invention, then the applicant should have amended the file to reflect the error, as the applicant is the party in the best position to do so.").

8 *Chasteen v. Unisia JECS Corp.*, 216 F.3d 1212, 1216 (10th Cir. 2000).

9 *Id.* at 1218-19. IRS defended against the statute of limitations defense by contending that it had no reason to believe in 1994 that it had a trade secret claim against Arctic Cat and Suzuki. *Id.*

## ARGUMENT

### I. MAGISTRATE JUDGE ERICKSON CORRECTLY RECOMMENDED GRANTING SUMMARY JUDGMENT OF NO INFRINGEMENT BY THE SUZUKI ENGINES AND ARCTIC CAT SNOWMOBILES THAT EMPLOY COMPUTED INJECTION TIMING

#### A. Magistrate Judge Erickson Correctly Recommended Construing the Claims as Requiring Injection Timing Whereby "Injection Occurs When the Timing Sensing Means Senses a Cyclically Repeating State of the Engine" and as Excluding "Computed" Injection Timing

##### 1. This Court Should Give Preclusive Effect to the *Polaris* Court's Ruling That the Timing Sensing Means Operates to Cause Injection "at the Same Predetermined Point in Time During an Engine Cycle for Each Engine Cycle"

Magistrate Judge Erickson properly concluded that the *Polaris* court interpreted the "timing sensing means" as operating to cause injection "at the same predetermined point in time during an engine cycle for each cycle." This follows from a claim interpretation *urged by IRS* and adopted by Judge Weinshienk in the *Polaris* case.

As Magistrate Judge Erickson recognized, this claim interpretation issue raises the question of "when" in the engine cycle, fuel injection takes place. More particularly, this claim interpretation issue raises the question of whether fuel injection takes place when the "timing sensing means" generates a "timing signal" (*i.e.*, is "fixed" to occur upon generation of the timing signal) or whether the timing signal is simply a reference point that can be used to calculate when to inject fuel into the engine.[10]

IRS argues that the *Polaris* court did not decide that injection must be "fixed" to occur upon generation of the timing signal.[11] Both parties in the *Polaris* case, however, accepted that fuel injection was "fixed" to take place when the timing signal was generated. Indeed, IRS's

---

[10] Although the *Polaris* court did not directly interpret the '803 patent claims as excluding computed injection timing, it did interpret the timing sensing means and control signal means elements.

[11] Dkt. 695, IRS's Objections at 7.

arguments and the *Polaris* court's decision were dependent upon this interpretation. As a result, issue preclusion should estop IRS from taking the opposite position in this case.

The accused infringers in the *Polaris* case argued that the claims of the '803 patent require "nonvariable" injection timing, *i.e.*, injection that occurs at the same crankshaft angle in each engine cycle.[12] They based this argument on the claim language requiring the "timing sensing means" to sense "each occurrence of a predetermined cyclically repeating state of [the] engine and [provide] a timing signal indicative thereof." According to the accused infringers, a "cyclically repeating state of the engine" meant "the same crankshaft angle."

IRS responded that the "timing sensing means" was not so limited and that injection could occur at varying crankshaft angles. To support its interpretation, IRS pointed to an example in the '803 patent specification where the "timing sensing means" sensed ignition, and ignition served as the "predetermined cyclically repeating state of the engine."[13] Because the crankshaft angle at the time of ignition varies with engine speed, IRS argued that this example proved that claims did not require "nonvariable" injection timing.

This position was predicated on injection timing being "fixed" by the "timing signal" – *i.e.*, fuel injection can occur at varying crankshaft angles because (i) the timing sensing means can generate a timing signal at varying crankshaft angles, and (ii) injection occurs upon the generation of the timing signal. In other words, IRS's position was predicated on injection occurring when the timing sensing means senses the predetermined cyclically repeating state of the engine. The *Polaris* court agreed with IRS on this issue, holding that the claims require only injection timing that is "selected in advance," not injection timing that is "nonvariable."

---

[12] Dkt. 249, Ex. 4, *Polaris* Order dated Feb. 11, 1997 at 4.

[13] *Id.* at 3-5 (citing the '803 Patent at col. 9, ll. 36-38).

IRS now argues that Magistrate Judge Erickson misinterpreted the *Polaris* court's ruling that "Injection may be fixed to occur at ignition."[14] According to IRS, this statement now should be understood to mean that the *Polaris* court ruled that "injection may or may not be fixed." A review of the *Polaris* decision, however, reveals that the court ruled that "injection may be fixed to occur at ignition or some other predetermined cyclically repeating event." For example, in the two sentences before the sentence cited by IRS, the *Polaris* court stated:

> "The EFI's control unit utilizes this map to generate an electrical pulse that operates the fuel injectors 'at the same predetermined point in time during an engine cycle for each cycle.'"[15]

This statement makes clear that the *Polaris* court, at IRS's urging, accepted that the timing signal indicative of a "predetermined cyclically repeating state of [the] engine" *fixed* the timing of fuel injection.

In short, Magistrate Judge Erickson properly interpreted the *Polaris* court rulings, and this Court should give preclusive effect to the *Polaris* court's ruling that the claimed "timing sensing means" requires injection "at the same predetermined point in time during an engine cycle for each cycle."

**2. An Independent Analysis of the Patent Claims, Specification, and Prosecution History Shows That the Claims Must Be Construed as Excluding Injection Timing That Is Computed from Instantaneous Engine Operating Conditions**

In conducting an independent analysis without the preclusive effect of the *Polaris* court's ruling, Magistrate Judge Erickson correctly construed the '803 patent claims to exclude injection

---

[14] Dkt. 695, IRS's Objections at 7-8.

[15] Dkt. 249, Ex. 4 at 4 (citing "Hanes Remarks," Dkt. 585, Ex. F, Paper No. 30 at 26).

time that is computed from instantaneous engine operating conditions.[16] Magistrate Judge Erickson recognized that the "computed injection timing" issue centers on two limitations:

> "(f) timing sensing means for sensing each occurrence of a predetermined cyclically repeating state of said engine and for providing a timing signal indicative thereof,"[17] and
>
> "j(viii) means for generating a control signal for opening said injection means for said determined injector open duration interval at a predetermined point in time determined from said timing sensing signal."[18]

Claim element (f) generates an "injection timing" signal that indicates when in each engine cycle the fuel should be injected into the engine, namely, at the time the "predetermined cyclically repeating state of the engine" is sensed. Claim element j(viii) reacts to the signal from element (f) and generates an "injector open" signal that causes the injectors to open for a duration determined by elements j(ii)-j(vii).[19]

Because both elements are indisputably "means-plus-function" elements, they must be construed according to 35 U.S.C. § 112, ¶ 6, which provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material or acts described in the specification and equivalents thereof.[20]

In the '803 patent specification, the *only* structure disclosed in the '803 patent that performs the claimed function "for generating a control signal for opening said injection means" is a microprocessor (CPU 130) programmed to perform the specific steps depicted in Fig. 2. The

---

[16] Dkt. 685, Report at 32 and 34.

[17] Dkt. 249, Ex. 1, '803 Patent at claim 1, col. 15, ll. 27-29.

[18] *Id.* at claim 1, col. 16, ll. 10-14. Elements (f) and j(viii) are taken from claim 1. IRS's attorney represented to the Patent Examiner that corresponding elements exist in each of the other claims. Dkt. 249, Ex. 8, Paper No. 23 at 20.

[19] *See* Dkt. 248, Arctic Cat's and Suzuki's Opening *Markman* Br. at 8 and 11-13.

[20] In its proffered claim constructions, IRS ignored the mandate of 35 U.S.C. § 112, ¶ 6, to construe these elements based on the *structure* for performing the recited functions, *disclosed* in the specification.

programmed microprocessor receives the timing sensing signals and then generates control signals to activate the injectors.[21] The specification describes this operation as follows:

> Next, as illustrated in blocks 314 and 315 [of Fig. 2], the CPU determine[s] whether a predetermined cyclically repeating reoccurring state (repeating once per engine revolution) of the engine, such as, for example, a top dead center position of a selected one of the pistons, has been reached. *Once that cyclically reoccurring engine state has been reached, the CPU provides a control command to the fuel injector(s) to be opened for the predetermined length of time V-5 calculated in step 313.*[22]

In the referenced portion of Fig. 2, reproduced below, the CPU performs a simple logic "yes-no loop" operation (has an injection timing signal been received or not) and sends the control signal to open the injectors when it receives the signal from the "timing sensing means."




**Excerpt of Figure 2 from U.S. Patent No. Re. 34,803**

The '803 patent does not disclose any structure for computing the time to send the control signal to the injectors, and the patent does not disclose a control signal that differs in timing from the timing sensing signal. As shown in Fig. 2, the CPU simply reacts when it senses the occurrence of the "predetermined cyclically repeating state of the engine" by signaling the injectors to open. Once the timing signal is generated, *no* computation is performed to determine when to inject, much less a computation based on the sensed instantaneous operating condition of the engine.

---

[21] *See* Dkt. 249, Ex. 1, '803 Patent at col. 9, l. 61 through col. 10, l. 5; *id.* at col. 13, ll. 11-20.

[22] *Id.* at col. 13, ll. 11-15 (emphasis added).

IRS argues the ‘803 patent discloses a three-cylinder embodiment (at column 9, line 42) that produces a timing signal by “counting” the passage of “three lugs on the fly wheel” that pass by a “sensor” during each cycle and that “counting” is “calculating.” On that basis, IRS argues the ‘803 patent teaches a “calculated” time to inject.[23]

The passage cited by IRS discloses using a *single ignition coil sensor* (*not* a lug sensor and *not* three lugs on a fly wheel, as IRS argues) in a three-cylinder engine and discriminating between the three ignition coil pulses per revolution to select one corresponding to the “predetermined cyclically repeating state,” i.e., ignition in one of the three cylinders.[24] Importantly, the CPU thereafter uses that selected ignition coil pulse as the “timing sensing signal.” And as IRS candidly admits, once the selected ignition pulse is received, “the CPU . . . produces a signal to begin injection.”[25] Thus, consistent with the disclosure of the ‘803 patent, including the Fig. 2 program, this three-cylinder embodiment sends a control signal to the injectors “at” the time the predetermined cyclically repeating state of the engine (ignition in the selected cylinder) is sensed and not at a different time computed from instantaneous engine operating conditions (e.g., RPM).

The prosecution history of the ‘803 patent fully supports the interpretation recommended by Magistrate Judge Erickson. In responding to the Patent Examiner’s rejection of the claims over the Okumura reference, IRS’s attorney, Mr. Hanes, characterized the claim elements in claims 1-4 that determine injection timing as follows:

---

[23] Dkt. 695, IRS’s Objections at 10 (citing the ‘803 patent at column 9, lines 42).

[24] *See* Dkt. 249, Ex. 1, ‘803 Patent at col. 9, ll. 36-51.

[25] Dkt. 695, IRS’s Objections at 10.

> Chasteen's system injects the fuel at a predetermined point of time in the engine cycle *which is the same for each injection event* (see elements (f) and (viii) in Claim 1 and the corresponding elements and steps in [application] Claims 2-6).[26]

Mr. Hanes elaborated on this characterization in his discussion of claim element 1(f) by distinguishing between *sensing* when to inject, as in the '803 patent, and *calculating* when to inject, as in Okumura:

> The sensing means described in this element of Claim 1 senses the occurrence of a selected cyclically repeating event, such as, for example, ignition . . . . *This sensing is totally unlike the calculation of the appropriate cycle time to inject the fuel found in Okumura*. The timing sensing means referred to in this element of the claim indicates to the CPU when the cyclically repeating event takes place in one of the cylinders of the engine, if there be more than one cylinder, *so that the injection of the fuel is timed to correspond to that repeating event*.[27]

Later, during the prosecution, IRS again distinguished the claimed invention from Okumura on the ground that Okumura *computed* when to inject: "Okumura's stated object is to inject the fuel at a *computed* time during the cycle."[28]

The comments of the Patent Examiner in his decision to allow the claims over Okumura are particularly relevant to construing the "control signal generating means" claim element j(viii) in relation to the "timing sensing means," element (f):

> As pointed out by Okumura, his injection time varies from cycle to cycle over an extensive range and he does *not* generate a control signal for opening his injector *at a <u>predetermined point in time determined from said timing sensing signal</u>*. As pointed out by applicant, Okumura's control signal is generated *not* ***at*** *the <u>recited</u> predetermined time*, but at a predetermined time which varies widely from cycle to cycle and which is determined from the crank chamber pressure, not the predetermined timing sensing signal.[29]

---

26 Dkt. 249, Ex. 8, Paper No. 23 at 20 (emphasis added). Reissue application claims 1, 2, 4, and 6 issued as '803 patent claims 1-4, respectively.

27 *Id.* at 23-24 (emphases added).

28 *Id.* at 32 (emphasis added).

29 Dkt. 249, Ex. 9, Paper No. 38 at 6 (underscoring in original, emphases and bold print added).

Clearly, in accepting IRS's arguments for patentability, the Examiner considered applicant's invention to require injecting fuel "at" the predetermined time recited in element (f), and not at a different, computed time.

Finally, as Magistrate Judge Erickson correctly found, "IRS has failed to present any cogent argument upon which" to reject this construction of the '803 patent claims.[30] Because IRS chose to distinguish Okumura without any restriction on a particular RPM operating range, IRS clearly and unmistakably argued that the '803 patent claims were limited to *always* providing the control signal to the injectors "at" the time of the "timing sensing signal" and never to "computing" when to send the control signal to the injectors to begin injection. Such a construction is consistent with IRS's representations to the Patent Examiner that in the claimed EFI system the injectors operate "at the same predetermined point in time *for each cycle*"[31] and "injects the fuel at a predetermined point in time in the engine cycle which is the same *for each injection event*."[32]

For at least the above reasons, Magistrate Judge Erickson's recommended construction of the "timing sensing means," element (f), and the "control signal means," element j(viii), to preclude computed injection timing based on instantaneous engine operating conditions is correct and should be adopted.

---

[30] In its objections, IRS "specifically incorporate[d] by reference herein" its claim construction and opposition briefs, and listed its *Markman* "Bench Brief Book" as a supporting exhibit. *See* Dkt. 695, IRS's Objections at 29; Dkt. 696, Blanch Decl. at 2-3, ¶ 9. These submissions improperly circumvent the page limits established by the Court's February 28, 2005 Order, which already extended the applicable page limit requirements under the Local Rules. *See Jake's Ltd., Inc. v. City of Coates*, 176 F. Supp. 2d 899, 908 n.6 (D. Minn. 2001) (J. Frank) (holding that incorporating by reference legal memoranda is "an inconsiderate, unprofessional affront to the Court and the opposing party"); *Resolution Trust Corp. v. Juergens*, 965 F.2d 149, 152 (7th Cir. 1992) (affirming the exclusion of supporting attorney arguments).

[31] Dkt. 585, Decl. Supporting Arctic Cat's and Suzuki's Opening Br. on No Infringement, Ex. F, Paper No. 30 at 16 (emphasis added).

[32] Dkt. 249, Ex. 8, Paper No. 23 at 20 (emphasis added).

### B. Magistrate Judge Erickson Correctly Recommended Granting Summary Judgment of No Infringement by the Suzuki Engines and Arctic Cat Snowmobiles That Employ Computed Injection Timing

#### 1. IRS Has Identified No Disputed Issues of Fact Underlying the Infringement Analysis

In its Objections, IRS attempts to fabricate a factual dispute where none exists. IRS does not dispute that all of the Suzuki engines and Arctic Cat snowmobiles using Kokusan EFI systems (with the exception of one model) compute injection timing based on instantaneous engine speed (i.e., revolutions per minute "RPM").[33] There is also no dispute that the Kokusan EFI systems add this RPM-dependent injection delay between 2000-4000 RPM.[34] The engine specifications describe this RPM-dependent delay, and Arctic Cat's and Suzuki's expert confirmed its existence experimentally.[35] Even IRS's own expert has acknowledged that "there is purportedly an RPM-dependent time delay."[36]

Although IRS contends that a factual dispute exists "even if the Magistrate Judge's Claim Construction is adopted," it points to no evidence of infringement under that claim construction. Instead, IRS argues that because the Kokusan EFI systems add an RPM-dependent injection delay only between 2000-4000 RPM, rather than throughout all engine speeds, there is a factual issue as to whether they "infringe some or most of the time."[37] But whether the accused systems infringe because they use computed injection for only a portion of the engine RPM range is a legal question, not a factual issue for the jury to decide.

---

33 Dkt. 585, Decl. Supporting Arctic Cat's and Suzuki's Opening Br. on No Infringement, Ex. C, App. 2, Dr. Cuzzillo's Report at ¶¶ 20-22.

34 *Id*.

35 *Id.*

36 *Id.* at Ex. G, Ribbens Report at 60.

37 Dkt. 695, IRS's Objections at 12.

And the answer to that legal question is "there is no infringement." As Magistrate Judge Erickson correctly found, unlike *Bell Communications Research, Inc. v. Vitalink Communications Corp.*,[38] this is not a case where the accused devices *sometimes* infringe the '803 patent claims.[39] Rather, the accused Kokusan EFI-equipped devices at issue *never* infringe the claim construction adopted by Magistrate Judge Erickson and Judge Weinshienk. That claim construction requires that:

(1) injection must occur at a "predetermined cyclically repeating state of the engine" in "each and every engine cycle";[40] and

(2) injection cannot be "'computed' from instantaneous operating conditions," such as RPM.[41]

The former follows from the patent prosecution, where IRS repeatedly defined the '803 patent as being so limited. For example, on one occasion, IRS argued:

> "This electrical pulse controls the open duration of an electrical fuel injector which is operated at the same *predetermined* point in time during an engine cycle *for each cycle*."[42]

On another occasion IRS argued:

> "Chasteen's system injects the fuel at a predetermined point in time in the engine cycle which is the same *for each injection event*."[43]

---

[38] 55 F.3d 615, 622-23 (Fed. Cir. 1995).

[39] Dkt. 685, Report at 69-70.

[40] *Id.* at 35, 62, and 70 (stating that "the '803 Patent has been construed to require a device that always uses a fixed injection time"); Dkt. 249, Decl. Supporting Arctic Cat's and Suzuki's Opening *Markman* Br., Ex. 4, *Polaris* Order dated Feb. 11, 1997 at 5 (construing "cyclically repeating" as "requiring injection to occur once per engine revolution at *all* engine speeds") (emphasis added).

[41] *Id.*

[42] Dkt. 585, Ex. F, Paper No. 30 at 16 (emphases added).

[43] *Id.*, Ex. E, Paper No. 23 at 20 (emphasis added).

The latter also follows from the prosecution history, where IRS distinguished Okumura on the ground that it calculated the point in the engine cycle to inject based on instantaneous operating conditions:

> "Okumura's stated object is to inject the fuel at a *computed* time during the cycle, which is obviously variable, as demonstrated by the text of Okumura at ¶ 23."[44]

IRS also argued:

> "The Okumura reference point may be different for every revolution, depending on the existing conditions. If it were cyclically repeating the fuel would be injected at the same point in the cycle for every revolution, as it is in Applicant's device."[45]

IRS does not dispute that the Kokusan EFI systems do not inject fuel at a "predetermined cyclically repeating state of the engine" for "each and every cycle." And like the prior art systems, the Kokusan EFI systems compute injection timing based on instantaneous operating conditions, specifically RPM, during operation between 2000 and 4000 RPMs.[46] Since IRS distinguished such systems during prosecution, the Kokusan EFI systems cannot infringe the '803 patent.

### 2. IRS Has Failed to Present Facts That Would Permit a Finding of Infringement Under the Doctrine of Equivalents

IRS argues that a factual dispute exists over infringement under the doctrine of equivalents because it submitted an expert report and sworn testimony by its expert to Magistrate Judge Erickson. But those submissions, coupled with IRS's unsupported legal arguments, fail to comply with FED. R. CIV. P. 56(e)'s specificity requirement. The Court is not obligated to wade

---

44 *Id.* at 32 (emphasis added).

45 Dkt. 585, Ex. F., Paper No. 30 at 26.

46 *See* Dkt. 585, Ex. C, App. 2, Dr. Cuzzillo's Report at ¶¶ 21-22; *id.* at Ex. G, Dr. Ribbens Report at 60; Dkt. 243, Dr. Ribbens Decl. at 7, ¶ 25 (describing injection delays in the accused devices that vary "inversely with RPM").

through the record to find specific facts that might support IRS's legal arguments.[47] Moreover, IRS has never identified any evidence of equivalent infringement using the claim construction adopted by Magistrate Judge Erickson and Judge Weinshienk. And IRS ignores the fact that it disclaimed computed injection timing during prosecution. Such a disclaimer operates as a legal bar to the use of the doctrine of equivalents to recapture the disclaimed subject matter.[48]

## II. MAGISTRATE JUDGE ERICKSON CORRECTLY RECOMMENDED CONSTRUING THE CLAIMS AS REQUIRING FUEL INJECTION IN EACH AND EVERY ENGINE CYCLE

### A. This Court Should Give Preclusive Effect to the *Polaris* Court's Ruling That the Claims Require Fuel Injection in Each and Every Engine Cycle

IRS argues that issue preclusion should not apply to the *Polaris* court's ruling that the claims of the '803 patent should be interpreted as "requiring injection to occur once per engine revolution at all engine speeds."[49] According to IRS, the "issues" are different in this case because the "skip cycle" used by the accused devices in the *Polaris* case was implemented by not sending any electrical pulse to the fuel injectors on alternating engine cycles, whereas the "skip cycle" used by the accused devices in this case is implemented by sending a "short pulse" to the injectors (i.e., one that is too short to cause them to open) on alternating engine cycles.[50] In so arguing, IRS confuses claim construction with proof of noninfringement. Just as the absence of *any* pulse on alternating cycles was proof of the absence of "injection in every cycle" in the *Polaris* case for purposes of establishing noninfringement, the absence of a pulse long enough to cause injection is proof of the absence of "injection on every cycle" in this case.

---

[47] *See Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999).

[48] *See, e.g.*, *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003).

[49] Dkt. 249, Ex. 4, *Polaris* Order at 5.

[50] Dkt. 695, IRS's Objections at 15.

The *Polaris* court did not construe the claims as requiring a "pulse" once per engine revolution at all engine speeds; it construed the claims as requiring "injection" once per engine revolution at all engine speeds.[51] The *Polaris* court's claim analysis focused on "fuel injection" and operation of the "fuel injectors," not pulses. And the *Polaris* court's infringement analysis focused on the absence of "injection," not the absence of pulses: "It is uncontested that defendants' devices do not *inject* fuel in each and every cycle."[52] Indeed, in its decision, the *Polaris* court never mentioned the absence of a "pulse" in the accused products.

Thus, any differences between the accused devices in the *Polaris* case and the accused devices in this case have no bearing on claim construction. IRS is confusing differences between the accused products with differences in the claim construction. The claim construction in the *Polaris* case is perfectly clear. The claims require fuel injection in each and every cycle. There was no infringement in the *Polaris* case because the accused products used a skip cycle at certain RPMs. In this case, Magistrate Judge Erickson concluded there was an issue of fact as to whether the short pulses used in the Kokusan EFI systems inject fuel in each and every cycle. But the fact that the Kokusan EFI systems implement skip cycle by sending short pulses (as opposed to no pulse) in alternating cycles has no bearing on claim construction.

### B. An Independent Analysis of the Patent Claims, Specification, and Prosecution History Shows That the Claims Must Be Construed as Requiring Fuel Injection in Each and Every Engine Cycle

The claim element of the '803 patent that relates to the frequency of injection is the "timing sensing means," element (f):

---

[51] Dkt. 249, Ex. 4 at 5.

[52] *Id.*

> "(f) timing sensing means for sensing each occurrence of a predetermined cyclically repeating state of said engine and for providing a timing signal indicative thereof."[53]

The functional language in this means-plus-function element requires structure that senses "each occurrence of a predetermined cyclically repeating state of [the] engine," namely, an event "repeating once per engine revolution."[54] This language also requires that when the occurrence is sensed, the structure "provide[s] a timing signal" that tells the CPU it is time to inject fuel into the engine.[55] In response to this timing signal, the "control signal means," element j(viii), is sent to the injectors and opens them for the prescribed duration.

Turning to the specification, the only structures disclosed, under 35 U.S.C. § 112, ¶ 6, for performing the claimed timing means sensing function are a top dead center ("TDC") sensor, an ignition sensor 142, or an encoder.[56] Each of these would provide a signal to the claim element j(viii) structure (CPU 130) at least once per cycle of engine operation.

IRS's argument that the '803 patent claims should not be construed to require fuel injection in every cycle because that construction would exclude certain "preferred" embodiments is unfounded for two reasons.[57] First, the embodiments singled out by IRS -- the fuel map depicted in Figure 4 and the engine speed limiter steps illustrated in Figure 2 -- are merely "exemplary," as IRS concedes.[58] Second, there is no rule of claim construction that

---

[53] Dkt. 249, Ex. 1, '803 Patent at claim 1, col. 15, ll. 27-29. Judge Weinshienk found correspondence between specific elements of claims 2-4 and claim 1 element (f). *Id.*, Ex. 4, *Polaris* Order at 4, n.4.

[54] *Id.* at col. 13, ll. 11-15.

[55] *Id.* at col. 15, ll. 27-30.

[56] Dkt. 248, Arctic Cat's and Suzuki's Opening *Markman* Br. at 8 and 11-13.

[57] Dkt. 695, IRS's Objections at 32.

[58] *Id.* ("The '803 patent specification specifically discloses zeros in its *exemplary* fuel map.") (emphasis added). *See also* Dkt. 612, Arctic Cat's and Suzuki's Reply Br. on No Infringement at 10; Dkt. 645, *Markman* Hearing Tr. at 157-58 (arguing that the engine speed limiter embodiment is "inconsistent" with the Figure 4 fuel map embodiment). To avoid revealing "proprietary information," Chasteen instructed (continued…)

requires the claims to cover every disclosed embodiment in the specification. To the contrary, "when a patent drafter discloses but declines to claim subject matter, . . . this action dedicates that unclaimed subject matter to the public."[59] And the Federal Circuit has "adopted claim constructions excluding an embodiment when the prosecution history requires the claim construction because of disclaimer."[60]

In this case, IRS's repeated arguments during prosecution demonstrate that the patentee interpreted element (f) as not only requiring a timing sensing *signal* once per cycle, but also requiring *injection* in every cycle of the engine. For example, IRS argued that:

> The variably selected reference point of Okumura is patently NOT predetermined and NOT cyclically repeating; that is the Okumura reference point is not the same point, or state of the engine, for every revolution, as required by this claim element.
>
> The Okumura reference point may be different for every revolution, depending on the existing conditions. *If it were cyclically repeating the fuel would be injected at the same point in the cycle for every revolution, as it is in Applicant's device*.[61]

These excerpts from the prosecution history directly contradict IRS's representation that "Mr. Haynes [sic] stated that a *timing signal* is generated every cycle, but states no requirement that injection occurs in each cycle."[62] These excerpts also clearly show that IRS construed element (f) to require injection in each and every cycle (revolution) and thus disclaimed any systems that do not inject fuel in every engine cycle.

---

(…continued)
his secretary to insert made up numbers for the fuel map disclosed in the specification. Dkt. 603, Decl. Supporting Supplemental *Markman* Reply Brief, Ex. 1, Chasteen Dep. Tr. dated Nov. 12, 1990 at 205, ll. 1-21 ("I simply asked her to take my map, here's the outline, just put numbers in it.").

59 *Johnson & Johnston Assocs., Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) (en banc).

60 *Springs Window Fashions L.P. v. Novo Indus., L.P.*, 323 F.3d 989, 996 (Fed. Cir. 2003).

61 Dkt. 249, Ex. 6, Paper No. 30 at 26 (underscoring and capitalization in original, emphasis added).

62 Dkt. 695, IRS's Objections at 28.

Based on the above analysis, which is consistent with that of the *Polaris* court, this Court should accept Magistrate Judge Erickson's recommendation to adopt Judge Weinshienk's "injection in each and every cycle" construction for the '803 patent claims.

### III. MAGISTRATE JUDGE ERICKSON RECOMMENDED CORRECT CONSTRUCTIONS FOR THE "PRIMING" AND "FUEL PUMP CONTROL" ELEMENTS OF CLAIM 1

In its objections, IRS presents *no* arguments in respect to the propriety of Magistrate Judge Erickson's decision to adopt the constructions of the *Polaris* court for the "priming" and "fuel pump control" elements in claim 1 of the '803 patent under issue preclusion principles.[63] Rather, IRS attacks the *Polaris* court's constructions themselves, asserting that the *Polaris* court, in "its misunderstanding of basic premises of claim construction," "incorrectly import[ed] a limitation from a disclosed embodiment" for both elements.

Yet IRS has once again misunderstood – or ignored – the "basic premise of claim construction" that means-plus-function claim elements are to "be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."[64] All the parties agree that the respective elements of claim 1, set forth below, are "means-plus-function" elements:

> j(i) means for processing said engine speed sensing signal and said throttle position sensing signal and for generating a priming control signal[] to said fuel injection means for selectively injecting or not injecting fuel into [a] manifold means based on said engine speed signal and said throttle position signal;
>
> * * *
>
> j(ix) means for receiving and processing said engine speed sensing signal for generating a pump control signal in response thereto for maintaining [a] pump at an optimum operating speed for providing [a] predetermined

---

63 *See id.* at 34.

64 35 U.S.C. § 112, ¶ 6.

> maximum operating pressure in [a] fuel circulation conduit means at said pump.[65]

IRS, however, never attempted to reconcile its objections with the statutory requirement for interpreting "means-plus-function" claim elements.

IRS objects that "the *Polaris* court limited the 'priming' element of claim 1 to a system which initially injects fuel at zero RPM and requires human intervention to modify the throttle control."[66] But the *only* structure disclosed in the '803 patent specification for performing the function recited in claim element j(i) is the description of the control system programming in the CPU 130 reflected in the Fig. 2 flow chart.[67] IRS also objects that the *Polaris* court "violated basic precepts of claim construction" by "importing a variable speed pump embodiment from the patent specification . . . ."[68] But the *only* structure disclosed in the '803 patent specification relating to claim element j(ix) is CPU 130 programmed to control a variable speed pump having at least two pumping rates different from zero, namely, 50% and 100%.[69]

In each case, the alleged "improper" limitations flow directly from the required analysis under 35 U.S.C. § 112, ¶ 6. Thus, Judge Weinshienk committed no error, and Magistrate Judge Erickson's construction of '803 patent claims should be accepted.

## CONCLUSION

For the foregoing reasons, IRS's objections to Magistrate Judge Erickson's February 18, 2005 Report and Recommendation should be rejected, and his Report and Recommendation should be accepted in each of these respects.

---

65 Dkt. 249, Ex. 1, '803 Patent at claim 2, col. 15, ll. 44-50; *id.* at claim 2, col. 16, ll. 15-21.

66 Dkt. 695, IRS's Objections at 34.

67 Dkt. 249, Ex. 1, '803 Patent at col. 11, ll. 30-68. This programming requires the engine to be at zero RPM (i.e., not running) and the operator not to have released the throttle to a position less than 20°. *Id.*

68 Dkt. 695, IRS's Objections at 35.

69 Dkt. 249, Ex. 1, '803 Patent at col. 13, l. 65, to col. 14, l. 12.

SUZUKI MOTOR CORPORATION
By its attorneys

Dated: March 21, 2005

s/William F. Forsyth
William F. Forsyth (MN Atty ID #31070)
Henson & Efron, P.A.
220 South Sixth Street, Suite 1800
Minneapolis, MN 55402-4503
Telephone: (612) 339-2500
Facsimile: (612) 339-6364

Thomas H. Jenkins (Pro Hac Vice)
Bruce C. Zotter (Pro Hac Vice)
Christopher W. Day (Pro Hac Vice)
Finnegan, Henderson, Farabow,
Garrett & Dunner, L.L.P.
1300 I Street, N.W.
Washington, D.C. 20005-3315
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

ARCTIC CAT INC.
By its attorneys

Dated: March 21, 2005

s/Annamarie A. Daley
Annamarie A. Daley (MN #158112)
Aaron A. Myers (MN #311959)
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone: (612) 349-8500
Facsimile: (612) 339-4181