**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| ARCTIC CAT INC., a Minnesota corporation,<br><br>Plaintiff,<br><br>v.<br><br>INJECTION RESEARCH SPECIALISTS, INC., a Colorado corporation, and PACER INDUSTRIES, INC., a Missouri corporation,<br><br>Defendants. | Civil Action No. 01-CV-543 (MJD/RLE)<br><br>Hon. Michael J. Davis<br>Hon. Raymond L. Erickson (Magistrate) |
| INJECTION RESEARCH SPECIALISTS, INC., a Colorado corporation, and PACER INDUSTRIES, INC., a Missouri corporation,<br><br>Counterclaimants,<br><br>v.<br><br>ARCTIC CAT INC., a Minnesota corporation, and SUZUKI MOTOR CORPORATION, a Japanese corporation,<br><br>Counterclaim Defendants. | |

**ARCTIC CAT'S AND SUZUKI'S RESPONSE TO INJECTION RESEARCH SPECIALISTS, INC.'S AND PACER INDUSTRIES, INC.'S MOTION TO ENTER FINAL JUDGMENT, TO DISMISS REMAINING DECLARATORY JUDGMENT CLAIMS WITHOUT PREJUDICE AND TO STAY ATTORNEYS FEES CLAIMS PENDING APPEAL**

## INTRODUCTION

The attempt of Injection Research Specialists, Inc. and Pacer Industries, Inc. (collectively referred to as "IRS") to postpone this Court's disposition of Arctic Cat's and Suzuki's claims for attorney fees should be rejected. The vast weight of legal authority – including the practice of this District Court – requires **prompt** determinations of attorney fee claims. Prompt resolution of fee issues promotes judicial economy by facilitating appellate review of the entire controversy and ensures resolution of fee claim issues before complex factual and legal matters fade from memory.

Through its motion, IRS also improperly seeks to position itself to proceed with an appeal and avoid the possibility of needing to satisfy any potential attorney fee award, thus eluding the consequences of extensive misconduct. Prior factual findings and rulings of this Court address IRS's misconduct during this litigation – ranging from document destruction, to willful violations of Court Orders, to agreements with fact witnesses to pay amounts contingent on the outcome of the case, and to moving documents between law firms to avoid document production responsive to a subpoena. Arctic Cat and Suzuki believe the factual basis has been and will be established that this case falls within the scope of an exceptional case under 35 U.S.C. §285 and/or that the Court should invoke its inherent sanctioning powers.

This Court should enter judgment under Rule 54(b) only after disposition of the attorney fee issues. IRS's own concessions that the merits of the case and the attorney fees issues involve interwoven facts and legal issues supports, not contravenes, a finding

that any Rule 54(b) judgment should include disposition of Arctic Cat's and Suzuki's attorney fee claims.

IRS's motion should be denied in its entirety and a briefing schedule issued to permit a determination of Arctic Cat's and Suzuki's motions for attorney fees and costs.

## STATEMENT OF PROCEDURAL HISTORY AND RELEVANT COURT FACTUAL FINDINGS AND RULINGS[1]

In February 1990, the Patent and Trademark Office (PTO) issued the U.S. Patent No. 4,901,701, assigned to IRS with one claim.[2] Shortly thereafter, IRS offered to sell and license an IRS EFI system for use in Arctic Cat's snowmobiles.[3] Arctic Cat declined IRS's offer, and an IRS attorney mailed a letter, dated February 11, 1991, informing Arctic Cat that IRS was aware of Arctic Cat's attempts to develop and market its own EFI system. The letter asked Arctic Cat to "provide immediate confirmation that [its] EFI effort does not and will not implicate . . . reliance on any IRS proprietary technology."[4] IRS's letter also advised Arctic Cat that IRS had sued Polaris Industries

[1] IRS's Memorandum in Support of Motion to Enter Final Judgment, to Dismiss Remaining Declaratory Judgment Claims Without Prejudice, and to Stay Arctic Cat's and Suzuki's Attorney Fees Claims Pending Appeal (IRS's Memorandum) omits much of the history between the parties that is most relevant to the issues of whether this Court should delay adjudication of attorney fee claims and permit IRS to continue with its long-standing practice of piecemeal litigation.
[2] Dkt. 699, March 14, 2005 Report, 11-12.
[3] Dkt. 698, March 8, 2005 Order, 7.
[4] *Id.*

("Polaris") and others based on allegations involving, *inter alia*, infringement of various IRS proprietary "rights" regarding EFI.[5]

In December 1994, the PTO issued a reissue patent, U.S. Patent Re. 34,803 (the '803 patent), which contained the one claim of the '701 patent and three other claims.[6] On February 7, 1995, IRS's counsel wrote Arctic Cat a letter accusing Arctic Cat of infringing the '803 patent, and stating:

> Be advised that IRS intends, not later than the conclusion of Polaris, et al. litigation, to bring suit against [Arctic Cat] for infringement of the '803 patent claims, and other causes of action based on the misuse by [Arctic Cat] of the information supplied by IRS in 1988 and 1989.[7]

On December 22, 1995, Arctic Cat's patent counsel, Albert L. Underhill, replied to IRS's letter. Arctic Cat's counsel explained that Arctic Cat had not infringed IRS's patent rights. IRS never responded to Arctic Cat's counsel's letter.[8]

On February 11, 1997, the court in the District of Colorado granted summary judgment of non-infringement in favor of Polaris and others.[9] IRS did not sue Arctic Cat for infringement of the '803 reissue patent before the conclusion of the *Polaris* lawsuit.[10] In August 1997, IRS brought suit for trade secret misappropriation against Arctic Cat, Suzuki and JECS in the United States District Court for the District of Missouri. IRS

---

[5] Ex. A to Declaration of Annamarie Daley, dated August 4, 2005. (Cummins February 11, 1001 letter). All references herein to "Ex. _" are to Exhibits attached to the Daley Declaration.
[6] *Id.* at 3.
[7] *Id.* at 7-8.
[8] *Id.* at 8.
[9] *Id.* at 3-4, 8.
[10] *Id.* at 11.

asserted no claims for patent infringement. After Arctic Cat moved to dismiss, IRS dismissed the Missouri action and then filed a second suit in the United States District Court for the District of Colorado. Again, IRS asserted no claims for patent infringement. In 1998, the Colorado district court dismissed IRS's claims as barred by the statute of limitations. The Tenth Circuit affirmed that decision in 2000. *Chasteen v. Unisia JECS Corp.*, 216 F.3d 1212 (10th Cir. 2000).[11]

On March 23, 2001, IRS accused Arctic Cat of infringing four EFI patents, even though "in the nearly ten years after IRS's initial 1991 communication regarding EFI systems, none of IRS's lawsuits included any claims alleging infringement of the '803 Patent . . . ."[12] In that March 2001 letter, IRS demanded payment from Arctic Cat of more than $100 million for alleged infringement of IRS patents.[13] IRS also stated:

> During many years of litigation Polaris won many battles, but lost the war, which was good for us, but very bad for them. We now find ourselves with Arctic Cat winning the first battle, but the war is far from over.[14]

Arctic Cat commenced this declaratory judgment action shortly thereafter.[15]

During the four years of this lawsuit, this Court already has found:

> As early as 1990 and 1991, IRS's internal memoranda reveal its suspicions that Arctic Cat was infringing its patent rights. The '803 Patent was issued on December 9, 1994, and IRS's February 1995 letter to Arctic Cat asserted that Arctic Cat was infringing upon its patent rights and stated that IRS would pursue patent infringement litigation against Arctic Cat "not later than the conclusion of the Polaris litigation." But the Polaris Litigation was

---

[11] *Id.* at 8-9.
[12] *Id.* at 9.
[13] Ex. B, Balch March 23, 2001 letter.
[14] *Id.*
[15] Dkt. 1, March 28, 2001 Complaint.

> resolved through summary judgment in 1997, and affirmed in 1998, without IRS's bringing any claims of infringement. From the date of its 1995 letter, IRS waited a full six years before making its next infringement assertion, in a letter dated March 23, 2001. Even then, IRS did not file any infringement claims until seven months later, when it filed its Counterclaim [Docket. No. 29] on November 26, 2001, in response to Arctic Cat's Complaint. This delay in filing an infringement suit spanned nearly seven years: from December 9, 1994, (the '803 Patent's issuance date) to November 26, 2001.[16] . . . In fact, a strong argument may be made that IRS's delay was as long as ten years, beginning in February 1991, when IRS informed Arctic Cat that it was aware of the latter firm's development of an EFI system.[17]
>
> IRS demonstrated such protracted acquiescence by its long delay in bringing patent infringement claims against Arctic Cat, even after IRS sued Arctic Cat on related trade-secret claims.[18] . . . IRS's 1995 letter threatening Arctic Cat with patent infringement litigation, coupled with IRS's failure to include—or even mention— any infringement claim in its 1997 suit against Arctic Cat, corroborated the reasonable conclusion that all infringement claims against Arctic Cat had been abandoned.[19]

Based on IRS's unreasonable delay, this Court granted Arctic Cat's and Suzuki's motion for summary judgment on the basis of laches and equitable estoppel.[20]

This Court also has determined that IRS improperly obtained the '803 patent, because the reissued claims were not properly based on the bona fide "error" required by the applicable reissue statute.[21] Further, the Court has found that "the evidence strongly

[16] Dkt. 698, March 8, 2005 Order, 11.
[17] *Id*. at 13.
[18] *Id*. at 14.
[19] *Id*. at 15.
[20] *Id.*, March 8, 2005 Order.
[21] Dkt. 715, May 10, 2005 Order.

weighs" toward a finding that IRS submitted false reissue oaths to the PTO, and "the falsity of IRS's representations to the Patent Examiner appear self evident . . . ."[22]

The Court's Order invalidating the '803 patent was based on documents obtained relating to circumstances surrounding prosecution of IRS's patents. On September 30, 2003, and again on November 14, 2003, this Court ordered IRS to produce documents relating to the veracity of IRS's reissue oaths.[23] This Court also ordered, on August 26, 2003 and again on October 28, 2003, IRS to produce documents related to IRS's initial testing of Suzuki engines.[24]

IRS thereafter initiated two challenges to the October 24, 2003 and November 14, 2003 Orders. First, IRS filed a Notice of Interlocutory Appeal with the Federal Circuit on November 24, 2003.[25] IRS then filed an emergency motion for stay with the Federal Circuit on November 25, 2003 and petitioned the Federal Circuit for a writ of mandamus to vacate both orders. The Federal Circuit denied IRS's emergency motion for stay and its petition for a writ of mandamus the next day. IRS also asked this Court to stay the Orders to produce documents, pending IRS's attempted appeal to the Federal Circuit on those issues. This Court refused IRS's stay request.[26]

---

[22] Dkt. 699, March 14, 2005 Report and Recommendation, 31-32 (emphasis Magistrate Judge Erickson's).
[23] Dkts. 348 and 386.
[24] Dkts. 313 and 359.
[25] Dkt. 413.
[26] Dkt. 456.

Despite the Orders of this Court and the denials of the stay requests, IRS refused to produce the documents. Arctic Cat and Suzuki moved to dismiss IRS's attempted appeal to the Federal Circuit.

Only after this Court issued yet another Order on February 12, 2004, instructing IRS to produce the documents by February 27, 2004, or to face dismissal of its patent claims, did IRS finally produce documents. Further, on February 24, 2004, the Federal Circuit dismissed IRS's appeal, stating:

> In the instant case, Injection Research sought review of the discovery orders by way of a mandamus petition. The petition was denied. Such a denial does not entitle an unsuccessful petitioner to take another bite at the apple by pursuing an appeal of what this court has previously and clearly regarded as a nonfinal and unappealable order. … Further, Injection Research's dogged citation to the minority view of the United States Court of Appeals for the Third Circuit is not well received.[27]

Further, this Court has made findings pertaining to the loss and destruction of evidence in this case, including the destruction of at least 100 boxes of documents that were at the offices of its lawyers, Kutak Rock, fourteen months after this lawsuit began. In its Order of March 8, 2005, this Court stated that "the destruction of documents by IRS and its attorneys may be sanctionable conduct."[28]

## LEGAL ARGUMENT

### A. Arctic Cat's And Suzuki's Claims For Attorney Fees Should Be Resolved Prior to Any Appeal To Avoid Further Piecemeal Litigation.

[27] 89 Fed. Appx. 736, 2004 WL474002 at *1 (Fed. Cir. 2004).
[28] Dkt. 698, 16.

### 1. The applicable legal authority requires prompt adjudication of attorney fee claims.

This Court should deny IRS's motion to stay adjudication of Arctic Cat's and Suzuki's claims for attorney fees. As the Notes to the governing local rules specify:

> [A]pplications for attorney's fees should be submitted promptly after a determination of the case on the merits. Prompt submission aids the trial Judge, whose memory of the work of the lawyers is fresh, and facilitates appellate consideration of the whole controversy.

1991 Advisory Committee's Note to L.R. 54.3.[29] These Notes are consistent with the United States Supreme Court's statement that "district courts generally can avoid piecemeal appeals by promptly hearing and deciding claims to attorney's fees. Such practice normally will permit appeals from fee awards to be considered together with any appeal from a final judgment on the merits." *White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445, 454 (1982).

As this District Court has previously explained, the issue of attorney fees should be adjudicated **before appeal**:

> [J]udicial efficiency, as well as the convenience of the parties, commends our issuance of an Order delaying the entry of Final Judgment, until the ancillary issue of attorneys' fees is resolved. Otherwise, the potential for piecemeal appeals from interrelated Orders becomes unavoidable – a result that we find unacceptable. A consolidated resolution of all issues, including those surrounding an award of attorneys' fees, would not only benefit the parties to this litigation, but would facilitate an expeditious processing of all appellate proceedings.

[29] Those Notes state that delayed disposition of attorney fee issues is appropriate only in "rare instances." *Id.* Although Arctic Cat and Suzuki searched for any cases applying this "rare instances" exception, they were unable to locate any such legal authority.

*Transclean Corp. v. Bridgewood Serv., Inc.*, Civ. No. 97-2298 (RLE) (D. Minn. 2001) (Dkt. 204).[30] Similarly, Judge Montgomery has rejected an argument that a party's claim for attorney fees asserted before judgment was premature. *Upsher-Smith Labs., Inc. v. Pan Am. Labs., Inc.*, No. 01-352 (ADM/AJB), 2004 WL 902176, *2 (D. Minn. April 26, 2004).

In *Upsher-Smith*, Judge Montgomery invoked the basic principles of "judicial economy and efficiency" in refusing to delay disposition of fee issues.

> [T]he basic intent of Rule 54.3(b) is to encourage prompt submission of fee motions so that courts can review such requests shortly after a case has been decided. … [I]t is best to address the issue now with the underlying facts and circumstances of this litigation freshly in mind, rather than deferring consideration for several weeks or months.

*Id.*

The Federal Circuit Court of Appeals, the very court to which IRS seeks its incomplete appeal, also disfavors a piecemeal appellate approach. In one case, cited by IRS at page 8 of its Memorandum, the Federal Circuit recognized that a party may desire to seek an appeal for "strategic reasons" prior to resolution of all issues. *Nystrom*, 339 F.3d 1347, 1350 (Fed. Cir. 2003). The Federal Circuit, however, rejected exceptions to the finality rule for strategic reasons. In connection with its discussion on its appellate jurisdiction, the *Nystrom* court stated, "piecemeal litigation is as strictly precluded by the rule of finality for patent cases as it is for any other case." *Id.*

---

[30] Ex. Q, at 2-3.

The Federal Circuit routinely addresses attorney fee awards simultaneously with its reviews of judgments on the underlying merits. *See, e.g., Imonex Servs., Inc., v. W.H. Munzprufer Dietmar Trenner Gmbh*, 408 F.3d 1374 (Fed. Cir. 2005); *Junker v. Eddings*, 396 F.3d 1359 (Fed. Cir. 2005); *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370 (Fed. Cir. 2004); *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364 (Fed. Cir. 2002); *Tate Access Floors, Inc. v. Maxcess Tech., Inc.*, 222 F.3d 958 (Fed. Cir. 2000). The Federal Circuit also has expressed its distaste for piecemeal appeals in a variety of procedural settings other than those limited specifically to deferring claims for attorney fees. *See Enzo Biochem, Inc. v. Gen-Probe, Inc.*, No. 04-1570, 2005 U.S. App. LEXIS 14084, *5 (Fed. Cir. July 13, 2005) ("[The] final judgment rule exists to prevent the piecemeal litigation of issues that practically constitute a single controversy, which as separate appeals would otherwise frustrate efficient judicial administration."); *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1343-44 (Fed. Cir. 2001) ("From the very foundation of our judicial system the object and policy of the acts of Congress in relation to appeals and writs of error . . . have been to save the expense and delays of repeated appeal in the same suit, and to have the whole case and every matter in controversy in it decided in a single appeal.") (citation omitted); *W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1559 (Fed. Cir. 1983) (calling for the "conduct of a single appeal and disposition of the entire case in a single appellate opinion.").

Likewise, the Eighth Circuit Court of Appeals has observed that "the problem of fragmented appeals in cases calling for an award of attorney's fees may be obviated if

trial judges enter but one judgment after determining all issues in a case, including the merits of the action and any claim for attorney's fees." *Obin v. Dist. No. 9 of the Int'l Ass'n of Machinists and Aerospace Workers*, 651 F.2d 574, 584 (8th Cir. 1981). In *Obin*, an employment discrimination case, the Eighth Circuit stated:

> This court has a real concern over fragmentation of appeals. In the interests of orderly and expeditious consideration of all issues arising from a single lawsuit, disputes on appeal over the merits, as well as disputes regarding the allowance of attorney's fees to a prevailing party, should ordinarily be considered and decided by this court in either a single or consolidated appellate proceeding. This court deems it **essential** that all district courts follow a consistent practice of promptly hearing and deciding attorney's fees claims in civil rights and other cases so that any appeal by an aggrieved party from the allowance or disallowance of fees can be considered by this court together with any appeal taken from a final judgment on the merits.
>
> We observe that the problem of possible piecemeal appeals need not arise where the trial court delays entry of judgment on the merits pending determination of attorney's fee claims and thereafter enters a single final judgment determining all issues.

*Id.* at 583 (emphasis added).

Although IRS's Memorandum suggests that the Advisory Committee Notes to Rule 54 support its motion, it omits the Notes' prefatory language – which clearly counsels why courts should avoid such deferrals:

> Prompt filing affords an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind. It also enables the court in appropriate circumstances to make its ruling on a fee request in time for any appellate review of a dispute over fees to proceed at the same time as review on the merits of the case.

Fed. R. Civ. P. 54 Advisory Committee Notes, 1993 amendments (2005). At least one other patent case has involved the same selective citation to the Rule 54 advisory note. In *Madey v. Duke University*, the plaintiff cited the same excerpt to the advisory notes cited by IRS in support of a motion to defer an attorney fee claim. No. 1:97CV01170, 2002 U.S. Dist. LEXIS 19500, *9 (M.D.N.C. 2002). The court responded by citing the same language omitted by IRS, quoted above, and denied the plaintiff's deferral motion. *Id.* at *11 ("[C]onclusion [to deny plaintiff's deferral motion] is supported by the very [Rule 54] advisory committee note relied upon by Plaintiff."). The governing legal authority mandates a denial of IRS's motion to stay resolution of Arctic Cat's and Suzuki's motions for attorney fees.

**2. In light of IRS's admission of inextricably intertwined facts and solvency concerns, no Rule 54(b) judgment should be entered prior to resolution of Arctic Cat's and Suzuki's attorney fee claims.**

Rule 54(b) is an exception to the rule of finality, allowing for an appeal of a judgment resolving less than all claims under certain circumstances. Rule 54(b) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties **only upon an express determination that there is no just reason for delay** and upon an express direction for the entry of judgment.

Fed. R. Civ. P. 54(b) (emphasis added).

In analyzing whether to apply Rule 54(b), "[i]t is left to the sound judicial discretion of the district court to determine the appropriate time when each final decision in a multiple claims action is ready for appeal. … This discretion is to be exercised in the interest of sound judicial administration." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7-8 (1980).

In deciding whether there is no just reason for delay, a court must consider both judicial administrative interests and the equities of the case. *Curtiss-Wright Corp. v. Gen. Elec. Co*., 446 U.S. 1, 8 (1980). These administrative interests include:

> (1) the relationship of the claims to one another in terms of their factual relatedness or separability; (2) whether the certified claims are such that an appellate court would have to decide the same issues more than once if there were subsequent appeals; (3) whether future developments in the district court might moot the need for review; and (4) other factors, including expenses, economic and solvency considerations, and delay.

*Transclean Corp. v. Bill Clark Oil Co.*, No. 02-1138 (PAM/RLE), 2004 WL 2730101, *3 (D. Minn. Nov. 18, 2004) (citations omitted).

Here, an analysis of these factors confirms that any certification under Rule 54(b) should include a resolution of Arctic Cat's and Suzuki's claims for attorney fees.[31] On the first and second factors, IRS concedes that "[t]he factual and legal basis for Arctic Cat

[31] IRS invites this Court to "enter judgment under Federal Rule of Civil Procedure 54(b) on patent invalidity, equitable estoppel, laches, legal estoppel, collateral estoppel, claim construction, and non-willfulness and stay the remainder of the proceedings pending appeal." Arctic Cat and Suzuki agree with IRS's suggestion, on the condition that the judgment also include disposition of Arctic Cat's and Suzuki's attorney fee claims. Thus, following adjudication of Arctic Cat's and Suzuki's attorney fee claims, Arctic Cat and Suzuki will not oppose IRS's request that this Court enter judgment under Rule 54(b), allowing an immediate appeal to the Federal Circuit Court of Appeals.

and Suzuki's 'exceptional case' claim is inextricably intertwined with substantive issues that will be resolved on appeal."[32] The third factor is not relevant to this case. And the fourth factor weighs very heavily against a Rule 54(b) entry without a resolution of the attorney fees claims, especially in light of the solvency considerations both of IRS and of Pacer.

**a. <u>IRS's prior admissions require a finding that the first two factors weigh in favor of a resolution of the attorney fees motions prior to invoking Rule 54(b).</u>**

On the first two factors, according to IRS, the "factual relatedness" of the claims is very high, and the claims are such that the Federal Circuit would have to decide the same issues more than once if there were subsequent appeals. If IRS appeals this Court's summary judgment rulings, the Federal Circuit will review IRS's misconduct as part of its appellate review. Under IRS's proposed approach of delay, the Federal Circuit would then reexamine the same "inextricably intertwined" issues months or years later if an appeal is sought on any order awarding attorney fees. IRS's motion seeks the disfavored piecemeal approach, avoids a single appellate review of the whole controversy, and negates judicial economy and efficiency.

The motions of Arctic Cat and Suzuki will demonstrate IRS has engaged in a wide array of misconduct that supports an award of attorney fees and that an award of attorney fees is appropriate under these circumstances.[33] *See, e.g., Sensonics, Inc. v. Aerosonic*

---

[32] Dkt. 721, IRS Memorandum, at 12.

[33] In addition to the evidence cited in the Statement of Procedural History and Relevant Court Factual Findings and Rulings, substantial other evidence exists of IRS's misconduct. For example, in connection with a motion for a modification to the



MP3 20141914.1
8/4/05

*Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996) (misconduct supports "exceptional case" finding under 35 U.S.C. § 285); *Rottlund Co. v. Pinnacle Corp.*, 222 F.R.D. 362, 375-76 (D. Minn. 2004) (DSD/SRN) (invoking court's inherent power to award fees as a sanction for litigation misconduct), *adopted in part* at No. 01-1980(DSD/SRN), 2005 U.S. Dist. LEXIS 4263 (Feb. 17, 2005). As IRS concedes, many of the facts supporting Arctic Cat's and Suzuki's motions will be those facts already determined by the Court in its summary judgment rulings.

IRS's remaining arguments similarly refute IRS's position. IRS argues that "addressing the exceptional case issue now may require the adjudication of complex and disputed facts … ."[34] This argument, too, weighs in favor of promptly resolving attorney fee claims. As one district court judge noted when faced with the same argument in

---

protective order in the Polaris Colorado litigation, in March 2002, IRS represented that its former counsel, Kutak Rock, had innocently retained documents subject to that protective order. On April 5, 2002, Kutak Rock wrote to McDermott, Will & Emery, advising that such documents had been maintained at the request of McDermott, Will & Emery and not for any other reason. Ex. C, Bernstein April 5, 2002 letter; Ex. D, March 29, 2002 e-mail from Peter Clark to John Bernstein. Between May through June 2002, more than 100 boxes of the evidence Kutak Rock maintained for review by IRS and the McDermott firm were destroyed. Ex. E, e-mail from Peter Clark of Kutak Rock. Kutak Rock testified that McDermott, Will & Emery, IRS's present litigation counsel, were involved in Kutak Rock's determination of which documents could be destroyed. Ex. F, Peter Clark June 5, 2003 dep. at 42-43.

In addition, IRS had documents transferred from the Kutak Rock firm, after service of Arctic Cat's subpoena, to another IRS law firm, the Isaacson firm and also told Arctic Cat's counsel that documents previously in Kutak Rock's possession had been destroyed pursuant to "routine document destruction procedures." Ex. G, Clark Dec. 16, 2002 letter; Ex. H, Bernstein Dec. 23, 2002 letter. John Bernstein, as Kutak Rock's designated witness, later testified this statement was "a misstatement," and that any disposition and destruction of documents was instructed by "those who had a vested interest in this matter." Ex. I, John Bernstein June 5, 2003 dep., 15-16, 23.

[34] Dkt. 721, IRS Memorandum, at 12.

another case, "assuming that the issues of fees and costs are as detailed and complicated as Plaintiff suggests, it may be more appropriate for the Court to address them presently due to the closeness in time with the disposition of the substantive issues involved as part of the ruling on summary judgment." *Madey v. Duke Univ.*, No. 1:97CV01170, 2002 U.S. Dist. LEXIS 19500, at *10-12 (M.D.N.C. 2002). Thus, if the fee issues are as complex as IRS suggests, the need for prompt resolution is even more pronounced.

Through IRS's "inextricably intertwined" and "complex and disputed facts" arguments, IRS essentially proposes an unprecedented legal standard for deferring attorney fee claims whenever the basis for the attorney fee claims (1) relates to the underlying merits of the issues to be appealed, and/or (2) involves complicated and disputed facts. This proposed legal standard finds no support in the law and is contrary to the most venerable principles of judicial economy. As discussed *supra* at section A.1, the federal courts have had a long-standing policy against piecemeal litigation.

IRS cites three cases it claims support a deferral of attorney fee claims.[35] Not one of the three cases cited by IRS supports its motion. In the District of Minnesota case on which IRS relies, Judge Frank stayed resolution of certain claims pending the appeal because the parties **jointly requested** Rule 54(b) certification and a stay of the remaining claims. *Schwing GmbH v. Putzmeister Aktiengesellschaft*, 2001 U.S. Dist. LEXIS 19578, *1-2 (D. Minn. Aug. 7, 2001) ("the parties have requested that an Order granting Rule 54(b) certification be entered and the remainder of the case be stayed."). Similarly, in *Astrazeneca AB v. Mutual Pharmaceutical Co., Inc.*, No. 00-4731, 2003 U.S. Dist.

[35] Dkt. 721, IRS's Memorandum at 10-11.

LEXIS 21055 (E.D. Pa. 2003), the defendants did not oppose the plaintiffs' request to stay the fees issue. *Id.* at *6. Furthermore, the applicable local rules for the Eastern District of Pennsylvania in *Astrazeneca*, unlike the Local Rules for the District of Minnesota, contained no statement in favor of promptly determining attorney fee issues.

Finally, in the third case on which IRS relies, the proposed appeal involved a novel question of law regarding the Hatch-Waxman Act. *See Glaxo Group Ltd. v. Apotex, Inc.*, 272 F. Supp. 2d 772 (N.D. Ill. 2003). As in *Astrazeneca*, the applicable local rules contained no statement in favor of promptly determining attorney fee issues. The fees issue in *Glaxo* depended entirely on a finding of willful infringement stemming from the Court's decision on the underlying question of law. The *Glaxo* court agreed to defer the fees petition, finding that the reversal of the district court's legal conclusion would render the plaintiff's fee petition moot. *Id.* at 779. Here, by contrast, the summary judgments of this court will not be mooted by resolution of a single legal issue on appeal. While Arctic Cat and Suzuki are not opposed to a subsequent entry of judgment under Rule 54(b), no judgment should be entered until their claims for attorney fees are resolved.

**b. <u>Arctic Cat and Suzuki will be materially prejudiced if their claims for attorney fees are not resolved promptly due to solvency concerns and further delay.</u>**

The fourth factor, "expenses, economic and solvency considerations, and delay," strongly favors including attorney fees in the Court's Rule 54(b) judgment. Duplicative appeals, and the extra time required to revisit issues that have faded from memory, will produce additional expense and delay. Most compelling, perhaps, are the "solvency



MP3 20141914.1
8/4/05

considerations." Prompt resolution of the claims for attorney fees would protect Arctic Cat and Suzuki and help ensure that the parties responsible for this litigation do not avoid the consequences of their misconduct. By contrast, deferring the claims presents the substantial risk that Arctic Cat and Suzuki will not be able to recover any awards of attorney fees that might be granted to them.

The facts bear out this substantial risk of prejudice. IRS's sole remaining business purpose is the patent litigation against Arctic Cat and Suzuki.[36] IRS's only assets include this lawsuit, its right to pursue other infringement lawsuits, and a "few thousand dollars, if anything."[37] After commencement of this lawsuit, but before the assertion of IRS's infringement counterclaim, Pacer sold off its assets. Pacer's only purported assets are the patents in suit.[38]

IRS and Pacer have pursued this litigation in name only. Before this case commenced, on April 13, 2000, the following four parties executed a "Memorandum of Agreement": IRS, Arctic Slope Regional Corp. (ASRC, IRS's sole owner), Pacer, and Dana Corp. (Dana, Pacer's parent company).[39] In the Memorandum of Agreement, Pacer agreed to grant IRS "a limited royalty and other fee free license with respect to the licensed patents and related trade secrets and intellectual property to pursue the Arctic Cat Litigation and against such other infringers of the Licensed Patents and related trade

---

[36] Dkt. 313-1, August 26, 2003 Order, 8 (finding IRS's only business was the licensing and enforcement of its patents). *See also* Ex. J, Conrad Bagne Sept. 2, 2003 dep., 30, ll. 13-22.

[37] Ex. K, Patent Assignment and License Agreement, dated August 1, 2001 (executed by Pacer on Sept. 13, 2001); Ex. J, Bagne dep., 44:12 – 45:19.

[38] Ex. L, Dana August 13, 2003, 30(b)(6) dep., 198, ll. 2-7.

[39] Ex. J, Bagne dep., at 26, ll. 13-21.

secrets and intellectual property (infringement claims)."[40] Dana, Pacer and ASRC agreed that IRS would control the litigation and that IRS's president, John Balch, would make the final decisions with respect to the litigation.[41] They also agreed that IRS would contribute 75% of the litigation expenses, and would receive 75% of any recovery from the litigation.[42] The remaining 25% of the expenses were to be paid by Pacer, which would receive 25% of any proceeds from the litigation.[43]

Mr. Balch admitted that this Memorandum of Agreement was "put together so that we'd have a basis to move forward with potential litigation with Arctic Cat."[44] Balch also admitted that IRS paid nothing for this license, and that its payment would come from any recovery in this litigation.[45] Dana confirmed the same understanding of the agreement.[46] Balch also acknowledged that the litigation against Arctic Cat and Suzuki proceeded as described in the Memorandum of Agreement.[47] The attorney fees and costs to pursue this litigation are not paid by IRS or Pacer, but by ASRC and Dana.[48] If any

[40] Ex. M, Memorandum of Agreement, p. 2, ¶ 1. IRS was obligated to transfer all title and ownership of patents to Pacer within 60 days of the settlement of the Polaris litigation (which occurred sometime before December 31, 1998). By the time the Memorandum of Agreement was executed, IRS had not yet fulfilled this obligation. *See* Ex. M, at 1-2 (third "whereas" clause).
[41] Ex. M, p. 3, ¶ 2(A).
[42] *Id*., p. 4, ¶ 2(E) and p.6, ¶2(H).
[43] *Id.*
[44] Ex. O, John Balch June 12, 2003 dep., 182, ll. 6-10.
[45] *Id.* at 192, ll. 7-10.
[46] Ex. L, Dana 30(b)(6) dep., 9:3-10, 11:24 – 12:3.
[47] Ex. O, Balch dep., 201:24-202:1.
[48] Ex. P, Glenn Paton September 2, 2003 dep., 74:24 – 75:7; Ex. J, Bagne dep., 41, ll. 13-19, 45:20 – 46:5.

award is issued in favor of IRS and Pacer, Dana and ASRC expect to receive the proceeds from the litigation.[49]

Ultimately, it was ASRC that made the decision to go ahead with the patent claims against Arctic Cat.[50] ASRC's chief operating officer has admitted, were ASRC not funding this litigation, this case would be "all academic."[51]

ASRC's chief operating officer also freely admits that ASRC has funded this litigation at its own discretion, that ASRC has no obligation to fund, and that any judgment entered against IRS in this case will be satisfied, if at all, out of IRS's assets, which consist only of the right to pursue this litigation in name.[52] Thus, the reality is that this litigation is being pursued through entities without substantial assets by persons and entities who have a monetary interest in this litigation, but have attempted to insulate themselves from all responsibilities and consequences. If this Court awards attorney fees, the award amount could be substantial given the extent of IRS's misconduct and the millions of dollars in attorney fees expended throughout this case. If Arctic Cat's and Suzuki's claims for attorneys fees are stayed pending appeal, then even if the Federal Circuit affirms this Court's rulings and this Court subsequently awards attorney fees, Arctic Cat and Suzuki would be left with an award against two entities with no material assets. If, however, this Court awards fees before an appeal is taken to the Federal Circuit, IRS and Pacer could be required to post a supersedeas bond in the same amount,

---

[49] Ex. O, Balch dep., 201:18 – 202:1; Ex. P, Paton dep., 74:24 – 75:7.
[50] Ex. J, Bagne dep., 191:18 – 192:6.
[51] *Id.* at 10, ll. 3-6, 182, ll. 19-22.
[52] *Id.* at 182:23 – 185:4.

which would force Arctic Slope and Dana to pay for the bond to pursue an appeal. Such a bond would protect Arctic Cat and Suzuki while ensuring that those responsible for this litigation bear the consequences of their conduct. In light of these facts, the fourth factor also weighs strongly against a current entry of judgment under Rule 54(b).

Arctic Cat and Suzuki propose that this Court follow a course of action similar to that adopted in *Transclean Corp. v. Bridgewood Services, Inc.*, Civ. No. 97-2298 (RLE) (D. Minn. 2001) (Dkt. 204). In *Transclean*, this Court had issued a judgment but delayed the finality of the judgment under Fed. R. Civ. P. 58(c)(2) pending resolution of the fees issues.[53] Citing maxims of judicial efficiency and avoiding piecemeal appeals, the court refused to finalize the judgment until deciding the attorney fee issues. Here, for the same reason, this Court should enter judgment under Rule 54(b) only after deciding Arctic Cat's and Suzuki's claims for attorney fees.

### 3. Dismissal of Arctic Cat's remaining declaratory judgment claims is not appropriate under the circumstances of this case.

IRS argues that the Court's summary judgment orders have substantially disposed of the case and controversy between the parties, but glosses over two critical points. First, Arctic Cat's declaratory judgment claim that claim 1 of the '803 Patent is invalid is still pending. And second, not all of IRS's claims of infringement have been resolved

[53] Under Rule 58(c)(2), upon a timely motion for attorney fees "the court may act before a notice of appeal has been filed and has become effective to order that the motion have the same effect under Federal Rule of Appellate Procedure 4(a)(4) as a timely motion under Rule 59." If the Court issues an Order under Rule 58(c)(2), a motion for attorney fees is treated the same as a motion under Rule 59, and delays the time to file an appeal "until the entry of the order disposing of the . . . remaining motion." *See* Fed. R. App. P. 4(a)(4).

since it apparently intends to pursue an infringement claim against the 2002 785 or 800 Arctic Cat snowmobiles if it prevails on its appeal of this Court's rulings on laches, equitable estoppel, and invalidity.[54]

Arctic Cat and Suzuki agree that there will be no need to remand this case to this Court on the remaining claims, if this Court's summary judgments are affirmed on appeal. Assuming this Court is not reversed on appeal, Arctic Cat's and Suzuki's attorney fee claims are the sole remaining claims that need to be decided by this Court. Accordingly, this Court can minimize the need for additional proceedings on remand by deciding the attorney fee issues before appeal.

Under the "final judgment rule," the Federal Circuit has jurisdiction only where an appeal in a patent dispute is taken from "a final decision of a district court." 28 U.S.C. § 1295(a)(1). "That final judgment rule exists to prevent the piecemeal litigation of issues that practically constitute a single controversy, which as separate appeals would otherwise frustrate efficient judicial administration." *Enzo Biochem, Inc. v. Gen-Probe, Inc.*, No. 04-1570, 2005 U.S. App. LEXIS 14084, *5 (Fed. Cir. July 13, 2005) (explaining "final judgment rule").

Where a case involves multiple claims, "there is no final decision until a judgment is entered adjudicating all claims." *Ultra-Precision Mfg. Ltd. v. Ford Motor Co.*, 338 F.3d 1353, 1357 (Fed. Cir. 2003) (citation omitted). The Federal Circuit, in the recent *Enzo Biochem* decision, *supra*, dismissed an appeal of patent invalidity because an unenforceability counterclaim remained unadjudicated in the district court. In another

---

[54] Dkt. 721, IRS Memorandum, 2.

attempted appeal, *Pause Technology v. TiVo Inc.*, 401 F.3d 1290 (Fed. Cir. March 14, 2005) the Federal Circuit lacked appellate jurisdiction due to an unresolved invalidity counterclaim pending in the district court.

To enable IRS to appeal this Court's summary judgment rulings, and to minimize the need for additional proceedings on remand, Arctic Cat and Suzuki have suggested that this Court enter judgment under Rule 54(b) after deciding the attorney fee claims. IRS itself has suggested the Rule 54(b) option, although IRS wants to defer the attorney fee claims and thus require this Court to engage in further proceedings on remand.

IRS also suggests that the Court simply dismiss the remaining claims. However, dismissal of claims is considered a drastic remedy in many contexts. *See, e.g., U.S. v. Mechanik*, 475 U.S. 66, 75 (1986) (referring to dismissal as a "drastic remedy"). IRS argues that the "equities" favor a dismissal of Arctic Cat's and Suzuki's remaining claim.[55] IRS's equitable argument deserves little consideration in light of IRS's own conduct throughout this case. IRS has committed extensive misconduct, including document destruction,[56] defiance of Court Orders,[57] agreements to pay witnesses amounts contingent upon the results achieved,[58] and other improper acts.[59] IRS's resort to the

[55] Dkt. 721, IRS Memorandum, 10.
[56] Dkt. 646, Magistrate Judge Erickson's Report and Recommendation of August 6, 2004, 150; Dkt. 698, Order of March 8, 2005, adopting, in part, Magistrate Judge's Report and Recommendation.
[57] Dkt. 699, Report and Recommendation of March 14, 2005, 27, n. 3.
[58] Dkt. 312, Order of August 26, 2003, 8, n.2.
[59] *See, e.g.,* Dkt. 699, Report and Recommendation of March 14, 2005, p. 32 ("the falsity of IRS's representations to the Patent Examiner appear self evident … ."); 89 Fed. Appx. 736, 2004 WL474002 at *1 (Fed. Cir. 2004)("Injection Research's dogged citation to the

equities recalls the maxim that "he who seeks equity must do equity." *See, e.g.*, *Missouri, K. & T. Trust Co. v. Krumseig*, 172 U.S. 351, 358 (1899).

Moreover, any analysis of the equities must be resolved in Arctic Cat's and Suzuki's favor. This court retains jurisdiction over these claims by virtue of IRS's original threats in March 23, 2001 against Arctic Cat. In that threat, IRS accused Arctic Cat of infringing four patents – three of which are no longer in this case because they were undisputedly invalid or not infringed[60] – and demanded more than $100 million.[61] IRS also provided covenants not to sue on those three patents, but has not provided such a covenant not to sue on claim 1 of the '803 Patent.

Although IRS has cited authority stating that dismissal is within a district court's discretion, none of the authority cited by IRS supports a dismissal under circumstances such as those in this case. Dismissal of remaining claims does not routinely accompany summary judgment just because one party would like to file an appeal for strategic reasons. In *Enzo Biochem*, No. 04-1570, for example, the unenforceability counterclaim was not dismissed or rendered moot on the basis that the patent was already declared invalid. *Id.* *6. While the non-adjudicated claims in *Enzo Biochem* caused a

---

minority view of the United States Court of Appeals for the Third Circuit is not well received.").

[60] Part of Arctic Cat's motion for attorney fees will be based on the expenses it was forced to incur to litigate one of those three patents, the '374 patent, up through the filing of its motion for summary judgment of no infringement. Although Arctic Cat had requested that IRS provide a covenant not to sue on that patent before it commenced substantial discovery activities, IRS refused. Instead, IRS chose to wait until after discovery was completed and after Arctic Cat had submitted a summary judgment motion to offer a covenant not to sue. *See* Dkt. 429-31, 468-69, 488-89.

[61] Ex. B, John Balch March 23, 2001 letter.

jurisdictional defect, this defect could have been cured with a Rule 54(b) certification rather than the more "drastic remedy" of dismissing remaining claims.

Here, the Court should exercise its discretion against dismissing Arctic Cat's remaining declaratory judgment claims. By analogy, courts routinely rule on patent validity issues in cases where summary judgment has already been entered on grounds of noninfringement. *See Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83 (1993) (citing concerns of judgment finality, public interest in having validity issues decided, and also the successful party's interest in preserving the value of their declaratory judgment). As the U.S. Supreme Court explained in *Cardinal Chemical*, if a court chooses to pass on the validity issue, "[a] company once charged with infringement must remain concerned about the risk of similar charges if it develops and markets similar products in the future." *Id.* at 99-100. *Cardinal Chemical* demonstrates the Supreme Court's "preference that district courts rule on both the infringement and invalidity issues, even when non-infringement is found." *Sure Safe Indus., Inc. v. C & R Pier Mfg.*, 832 F.Supp. 293, 294 (S.D. Cal. 1993) (deciding summary judgment motion regarding patent invalidity even after summary judgment was granted on grounds of non-infringement).

For reasons similar to those outlined in *Cardinal Chemical*, the Court should decline to dismiss Arctic Cat's remaining declaratory judgment claims. Depending on the results of IRS's anticipated appeal, adjudication of remaining claims might be necessary and appropriate for the same reasons explained by the United States Supreme Court, including concerns of judgment finality, public interest in having validity issues decided, and also the successful party's interest in preserving the value of its declaratory

judgment. Further, because the Court has a less "drastic remedy" in the form of Rule 54(b) after resolution of the attorney fee claims, the Court should exercise its discretion against any dismissal of remaining claims.

## CONCLUSION

For all the above reasons, Arctic Cat and Suzuki respectfully request that this Court deny IRS's Motion to Enter Final Judgment, to Dismiss Remaining Declaratory Judgment Claims, and to Stay Arctic Cat's and Suzuki's Attorney Fees Claims Pending Appeal and enter a briefing schedule for Arctic Cat's and Suzuki's motions for attorney fees.

Dated: August 4, 2005.

ARCTIC CAT INC.
By its attorneys

s/Annamarie A. Daley

Annamarie A. Daley (MN #158112)
Aaron A. Myers (MN #311959)
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone: (612) 349-8500
Facsimile: (612) 339-4181

SUZUKI MOTOR CORPORATION
By its attorneys

s/William F. Forsyth

William F. Forsyth (MN #31070)
Henson & Efron, P.A.
220 South Sixth Street, Suite 1800
Minneapolis, MN 55402-4503
Telephone: (612) 339-2500
Facsimile: (612) 339-6364

Thomas H. Jenkins (Pro Hac Vice)
Bruce C. Zotter (Pro Hac Vice)
Christopher W. Day (Pro Hac Vice)
Finnegan, Henderson, Farabow,
Garrett & Dunner, L.L.P.
1300 I Street, N.W.
Washington, D.C. 20005-3315
Telephone: (202) 408-4000
Facsimile: (202) 408-4400