# Exhibit K

# PATENT ASSIGNMENT AND LICENSE AGREEMENT

**THIS PATENT ASSIGNMENT AND LICENSE AGREEMENT** ("Agreement") entered into and effective as of September ____, 2001, by and between Injection Research Specialists, Inc. ("IRS"), a corporation organized and existing under the laws of the State of Colorado and Pacer Industries, Inc. ("Pacer"), a corporation organized and existing under the laws of the State of Missouri.

For good and valuable consideration, receipt of which is hereby acknowledged, the parties agree:

1. IRS hereby sells, assigns and transfers unto Pacer and its successors and assigns, the entire title, interest and right in, to and under U.S. Patents Nos. Re. 34,803, Re. 34,079, 5,813,374, and 6,062,202 and any reissues, reexaminations, certificates of correction, divisionals, continuations-in-part, or continuation patents thereof ("Licensed Patents");

2. Pacer in turn grants IRS a limited royalty and other fee free license with respect to the Licensed Patents to pursue litigation against Arctic Cat and any additional parties in the Arctic Cat, Inc. v. Injection Research Specialists, Inc., and Pacer Industries, Inc. case, Civ. No. 01-CV-543 MJD/REL, currently pending in the United States District Court for the District of Minnesota, and against such other infringers of the Licensed Patents on such terms as set forth in a Memorandum of Agreement executed by the parties on April 13, 2000, which is specifically incorporated by reference herein.

**IN WITNESS WHEREOF,** the parties have executed this Agreement on the date above.

INJECTION RESEARCH SPECIALISTS, INC.

By ______________________________

PACER INDUSTRIES, INC.

By Thomas H. Madden

PENGAD 800-631-6989
PLAINTIFF'S EXHIBIT
978
~~87403~~ KDM

# PATENT ASSIGNMENT AND LICENSE AGREEMENT

This Agreement is made and entered into this 2 day of August, 2001 (hereinafter referred to as the "Effective Date") by and between **Injection Research Specialists, Inc.**, a Colorado Corporation having a place of business in Colorado (hereinafter referred to as "IRS"), and **Pacer Industries, Inc.**, a Missouri Corporation having a principal place of business in Florida (hereinafter referred to as "PACER"). IRS and PACER are sometimes referred to herein individually as a "Party" and collectively as the "Parties."

## WITNESSETH:

WHEREAS IRS is the owner by assignment duly recorded in the United States Patent and Trademark Office of the following Letters Patent(s) of the United States and/or patent application(s) (collectively referred to herein as "Patent Properties"):

| Patent No. | Issue Date | Filing Date | Title |
|---|---|---|---|
| Re. 34,803 | Dec. 6, 1994 | Feb. 18, 1992 | TWO-CYCLE ENGINE WITH ELECTRONIC FUEL INJECTION |
| 5,813,374 | Sept. 29, 1998 | Dec. 5, 1994 | TWO-CYCLE ENGINE WITH ELECTRONIC FUEL INJECTION |
| 6,062,202 | May 16, 2000 | Sept. 29, 1998 | TWO-CYCLE ENGINE WITH ELECTRONIC FUEL INJECTION |

WHEREAS PACER is desirous of acquiring the entire right, title and interest for the United States, its territories, dependencies and possessions, in and to said Patent Properties (and/or patents that may be granted therefrom), and any divisions, reissues, reexaminations, certificates of correction or extensions of same;

NOW, THEREFORE, in consideration of the promises and mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, intending to be legally bound, the Parties hereby agree, as follows:

1. IRS owns all right, title, and interest in and to the Patent Properties, the inventions disclosed and claimed therein, and all foreign patents and applications, if any, that rely on the Patent Properties for priority.

2. PACER desires to acquire, and IRS is willing to assign to PACER, all of IRS's right, title, and interest in and to the Patent Properties and any inventions disclosed and claimed therein.

3. IRS hereby transfers, grants, conveys, assigns, and relinquishes exclusively to PACER all of IRS's right, title, and interest in and to the Patent Properties, the inventions claimed therein, and accrued causes of action for damages for infringement thereof, except as provided in the Parties' previous agreements or license grants and Paragraph 7 of this Agreement.

4. IRS shall execute and deliver to PACER the Assignment in Attachment A hereto, and, from time to time after the date hereof upon the request of PACER, such further conveyance instruments as may be necessary or desirable to evidence more fully the transfer of ownership of

all the Patent Properties to PACER, or the original ownership of all the Patent Properties on the part of IRS, to the fullest extent possible. IRS further agrees to provide testimony in connection with any proceeding affecting the right, title, interest, or benefit of PACER in and to the Patent Properties and to perform any other acts deemed necessary to carry out the intent of this Agreement. PACER shall reimburse IRS for any and all costs reasonably incurred by IRS in performance under this paragraph.

5. IRS represents and warrants that no consents of any other Parties are necessary or appropriate under any agreements concerning any of the Patent Properties in order for the transfer and assignment of any of the Patent Properties under this Agreement to be legally effective.

6. IRS represents and warrants that, to the best of IRS's knowledge, upon consummation of this Agreement, PACER shall have good and marketable title to the Patent Properties, free and clear of any and all liens, mortgages, encumbrances, pledges, security interests, licenses, or charges of any nature whatsoever, other than those previously agreed to by the Parties or as set forth in Paragraph 7 of this Agreement.

7. PACER in turn grants IRS a limited royalty and other fee free license with respect to the Patent Properties to pursue litigation, for all past, accrued and future damages, against Arctic Cat and any additional parties in the Arctic Cat, Inc. v. Injection Research Specialists, Inc., and Pacer Industries, Inc. case, Civ. No. 01-CV-543 MJD/REL, currently pending in the United States District Court for the District of Minnesota, and against such other infringers of the Licensed Patents on such terms as set forth in a Memorandum of Agreement executed by the parties on April 13, 2000 which is specifically incorporated by reference herein.

8. IRS and PACER agree to execute the Assignment of Patent Rights attached to this Agreement as Exhibit A for public filing with the United States Patent and Trademark Office. IRS and PACER do not intend the attached Assignment of Patent Rights to supersede or contradict this Agreement.

9. Each Party represents and warrants that: (i) it has been advised to consult separate, independent legal counsel in connection with this Agreement; (ii) it has read this Agreement and understands the terms used herein; and (iii) it has had the opportunity to investigate this matter, determine the advisability of entering into this Agreement and has entered into this Agreement freely and voluntarily.

10. This Agreement shall inure to the benefit of, and be binding on, the Parties hereto together with their respective legal representatives, successors, and assigns.

11. This Agreement shall be governed by and construed in accordance with the laws of the State of California (excluding conflicts of law rules) and of the United States.

12. The Parties shall at their own cost and expense execute and deliver such further documents and instruments and shall take such other actions as may be reasonably required or appropriate to evidence or carry out the intent and purposes of this Agreement.

13. This Agreement may be executed in counterparts, and when so executed each counterpart shall be deemed to be an original, and said counterparts together shall constitute one and the same instrument.

14. This Agreement is subject to previous agreements between the parties, which this Agreement does not supersede. No amendment or modification of this Agreement shall be valid or enforceable against a Party unless it is in writing and is signed by an authorized representative of each Party.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement under seal the day and year first above written.

**INJECTION RESEARCH SPECIALISTS, INC.**

[signature]
Signature

Rodney J. Preisser
Printed

Vice-President
Title

8-1-01
Date

**PACER INDUSTRIES, INC.**

Signature

Printed

Title

Date

**ATTACHMENT A**

**(ASSIGNMENT OF PATENT RIGHTS)**

# ASSIGNMENT OF PATENT RIGHTS

**WHEREAS**, **Injection Research Specialists, Inc.**, a Colorado Corporation having a principal place of business in Colorado (hereinafter referred to as "IRS"), owns, by assignment, all right, title, and interest in the following Patent Properties:

| Patent No. | Issue Date | Filing Date | Title |
|---|---|---|---|
| Re. 34,803 | Dec. 6, 1994 | Feb. 18, 1992 | TWO-CYCLE ENGINE WITH ELECTRONIC FUEL INJECTION |
| 5,813,374 | Sept. 29, 1998 | Dec. 5, 1994 | TWO-CYCLE ENGINE WITH ELECTRONIC FUEL INJECTION |
| 6,062,202 | May 16, 2000 | Sept. 29, 1998 | TWO-CYCLE ENGINE WITH ELECTRONIC FUEL INJECTION |

**WHEREAS Pacer Industries, Inc.**, a Missouri Corporation having a principal place of business Florida (hereinafter referred to as "PACER"), desires to own IRS's entire right, title, and interest in the Patent Properties, in all countries throughout the world.

**NOW THEREFORE**, be it known that, for good and valuable consideration, receipt of which is hereby acknowledged, IRS hereby sells, assigns, transfers, and sets over to PACER, its lawful successors and assigns, IRS's entire right, title, and interest in and to the Patent Properties, the invention claimed therein, any other patent application directed to the invention, and all Letters Patent of the United States that may be granted thereon, and all reissues, reexaminations, and extensions thereof; and all rights to claim priority on the basis of such application, and all applications for Letters Patent that may be filed for the invention in any foreign country and all Letters Patent that may be granted on the invention in any foreign country, and all extensions, renewals, and reissues thereof; and IRS hereby authorizes and requests the Commissioner of Patents and Trademarks of the United States and any official of any foreign country whose duty it is to issue patents on applications as described above, to issue all Letters Patent for this invention to PACER, its successors and assigns, in accordance with the terms of this Assignment, whose terms are made expressly subject to the Patent Assignment and License Agreement executed by IRS and PACER;

**AND, IRS HEREBY** further covenants that IRS has the full right to convey the interest assigned by this Assignment, IRS will take all action and execute all documents necessary to perfect the interest assigned hereby;

**AND, IRS HEREBY** further covenants and agrees that IRS, through its officers and employees, will, without further consideration, communicate with PACER, its successors and assigns, any facts known to IRS and its officers and employees respecting the invention and testify in any legal proceeding, sign all lawful papers when called upon to do so, execute and deliver all papers that may be necessary or desirable to perfect the title to the invention in said PACER, its successors and assigns, execute all divisional, certificates of correction, continuation, and reissue applications, make all rightful oaths, and generally do everything possible to aid PACER, its successors and assigns, to obtain and enforce proper patent protection for the invention in the United States and any foreign country.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement under seal the day and year first above written.

| INJECTION RESEARCH SPECIALISTS, INC. | PACER INDUSTRIES, INC. |
|---|---|
| [signature] | |
| Signature | Signature |
| Rodney J. Preisser | |
| Printed | Printed |
| Vice - President | |
| Title | Title |
| 8-1-01 | |
| Date | Date |

# PATENT ASSIGNMENT AND LICENSE AGREEMENT

This Agreement is made and entered into this ______day of ________________, 2001 (hereinafter referred to as the "Effective Date") by and between **Injection Research Specialists, Inc.,** a Colorado Corporation having a place of business in Colorado (hereinafter referred to as "IRS"), and **Pacer Industries, Inc.,** a Missouri Corporation having a principal place of business in Florida (hereinafter referred to as "PACER"). IRS and PACER are sometimes referred to herein individually as a "Party" and collectively as the "Parties."

## WITNESSETH:

WHEREAS IRS is the owner by assignment duly recorded in the United States Patent and Trademark Office of the following Letters Patent(s) of the United States and/or patent application(s) (collectively referred to herein as "Patent Properties"):

| Patent No. | Issue Date | Filing Date | Title |
|---|---|---|---|
| Re. 34,803 | Dec. 6, 1994 | Feb. 18, 1992 | TWO-CYCLE ENGINE WITH ELECTRONIC FUEL INJECTION |
| 5,813,374 | Sept. 29, 1998 | Dec. 5, 1994 | TWO-CYCLE ENGINE WITH ELECTRONIC FUEL INJECTION |
| 6,062,202 | May 16, 2000 | Sept. 29, 1998 | TWO-CYCLE ENGINE WITH ELECTRONIC FUEL INJECTION |

WHEREAS PACER is desirous of acquiring the entire right, title and interest for the United States, its territories, dependencies and possessions, in and to said Patent Properties (and/or patents that may be granted therefrom), and any divisions, reissues, reexaminations, certificates of correction or extensions of same;

NOW, THEREFORE, in consideration of the promises and mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, intending to be legally bound, the Parties hereby agree, as follows:

1. IRS owns all right, title, and interest in and to the Patent Properties, the inventions disclosed and claimed therein, and all foreign patents and applications, if any, that rely on the Patent Properties for priority.

2. PACER desires to acquire, and IRS is willing to assign to PACER, all of IRS's right, title, and interest in and to the Patent Properties and any inventions disclosed and claimed therein.

3. IRS hereby transfers, grants, conveys, assigns, and relinquishes exclusively to PACER all of IRS's right, title, and interest in and to the Patent Properties, the inventions claimed therein, and accrued causes of action for damages for infringement thereof, except as provided in the Parties' previous agreements or license grants and Paragraph 7 of this Agreement.

4. IRS shall execute and deliver to PACER the Assignment in Attachment A hereto, and, from time to time after the date hereof upon the request of PACER, such further conveyance instruments as may be necessary or desirable to evidence more fully the transfer of ownership of

all the Patent Properties to PACER, or the original ownership of all the Patent Properties on the part of IRS, to the fullest extent possible. IRS further agrees to provide testimony in connection with any proceeding affecting the right, title, interest, or benefit of PACER in and to the Patent Properties and to perform any other acts deemed necessary to carry out the intent of this Agreement. PACER shall reimburse IRS for any and all costs reasonably incurred by IRS in performance under this paragraph.

5. IRS represents and warrants that no consents of any other Parties are necessary or appropriate under any agreements concerning any of the Patent Properties in order for the transfer and assignment of any of the Patent Properties under this Agreement to be legally effective.

6. IRS represents and warrants that, to the best of IRS's knowledge, upon consummation of this Agreement, PACER shall have good and marketable title to the Patent Properties, free and clear of any and all liens, mortgages, encumbrances, pledges, security interests, licenses, or charges of any nature whatsoever, other than those previously agreed to by the Parties or as set forth in Paragraph 7 of this Agreement.

7. PACER in turn grants IRS a limited royalty and other fee free license with respect to the Patent Properties to pursue litigation, for all past, accrued and future damages, against Arctic Cat and any additional parties in the Arctic Cat, Inc. v. Injection Research Specialists, Inc., and Pacer Industries, Inc. case, Civ. No. 01-CV-543 MJD/REL, currently pending in the United States District Court for the District of Minnesota, and against such other infringers of the Licensed Patents on such terms as set forth in a Memorandum of Agreement executed by the parties on April 13, 2000 which is specifically incorporated by reference herein.

8. IRS and PACER agree to execute the Assignment of Patent Rights attached to this Agreement as Exhibit A for public filing with the United States Patent and Trademark Office. IRS and PACER do not intend the attached Assignment of Patent Rights to supersede or contradict this Agreement.

9. Each Party represents and warrants that: (i) it has been advised to consult separate, independent legal counsel in connection with this Agreement; (ii) it has read this Agreement and understands the terms used herein; and (iii) it has had the opportunity to investigate this matter, determine the advisability of entering into this Agreement and has entered into this Agreement freely and voluntarily.

10. This Agreement shall inure to the benefit of, and be binding on, the Parties hereto together with their respective legal representatives, successors, and assigns.

11. This Agreement shall be governed by and construed in accordance with the laws of the State of California (excluding conflicts of law rules) and of the United States.

12. The Parties shall at their own cost and expense execute and deliver such further documents and instruments and shall take such other actions as may be reasonably required or appropriate to evidence or carry out the intent and purposes of this Agreement.

13. This Agreement may be executed in counterparts, and when so executed each counterpart shall be deemed to be an original, and said counterparts together shall constitute one and the same instrument.

14. This Agreement is subject to previous agreements between the parties, which this Agreement does not supersede. No amendment or modification of this Agreement shall be valid or enforceable against a Party unless it is in writing and is signed by an authorized representative of each Party.

**IN WITNESS WHEREOF,** the Parties hereto have executed this Agreement under seal the day and year first above written.

| INJECTION RESEARCH SPECIALISTS, INC. | PACER INDUSTRIES, INC. |
|---|---|
| ______ Signature | Tom Madden Signature |
| ______ Printed | TOM MADDEN Printed |
| ______ Title | CONTROLLER Title |
| ______ Date | 9/13/01 Date |

(ASSIGNMENT OF PATENT RIGHTS)

WHEREAS, Injection Research Specialists, Inc., a Colorado Corporation having a principal place of business in Colorado (hereinafter referred to as "IRS"), owns, by assignment, all right, title, and interest in the following Patent Properties:

| Patent No. | Issue Date | Filing Date | Title |
|---|---|---|---|
| Re. 34,803 | Dec. 6, 1994 | Feb. 18, 1992 | TWO-CYCLE ENGINE WITH ELECTRONIC FUEL INJECTION |
| 5,813,374 | Sept. 29, 1998 | Dec. 5, 1994 | TWO-CYCLE ENGINE WITH ELECTRONIC FUEL INJECTION |
| 6,062,202 | May 16, 2000 | Sept. 29, 1998 | TWO-CYCLE ENGINE WITH ELECTRONIC FUEL INJECTION |

WHEREAS Pacer Industries, Inc., a Missouri Corporation having a principal place of business Florida (hereinafter referred to as "PACER"), desires to own IRS's entire right, title, and interest in the Patent Properties, in all countries throughout the world.

NOW THEREFORE, be it known that, for good and valuable consideration, receipt of which is hereby acknowledged, IRS hereby sells, assigns, transfers, and sets over to PACER, its lawful successors and assigns, IRS's entire right, title, and interest in and to the Patent Properties, the invention claimed therein, any other patent application directed to the invention, and all Letters Patent of the United States that may be granted thereon, and all reissues, reexaminations, and extensions thereof; and all rights to claim priority on the basis of such application, and all applications for Letters Patent that may be filed for the invention in any foreign country and all Letters Patent that may be granted on the invention in any foreign country, and all extensions, renewals, and reissues thereof; and IRS hereby authorizes and requests the Commissioner of Patents and Trademarks of the United States and any official of any foreign country whose duty it is to issue patents on applications as described above, to issue all Letters Patent for this invention to PACER, its successors and assigns, in accordance with the terms of this Assignment, whose terms are made expressly subject to the Patent Assignment and License Agreement executed by IRS and PACER;

AND, IRS HEREBY further covenants that IRS has the full right to convey the interest assigned by this Assignment, IRS will take all action and execute all documents necessary to perfect the interest assigned hereby;

AND, IRS HEREBY further covenants and agrees that IRS, through its officers and employees, will, without further consideration, communicate with PACER, its successors and assigns, any facts known to IRS and its officers and employees respecting the invention and testify in any legal proceeding, sign all lawful papers when called upon to do so, execute and deliver all papers that may be necessary or desirable to perfect the title to the invention in said PACER, its successors and assigns, execute all divisional, certificates of correction, continuation, and reissue applications, make all rightful oaths, and generally do everything possible to aid PACER, its successors and assigns, to obtain and enforce proper patent protection for the invention in the United States and any foreign country.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement under seal the day and year first above written.

| INJECTION RESEARCH SPECIALISTS, INC. | PACER INDUSTRIES, INC. |
|---|---|
| ______________ Signature | Tom Madden Signature |
| ______________ Printed | TOM MADDEN Printed |
| ______________ Title | CONTROLLER Title |
| ______________ Date | 9/13/01 Date |

# Exhibit L

ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OHIO

- - -

| | | |
|---|---|---|
| ARCTIC CAT INC., | : | |
| Plaintiffs, | : | |
| -vs- | : | Case No. 01-CV-543 |
| INJECTION RESEARCH SPECIALISTS, Inc., et al. | : | MJD/RLE (D. Minn.) |
| | : | |
| Defendants. | : | |
| and | : | |
| INJECTION RESEARCH SPECIALISTS, Inc., et al. | : | |
| Counterclaimants, | : | |
| -vs- | : | |
| ARCTIC CAT INC., et al. | : | |
| Counterdefendants. | : | |

- - -

Videotaped deposition of EARL CHARLES BEACH, III witness herein called by the Plaintiff/Counterdefendant for cross-examination under the Federal Rules of Civil Procedure, taken before me, the undersigned, Susan D. Stephenson, Notary Public and Court Reporter pursuant to agreement and stipulations of counsel hereinafter set forth at the offices of Cooper & Walinski, 900 Adams Street, Toledo, Ohio 43624, on Wednesday, August 13, 2003, deposition commencing at 9:10 o'clock a.m.

---

ACKERMAN COURT REPORTING, INC.
624 Adams Street
Toledo, Ohio 43604-1420
Phone: (419) 244-4448 FAX: (419) 244-6944

- - -

LASER BOND FORM A PENGAD • 1-800-631-6989 • www.pengad.com

(Deposition commenced at 9:10 a.m.)

\- - -

VIDEOGRAPHER: On the record.

\- - -

Earl Charles Beach

Being first duly sworn, testified and was examined as follows:

\- - -

CROSS-EXAMINATION

BY MS. DALEY:

Q Would you state your name, please.
A Earl Charles Beach.
Q Where do you live?
A 36 Devils Boot Lane, Marthasville, Missouri.
Q Who do you work for?
A I'm self-employed.
Q Mr. Beach, as you know from a prior deposition that you've given in this case, my name is AnnaMarie Daley and I'm an attorney for Arctic Cat. We are here today to ask you questions about information and facts that Dana Corporation knows. Is that why you are here today?
A Yes.
Q You're here then to provide testimony on

LASER BOND FORM A PENGAD • 1-800-631-6989 • www.pengad.com

behalf of Dana Corporation; correct?
A Yes.
Q One of the defendants in this litigation involving Arctic Cat and Suzuki and IRS is Pacer Industries. What is Dana's relationship to Pacer?
A Daner (sic), Dana was the owner of -- parent company of Pacer Industries.
Q You said Dana was the owner and parent company of Pacer. Is it no longer the owner and parent company of Pacer?
A It's still the parent company of Pacer.
Q Who owns Pacer today?
A Dana.
Q So Dana was and is the owner and parent company of Pacer Industries?
A That's correct.
Q Before Dana was the owner and parent company of Pacer Industries, was Echlin the owner and parent company of Pacer?
A Yes.
Q When did Dana acquire Echlin's rights in Pacer Industries?
A To the best of my recollection, that's the 1998 time frame.

LASER BOND FORM A PENGAD • 1-800-631-6989 • www.pengad.com

A No.
Q Let me re-ask that question.
Do you have any reason to dispute Mr. Balch's testimony that the Memorandum of Agreement dated April 13, 2000, was, quote, put together so that IRS would have a basis to move forward with the patent litigation with Arctic Cat --
A No.
Q -- on behalf of Dana?
A No.
Q Now, if you look at the April 13, 2000, Agreement, it states in the first "whereas" paragraph on page 1 that Pacer had purchased all of the assets, properties, and rights of IRS on September 25, 1991. Do you see that?
A Yes.
Q And then in the third "whereas", there's the statement, in accordance with the terms of the -- that asset purchase all right, title, and interest in the patents were to be conveyed to Pacer within six days of the settlement of the Polaris litigation. Do you see that? It's in the third "whereas" column. Third "whereas" paragraph.
A Okay, yes.

LASER BOND FORM A PENGAD • 1-800-631-6989 • www.pengad.com

Q And then in the next "whereas," Pacer was willing to grant IRS a limited royalty and other fee free license with respect to the patents. Is that correct on behalf of Dana?

A Again, if that's what the document says, that's what it says.

Q Well, I -- I understand that's what the document says. What I need to know today is whether or not that's Dana's position as well?

A Yes.

Q And as a result, then, in the very first paragraph of this Agreement, paragraph number 1 on page 2, Pacer granted IRS a free license to pursue litigation on patent claims against Arctic Cat; correct?

MR. KOWALSKI: Numbered paragraph 1 on page 2?

MS. DALEY: Correct, Mr. Kowalski.

THE WITNESS: Again, if that's what the document states, that's yes.

BY MS. DALEY:

Q And, is that Dana's position that it gave --

LASER BOND FORM A PENGAD • 1-800-631-6989 • www.pengad.com

that through Pacer it gave IRS a license for free to pursue patent litigation against Arctic Cat and others?

A Yeah. Per the document, yes.

Q Does IRS have any other business today to your knowledge, your knowledge being Dana's knowledge, except the lawsuit against Arctic Cat and Suzuki?

A I don't know.

Q Do you know of any other business that IRS is engaged in other than the litigation involving Arctic Cat and Suzuki?

A I don't know.

Q Let's go back to the April 13, 2000, Agreement. If you turn to page 4 of the Agreement, Mr. Beach, paragraph E on page 4 states that IRS and Pacer agree to share the costs of fees and expenses of counsel and consultants on a ratio of 75 to 25, 75 percent for IRS, 25 percent for Pacer.

Is that Dana's understanding of it's Agreement with IRS?

A Yes. If that's per the Agreement, yes.

Q And if you refer back to page 3, paragraph A, you see that statement that IRS shall control the Arctic Cat litigation and any subsequently filed infringement claims. Do you see that?

LASER BOND FORM A PENGAD • 1-800-631-6989 • www.pengad.com

A Yes.
Q What is the business of Pacer today?
A I think it's -- I don't know if the business amounts to anything. They have sold off -- my understanding from preparation from the previous deposition by Jeff Wawrzyniak was that they had sold off all of Pacer's assets.
Q And so that's why Dana's funding the litigation now, because Pacer has no assets?
A I don't know that.
MS. DALEY: I'll have the Court Reporter mark my next exhibit as 768.

- - -

(Plaintiff's Exhibit 768 marked for purposes of identification.)

- - -

BY MS. DALEY:
Q I've handed you what has been marked as Exhibit 768 and this is another Echlin document produced by IRS in this case.
Mr. Beach, can you just put -- turn the document over for just a second.
MS. DALEY: Ms. Kastner,

LASER BOND FORM A PENGAD • 1-800-631-6989 • www.pengad.com

# Exhibit M

**MEMORANDUM OF AGREEMENT**

**THIS AGREEMENT** entered into and effective as of April 13th, 2000, by and between **Injection Research Specialists, Inc.** ("IRS"), a corporation organized and existing under the laws of the State of Colorado; its principal shareholder, **Arctic Slope Regional Corp.** ("Arctic Slope") a corporation organized and existing under the laws of the State of Alaska, **Pacer Industries, Inc.** ("Pacer"), a corporation organized and existing under the laws of the State of Missouri, and **Dana Corporation**, a corporation organized and existing under the laws of the Commonwealth of Virginia.

**WITNESSETH:**

**WHEREAS,** Pacer purchased all of the assets, properties and rights of IRS on September 25, 1991 (the "Asset Purchase Agreement") other than certain patent rights which were subject to an exclusive license agreement with Pacer dated as of September 25, 1991 (the "Exclusive License Agreement") and certain claims and causes of action which were subject to a Litigation Agreement dated as of September 25, 1991; (the "Litigation Agreement");

**WHEREAS,** the claims and causes of action subject to the Litigation Agreement have been successfully concluded in a settlement agreement with Polaris Industries L.P. and Fuji Heavy Industries, Ltd. (the "Polaris Litigation"):

**WHEREAS,** in accordance with the terms of the Asset Purchase Agreement, all right, title and interest in the covered patents (US Patent Nos. 4,901,701; 5,024,205; and 4,967,712 hereinafter the ("Licensed Patents"), and corresponding trade secrets and intellectual property relating thereto, were to be conveyed to Pacer within sixty (60) days of the settlement of the Polaris Litigation subject only to the continuing obligations of Pacer to IRS contained in a

Deposition Exhibit
# 380
6/12/03
Blomstrom #12681

Commission Agreement dated as of September 25, 1991 (the "Commission Agreement"), which has now expired;

**WHEREAS**, there is pending litigation against Arctic Cat, Unisia JECS and Suzuki Motor Corporation seeking enforcement of intellectual property rights associated with a theft of IRS trade secrets and the Licensed Patents (the "Arctic Cat Litigation");

**WHEREAS**, because of the involvement of certain current and former employees of IRS, the parties believe IRS is in the best position to prosecute and control the Arctic Cat Litigation;

**WHEREAS**, Pacer is willing to grant IRS a limited royalty and other fee free license with respect to the Licensed Patents and related trade secrets and intellectual property to pursue the Arctic Cat Litigation and against such other infringers of the Licensed Patents and related trade secrets and intellectual property as may be identified by the parties;

**WHEREAS**, IRS and Pacer agree to generally and mutually release each other from all pending or potential claims, now known or unknown, related to the Asset Purchase Agreement, Litigation Agreement, Amended Litigation Agreement, Commission Agreement, or prosecution of the Polaris or Arctic Cat Litigation.

**NOW, THEREFORE,** the parties hereto agree:

1. Pacer hereby grants IRS a limited royalty and other fee free license with respect to the Licensed Patents and related trade secrets and intellectual property to pursue the Arctic Cat Litigation and against such other infringers of the Licensed Patents and related trade secrets and intellectual property (Infringement Claims);

2. **<u>The Arctic Cat Litigation</u>**

(A) IRS shall control the Arctic Cat Litigation, any subsequent filed Infringement Claims, if any, and any appeals with respect thereto. IRS agrees to keep Pacer informed of all developments in the Arctic Cat litigation or any other Infringement Claim initiated subsequent to the date hereof by agreement between the parties subject to paragraph 2.B. Notwithstanding any other provision contained herein, IRS, through its president John Balch or his successor, shall make the final decisions with respect to said litigation or claims after reasonable consultation with Pacer:

(B) Pacer shall not be required to, but shall have the option to participate in any future Infringement Claim, initiated subsequent to the date hereof by IRS, pursuant to and in accordance with the terms of this Agreement. Pacer shall confirm its participation in writing to IRS within 90 days after receiving written notice from IRS that a subsequent Infringement Claim has been made. In the event that Pacer decides not to participate in any future Infringement Claim filed subsequent to the date hereof, IRS shall be solely responsible for all costs, fees and expenses associated with the prosecution of any subsequent Infringement Claim and shall be entitled to 100% of any damages, settlement or other recovery.

(C) Without the written consent of IRS or Pacer, no legal counsel and professional consultants other than as identified on Schedule 1 (attached) shall be retained or engaged in the prosecution of the Arctic Cat Litigation;

(D) No less than semi-annually, IRS shall obtain from counsel and consultants, litigation plans and budgets and shall submit such plans and budgets to Pacer for

reasonable review, modification and approval, which shall not be unreasonably withheld;

(E) IRS and Pacer agree to share the cost of all fees for services rendered and reasonable expenses of the counsel and consultants identified on Schedule 1 on or after January 1, 1999 on a ratio of seventy-five percent (75%) assumed and paid by IRS (the "IRS Share") and twenty-five percent (25%) (the "Pacer Share") assumed and paid by Pacer, subject to the terms of this agreement,

(1) Counsel and consultant's fees shall be based upon factors to include:

(a) time and labor for the work performed;

(b) experience and skill of the person performing the work;

(c) complexity, time constraints and results achieved.

(2) Expenses of counsel and consultants shall include:

(a) expert witness and deposition fees;

(b) air and ground transportation at "economy" fare rates, meals and hotel accommodations;

(c) authorized computerized research fees;

(d) telephone, facsimile, messenger, overnight courier and such other services;

(e) upon client's authorization, litigation support and trial preparation services such as multimedia trial exhibits and document imaging;

(f) secretarial overtime and word processing services in those circumstances where it is reasonably deemed necessary to meet the demands of litigation and upon notice and consultation with IRS.

(3) IRS will initially receive the fee and expense billings of the counsel and consultants identified on Schedule 1 and shall forward a copy to Pacer. IRS shall pay and keep current the IRS share of each billing and Pacer shall pay and keep current the Pacer Share of each billing subject to the terms of this agreement. Pacer agrees to pay its share of fees and expenses within thirty (30) days of receipt of a copy of the statement for services by counsel or consultants. IRS and Pacer shall furnish to the other party evidence of its payment of its share of each billing within ten (10) business days of request by the other party.

(a) IRS or Pacer shall promptly notify the other party if, for whatever reason, it is unable or unwilling to pay its share of billed fees and expenses. If either party learns that the other party has failed to keep its share current, then notice of non-payment may be given to the offending party, which shall have twenty (20) days to cure its default. If the offending party does not cure, then the party giving notice shall pay the offending party's share if it desires to continue prosecution of the case.

(b) The party paying the other party's share shall be entitled to priority claim only from any recovery from the Arctic Cat Litigation, or any subsequent Infringement Claim, at the rate of $2.00 for each $1.00 paid.

(F) IRS shall be entitled to a priority claim only from any recovery from the Arctic Cat Litigation equal to the overhead costs to operate IRS office in Colorado

Springs, Colorado with regard to the Arctic Cat Litigation which are incurred on or after January 1, 1999, provided however, such overhead costs shall not exceed twenty-five thousand dollars ($25,000) in any month or seven hundred fifty thousand dollars ($750,000) in total.

(G) If settlement of the Arctic Cat Litigation becomes advisable, IRS will settle only upon reasonable terms. IRS further agrees not to settle such litigation without the express written consent of Dana, which consent shall not be unreasonably withheld.

(H) All recoveries of money or property as a result of judgment, settlement agreement, royalty agreement or otherwise from the Arctic Cat Litigation or the defendants in such litigation, or in any subsequent Infringement Claims, after the payment of all priority claims under Section (D)(3)(b) and Section F (the "Proceeds") shall be shared on the following basis:

(1) Seventy-five percent (75%) to IRS, and

(2) Twenty-five percent (25%) to Pacer.

All Proceeds shall be paid to the trust account of a law firm identified on Schedule 1 and disbursed by wire transfer on the date of receipt in accordance with the above-indicated shares.

3. <u>General Release of all Rights and Claim</u>

(A) As a material inducement to each party to enter into this Agreement, IRS on behalf of itself, its owners, shareholders, partners, joint ventures, trustees, fiduciaries, officers, directors, employees, agents, attorneys, successors, assigns, parent companies, subsidiaries, affiliates and divisions; (hereinafter "IRS

Releasing Parties") and Pacer on behalf of itself, its owners, shareholders, partners, joint ventures, trustees, fiduciaries, officers, directors, employees, agents, attorneys, successors, assigns, parent companies, subsidiaries, affiliates and divisions (hereinafter "Pacer Releasing Parties"); irrevocably and unconditionally release and forever discharge each other and all IRS Releasing Parties and Pacer Releasing Parties, respectively, and all persons acting by, through, on behalf of, under or in concert with any of them, from any and all "Claims."

(B) The term "claims" includes all charges, claims, complaints, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses, including attorney's fees and costs actually incurred of any nature whatsoever, now known or unknown, which the parties now have or claim to have, or which the parties at any time heretofore had or claimed to have, or which the parties at any time hereafter may have or claim to have against each other, arising out of any alleged violations of any contract, express or implied, any covenant of good faith and fair dealing, express or implied, any fiduciary duty, express or implied, and tort or any stature, specifically arising under but not limited to:

(1) The Commission Agreement;

(2) The Litigation Agreement;

(3) The Asset Sale Agreement dated September 25, 1991;

(4) The Amended Litigation Agreement by and between IRS and Pacer dated December 1, 1994;

(5) The Polaris litigation; or

(6) The Arctic Cat litigation.

4. **Benefits to IRS**

A. Pacer agrees to pay IRS the sum of Four Hundred Thousand Dollars and no cents ($400,000.00) as consideration for this agreement within five (5) days of the execution. Simultaneous therewith, after receipt of valid copies of the fee invoices, Pacer also agrees to bring current, payment of its share of the fees and expenses incurred in the prosecution of the Arctic Cat litigation pursuant to paragraph 2 (D) (3) hereof.

B. Pacer has granted IRS a royalty and fee free license for use of the Licensed Patents and related trade secrets and intellectual property to prosecute the Arctic Cat Litigation and any Infringement Claims pursuant to this Agreement.

5. **Benefits to Pacer**

IRS agrees to assign the Licensed Patents to Pacer, retaining only a limited license, as set forth in paragraphs 1 and 4.B. above, upon execution of this Agreement.

6. **Arbitration**

(A) Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules in Cleveland, Ohio and judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

(B) The arbitrator shall resolve any controversies, disputes or claims in accordance with the terms of this Agreement interpreted in accordance with the Laws of Ohio

acting always as an impartial judge without a jury and not as a mediator or conciliator. The arbitral award shall state in writing the reasons for the award and, in connection therewith, set forth the arbitrator's findings of fact and conclusions of law.

7. <u>No Representations</u>

IRS and Pacer affirm that in signing this Agreement, they have not relied on any representation or statement not specifically set forth in this Agreement, whether by their agents, representatives or attorneys, with regard to the subject matter, basis or effect of this Agreement or otherwise.

8. <u>Governing Law</u>

This Agreement is made and entered into in accordance with and shall in all respects be interpreted, enforced and governed under the laws of the State of Ohio.

9. <u>Further Necessary Action</u>

IRS and Pacer agree, without further consideration, to execute or cause to be executed, and to deliver to the other, any documents and to take any other action as may be necessary to more effectively consummate the subject matter of this Agreement.

10. <u>Proper Construction</u>

(a) The language of all parts of this Agreement shall in all cases be construed as a whole according to its fair meaning, and not strictly for or against any of the parties.

(b) As used in this Agreement, the term "or" shall be deemed to include the term "and/or" and the singular or plural number shall be deemed to include the other whenever the context so indicates or requires.

(c) The paragraph headings used in this Agreement are intended solely for convenience of reference and shall not in any manner amplify, limit, modify or otherwise be used in the interpretation of any of the provisions hereof.

11. **Binding Effect**

This Agreement constitutes the entire, complete, final and exclusive agreement between the parties relating to the subject matter of this Agreement and any and all prior and contemporaneous representations, promises, warranties and statements are merged herein. Any representations, promises, warranties or statements heretofore or hereafter made that differ in any way from the terms of this written Agreement shall be given no force or effect. This Agreement may not be modified, rescinded or terminated orally and no modification, rescission or waiver shall be binding on either party unless made in writing signed by the party to be bound thereby. Further, the parties expressly agree that this Agreement shall not be binding until a duly authorized representative of each party signs this Agreement.

12. **Counterparts**

This Agreement sets forth the entire agreement between the parties hereto, and fully supersedes any and all prior agreement or understandings between the parties hereto pertaining to the subject matter hereof.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first written above.

**INJECTION RESEARCH SPECIALISTS, INC.**

By ______________________

Its: ______________________

**PACER INDUSTRIES, INC.**

By [signature]
A. Glenn Paton

Its: Senior Vice President and Treasurer

**ARCTIC SLOPE REGIONAL CORPORATION**

By ______________________

Its: ______________________

**DANA CORPORATION**

By [signature]
A. Glenn Paton

Its: Vice President - Treasurer

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first written above.

**INJECTION RESEARCH SPECIALISTS, INC.**

By ______________________________

Its: President

**PACER INDUSTRIES, INC.**

By ______________________________

Its: ______________________________

**ARCTIC SLOPE REGIONAL CORPORATION**

By ______________________________

Its: Chief Adm Officer

**DANA CORPORATION**

By ______________________________

Its: ______________________________