**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

ARCTIC CAT INC., a Minnesota Corporation,

Plaintiff,

vs.

INJECTION RESEARCH SPECIALISTS, INC., a Colorado Corporation, and PACER INDUSTRIES, INC., a Missouri Corporation,

Defendants,

and

INJECTION RESEARCH SPECIALISTS, INC., a Colorado Corporation, and PACER INDUSTRIES, INC., a Missouri Corporation,

Counterclaimants,

vs.

ARCTIC CAT INC., a Minnesota Corporation, and SUZUKI MOTOR CORPORATION, a Japanese Corporation,

Counterdefendants.

Civ. No. 01-543 (MJD/RLE)

---

**SETTLEMENT AGREEMENT AND**
**STIPULATION OF DISMISSAL WITH PREJUDICE**

# SETTLEMENT AGREEMENT AND
# STIPULATION OF DISMISSAL WITH PREJUDICE

Arctic Cat Inc. ("Arctic Cat"), a Minnesota corporation, Suzuki Motor Corporation ("Suzuki"), a Japanese corporation, Injection Research Specialists, Inc. ("IRS"), a Colorado corporation, Pacer Industries, Inc. ("Pacer"), a Missouri corporation, Arctic Slope Regional Corporation ("ASRC"), an Alaska Native Corporation and the parent company of IRS, and Dana Corporation ("Dana"), an Ohio corporation and the parent company of Pacer, enter into this Settlement Agreement and Stipulation of Dismissal with Prejudice (the "Agreement").

## A. Recital

The parties engaged in litigation entitled *Arctic Cat Inc. v. Injection Research Specialists, Inc. and Pacer Industries, Inc.; Injection Research Specialists, Inc. and Pacer Industries, Inc. v. Arctic Cat Inc. and Suzuki Motor Corporation*, Civ. No. 01-543, venued in the United States District Court in the District of Minnesota (the "Litigation") are now desirous of dismissing and settling the Litigation.

## B. Definitions

1. As used in this Agreement, "Patents" refers to and includes any and all patents descended from or related to IRS's Patent Application No. 119,626 (filed November 12, 1987) and Patent Application No. 502,410 (filed March 30, 1990) and any related intellectual property including, but not limited to, any trade secrets, the patents specifically including but not limited to the following: U.S. 4,901,701; U.S. 4,967,712; U.S. 5,024,205; U.S. 5,813,374; U.S. 6,062,202; U.S. Re. 34,079; U.S. Re. 34,803; reissue application 10/146,129; reissue application 09/962,614; any and all continuations, divisionals, or reissues of those patents whether issued presently or in the future; any and all related patents or applications whether issued presently or in the future; and any and all continuations, divisionals, or reissues of related patents or applications whether issued presently or in the future.

2. As used in this Agreement, "Parties" refers to and includes any and all of the following, both collectively and individually: Arctic Cat, Suzuki, IRS, Pacer, ASRC, and/or Dana.

3. As used in this Agreement, "IRS and Pacer et al." refers to and includes any and all of the following, both collectively and individually: IRS, Pacer, ASRC, and/or Dana.

4. As used in this Agreement, "Effective Date" shall mean the date the last Party signs this Agreement.

5. As used in this Agreement, "Customers" refers to and includes any person or entity that purchases any product of Arctic Cat or Suzuki or any component of a product of Arctic Cat or Suzuki.

**C. Agreements**

In consideration for the covenants, releases, representations, warranties and promises contained herein, the Parties agree to the following:

1. Covenant Not to Sue. IRS and Pacer et al. covenant not to sue Arctic Cat, Suzuki, their Customers, or their suppliers on the Patents for any past, present, or future claim arising from manufacturing, exporting, importing, using, selling, or offering to sell any product of Arctic Cat or Suzuki or any component of a product of Arctic Cat or Suzuki ("Covenant Not to Sue"). IRS and Pacer et al. agree that Arctic Cat, Suzuki, their Customers, and their suppliers shall, after the Effective Date of this Agreement, have no liability to IRS and Pacer et al. or any purchaser, assignee, or successor-in-interest to the Patents for any past, present, or future claim arising from manufacturing, exporting, importing, using, selling, or offering to sell any product of Arctic Cat or Suzuki or any component of a product of Arctic Cat or Suzuki. For purposes of the Covenant Not to Sue given above in this paragraph 1, IRS and Pacer et al. shall include as to each of IRS, Pacer, ASRC and Dana, its parent companies, subsidiaries, affiliates, employees, officers and former officers, shareholders, directors, representatives, agents, attorneys, successors

and assigns, and all other persons acting for or on its behalf. The benefits of the Covenant Not to Sue given above in this paragraph 1 shall extend to, in addition to Arctic Cat, Suzuki, their Customers and their suppliers, the parent companies, subsidiaries, affiliates, employees, officers and former officers, shareholders, directors, representatives, agents, attorneys, successors and assigns, and all other persons acting for or on behalf of Arctic Cat or Suzuki, and each of them.

2. Stipulation of Dismissal with Prejudice. Arctic Cat, Suzuki, IRS, and Pacer hereby stipulate that this Litigation shall be dismissed with prejudice. Each party shall bear its own attorney fees and costs. A proposed Order of Dismissal with Prejudice agreeable to the Parties is appended to and is part of this Agreement.

3. Release Provided by Arctic Cat and Suzuki. Arctic Cat and Suzuki release and forever discharge IRS and Pacer et al. from any and all claims against them asserted, or which could have been asserted, in the Litigation, arising from, related to, or based upon the Litigation, any prior litigation between the Parties, any prior course of dealing or communications between the Parties related to the Patents, or, in any way related to the Patents. This release includes all such claims, whether now known or unknown, whether matured or unmatured, whether in law or in equity, that Arctic Cat and Suzuki ever had, now have, or may hereafter claim to have against IRS and Pacer et al. Notwithstanding the foregoing, this Release shall not be deemed or construed to constitute a release by Arctic Cat or Suzuki of any of IRS and Pacer et al.'s obligations under this Agreement. For purposes of the release given in this paragraph 3, "Arctic Cat and Suzuki" shall include as to each of Arctic Cat and Suzuki, its parent companies, subsidiaries, affiliates, employees, officers and former officers, shareholders, directors, representatives, agents, attorneys, successors and assigns, and all other persons acting for or on its behalf. The benefits of the release given in this paragraph 3 shall extend to, in addition to IRS and Pacer et al., the parent companies, subsidiaries, affiliates, employees, officers and former officers, shareholders, directors, representatives, agents, attorneys,

successors and assigns, and all other persons acting for or on behalf of IRS, Pacer, ASRC and Dana, and each of them.

4. Release Provided by IRS and Pacer et al. IRS and Pacer et al. release and forever discharge Arctic Cat, Suzuki, their Customers, and their suppliers from any and all claims against them asserted, or which could have been asserted, in the Litigation, arising from, related to, or based upon the Litigation, any prior litigation between the Parties, any prior course of dealing or communications between the Parties relating to the Patents, or in any way related to the Patents, provided however, that as to such Customers and suppliers such release is limited to claims arising from manufacturing, exporting, importing, using, selling, or offering to sell any product of Arctic Cat or Suzuki or any component of a product of Arctic Cat or Suzuki. This release includes all such claims, whether now known or unknown, whether matured or unmatured, whether in law or in equity, that IRS and Pacer et al. ever had, now have, or may hereafter claim to have against Arctic Cat, Suzuki, their Customers, and their suppliers. Notwithstanding the foregoing, this Release shall not be deemed or construed to constitute a release by IRS and Pacer et al. of any of Arctic Cat's and Suzuki's obligations under this Agreement. For purposes of the release given in this paragraph 4, "IRS and Pacer et al." shall include as to each of IRS, Pacer, ASRC and Dana, its parent companies, subsidiaries, affiliates, employees, officers and former officers, shareholders, directors, representatives, agents, attorneys, successors and assigns, and all other persons acting for or on its behalf. The benefits of the release given in this paragraph 4 shall extend to, in addition to Arctic Cat, Suzuki, their Customers and their suppliers, the parent companies, subsidiaries, affiliates, employees, officers and former officers, shareholders, directors, representatives, agents, attorneys, successors and assigns, and all other persons acting for or on behalf of the entities or persons released in this paragraph 4, and each of them.

5. No Undocumented Representations. Each of the Parties expressly warrants and represents that, in entering into this Agreement, it is not relying on any promise,

agreement or statement, whether oral or written, that is not fully set forth in this Agreement. Specifically, each of the Parties acknowledges that it is not relying on any promise, agreement or statement, whether written or oral, in entering into this Agreement: (i) that has been made by a party to this Agreement, or (ii) that has been made by any representative or agent of a party to this Agreement, and which is not set forth, in full, in the terms of this Agreement.

6. Independent Judgment. Each of the Parties to this Agreement is relying on its own independent judgment in entering into this Agreement.

7. No Assignment, Sale, or Other Transfer. IRS and Pacer each represents and warrants that together they hold the entire right, title, and interest in and to the Patents and each represents and warrants that it has not assigned, sold or otherwise transferred any rights relating to the Patents before the Effective Date of this Agreement and that no other person or entity has any interest in the Patents. IRS and Pacer each also represents and warrants that it has not made any previous assignment, sale or other transfer before the Effective Date of this Agreement of any of the claims and causes of action released in this Agreement and that no other person or entity has any interest in any of the claims or causes of action released in this Agreement. IRS and Pacer each further represents and warrants that John Balch, Rodney Preisser, Gary Divel, and Ron Chasteen do not presently and have not, since not later than January 1, 1995, owned personal interests in the Patents. IRS and Pacer each still further represents and warrants (1) that each actual or prospective assignee, purchaser, and/or successor-in-interest to the Patents, will be given a copy of this Agreement and (2) that any such assignment, sale or other transfer would be taken (a) subject to the terms of this Agreement, including but not limited to the Covenant Not to Sue, (b) without the right to sue Arctic Cat or Suzuki on the Patents and without the right to sue Arctic Cat's or Suzuki's Customers or Arctic Cat's or Suzuki's suppliers on the Patents for any past, present, or future claim arising from manufacturing, exporting, importing, using, selling, or offering to sell any product

of Arctic Cat or Suzuki or any component of a product of Arctic Cat or Suzuki, and (c) with a contractual obligation to notify any subsequent assignee, purchaser, and/or successor-in-interest to the Patents of the terms of this Agreement.

8. No Intent to Commence Litigation. IRS and Pacer et al., each represents and warrants that it has no present intent to commence any litigation against Arctic Cat or Suzuki based upon the Patents or upon any matter, claim or cause of action released in this Agreement. IRS and Pacer et al. each further warrants and represents that it has no present intent to commence any litigation against Arctic Cat's or Suzuki's Customers or suppliers based on the Patents for manufacturing, exporting, importing, using, selling, or offering to sell any product of Arctic Cat or Suzuki or any component of a product of Arctic Cat or Suzuki, or based upon any matter, claim, or cause of action released in this Agreement. Arctic Cat and Suzuki each represents and warrants that it has no present intent to commence any litigation against IRS, Pacer, ASRC, or Dana based upon the Patents or upon any matter, claim or cause of action released in this Agreement

9. Disposition of Confidential Materials. The Parties represent and warrant that within 60 days of the entry of the Order of Dismissal with Prejudice they will comply with any and all obligations under the Protective Order entered during the Litigation, including all amendments and additions to the Protective Order, including but not limited to all provisions pertaining to the disposition of Confidential Material and documents produced in discovery.

10. Indemnification by IRS. IRS shall indemnify Arctic Cat, Suzuki, their Customers, and their suppliers from any claim arising from, based upon, or related to the following: (1) any act by IRS, whether undertaken directly or indirectly, inconsistent with any representation or warranty by IRS under this Agreement; (2) any claim asserted by IRS, whether undertaken directly or indirectly, inconsistent with the Covenant Not to Sue; (3) any failure by IRS, whether occurring directly or indirectly, to comply with obligations under this Agreement; or (4) any act by IRS, whether undertaken directly or

indirectly, which is otherwise inconsistent with this Agreement. IRS's indemnification shall include the attorney fees, costs, judgment, and settlement amount of Arctic Cat, Suzuki, their Customers, and their suppliers from defending against any such claim brought by any assignee, purchaser, or successor-in-interest to the Patents. For purposes of the acts, claims, and failures described in subsections (1) – (4) of this paragraph 10, the acts, claims, and failures of "IRS" shall include the acts, claims, and failures of any person acting for or on behalf of IRS, including, without limitation, its parent companies, subsidiaries, affiliates, employees, officers and former officers, shareholders, directors, representatives, agents, attorneys, successors or assigns; provided, however, that no duty or obligation arising under this paragraph 10 is either imposed upon, or assumed by, any such person or entity other than IRS. The benefits of the indemnification given above by IRS in this paragraph 10 shall extend to, in addition to Arctic Cat, Suzuki, their Customers and their suppliers, the parent companies, subsidiaries, affiliates, employees, officers and former officers, shareholders, directors, representatives, agents, attorneys, successors and assigns, and all other persons acting for or on behalf of Arctic Cat or Suzuki, and each of them. Arctic Cat shall decide whether to retain attorneys to represent Arctic Cat, its Customers, and its suppliers at IRS's expense, or to tender the defense to IRS. Suzuki, its Customers, and its suppliers shall each decide whether to retain attorneys to represent Suzuki, its Customers, and its suppliers at IRS's expense, or to tender the defense to IRS.

11. Indemnification by Pacer. Pacer shall indemnify Arctic Cat, Suzuki, their Customers, and their suppliers from any claim arising from, based upon or related to the following: (1) any act by Pacer, whether undertaken directly or indirectly, inconsistent with any representation or warranty by Pacer under this Agreement; (2) any claim asserted by Pacer, whether undertaken directly or indirectly, inconsistent with the Covenant Not to Sue; (3) any failure by Pacer, whether occurring directly or indirectly, to comply with obligations under this Agreement; or (4) any act by Pacer, whether

undertaken directly or indirectly, which is otherwise inconsistent with this Agreement. Pacer's indemnification shall include the attorney fees, costs, judgment, and settlement amount of Arctic Cat, Suzuki, their Customers, and their suppliers from defending against any such claim brought by any assignee, purchaser, or successor-in-interest to the Patents. For purposes of the acts, claims, and failures described in subsections (1) – (4) of this paragraph 11, the acts, claims, and failures of "Pacer" shall include the acts, claims, and failures of any person acting for or on behalf of Pacer, including, without limitation, its parent companies, subsidiaries, affiliates, employees, officers and former officers, shareholders, directors, representatives, agents, attorneys, successors or assigns; provided, however, that no duty or obligation arising under this paragraph 11 is either imposed upon, or assumed by, any such person or entity other than Pacer. The benefits of the indemnification given above by Pacer in this paragraph 11 shall extend to, in addition to Arctic Cat, Suzuki, their Customers and their suppliers, the parent companies, subsidiaries, affiliates, employees, officers and former officers, shareholders, directors, representatives, agents, attorneys, successors and assigns, and all other persons acting for or on behalf of Arctic Cat or Suzuki, and each of them. Arctic Cat shall decide whether to retain attorneys to represent Arctic Cat, its Customers, and its suppliers at Pacer's expense, or to tender the defense to Pacer. Suzuki, its Customers, and its suppliers shall each decide whether to retain attorneys to represent Suzuki, its Customers, and its suppliers at Pacer's expense, or to tender the defense to Pacer.

12. Indemnification by ASRC. ASRC shall indemnify Arctic Cat, Suzuki, their Customers, and their suppliers from any claim arising from, based upon or related to the following: (1) any act by IRS or ASRC, whether undertaken directly or indirectly, inconsistent with any representation or warranty by IRS or ASRC under this Agreement; (2) any claim asserted by IRS or ASRC, whether undertaken directly or indirectly, inconsistent with the Covenant not to Sue; (3) any failure by IRS or ASRC, whether occurring directly or indirectly, to comply with obligations under this Agreement; or (4)

any act by IRS or ASRC, whether undertaken directly or indirectly, which is otherwise inconsistent with this Agreement. ASRC represents and warrants that it is not prevented or limited in any way from fulfilling its obligations under this Agreement. ASRC represents and warrants that its charter permits it to indemnify as provided under this Agreement, and ASRC is not prevented or limited in its ability to agree to indemnify and actually indemnify as provided under this Agreement. To the extent that a waiver of sovereign immunity or any other action is necessary for ASRC to indemnify or to fulfill any other obligation under this Agreement, ASRC expressly waives its sovereign immunity and/or agrees to perform any other act to fulfill its obligations under this Agreement. ASRC's indemnification shall include the attorney fees, costs, judgment, and settlement amount of Arctic Cat, Suzuki, their Customers, and their suppliers from defending against any such claim brought by any assignee, purchaser, or successor-in-interest to the Patents. For purposes of the acts, claims, and failures described in subsections (1) – (4) of this paragraph 12, the acts, claims, and failures of "IRS or ASRC" shall include the acts, claims, and failures of any person acting for or on behalf of IRS or ASRC, including, without limitation, each of their respective parent companies, subsidiaries, affiliates, employees, officers and former officers, shareholders, directors, representatives, agents, attorneys, successors or assigns; provided, however, that no duty or obligation arising under this paragraph 12 is either imposed upon, or assumed by, any such person or entity other than ASRC. The benefits of the indemnification given above by ASRC in this paragraph 12 shall extend to, in addition to Arctic Cat, Suzuki, their Customers and their suppliers, the parent companies, subsidiaries, affiliates, employees, officers and former officers, shareholders, directors, representatives, agents, attorneys, successors and assigns, and all other persons acting for or on behalf of Arctic Cat or Suzuki, and each of them. Arctic Cat shall decide whether to retain attorneys to represent Arctic Cat, its Customers, and its suppliers at ASRC's expense, or to tender the defense to ASRC. Suzuki, its Customers, and its suppliers shall each decide whether to retain

attorneys to represent Suzuki, its Customers, and its suppliers at ASRC's expense, or to tender the defense to ASRC.

13. Indemnification by Dana. Dana shall indemnify Arctic Cat, Suzuki, their Customers, and their suppliers from any claim arising from, based upon or related to the following: (1) any act by Pacer or Dana, whether undertaken directly or indirectly, inconsistent with any representation or warranty by Pacer or Dana under this Agreement; (2) any claim asserted by Pacer or Dana, whether undertaken directly or indirectly, inconsistent with the Covenant not to Sue; (3) any failure by Pacer or Dana, whether occurring directly or indirectly, to comply with obligations under this Agreement; or (4) any act by Pacer or Dana, whether undertaken directly or indirectly, which is otherwise inconsistent with this Agreement. Dana's indemnification shall include the attorney fees, costs, judgment, and settlement amount of Arctic Cat, Suzuki, their Customers, and their suppliers from defending against any such claim brought by any assignee, purchaser, or successor-in-interest to the Patents. For purposes of the acts, claims, and failures described in subsections (1) – (4) of this paragraph 13, the acts, claims, and failures of "Pacer or Dana" shall include the acts, claims, and failures of any person acting for or on behalf of Pacer or Dana, including, without limitation, each of their respective parent companies, subsidiaries, affiliates, employees, officers and former officers, shareholders, directors, representatives, agents, attorneys, successors or assigns; provided, however, that no duty or obligation arising under this paragraph 13 is either imposed upon, or assumed by, any such person or entity other than Dana. The benefits of the indemnification given above by Dana in this paragraph 13 shall extend to, in addition to Arctic Cat, Suzuki, their Customers and their suppliers, the parent companies, subsidiaries, affiliates, employees, officers and former officers, shareholders, directors, representatives, agents, attorneys, successors and assigns, and all other persons acting for or on behalf of Arctic Cat or Suzuki, and each of them. Arctic Cat shall decide whether to retain attorneys to represent Arctic Cat, its Customers, and its suppliers at Dana's

expense, or to tender the defense to Dana. Suzuki, its Customers, and its suppliers shall each decide whether to retain attorneys to represent Suzuki, its Customers, and its suppliers at Dana's expense, or to tender the defense to Dana.

14. Governing Law; Forum. This Agreement shall be construed in accordance with, and be governed by, the laws of the State of Minnesota. The validity, interpretation, performance and enforcement of this Agreement shall be governed by the laws of the State of Minnesota. Arctic Cat, Suzuki, IRS, and Pacer agree that the United States District Court for the District of Minnesota retains jurisdiction to enforce the terms of this Agreement. Each of the Parties agrees that any suit, action or proceeding arising out of or relating to this Agreement or the breach or threatened breach hereof shall be commenced and prosecuted only in the United States District Court for the District of Minnesota. Each of the Parties consents and submits to the personal jurisdiction of that court in respect of any such proceeding. Each of the Parties waives any objection that it may now or hereafter have to venue of any such suit, action or proceeding in the United States District Court for the District of Minnesota and any claim that it may now or hereafter have that any such proceeding in that court has been brought in an inconvenient forum.

15. Remedies. In addition to indemnification and all other remedies provided for herein, each of the Parties shall be entitled to all other rights, powers and remedies which may be available to it for a breach of or default under this Agreement (including but not limited to a breach of or default under any of the representations, warranties, covenants or agreements contained in this Agreement).

16. Contested and Disputed Claims. The Parties understand and agree that, by entering into this Agreement, they are settling claims that are contested and disputed.

17. Survival of Warranties and Representations. The warranties and representations of this Agreement are deemed to survive the Effective Date hereof.

18. Entire Agreement. This Agreement together with its attachment constitutes the entire agreement between the Parties with respect to the subject matter hereof and cancels and supersedes all of the previous or contemporaneous contracts, representations, warranties, understandings and communications (whether oral or written) by or between the Parties with respect to the subject matter hereof.

19. Amendments. No addition to, and no cancellation, renewal, extension, modification or amendment of, this Agreement shall be binding unless such addition, cancellation, renewal, extension, modification or amendment is set forth in a written instrument which states that it adds to, amends, cancels, renews, extends or modifies this Agreement and which is executed and delivered on behalf of each of the Parties by an executive officer of, or attorney-in-fact for, each such party.

20. Multiple Counterparts. This Agreement may be signed in multiple counterparts or with detachable signature pages, and may also be signed via fax or e-mail, provided that any fax or e-mail signature shall ultimately be replaced with an original signature. All signed multiple counterparts of the Agreement, if any, shall be construed together and shall be effective as if all signed in one, unified document.

21. No Adverse Inference from Drafting. The terms and provisions of this Agreement were arrived at by mutual negotiations among the Parties, with assistance from their respective officers, attorneys and representatives. Therefore, no ambiguity, if any, in this Agreement that may arise in the future shall be interpreted against or adversely to a party based upon the party or the attorney who may have originally drafted the language of any term or provision that is included in the Agreement.

22. Binding Effect. The Parties agree and acknowledge that all of the terms of this Agreement are contractual and not mere recitals, and that the terms of this Agreement shall be binding on the Parties.

23. Authorization. Each person signing this Agreement on behalf of a corporate entity certifies, represents and warrants he or she has been duly authorized to enter into this Agreement by the entity on whose behalf the person is signing.

24. Effective Date. The Agreement shall become effective only and immediately upon the Effective Date.

25. Documents Filed Under Seal. The Parties agree that beginning 60 days after the date of the entry of an Order dismissing this case, the Clerk of the United States Court for the District of Minnesota may destroy any and all documents filed under seal in the Litigation, and not earlier retrieved, by any of the Parties.

____________________ Dated: 12/9, 2005.
Arctic Cat Inc.

By: Ole Tweet
Its: Vice President

____________________ Dated: __________, 2005.
Suzuki Motor Corporation

By: ____________________
Its: ____________________

____________________ Dated: __________, 2005.
Injection Research Specialists, Inc.

By: ____________________
Its: ____________________

____________________ Dated: __________, 2005.
Pacer Industries, Inc.

By: ____________________
Its: ____________________

23. Authorization. Each person signing this Agreement on behalf of a corporate entity certifies, represents and warrants he or she has been duly authorized to enter into this Agreement by the entity on whose behalf the person is signing.

24. Effective Date. The Agreement shall become effective only and immediately upon the Effective Date.

25. Documents Filed Under Seal. The Parties agree that beginning 60 days after the date of the entry of an Order dismissing this case, the Clerk of the United States Court for the District of Minnesota may destroy any and all documents filed under seal in the Litigation, and not earlier retrieved, by any of the Parties.

______________________________ Dated: ____________________, 2005.
Arctic Cat Inc.

By: __________________________
Its: __________________________

[signature] Dated: Jan. 6th, 2005. [handwritten correction: 2006]
Suzuki Motor Corporation

By: MITSUO UNNO
Its: DIRECTOR, BOARD MEMBER

______________________________ Dated: ____________________, 2005.
Injection Research Specialists, Inc.

By: __________________________
Its: __________________________

______________________________ Dated: ____________________, 2005.
Pacer Industries, Inc.

By: __________________________
Its: __________________________

23. Authorization. Each person signing this Agreement on behalf of a corporate entity certifies, represents and warrants he or she has been duly authorized to enter into this Agreement by the entity on whose behalf the person is signing.

24. Effective Date. The Agreement shall become effective only and immediately upon the Effective Date.

25. Documents Filed Under Seal. The Parties agree that beginning 60 days after the date of the entry of an Order dismissing this case, the Clerk of the United States Court for the District of Minnesota may destroy any and all documents filed under seal in the Litigation, and not earlier retrieved, by any of the Parties.

__________________________ Dated: __________________, 2005.
Arctic Cat Inc.

By: ________________________
Its: ________________________

__________________________ Dated: __________________, 2005.
Suzuki Motor Corporation

By: ________________________
Its: ________________________

[signature] Dated: 1/20/06, ~~2005~~.
Injection Research Specialists, Inc.

By: [signature]
Its: President

__________________________ Dated: __________________, 2005.
Pacer Industries, Inc.

By: ________________________
Its: ________________________

23. Authorization. Each person signing this Agreement on behalf of a corporate entity certifies, represents and warrants he or she has been duly authorized to enter into this Agreement by the entity on whose behalf the person is signing.

24. Effective Date. The Agreement shall become effective only and immediately upon the Effective Date.

25. Documents Filed Under Seal. The Parties agree that beginning 60 days after the date of the entry of an Order dismissing this case, the Clerk of the United States Court for the District of Minnesota may destroy any and all documents filed under seal in the Litigation, and not earlier retrieved, by any of the Parties.

______________________________ Dated: ____________________, 2005.
Arctic Cat Inc.

By: ______________________________
Its: ______________________________

______________________________ Dated: ____________________, 2005.
Suzuki Motor Corporation

By: ______________________________
Its: ______________________________

______________________________ Dated: ____________________, 2005.
Injection Research Specialists, Inc.

By: ______________________________
Its: ______________________________

[signature] Dated: 1/19/06, 2005.
Pacer Industries, Inc.

By: Jeffery J. Wawrzyniak
Its: Legal Counsel

______________________________ Dated: January 11, 2006, XXXX

Arctic Slope Regional Corporation

By: Mark W. Kroloff

Its: Sr. Executive VP & COO

______________________________ Dated: ________________, 2005.

Dana Corporation

By: __________________________

Its: __________________________

______________________________ Dated: ____________________, 2005.
Arctic Slope Regional Corporation

By: ______________________________
Its: ______________________________

______________________________ Dated: 1/19/06, 2005.
Dana Corporation

By: Jeffery J. Wawrzyniak
Its: Legal Counsel

APPROVED AS TO FORM:

ARCTIC CAT INC.

By: ______________________

Annamarie A. Daley (MN #158112)
Aaron A. Myers (MN #311959)
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone: (612) 349-8500
Facsimile: (612) 339-4181

SUZUKI MOTOR CORPORATION

By: ______________________

William F. Forsyth (MN #31070)
Henson & Efron, P.A.
220 South Sixth Street, Suite 1800
Minneapolis, MN 55402-4503
Telephone: (612) 339-2500
Facsimile: (612) 339-6364

Thomas H. Jenkins (Pro Hac Vice)
Bruce C. Zotter (Pro Hac Vice)
Christopher W. Day (Pro Hac Vice)
Finnegan, Henderson, Farabow,
Garrett & Dunner, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

INJECTION RESEARCH SPECIALISTS, INC. and PACER INDUSTRIES, INC.

By: ______________________

Anthony de Alcuaz
Robert J. Blanch
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone (650) 813-5000

David J. Pearson (#84712)
Winthrop & Weinstine, P.A.
225 South Sixth Street, suite 3400
Minneapolis, MN 55402-4629
Telephone: (612) 604-6400

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

ARCTIC CAT INC., a Minnesota Corporation,

Civ. No. 01-543 (MJD/RLE)

Plaintiff,

vs.

INJECTION RESEARCH SPECIALISTS, INC., a Colorado Corporation, and PACER INDUSTRIES, INC., a Missouri Corporation,

Defendants,

and

INJECTION RESEARCH SPECIALISTS, INC., a Colorado Corporation, and PACER INDUSTRIES, INC., a Missouri Corporation,

Counterclaimants,

vs.

ARCTIC CAT INC., a Minnesota Corporation, and SUZUKI MOTOR CORPORATION, a Japanese Corporation,

Counterdefendants.

**[PROPOSED] ORDER OF DISMISSAL WITH PREJUDICE**

The parties have executed a Settlement Agreement and Stipulation of Dismissal with Prejudice, a copy of which is attached to this Order and herein incorporated by reference. The

parties also stipulate and agree that this Court shall retain jurisdiction to enforce the terms of the Settlement Agreement and Stipulation of Dismissal with Prejudice.

Based on and subject to the foregoing, **IT IS HEREBY ORDERED** that this matter is dismissed with prejudice without fees or costs to any party.

Dated this ______ day of ______________, 2006.

**BY THE COURT:**

______________________________________
Michael J. Davis
United States District Court Judge